UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
—————————————————————————

 WILLIAM J. WAGNER,

                                        Plaintiff,

            v.                                        Civil Action No.1:15-cv-633-FPG

CHIARI & ILECKI, LLP,

                                        Defendant.
—————————————————————————

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER, MOTION IN LIMINE, AND MOTION TO DISQUALIFY

Plaintiff has filed a Motion for a Protective Order to prevent the Defendant from deposing Plaintiff's counsel, Seth Andrews, and to excuse Plaintiff from having to answer Plaintiff's First Requests for Admission.  Plaintiff also has filed a Motion in Limine seeking to prohibit the Defendant from introducing evidence regarding telephone conversations that took place between Seth Andrews and Melissa Overbeck on June 29, 2015, and from introducing any evidence questioning the motives of Plaintiff's counsel.  Finally, Plaintiff has moved to disqualify Connors LLP from representing the Defendant in this case due to a conflict of interest.

This Memorandum of Law is submitted in support of these motions.

### FACTS OF CASE

This is a case brought by Plaintiff for damages for Defendant's alleged violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C.§1692, et seq.   The conduct complained of, as is more fully described in Plaintiff's complaint annexed hereto, relates to attempts to collect a debt owed by William J. Wagner, Jr. by sending of a collection letters to the Plaintiff, who is not the debtor, and the service of a subpoena duces tecum ("SDT") upon the Plaintiff requiring his attendance for a debtor's examination.

All of the tortious events alleged in the complaint occurred between the dates of February 9, 2015 and May 15, 2015. (Complaint, ¶¶ 16-20).  In the course of discovery, a controversy has arisen regarding the relevance of a series of telephone calls that took place between Plaintiff's counsel, Seth Andrews, and Melissa Overbeck, an attorney employed by the Defendant, on June 29, 2015.

Melissa Overbeck characterized those telephone calls in an "event sheet" kept by the Defendant in the ordinary course of business. (A redacted copy of the event sheet is annexed hereto as an exhibit C).  According to Ms. Overbeck, Mr. Andrews informed her that he represented the Plaintiff, that the Plaintiff was not the William Wagner they were looking for, and that he was not a "Jr."  Ms. Overbeck then asked Mr. Andrews to provide proof of his client's social security number, date of birth, and address.  Mr. Andrews allegedly stated that he would provide that proof. Mr. Andrews then asked Ms. Overbeck to provide a copy of the lease agreement underlying the debt so that he could verify the signature on it, which she agreed to provide.

Later on June 29, 2015, Mr. Andrews called Ms. Overbeck and informed her that his client's Social Security number ended in #3918, and provided his date of birth, neither of which matched the information for the debtor.  Mr. Andrews also allegedly informed Ms. Overbeck that he would not send her his client's Social Security card, but that he "may" send her his drivers license.   Ms. Overbeck stated that she would send Mr. Andrews a copy of the lease, and that she would generally adjourn the debtor's examination that Plaintiff had been served with a subpoena to attend.  She confirmed the adjournment by facsimile, a copy of which is annexed hereto an exhibit D.

Neither Plaintiff or Defendant listed Seth Andrews as a potential witness in their FRCP Rule 26(a)(1) disclosures. (See Exhibits E and F).  In his answers to Interrogatories to the

Defendant, Plaintiff listed Plaintiff's attorneys, Kenneth Hiller, and Seth Andrews as potential witnesses.  In listing them as witnesses, Plaintiff specifically objected to his answer to that question on the grounds that the information requested was not relevant.  (Exhibit G).

This deadline for fact discovery set by this Court was November 8, 2016. (Dkt. #17).  On October 18, 2016, counsel for the Defendant sent a deposition notice via email and regular mail through which they sought to depose Seth Andrews on November 8, 2016.  The notice contained no restrictions as to the issues that Defendant sought to depose Mr. Andrews on. (Exhibit H).

Upon receipt of the deposition notice, a series of emails and letters were exchanged in which the parties sought to resolve concerns that Plaintiff raised regarding the propriety of Defendant's counsel continuing as counsel for Defendant given their prior representation of Kenneth Hiller, Esq. in previous legal proceedings, and regarding the propriety of the deposition in general. (A copy of all emails and letters exchanged by counsel are annexed hereto as an exhibit I).  Essentially, Plaintiff's counsel informed opposing counsel that the information sought through the deposition of Mr. Andrews was irrelevant.

In an effort to avoid motion practice regarding the deposition, the parties attempted in good faith to resolve this dispute and agreed that 1) the deposition of Mr. Andrews would be adjourned, and 2) that in an effort to resolve the dispute regarding the deposition notice, the Defendant would prepare Requests for Admissions and a stipulation that would hopefully satisfy their discovery needs and ameliorate our concerns about the breadth and relevancy of the deposition.  In making this agreement, it was the intent of the parties to establish that the event sheet notes made by Ms. Overbeck regarding her conversations with Mr. Andrews was accurate, and Mr. Andrews would not be called a witness to challenge the accuracy of those notes.

