UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————————

 WILLIAM J. WAGNER,

                             Plaintiff,

        v.                                     Civil Action No.1:15-cv-633-FPG

CHIARI & ILECKI, LLP,

                             Defendant.
———————————————————————————

**AFFIRMATION OF KENNETH R. HILLER**

       Kenneth R. Hiller, an attorney at law, affirms that the following statements are true and correct to the best of his knowledge, information and belief under penalties of perjury:

1.       I am an attorney at law duly licensed to practice in the State of New York, an admitted to practice in this Court.  I am one of the attorneys of record for Plaintiff.  As such, I am fully familiar with the facts and proceedings pertaining to this motion.

2.       This affirmation is made in support of Plaintiff's Motion for a Protective Order, Motion in Limine, and Motion to Disqualify Counsel.  The undersigned certifies that he has attempted in good faith to confer with counsel for the Defendant in an effort to resolve the disputed matters raised in these motions without Court intervention, but was unsuccessful.

3.       This action is brought under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 ("FDCPA"), et seq.  As is more fully detailed in Plaintiff's complaint, Plaintiff alleges that the Defendant violated the FDCPA by sending him letters in an attempt to collect a debt that Plaintiff does not owe, and subsequently served him with a subpoena for a debtor exam despite the fact his is not the judgment debtor. (The complainti is attached hereto as Exhibit A).

4.      Both parties have engaged in discovery, including depositions of the parties.  The Defendant is now seeking to depose Plaintiff's attorney, Seth Andrews, or in the alternative, to have certain facts admitted to relative to Mr. Andrews involvement in the case.

5.      On March 28, 2016, Plaintiff served a Request for Production of Documents on the Defendant. (Exhibit B).  Defendant responded to that Request and provided by providing an "event sheet," which chronicles the collection activity performed on Defendant's on the account of William J. Wagner, Jr. (Exhbit C).

6.      The event sheet records that the following events occurred:

   A. M.J. Peterson, LLC, obtained a judgment against William J. Wagner, Jr. on May 10, 2006.

   B. Thereafter, in September of 2006, M.J. Peterson retained the services of the Defendant, a collection law firm, to attempt to collect on the judgment.

   C. That after several years of being unable to locate the debtor, on February 9, 2015, the Defendant determined, based on various searches they obtained, that the debtor might be residing at 5419 Roberts Road, Hamburg, New York.

   D. On February 9, 2015, the Defendant mailed two letters to William J. Wagner, Jr. to 5419 Roberts Road, Hamburg, New York.  The first letter was a collection letter.  The second letter enclosed an information subpoena requesting that William J. Wagner, Jr. provide sworn information regarding his finances to the Defendant.

   E. Upon receipt of the collection letter, Plaintiff called the Defendant's office on February 12, 2015. On February 12, 2015, Plaintiff called the Defendant and spoke with Karen Sandford, a legal assistant employed by the Defendant.  He informed Ms. Sandford that he lived at the Roberts Road address, that he was not the debtor, and

that he is not a "Jr."  He also provided the last two numbers of his Social Security

number, which do not match the last two numbers of William J. Wagner, Jr.'s Social

Security number.[1]  Ms. Sandford informed Plaintiff that she would note the file and

email the attorney.  She did not ask him to provide any documentation to verify that

he was not William J. Wagner.

F.  On March 19, 2015, Plaintiff called the Defendant and spoke to Kristian Brown, a

legal assistant employed by the Defendant.  He informed Ms. Brown that he was not

the debtor, that his date of birth was in October of 1950, and that he was very upset

that he continued to receive letters from their office.  Ms. Brown advised Plaintiff that

he could send them a copy of his drivers license and Social Security number "if he'd

like."  Ms. Brown advised Plaintiff that "we did email attorney."

G.  On May 11, 2015, the information subpoena that Defendant had mailed on February

9, 2015 was returned to the Defendant as unclaimed by the Post Office.

H.  On May 15, 2015, the Defendant sent a Subpoena Duces Tecum ("SDT") requiring

the attendance of William J. Wagner, Jr. to appear for a debtor examination to a

process server for service on the debtor.