The Defendant then served Requests for Admissions on the Plaintiff, together with a proposed stipulation. (Exhibits J and K).  The Requests for Admissions and the proposed stipulation went far beyond what the parties had agreed upon.  The Requests for Admissions sought admissions of numerous facts and other matters that went well beyond merely agreeing to the accuracy of the event sheet notes.  Some of the Requests appeared to be aimed casting Plaintiff's counsel in a bad light. (See Requests for Admission Nos. 9 and 10).

The stipulation also went well beyond the understanding of the parties.  Specifically, the proposed stipulation contained a provision in which the parties agreed that Plaintiff's responses to the Requests for Admissions would be admissible at trial.  Plaintiff never agreed to such a provision, and never would have done so.  It is the strong belief of Plaintiff that none of the conversations that took place between Mr. Andrews and the Defendant are relevant to these proceedings.

After noting Plaintiff's objections to the Requests for Admissions, and the proposed stipulation, counsel for the Defendant agreed to remove the provision from the stipulation that would have made Plaintiff's responses to the Requests for Admissions admissible at trial. However, he declined to withdraw any of the Requests for Admissions.

At that point, the undersigned counsel informed counsel for the Defendant that it appeared that the pending discovery dispute could not be resolved.  Accordingly, this Motion was filed.

## MOTION IN LIMINE

The district court has the inherent authority to manage the course of a trial. *Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).  The court may exercise this power by issuing an evidentiary ruling in advance of trial by making in limine

rulings. *Id.*  A party may seek such a ruling by filing a motion *in limine,* which requests the court's guidance on what evidence will (or will not) be admitted at trial. *Perry v. City of Chicago,* 733 F.3d 248, 252 (7th Cir.2013).  Prudent motions *in limine* serve a gatekeeping function by allowing the judge "to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury." *Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir.1997).  By defining the evidentiary boundaries, motions *in limine* both permit "the parties to focus their preparation on those matters that will be considered by the jury," and help ensure "that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues," *Id.; United States v. Tokash,* 282 F.3d 962, 968 (7th Cir.2002); *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir.1996) (quotations omitted).

"Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *Wechsler v. Hunt Health Sys., Ltd.,* 381 F.Supp.2d 135, 140 (S.D.N.Y.2003). The Federal Rules of Evidence provide that "[r]elevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed.R.Evid. 402. However, even relevant evidence should be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* at 403; *Singh v. Bay Crane Serv. Inc.*, 2015 WL 918678, at *2 (E.D.N.Y. 2015).

The June 29, 2015 telephone calls between Seth Andrew and Melissa Overbeck are not relevant to this case.  The tortious conduct alleged was the mailing of collection letters, and the service of a SDT on Plaintiff.  All of these events occurred between February 12, 2015 and May 15, 2015.  Mr. Andrews did not speak with the Ilecki office until June 29, 2015.

The fact that the Defendant agreed to adjourn the debtors examination *after* they had sent him collection letters, an information subpoena, and had served him with a SDT is not relevant to those prior events.  The acts alleged in the complaint occurred, and the Defendant is liable in tort for those acts regardless of the fact that they later adjourned the debtors examination.

Counsel for the Defendant informed the undersigned that Mr. Andrews testimony was necessary to establish their bona fide error defense. (See November 23, 2016 email from Defendant's counsel, Exhibit I, pg. 27).  However, again, these conversations took place after the Defendant's tortious conduct.  They bear no relevance to their assertion of such a defense.

Even if it were found that their subsequent agreement to adjourn the SDT was somehow relevant to this case, it is submitted that the probative value of the evidence is far outweighed by the confusion that this evidence would cause at trial.  Rather than focusing on the allegations of the complaint, the jury would be bombarded by evidence and arguments about what was really said in these telephone calls, and what that suggested about the reasonableness of the Plaintiff, Plaintiff's counsel, and the Defendant.

It is submitted that this is exactly what this Court should attempt to avoid.  The focus of this trial should be on whether the Defendant committed the acts alleged in the complaint, whether those acts violated the FDCPA, and if so, what Plaintiff's damages are.  It should not be about whether the Defendant adjourned the debtor's examination *after* those alleged violations, and who acted improperly during the telephone calls that took place on June 29, 2015.

In addition, the introduction of this evidence would likely confuse the jury.  They might think that the trial was about whether the Defendant acted reasonably in when confronted with Mr. Andrews telephone calls of June 29, 2015.  However, the complaint does not even mention those telephone calls or allege that the Defendant acted unreasonably in response to information

provided to them by Mr. Andrews.  The question for the jury is whether the acts complained of *in the complaint* give rise to liability; not whether acts occurring months afterwards violated the law.

By reason of the above, Plaintiff seeks an order barring the introduction of any evidence regarding the June 29, 2015 telephone calls at trial.  This would include an order that the entries in the event sheet for June 29, 2015, if ultimately offered as evidence at trial (as they undoubtedly will be), be redacted.