I.  On June 17, 2015, a process server served the SDT on Plaintiff.  Plaintiff called the

Defendant's office that same day and spoke to Karen Sandford.  Plaintiff informed

Ms. Sandford that he had been served with papers for William J. Wagner, Jr., that no

"Jr." lives there, and that there is no "Jr." in the family.

7.     After the occurrence of all of the tortious conduct noted above and as alleged in the

complaint, Plaintiff's attorney, Seth J. Andrews, called Defendant's office two times.  The event

---

[1] The last two numbers of Plaintiff's Social Number is 18, not 16.  Either the Plaintiff erroneously provided the
wrong numbers, or more likely, the Defendant incorrectly recorded the numbers in their event sheet.  In any event,
the last two numbers of William J. Wagner, Jr.'s Social Security number is not 16 or 18.

sheet reveals that Mr. Andrews spoke to Melissa Overbeck, an attorney employed by the Defendant, on June 29, 2015.  The event sheet indicates that Mr. Andrews informed Ms. Overbeck that Plaintiff was not the debtor, and that he was not a "Jr."  Ms. Overbeck then requested that Mr. Andrews provide proof of Plaintiff's social security number, date of birth, and address.  She also indicated that she would provide Mr. Andrews with a copy of the lease that the debtor had initially signed that was the basis for the underlying debt.

8.      The event sheet indicates that Mr. Andrews called Ms. Overbeck back the same day.  He provided her with the last four numbers of Plaintiff's Social Security number and his date of birth.  He further indicated that he would not provide a copy of Plaintiff's Social Security card, and "may get copy of drivers license."  Ms. Overbeck reaffirmed her intent to provide Mr. Andrews with a copy of the lease, and agreed to a general adjournment of the scheduled debtor exam.

9.      Ms. Overbeck then sent a facsimile to Mr. Andrews confirming that the debtor exam had been generally adjourned "pending the resolution of any alleged identity issues. (The facsimile is annexed hereto as an Exhibit D).

10.     Plaintiff did not list Seth Andrews or Kenneth Hiller as witnesses in their FRCP 26(a)(1) disclosures.  The Defendant did not list either of them as witnesses in their Rule 26(a)(1) disclosures either. (Exhibits E and F).

11.     In his answers to Interrogatories to the Defendant, Plaintiff listed Plaintiff's attorney's, Kenneth Hiller, and Seth Andrews as potential witnesses.  In listing them as witnesses, Plaintiff specifically objected to his answer to that question on the grounds that the information requested was not relevant. (Exhibit G-see Answer 1).

12.     The Plaintiff will amend his interrogatories to remove Seth Andrews and Kenneth Hiller as potential witnesses altogether if this Court grants Plaintiff's Motion in Limine.

13.     This deadline for fact discovery set by this Court was November 8, 2016. (Dkt. #17).

14.     On October 18, 2016, counsel for the Defendant "served" by regular mail and by email a Notice of Deposition.  The deposition notice, a copy of which is annexed hereto, indicated that the testimony of Seth Andrews, Plaintiff's counsel, would be taken on November 8, 2016.  The Notice did not limit, in any way, the issues or questions that might be posed to Mr. Andrews. (Exhibit H).

15.     No subpoena was ever served upon Mr. Andrews who is a non-party witness, to the extent he can even be considered a relevant witness in this case.

16.     In an email sent on October 18, 2016, and again via facsimile and regular mail on October 25, 2016, the undersigned informed opposing counsel that we were considering filing a Motion for a Protective Order, and detailing some of the grounds for such a motion.  In addition, as a result of two cases that opposing counsel's firm had represented the undersigned on in the past, the undersigned informed opposing counsel in these communications that it appeared that there was a conflict of interest that required their firm to withdraw as counsel for the Defendant. The communications requested that Mr. Woodard inform the undersigned of his position.  (These emails, and all subsequent emails are annexed hereto as Exhibit I).

17.     Mr. Woodard emailed the undersigned a letter on October 28, 2016.  The letter denied that there was a conflict of interest or that they were required to withdraw a counsel, stated that the deposition "should be a very brief and limited deposition," but made no formal agreement as to what those limits would be.