The Defendant's discovery demands strongly suggest that they are going to attempt to make the actions of Plaintiff's counsel the focus of the trial rather than whether the Defendant violated the FDCPA.  The notice to take Seth Andrews deposition did not limit the issues that might be discussed at the deposition.  This raises the question as to whether the Defendant intended to ask questions about Plaintiff's counsel's motivation in filing this action, the general procedures employed by Plaintiff's counsel in preparing and filing FDCPA actions, whether Plaintiff's counsel adequately investigated this case before filing it, as well as other possible improper inquiries.

The Defendant's First Request for Admissions and the Defendant's counsel's emails thereafter made it abundantly clear that this was their intention.   Request for Admission numbers 9 and 10 asked for the following admissions:

Request No. 9:  Mr. Andrews never sent Chiai & Ilecki a copy of the plaintiff's driver's license or Social Security card and never contacted Chiari & Ilecki again about this matter.

Request No. 10: Instead, Mr. Andrews filed this lawsuit against Chiari & Ilecki without warning.

These requests clearly demonstrate that the Defendant is attempting to blame Plaintiff's counsel for not providing the documentation they requested, never contacting them again, and for filing this suit without warning.  It is remarkable, for example, that the requests name Mr. Andrews personally.  This lawsuit is brought by William J. Wagner, not Seth Andrews.  The requests clearly attempt to suggest that Mr. Andrews acted improperly by not sending the documentation the Defendant requested or ever contacting them again.  They suggest that Mr. Andrews had a legal obligation to provide the documents requested, and that instead of doing what he was legally required to do, he filed this lawsuit.  It would not be surprising if the Defendant then sought to argue to the jury that Mr. Andrews was pursuing his own personal gain by obtaining attorneys fees rather than resolving this matter for his client.  Further, Request No. 10 falsely implies that Mr. Andrews had some duty to "warn" the Defendant before filing the lawsuit.

On November 21, 2015, the undersigned confronted opposing counsel with the impropriety of the Requests, and asked that they be withdrawn. (Exhibit I, pg. 25).  In response, opposing counsel did not deny that their intent was to cast aspersions on Plaintiff's counsel, and declined to withdraw any of the Requests for Admissions. (Exhibit I, pg. 27).

Given the apparent intent of the Defendant to attempt to make Plaintiff's counsel the issue in this case, Plaintiff seeks an order that at the trial of this matter, that Defendant and/or their counsel may not refer to, introduce evidence of, or conduct examination criticizing Plaintiff's attorney.

15 U.S.C. § 1692k(a)(3) provides that following any successful action to enforce a debt collector's liability for actual or statutory damages, a debt collector is liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court." Conversely, the

court may award reasonable attorney's fees to the defendant if the court finds that the lawsuit was brought in bad faith and for the purpose of harassment. 15 U.S.C. § 1692k(a)(3). "The question of attorneys' fees is clearly one for the Court." *Vera v. Trans-Continental Credit & Collection Corp.,* No. 98 Civ. 1866, 1999 WL 292623, at *1 (S.D.N.Y. May 10, 1999); *see Sibley v. Gulton DeKalb Collection Serv.,* 677 F.2d 830, 834 n. 5 (11th Cir.1982) ("Plaintiff does not contend and we do not imply that the statutory award of attorneys fees would be a matter for submission to a jury."); *see also, Brooks v. Cook,* 938 F.2d 1048, 1051 (9th Cir.1991) ("The award of attorney fees is a matter for the judge not the jury.").  As such, it has been held that a Defendant in a FDCPA case should not be permitted to elicit testimony or present evidence regarding the availability of an award of attorney's fees should plaintiff prevail. *Stover v. Northland Grp., Inc.*, No. 05 CV 0476E(SR), 2007 WL 1969724, at *1 (W.D.N.Y. 2007).

It has also been consistently been held that a Defendant should not be permitted to present evidence regarding Plaintiff's motivations for litigation, or their litigiousness. *Wright v. BNSF Ry. Co.*, No. 4:13-CV-24-JED-FHM, 2016 WL 1637276, at *2 (N.D. Okla. Apr. 25, 2016); *Outley v. City of New York,* 837 F.2d 587, 592 (2d Cir.1988); accord *Gastineau v. Fleet Mortg. Corp,*, 137 F.3d 490, 496 (7th Cir.1998).  As noted in *Outley,* "a plaintiff's litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant." *Outley,* at 592.