18.     On November 4, 2016, the undersigned spoke with Mr. Woodard.  He agreed that the

deposition would be limited to questions about the nature of Mr. Andrew's conversations with

the Ilecki firm on June 29, 2016.  The undersigned did not agree that such a limit was sufficient,

and proposed that the parties agree that Mr. Andrews would not be called as a witness at trial,

and that the deposition notice be withdrawn.  Mr. Woodard agreed to call the undersigned the

next day with a response to that offer.

19.     On Sunday, November 6, 2016, Mr. Woodard emailed the undersigned a letter indicating

that "We still are considering your proposal," and proposing that we jointly request a 45 day

extension of the discovery deadline to explore alternatives to taking Mr. Andrews deposition,

and to avoid potential motion practice.

20.     Subsequently, in an effort to avoid motion practice regarding the deposition, the parties

agreed that 1) the deposition of Mr. Andrews would be adjourned, and 2) that in an effort to

resolve the dispute regarding the deposition notice, the Defendant would prepare Requests for

Admissions and a stipulation that would hopefully satisfy their discovery needs and ameliorate

our concerns about the breadth and relevancy of the deposition.  In making this agreement, it was

the intent of the parties to establish that the event sheet notes made by Ms. Overbeck regarding

her conversations with Mr. Andrews was accurate, and Mr. Andrews would not be called a

witness to challenge the accuracy of those notes.

21.     The Defendant then served Requests for Admissions on the Plaintiff (Exhibit J), together

with a proposed stipulation. (Exhibit K).  The Requests for Admissions and the proposed

stipulation went far beyond what the parties had agreed upon.  The Requests for Admissions

sought admissions of numerous facts and other matters that went well beyond merely agreeing to

the accuracy of the event sheet notes.  Some of the Requests appeared to be aimed casting

Plaintiff's counsel in a bad light.

22.     The proposed stipulation also went well beyond the understanding of the parties.

Specifically, Further, proposed stipulation contained a provision in which the parties agreed that

Plaintiff's responses to the Requests for Admissions would be admissible at trial.  Plaintiff never

agreed to such a provision, and never would have done so.  It is the strong belief of Plaintiff that

none of the conversations that took place between Mr. Andrews and the Defendant are relevant

to these proceedings.

23.     After noting Plaintiff's objections to the Requests for Admissions, and the proposed

stipulation, counsel for the Defendant agreed to remove the provision from the stipulation that

would have made Plaintiff's responses to the Requests for Admissions admissible at trial.

However, he declined to withdraw any of the Requests for Admissions. (See November 23, 2016

email in Exhibit I, p. 27).

24.     At that point, the undersigned counsel informed counsel for the Defendant that it

appeared that the pending discovery dispute could not be resolved.  Accordingly, this Motion for

a Protective Order and Motion in Limine was filed.

25.     The law firm of Connors & Vilardo LLP, the predecessor in interest of Defendant's

current counsel, Connors LLP, represented the undersigned in two cases in the Western Disrict

of New York in 2010 and 2011, respectively.

        The first case was Angela Clayson v. Rubin & Rothman, LLC, Case No. 1:08-cv-66-

RJA.  The *Clayson* case involved a claim by Angela Clayson that the Defendant had violated the

FDCPA in the course of collecting a debt that she owed.  The undersigned counsel represented

the Plaintiff.  The case proceeded to a jury trial, which was held in May of 2010.  On May 28, 2010, a jury dismissed Plaintiff's claim in its entirety.  A judgment was entered on June 9, 2010.

Plaintiff moved to vacate the judgment, and the Defendant cross-moved for attorneys fees and sanctions against Plaintiff and the undersigned.  On September 7, 2010, Connors & Vilardo, LLP, appeared on behalf of Plaintiff.  They then proceeded to represent Plaintiff and the undersigned in defense of the Defendant's sanctions motion.  Among the allegations made by Defendant's counsel in seeking sanctions against the undersigned were the following:

1. That prior to, and during the action, the undersigned should have realized that Plaintiff was not credible, and that the allegations of her complaint were "preposterous."