Defendant's argument is, of course, meant to reduce the statutory and actual damage recovery.  Nothing in the FDCPA allows the jury to consider plaintiff's motives in awarding damages. 15 U.S.C. §1692k.  To determine the amount of statutory damages, the jury considers the nature of the violation, the frequency and persistence of the violation, the extent to which the violation was intentional, and the number of violations. §1692k(b)(1); *Masuda v. Thomas*

*Richards & Co.*, 759 F. Supp. 1456, 1467 (C.D. Cal. 1991).  With respect to actual damages, the jury considers factors such as the humiliation, embarrassment, mental anguish, or emotional distress that Plaintiff endured as a result of the Defendant's conduct. *Smith v. Law Offices of Mitchell N. Kay*, 124 B.R. 182, 185 (D.Del.1991).   The FDCPA is a strict liability statute. *Russell v. Equifax A.R.S.,* 74 F.3d 30, 33 (2d Cir. 1996).  There is nothing in the statute that suggests that a Plaintiff's motives in filing a FDCPA lawsuit is a relevant factor to be considered by a jury.

These cases are, admittedly, slightly distinguishable because they involve efforts by a Defendant to criticize a plaintiff, whereas here, the effort appears to be to criticize Plaintiff's counsel.  However, it is submitted that the same policy arguments that prohibit criticizing a Plaintiff's litigiousness or motives in filing a lawsuit equally apply to efforts to criticize a Plaintiff's attorney on similar grounds.

In addition, by making available to prevailing consumers both statutory damages and attorneys' fees, Congress "clearly intended that private enforcement actions would be the primacy enforcement tool of the Act."  *Baker v. G.C. Services Corp.,* 677 F.2d 775, 780–81 (citing elements of the FDCPA's legislative history); *see also Evon v. Law Offices of Sidney Mickell,* 688 F.3d 1015, 1031 (9th Cir.2012) ("The FDCPA is a consumer protection statute and was intended to permit, even encourage, attorneys like [plaintiffs' class counsel] to act as private attorney generals to pursue FDCPA claims."); *Gonzales,* 660 F.3d at 1061 (noting that "Congress encouraged private enforcement [of the FDCPA] by permitting aggrieved individuals to bring suit as private attorneys general" (citing *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 978 (9th Cir.2008))).  Therefore, it would thwart Congressional intent in enacting the FDCPA to

allow a Defendant to criticize a Plaintiff's attorney before a jury for filing an action that they

sought to encourage.

By reason of the above, it is respectfully requested that this Court order that at the trial of

this matter, that Defendant and/or their counsel may not refer to, introduce evidence of, or

conduct examination related to:

1. Plaintiff and/or plaintiff's counsel's potential claim for attorneys fees in this action.

2. Plaintiff's counsel's procedures in investigating, filing and litigating consumer lawsuits.

3. The number of consumer lawsuits filed by Plaintiff's counsel.

4. Plaintiff's counsel's actions on behalf of Plaintiff prior to the filing of this lawsuit, including but not limited to Plaintiff's counsel's failure to provide written evidence of Plaintiff's identity to Defendant, or Plaintiff's counsel's failure to inform or warn Defendant of their intent to file a civil lawsuit against them.

5. Plaintiff's counsel's motivation in filing this lawsuit on behalf of Plaintiff.

Such a finding would eliminate most, if not all of the other issues raised in this motion.


**MOTION FOR PROTECTIVE ORDER**

Plaintiff also moves under Fed.R.Civ.P. 26(c) for a protective order finding that Plaintiff

should not be required to answer Defendant's First Set of Requests for Admission, and

prohibiting Defendant from deposing Plaintiff's attorney, Seth Andrews, as a non-party witness.

Under Rule 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense and proportional to the needs of the case, considering the

importance of the issue at stake in the action, the amount in controversy, the parties' relative

access to relevant information, the parties' resources, the importance of the discovery in

resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

### A.  The Deposition Notice Was Untimely

The deposition notice was emailed and mailed by regular mail to Seth Andrews on October 18, 2016. (Exhibit H).  This is improper service under the federal rules.  Seth Andrews is not a party to this action and, as such, is a non-party witness.  Under the federal rules, service of a deposition by mail can only be effected on a party.  Mr. Andrews never consented to be served with a deposition notice by mail.  If the Defendant wished to depose Mr. Andrews as a non-party witness, he would be required to serve him with a subpoena. Fed.R.Civ.P. 30; *Chevron Corp. v. Salazar*, 275 F.R.D. 422, 425 (S.D.N.Y. 2011).

The discovery deadline expired on November 8, 2016.  The local rules require that a party be given 21 days notice of the date that his deposition will be taken. Local Rule 30(a). Counsel for the Defendant emailed the subpoena to Mr. Andrews at 5:00 p.m. on October 18, 2016, exactly 21 days prior to the discovery deadline.  In the email, he inquired whether Mr. Andrews would require a subpoena.  However, even if Mr. Andrews had informed him the very next day that he required a subpoena (which he does), there would have been no way for the Defendant to serve him and give him sufficient notice of the deposition under the local rules and comply with the discovery deadline in this case.  As such, for this reason alone, the proposed deposition of Seth Andrews should not be permitted.

The Requests for Admissions are also late.  They were served on November 16, 2016, eight days after the expiration of the discovery deadline.  As they were not served timely, and Plaintiff should not be required to answer them.