2. That our firm has filed 511 FDCPA complaints.  In the course of those filings, our firm had engaged in a pattern of conduct which exhibited a complete disregard for the judicial system; tying up the court's limited resources with many meritless FDCPA claims as a tactic to coerce settlements, and that our lawfirm needed to be deterred.

3. That the Law Offices of Kenneth Hiller failed in our duty to investigate the claims of Ms. Clayson resulting in the bringing of a baseless claim.

4. That our firm regularly does not investigate our complaints, and dismisses them when our opponent points out their inadequacies.

5. That there are not enough hours in a day for our firm to reasonably investigate our cases given the volume of cases that we file.

6. That our firm is willing to burden the Court with unnecessary litigation in order to obtain attorney's fees.

7. That our firm lies in its time records.

(See Defendant's motion papers in support of Motion for Sanctions, Dkt Nos.. 67 and 79).

26.     The undersigned met personally with Lawrence Vilardo, Esq. and Terry Connors, Esq. to assist them with the defense of the sanctions motion.  Connors & Vilardo, LLP filed opposition papers to the sanctions motion, and Terry Connors orally argued the motion.  In the course of preparing their defense to that motion, Connors & Vilardo LLP was provided with confidential information regarding my firms FDCPA practice, including our investigation of cases prior to our filing.  Due to their outstanding representation of me, the sanctions motion was denied in its entirety.

27.     The second case was Lyneisha Ford v. Principal Recovery Group, Inc., Case No. 1:09-cv-627-JTC.  The *Ford* case involved a claim by Ms. Ford that the Defendant had violated the FDCPA in the course of collecting a debt that she owed.  The undersigned counsel represented the Plaintiff.  In November of 2010, the Defendant moved for Summary Judgment and for sanctions against Plaintiff and the Law Offices of Kenneth Hiller.  On September 29, 2011, the Court granted Defendant's Motion for Summary Judgment and their Motion for Rule 11 sanctions.

28.     The arguments made by the Defendant in support of the Motion for Sanctions included that our firm did not properly investigate the claim before filing it, and did not present the complaint to the Plaintiff for her to review it before filing it.  They also noted that the undersigned "boasts experience and expertise in consumer protection laws, including the FDCPA, and knew, or with reasonable inquiry, should have known that this claim did not rise to the level of a violation of the FDCPA. (Dkt. No. 31).

29.     At that point, the undersigned retained the services of Connors & Vilardo, LLP, who entered their appearance on October 28, 2011.  They filed a Motion to Vacate the sanctions

order, and on March 19, 2012, once again as a result of the excellent advocacy of Connors & Vilardo, LLP, the Court reversed itself, vacated its order of sanctions, and denied the Motion for Sanctions in its entirety.  The undersigned consulted with Terry Connors and Vincent Doyle, III in connection with that motion.

30.     On August 12, 2015, Terrence Connors of Connors & Vilardo, LLP emailed the undersigned and stated that he had been asked to represent the Defendant.  The undersigned responded that there was a potential conflict of interest given their representation of my firm by them in the past.  On August 20, 2015, Mr. Connors sent the undersigned a letter stating that since my firm was not a party to this action, he did not perceive a conflict of interest. (A copy of that letter is annexed hereto in Exhibit I, pgs. 8-10).  Based upon that representation, the undersigned agreed not to object to his firm's representation of the Defendant in this action.

31.     I provided Connors & Vilardo, LLP was provided confidential information regarding the practices and procedures of Plaintiff's counsel in their preparation and handling of FDCPA cases in the course of their representation in the *Clayson* and *Ford* cases.  There is a potential risk that they may use gain an unfair advantage in the current litigation.


DATED:  December 15, 2016            /s/Kenneth R. Hiller, Esq.____
                                     Kenneth R. Hiller, Esq.
                                     Law Offices of Kenneth Hiller PLLC
                                     *Attorneys for Plaintiff*
                                     6000 North Bailey Ave., Suite 1A
                                     Amherst, New York 14226
                                     (716) 564-3288
                                     khiller@kennethhiller.com