**B. The Substance of the Telephone Calls Between Seth Andrews and Melissa Overbeck Are of Minimal, If Any, Relevance, and Would Be Disruptive to the Attorney-Client Relationship and On the Litigation of This Case**

Although depositions of opposing counsel are by no means forbidden, *In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 71–72 (2d Cir.2003), they are disfavored, *id.* at 71 (citing *United States v. Yonkers Board of Education,* 946 F.2d 180, 185 (2d Cir.1991)). "[D]epositions of counsel, even if limited to relevant and non-privileged information, are likely to have a disruptive effect on the attorney-client relationship and on the litigation of the case." *United States Fidelity & Guaranty Co. v. Braspetro Oil Services Co.,* Nos. 97 Civ. 6124, 98 Civ. 3099, 2000 WL 1253262, at *2 (S.D.N.Y. Sept. 1, 2000). Thus, courts seek to avoid "the disruption and misuse of the adversary process attendant on allowing a party to depose its adversary's litigation counsel." *Calvin Klein Trademark Trust v. Wachner,* 124 F.Supp.2d 207, 211 (S.D.N.Y.2000).

In order to strike a balance between the legitimate need for information in discovery and the danger of allowing gamesmanship to sidetrack litigation, the Second Circuit has directed district courts to "consider[ ] all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Friedman,* 350 F.3d at 72. "Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id; Lee v. Kucker & Bruh, LLP*, 2013 WL 680929, at *1–2 (S.D.N.Y. Feb. 25, 2013). In addition, Fed.R.Civ.P. 26(b)(2)(C) notes that a court should limit prospective discovery where the discovery "can be obtained from some other source that is more convenient,

less burdensome, or less expensive." *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.,* 276 F.R.D. 376, 382 (D.D.C.2011) (citing *Friedman,* 350 F.3d at 72.

Applying the legal standard cited above, there is no reasonable argument that Mr. Andrews should be subjected to a harassing deposition.  First, for the reasons stated in Plaintiff's Motion in Limine, Mr. Andrews testimony is not relevant to this case.  The tortious conduct alleged was the mailing of collection letters, and the service of a SDT on Plaintiff.  All of these events occurred between February 12, 2015 and May 15, 2015.  Mr. Andrews did not speak with the Ilecki office until June 29, 2015.

Second, if Mr. Andrews was called as a witness at trial, or if his deposition testimony were introduced, it would confuse the jury.  Third, the deposition risks interfering with the attorney-client relationship.  The account notes do not indicate why Plaintiff did not supply his Social Security card or drivers license as Defendant requested.  The Defendant might make inquiry as the reasons for this, which would risk intrusion into Mr. Andrews confidential communications with the Plaintiff.

Depositions of attorneys for a litigant are disfavored for good reason.  Plaintiff submits that Defendant should not be permitted to depose Plaintiff's attorney in this case.

In the event this Court finds that the June 29, 2015 telephone calls are relevant, it is submitted that rather than having the Defendant depose Mr. Andrews, the parties should attempt to enter into a stipulation regarding what should be presented to the jury, or failing that, the Court should order what should be presented.

If none of that occurs, and this Court finds that the Defendant will be permitted to introduce evidence about the June 29, 2015 telephone calls, Plaintiff cannot agree to remove Seth Andrews from his witness list as he may have to testify to rebut mischaracterizations of the

telephone calls and the events surrounding them by witnesses for the Defendant.  If the Court were to find that in light of the possibility that Mr. Andrews might be called as a rebuttal witness, he should be subjected to a deposition, it is submitted that the deposition should be limited to questions about the substance of the June 29, 2015 telephone calls.

### C. This Court Should Issue A Protective Order With Respect to Defendant's Request For Admissions

The information sought in Defendant's Requests for Admissions are irrelevant for the same reasons that Mr. Andrews testimony is irrelevant. In addition, if Plaintiff were forced to respond to the Requests, he would deny many of them due to slanting and editorializing contained in them.

However, there are additional grounds to issue an order of protection regarding several of the Requests for Admissions.  Request number 9 asks Plaintiff to admit that Mr. Andrews never contacted Defendant's counsel again after June 29, 2015.  Request number 10 asks Plaintiff to admit that "instead" of providing Defendant's Social Security card and drivers license,  he filed this lawsuit "without warning."

Plaintiff and his attorney had no duty to contact the Defendant after June 29, 2015, and there is no duty to warn a debt collector prior to filing a FDCPA lawsuit against them.  Neither of these facts are admissible at trial.

In addition, there was not, as implied, a choice for Mr. Andrews to make, i.e. to either provide the identity documentation requested or file this lawsuit.  He could have done both.  In other words, there is no linkage between the decision not to provide identification documentation and the decision to file this lawsuit.  The underlying premise of Request No. 10 suggesting there was such a linkage renders the question is inaccurate.

It is inappropriate for a party to demand that the opposing party ratify legal conclusions that the requesting party has simply attached to operative facts. *Lakehead Pipe Line,* 177 F.R.D. at 458. *See also Reichenbach v. City of Columbus,* 2006 WL 143552 at *2 (S.D.Ohio 2006). Requests No. 9 and 10, if answered and presented to a jury would, in effect, present a legal argument that is inappropriate for a Request for Admission, and which also misrepresents the law with respect to Plaintiff and his attorney's legal duties.  As such, even if the information sought were relevant, Plaintiff should not be required to answer these Requests for Admission.

## MOTION TO DISQUALIFY COUNSEL

The law firm of Connors & Vilardo LLP, the predecessor in interest of Defendant's current counsel, Connors LLP, represented the undersigned in two cases in the Western District of New York in 2010 and 2011, respectively.

The first case was Angela Clayson v. Rubin & Rothman, LLC, Case No. 1:08-cv-66-RJA.  The *Clayson* case involved a claim by Angela Clayson that the Defendant had violated the FDCPA in the course of collecting a debt that she owed.  The undersigned counsel represented the Plaintiff.  The case proceeded to a jury trial, which was held in May of 2010.  On May 28, 2010, a jury dismissed Plaintiff's claim in its entirety.  A judgment was entered on June 9, 2010.

Plaintiff moved to vacate the judgment, and the Defendant cross-moved for attorneys fees and sanctions against Plaintiff and the undersigned.  On September 7, 2010, Connors & Vilardo, LLP, appeared on behalf of Plaintiff.  They then proceeded to represent Plaintiff and the undersigned in defense of the Defendant's sanctions motion.  Among the allegations made by Defendant's counsel in seeking sanctions against the undersigned were the following:

1. That prior to, and during the action, the undersigned should have realized that Plaintiff was not credible, and that the allegations of her complaint were "preposterous."

2. That our firm has filed 511 FDCPA complaints.  In the course of those filings, our firm had engaged in a pattern of conduct which exhibited a complete disregard for the judicial system; tying up the court's limited resources with many meritless FDCPA claims as a tactic to coerce settlements, and that our lawfirm needed to be deterred.

3. That the Law Offices of Kenneth Hiller failed in our duty to investigate the claims of Ms. Clayson resulting in the bringing of a baseless claim.

4. That our firm regularly does not investigate our complaints, and dismisses them when our opponent points out their inadequacies.

5. That there are not enough hours in a day for our firm to reasonably investigate our cases given the volume of cases that we file.

6. That our firm is willing to burden the Court with unnecessary litigation in order to obtain attorney's fees.

7. That our firm lies in its time records.

The undersigned met personally with Lawrence Vilardo, Esq. and Terrence Connors, Esq. to assist them with the defense of the sanctions motion.  Connors & Vilardo, LLP filed opposition papers to the sanctions motion, and Terrence Connors orally argued the motion.  In the course of preparing their defense to that motion, Connors & Vilardo LLP was provided with confidential information regarding my firms FDCPA practice, including our investigation of cases prior to our filing.  Due to their outstanding representation of me, the sanctions motion was denied in its entirety.

The second case was Lyneisha Ford v. Principal Recovery Group, Inc., Case No. 1:09-cv-627-JTC.  The *Ford* case involved a claim by Ms. Ford that the Defendant had violated the FDCPA in the course of collecting a debt that she owed.  The undersigned counsel represented the Plaintiff.  In November of 2010, the Defendant moved for Summary Judgment and for sanctions against Plaintiff and the Law Offices of Kenneth Hiller.  On September 29, 2011, the Court granted Defendant's Motion for Summary Judgment and their Motion for Rule 11 sanctions.

The arguments made by the Defendant in support of the Motion for Sanctions included that our firm did not properly investigate the claim before filing it, and did not present the complaint to the Plaintiff for her to review it before filing it.  They also noted that the undersigned "boasts experience and expertise in consumer protection laws, including the FDCPA, and knew, or with reasonable inquiry, should have known that this claim did not rise to the level of a violation of the FDCPA.

At that point, the undersigned retained the services of Connors & Vilardo, LLP, who entered their appearance on October 28, 2011.  They filed a Motion to Vacate the sanctions order, and on March 19, 2012, once again as a result of the excellent advocacy of Connors & Vilardo, LLP, the Court reversed itself, vacated its order of sanctions, and denied the Motion for Sanctions in its entirety.  The undersigned consulted with Terrence Connors and Vincent Doyle, III in connection with that motion.

On August 12, 2015, Terrence Connors of Connors & Vilardo, LLP emailed the undersigned and stated that he had been asked to represent the Defendant.  The undersigned responded that there was a potential conflict of interest given their representation of my firm by them in the past.  On August 20, 2015, Mr. Connors sent the undersigned a letter stating that

since my firm was not a party to this action, he did not perceive a conflict of interest. (A copy of that letter is annexed at Exhibit I, pgs. 8-10).  Based upon that representation, the undersigned agreed not to object to his firm's representation of the Defendant in this action.

Upon receiving the notice to take Seth Andrews deposition, the undersigned became suspicious that there might be a conflict of interest emerging.  The Notice contained no restrictions regarding the topics that might be covered at the deposition.  As such, Mr. Andrews might be asked questions about his role in preparing this case to be filed, including his investigation, the reasons why he chose to file suit instead of seeking to resolve the dispute without the filing of a lawsuit, and even the practices of the Law Offices of Kenneth Hiller PLLC in the handling of FDCPA cases in general.

This suspicion was reinforced when opposing counsel served their First Requests for Admissions.  As noted above, the Defendant's First Request for Admissions and the Defendant's counsel's emails thereafter made it abundantly clear that this was their intention was to question the practices of Plaintiff's counsel in this case, and in general.   Request for Admission numbers 9 and 10 asked for the following admissions:

Request No. 9:  Mr. Andrews never sent Chiai & Ilecki a copy of the plaintiff's driver's license or Social Security card and never contacted Chiari & Ilecki again about this matter.

Request No. 10: Instead, Mr. Andrews filed this lawsuit against Chiari & Ilecki without warning.

These requests clearly demonstrate that the Defendant is attempting to blame Plaintiff's counsel for not providing the documentation they requested, never contacting them again, and for filing this suit without warning.  It is remarkable, for example, that the requests name Mr. Andrews personally.  This lawsuit is brought by William J. Wagner, not Seth Andrews.  The

requests clearly attempt to suggest that Mr. Andrews acted improperly by not sending the documentation the Defendant requested or ever contacting them again.  They suggest that Mr. Andrews had a legal obligation to provide the documents requested, and that instead of doing what he was legally required to do, he filed this lawsuit.  It would not be surprising if the Defendant then sought to argue to the jury that Mr. Andrews was pursuing his own personal gain by obtaining attorneys fees rather than resolving this matter for his client.  Further, Request No. 10 implies that Mr. Andrews had some duty to "warn" the Defendant before filing the lawsuit.

On November 21, 2015, the undersigned confronted opposing counsel with the impropriety of the Requests, and asked that they be withdrawn. (Exhibit I, pg. 25).  In response, opposing counsel did not deny that their intent was to cast aspersions on Plaintiff's counsel, and declined to withdraw any of the Requests for Admissions. (Exhibit I, pg. 27).

A conflict of interest exists "where the attorney is at least potentially in a position to used privileged information concerning the other side through prior representation, in violations of Canons 4 and 9, thus giving his present client an unfair advantage.  *Armstrong v. McAlpin,* 625 F.2d 433, *overruled on other grounds, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981).* The test in this Circuit for whether disqualification is warranted in successive representation cases is set forth in *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 197 (2d Cir.1983): "disqualification is warranted where: "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of the client." *Id.*; *United States v.*

*Prevezon Holdings Ltd.,* 839 F.3d 227, 239 (2d Cir.October 17, 2016); *accord* N.Y. Rules of

Prof'l Conduct 1.9(a);.

"A 'substantial relationship' exists where facts pertinent to the problems underlying the

prior representation are relevant to the subsequent representation." *Agilent Techs., Inc. v.*

*Micromuse, Inc.*, 2004 WL 2346152, at *10 (S.D.N.Y. Oct. 19, 2004) (citation omitted); *see also*

N.Y. Rules of Prof'l Conduct 1.9 cmt. 3 (subsequent representations are substantially related if,

among other things, they "involve the same transaction").

Here, the facts involved in Connors & Vilardo LLP's representation of the undersigned in

the *Clayson* and *Ford* cases are substantially related to the facts that they appear to intend to

present in this case.  In *Clayson* and *Ford*, the movant sought to prove that the undersigned was

unethical, did not properly investigate cases before filing civil actions alleging FDCPA

violations, and files meritless FDCPA in order to coerce settlements and obtain attorneys fees.

In this case, the Requests for Admission numbers 9 and 10 reveal that opposing counsel

will be advancing the argument that 1) Plaintiff's counsel was in a position to provide the

Defendant with documentation proving Plaintiff's identity, which would have resolved the

parties dispute without the need to file a lawsuit, 2) that Plaintiff's counsel chose not to send

such documentation to the Defendant but "instead", chose to file this lawsuit, 3) they improperly

filed the suit without warning the Defendant, and 4) that had Plaintiff's counsel warned

Defendant of their intent to file a lawsuit, it might have been possible for the parties to resolve

their dispute without burdening this court with this litigation.

Thus, the *Clayson* and *Ford* cases share in common with this case claims made by a

Defendant that Plaintiff's counsel acted unethically in its pre-suit activities, preparing the suit,

and acting in their own selfish interests to obtain attorneys fees at the expense of their client's interests.

Connors & Vilardo, LLP was provided confidential information regarding the practices and procedures of Plaintiff's counsel in their preparation and handling of FDCPA cases in the course of their representation in the *Clayson* and *Ford* cases.  There is a potential risk that they may use gain an unfair advantage in the current litigation.

It should be noted that there is no requirement that Plaintiff's counsel specifically identify the information that might now be used against them in this case.  In subsequent representation cases, "a former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are *substantially related* to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained." *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 570 (2d Cir. 1973).

In making this Motion to Disqualify, the undersigned wishes to state that it holds opposing counsel in the highest regard.  However, it is simply unfair to the Plaintiff and Plaintiff's counsel to allow Connors LLP to continue to represent the Defendant given the fact that they were provided a substantial amount of confidential information regarding the practices of Plaintiff's counsel, that may in some way be used in an adversarial fashion against Plaintiff or Plaintiff's counsel's interests in this case.

Defendant's counsel will no doubt argue that Plaintiff somehow waived the right to make this motion when the agreed to their representation of the Defendant at the outset of this case. While a conflict of interest can be waive, there are several factors that a Court should consider: A litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed."[111] Factors a court should consider in determining whether the moving party has waived its right to object to the opposing party's counsel include: (1) the length of the delay in bringing a motion to disqualify, (2) when the movant learned of the conflict, (3) whether the movant was represented by counsel during the delay, (4) why the delay occurred, (5) whether disqualification would result in prejudice to the nonmoving party, and (6) whether the motion was delayed for tactical reasons.. *Layne Christensen Co. v. Purolite Co.*, 2011 WL 1113543, at *17 (D. Kan. Mar. 24, 2011).

At the outset of this case, it appeared that this was a simple FDCPA case in which a debt collector had sought to collect a debt from the wrong party.  There was no indication that the Defendant would attempt to make Plaintiff's counsel the issue in this case.   Indeed, the August 20, 2015 letter of Terrence Connors assured the undersigned that no such conflict existed.

Plaintiff's counsel did not learn about any potential conflict of interest until they were served with the notice to depose Seth Andrews.  The Defendant did not list Seth Andrews as a potential witness on their 26(a)(1) disclosures.  Thus, apparently they did not foresee the eventual conflict of interest either.  In fact, it is respectfully submitted that a Motion to Disqualify Connors LLP at the outset of this case could have been found to be frivolous if it had been brought at the outset of this case.

Plaintiff's counsel apprised opposing counsel immediately when the conflict of interest became apparent.  Courts have recognized that conflicts of interest may worsen as circumstances change.  *United States v. Trujillo*, 302 F. Supp. 2d 1239, 1251 (D. Kan. 2004).  Applying the *Layne Christenson* to this case, it is submitted that this Court should find no waiver.

This conflict of interest can be easily avoided, and is what led to the filing of a Motion in Limine at this early stage.  If the Court grants Plaintiff's Motion in Limine in its entirety, the conflict of interest would be eliminated.  None of Plaintiff's counsel's practices in this or other cases would be relevant, and Seth Andrews would not be a witness in this case.

Accordingly, Plaintiff respectfully requests that this Court grant Plaintiff's Motion to Disqualify Connors LLP as counsel for the Defendant if Plaintiff's Motion in Limine is not granted in its entirety.

## CONCLUSION

By reason of the above, it is respectfully requested that this Court order the following:

1.  That at the trial of this matter, that Defendant and/or their counsel may not refer to, introduce evidence of, or conduct examination related to:

    A.  Plaintiff and/or plaintiff's counsel's potential claim for attorneys fees in this action.

    B.  Plaintiff's counsel's procedures in investigating, filing and litigating consumer lawsuits.

    C.  The number of consumer lawsuits filed by Plaintiff's counsel.

    D.  Plaintiff's counsel's actions on behalf of Plaintiff prior to the filing of this lawsuit, including but not limited to Plaintiff's counsel's failure to provide written evidence of Plaintiff's identity to Defendant, or Plaintiff's counsel's failure to inform or warn Defendant of their intent to file a civil lawsuit against them.

2.   That the Defendant be barred from introducing an evidence regarding the June 29, 2015 telephone calls at trial.  This would include an order that the entries in the event sheet for June 29, 2015, if ultimately offered as evidence at trial (as they undoubtedly will be), be redacted.

3.   A protective order finding that Plaintiff shall not be required to respond to Defendant's First Requests for Admission.

4.   A protective order prohibiting the Defendant from deposing Seth Andrews, or in the alternative, if this Court permits the introduction of evidence regarding the June 29, 2015 telephone calls to be introduced as evidence at trial, that the deposition be limited to questions about Mr. Andrews telephone discussions with Melissa Overbeck.

5.   In the event that this Court does not grant Plaintiff's Motion in Limine in its entirety, an order disqualifying the firm of Connors LLP from any further representation of the Defendant in this action.

6.   Such other and further relief as this Court deems just and equitable.


DATED:  December 15, 2016          /s/Kenneth R. Hiller, Esq.____
                                   Kenneth R. Hiller, Esq.
                                   Law Offices of Kenneth Hiller PLLC
                                   *Attorneys for Plaintiff*
                                   6000 North Bailey Ave., Suite 1A
                                   Amherst, New York 14226
                                   (716) 564-3288
                                   khiller@kennethhiller.com