UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————

WILLIAM J. WAGNER,

                    Plaintiffs,

       v.                       Civil Action No.1:15-cv-633-FPG

CHIARI & ILECKI, LLP,

                    Defendant.
———————————————————————

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

This is a case brought by Plaintiff for damages for Defendant's (also referred to herein as "Chiari & Ilecki") alleged violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C.§1692, et seq.   Plaintiff William J. Wagner has filed a Motion for Partial Summary Judgment.  He seeks a judgment of liability against the Defendant for violating 15 U.S.C. §§1692e, 1692e(2)(A), 1692e(10), and 1692f.   The conduct complained relates to attempts to collect a debt owed by William J. Wagner, Jr. by sending of a collection letters to the Plaintiff, who was not the debtor, and the service of a subpoena duces tecum upon the Plaintiff.

Plaintiff concedes there are issues of fact with respect to his claims under 15 U.S.C.§§1692d and f(1).  As such, he does not seek summary judgment as to those claims.

Mr. Wagner also seeks to reserve the right to present his claim for damages on his claims to a jury.  As such, regardless of the outcome of this motion, he reserves the right to present his claims for liability and damages to a jury.

This Memorandum of Law is submitted in support of William J. Wagner's motion.

## UNDISPUTED FACTS

Plaintiff William J. Wagner was born in 1950.  The last four numbers of his Social Security number are 3918.    William J. Wagner, Jr. was born in 1958.[1]  The last four numbers of his Social Security number are 9006.  William J. Wagner is not related to William J. Wagner, Jr. and does not know him.  They have never lived together.  There is no William J. Wagner, Jr. in Plaintiff's family. (Plaintiff's Statement of Facts ("SOF"), ¶¶ 1-5).

The Plaintiff purchased 5419 Roberts Road, Hamburg, New York jointly with his former wife, Julia Wagner, on August 14, 1984.  In connection with that purchase, Mr. and Mrs. Wagner took out a mortgage on the premises, which is still owed.  In connection with their divorce, title to the house was transferred to Plaintiff's name alone on March 24, 2015.  Thereafter, Plaintiff and his ex-wife took out two home equity loans that they secured with the Roberts Road property.  Plaintiff has resided at 5419 Roberts Road, Hamburg, New York since 1985. (SOF ¶¶ 6-8, 12-15).

In February of 2005, William J. Wagner, Jr. entered into a residential lease agreement with M.J. Peterson, LLC to lease 882-04 Englewood Avenue, Buffalo, New York.  He later defaulted on his lease with M. J. Peterson, LLC. (SOF, ¶¶ 18-20).

In March of 2006, M. J. Peterson, LLC sued William J. Wagner, Jr. for past due rent.  Goldstein, Bulan & Chiari, LLP, the predecessor in interest to the Defendant, represented M. J. Peterson in the lawsuit.[2]  On May 10, 2006, a judgment was entered in the Buffalo City Court in

---

[1] The full dates of birth of Plaintiff and the debtor are omitted to comply with the redaction rules of this Court.

[2] The Defendant's name was initially Horwitz & Frankel.  That entity then changed its' name to Horwitz, Frankel & Ilecki.  That firm then merged with another lawfirm, and became known as Bulan, Chiari, Horwitz & Ilecki.  The name was shortened in 2010 to Chiari & Ilecki, LLC.  All tortious acts alleged in the complaint were committed by Chiari & Ilecki, LLC.  The actions described herein occurring before 2010 were performed by the Defendant's predecessors in

favor of M. J. Peterson, LLC and against William J. Wagner, Jr. in the sum of $1,437.15. (¶¶ 21-23).

The Defendant obtained multiple credit reports, department of motor vehicle searches, real property searches, and searches of other databases in an attempt to locate the debtor.  None of these searches indicated that the William J. Wagner, Jr. ever owned or lived at 5419 Roberts Road, Hamburg, New York.  They also do not show that the debtor ever owed a mortgage debt. (SOF, ¶¶ 25-31, 42, 49-52).

On February 9, 2015, the Defendant performed a search using "Real-Info," a program that can find real property assessment information, to determine if William J. Wagner, Jr. owned any real property.  Melissa Overbeck, an attorney employed by the Defendant, recorded in Defendant's event sheet that "Dbtr owns 5419 Roberts Rd. w/wife".[3]  At her deposition, Ms. Overbeck stated that she did not retain a copy of the report, and admitted that she could not recall whether the report included a "Jr." after William Wagner. (SOF ¶¶ 31-32).

The Defendant obtained a new Real-Info report on May 9, 2016.  That report stated that William Wagner (without the "Jr.") and his wife owned 5149 Roberts Road, Hamburg, New York until it was transferred to the Plaintiff individually on April 23, 2015.  Defendant's corporate representative admitted that the February 9, 2015 report probably contained the same information as May 9, 2016 report, except for the property's assessed value and the fact that the property was later transferred to Plaintiff individually.  Thus, the corporate representative admitted that the February 9, 2015 report probably did not contain the "Jr." after William Wagner's name. (SOF, 51-52).

interest.  Hereafter, for the simplicity sake, all of the actions performed by Defendant and its' predecessor's will be described as being performed by the Defendant. (SOF, ¶ 16).
[3] The Defendant keeps an "event sheet" on every account they collect upon.  Employees of the Defendant record information relevant to the collection of the account in chronological order on the sheet. (SOF, ¶ 24).

On February 9, 2015, the Defendant mailed a collection letter addressed to William J. Wagner, Jr. to 5419 Roberts Road, Hamburg, New York.  They also mailed an information subpoena addressed to William J. Wagner, Jr. to the same address. (SOF ¶ 33).

On February 12, 2015, Plaintiff called the Defendant and spoke with Karen Sandford, a legal assistant employed by the Defendant.  He informed Ms. Sandford that he lived at the Roberts Road address, that he was not the debtor, and that he is not a "Jr."  He also provided the last two numbers of his Social Security number, which do not match the last two numbers of William J. Wagner, Jr.'s Social Security number.[4]  Ms. Sandford informed Plaintiff that she would note the file and email the attorney.  She did not ask him to provide any documentation to verify that he was not William J. Wagner. (SOF ¶ 34).

On March 19, 2015, Plaintiff received notification from the Post Office that they were holding a certified letter addressed to him.  The notification did not reveal the name or address of the sender of the letter.  Plaintiff concluded that the notification he received on March 19, 2015 related to a letter that had been mailed to him by the Defendant. (SOF ¶¶ 37-38).

That same day, Plaintiff called the Defendant and spoke to Kristian Brown, a legal assistant employed by the Defendant.  He informed Ms. Brown that he was not the debtor, that his date of birth was in 1950,[5] and that he was very upset that he continued to receive letters from their office.  Ms. Brown advised Plaintiff that he could send them a copy of his drivers license and Social Security number "if he'd like."   Ms. Brown advised Plaintiff that "we did email attorney." (SOF ¶ 39).

---

[4] The last two numbers of Plaintiff's Social Number is 18, not 16.  Either the Plaintiff erroneously provided the wrong numbers, or more likely, the Defendant incorrectly recorded the numbers in their event sheet.  In any event, the last two numbers of William J. Wagner, Jr.'s Social Security number is not 16 or 18. (SOF, ¶ 1).

[5] Mr. Wagner also provided the month of his date of birth.  However, that is omitted as required by Fed.R.Civ.P. Rule 5.2(a)(2).

On May 15, 2015, the Defendant sent a Subpoena Duces Tecum ("SDT") requiring the attendance of William J. Wagner, Jr. to testify at a debtor's examination, and to bring documents relative to his financial status, to a process server to be served on William J. Wagner, Jr. . (SOF ¶ 43).

On June 17, 2015, a process server served the SDT on Plaintiff.  Plaintiff called the Defendant's office that same day and spoke to Karen Sandford.  Plaintiff informed Ms. Sandford that he had been served with papers for William J. Wagner, Jr., that no "Jr." lives there, and that there is no "Jr." in the family. (SOF ¶¶ 45, 48).

The Defendant is in possession of no credit report, lexis or westlaw search, real-info search or any other document that indicates that William J. Wagner, Jr. ever owned or resided at 5149 Roberts Road, Hamburg, New York. (SOF, ¶¶ 25-31, 42, 49-52).

As a result of the Defendant's conduct, the Plaintiff became upset and suffered from sleeplessness, nervousness, and an upset stomach due to what he considered to be the Defendant's harassment of him.  In addition, he came to believe after the Defendant continued to target their collection activity towards him that they were attempting to collect the debt from him. (SOF, ¶ 60).

## ARGUMENT

### I.    STANDARD FOR SUMMARY JUDGMENT

Rule 56 (c) of the Federal Rules of Civil Procedure provides that summary judgment:

> Shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is genuine issue as to the amount of damages.

The entry of summary judgment is inappropriate where there exists a genuine and material issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Substantive law defines which facts are material and only disputes over facts that might affect the outcome of the case will defeat summary judgment. *Id* at 248.  A factual dispute is genuine if a "reasonable jury could return a verdict for the non-moving party." *Id.*  Although all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party, once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the non-moving party bears the burden of demonstrating the existence of such an issue.  Moreover, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts". *Matsushita Electric Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  It is not sufficient for the non-moving party to just provide a scintilla of evidence supporting its case. *Anderson v. Liberty Lobby, Inc.*, *supra,* 477 U.S. at 252.

## II.     THE FDCPA

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State Action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To establish a prima facie case under the FDCPA, a plaintiff must establish four elements: (1) that the plaintiff is a natural person who is harmed by violations of the FDCPA, (2) the "debt" arises out of a transaction entered primarily for family, personal, or household purposes, (3) the defendant collecting the debt is a "debt collector" under the FDCPA, and (4) the defendant has violated, by act or omission, the provisions of the FDCPA. *Blanc v. Palisades Collection, LLP.*, 2007 WL 3254381 *4 (S.D.N.Y., 2007); 29 Margorie Wengert, Causes of Action 2d 1 § 9 (2006). Because the

FDCPA is a strict liability statute, the defendant's intent is not relevant in determining whether the defendant violated the statute. See *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996).

In determining whether a statement by a debt collector is deceptive, it should be viewed from the standpoint of the "least sophisticated consumer".  The least sophisticated consumer It is an objective standard, designed to protect all consumers, "the gullible as well as the shrewd." *Jacobson v. Healthcare Fin. Servs., Inc.,* 516 F.3d at 90. A collection activity or communication "overshadows or contradicts the validation notice 'if it would make the least sophisticated consumer uncertain as to her rights.' " *Id.* (quoting *Russell,* 74 F.3d at 35).

The hypothetical least sophisticated consumer does not have "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, every day, common consumer," but is neither irrational nor a dolt. *Russell,* 74 F.3d at 34.  While protecting those consumers most susceptible to abusive debt collection practices, this Court has been careful not to conflate lack of sophistication with unreasonableness. *See McStay v I.C. System, Inc.*, 308 F.3d 188, 190-91 ("[T]his Court has ... made clear that 'in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness.' " (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir.1993).  As such, "the FDCPA does not aid plaintiffs whose claims are based on 'bizarre or idiosyncratic interpretations of collection notices.' " *Jacobson,* 516 F.3d at 90 (quoting *Clomon,* 988 F.2d at 1320). Indeed, "some courts have held that 'even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.' " *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir.2010)(quoting *Clomon,* 988 F.2d at 1318-19).

### A.  PLAINTIFF IS A CONSUMER WHO OWED A DEBT

A "consumer" is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). A "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

It is undisputed that the debt that Defendant was attempting to collect was for a residential lease.  Further, the parties to the lease agreed that the leased premises were to be used solely as a private dwelling, and for no other purpose. (SOF, ¶ 18-19).  Thus, the debt was for personal family, or household purposes and qualifies as a debt.

Plaintiff also qualifies as a "consumer" under the Act.  Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692a(e).[6]

Among the primary reasons for the enactment of the FDCPA was to "eliminate the recurring problem of debt collectors dunning the wrong person." S.Rep. No. 95–382, at 4, *reprinted in* 1977 U.S.C.C.A.N. at 1699; *see also* H.R. Rep. 95–131, at 8 (1977) ("This bill also protects people who do not owe money at all.  In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity or mistaken facts.  This bill will

---

[6] *See, e.g., Hess v. Cohen & Slamowitz LLP,* 637 F.3d 117, 120 (2d Cir.2011); *Ellis v. Solomon & Solomon, P.C.,* 591 F.3d 130, 134 (2d Cir.), *cert. denied,* —— U.S. ——, 130 S.Ct. 3333, 176 L.Ed.2d 1223 (2010); *Greco v. Trauner, Cohen & Thomas, L.L.P.,* 412 F.3d 360, 363 (2d Cir.2005); *Kropelnicki v. Siegel,* 290 F.3d 118, 127 (2d Cir.2002); *Andresakis v. Capital One Bank (USA) N.A.,* 09 Civ. 08411, 2011 WL 846830 at *4 (S.D.N.Y. Feb. 3, 2011), *report & rec. adopted,* 2011 WL 1097413 (S.D.N.Y. Mar. 23, 2011); *Bank v. Pentagroup Fin., LLC,* No. 08–CV–5293, 2009 WL 1606420 at *2 (E.D.N.Y. June 9, 2009); *McAfee v. Law Firm of Forster & Garbus,* No. 06–CV–2925, 2008 WL 3876079 at *4 (E.D.N.Y. Aug. 18, 2008).

make collectors behave responsibly towards people with whom they deal.... Certainly a person who has a common name and is being hounded by a debt collector because of the debts of another person deserves the protection this legislation will offer.  In far too many cases debt collectors do not even bother to double check common names before beginning collection efforts."). *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 251–52 (S.D.N.Y. 2011).

Because the plain language of Section 1692k does not limit recovery to "consumers," courts have recognized that under certain circumstances, third-party, non-debtors may have standing to bring claims under the FDCPA.  For example, courts have found standing to sue in cases where a person who was not alleged to be the debtor was nonetheless harassed by a debt collection agency in its attempts to track down a debtor. *Johnson v. Bullhead Investments, LLC*, 2010 WL 118274, at *5 (M.D.N.C.2010) (collecting cases); *Scott v. Portfolio Recovery Associates, LLC*, 139 F. Supp. 3d 956, 964 (S.D. Iowa 2015). *Bodur, supra; Dunham v. Portfolio Recovery Associates, LLC,* 663 F.3d 997, 1001-1004 (8th Cir. 2011)

In this case, Plaintiff alleges that the Defendant attempted to collect the debt of William J. Wagner, Jr. from the wrong person.  As such, he qualifies as a consumer as that term is defined by the FDCPA.

## B. DEFENDANT IS A DEBT COLLECTOR

A "debt collector" is "any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The Defendant admits being a debt collector. (SMF, ¶ 16).

## C.  DEFENDANT VIOLATED MULTIPLE PROVISIONS OF THE FDCPA

**1.   Defendant's 1692e violations**

The FDCPA prohibits a debt collector from using, *inter alia,* "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  This prohibition includes "false representation of ... the character, amount, or legal status of any debt" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt...." 15 U.S.C. §§ 1692e(2)(A), 1692e(10).

District courts have found that "an attempt to collect a debt from a non-debtor constitutes a 'false representation' as to the character or status of the debt in violation of 1692e." *Stuart v. AR Res., Inc.,* 2011 WL 904167 at *4 & n. 2 (E.D.Pa.2011); *accord, e.g., Velazquez v. NCO Fin. Sys., Inc.,* 2011 WL 2135633 at *5 (E.D.Pa.2011) ("[D]emanding payment from the wrong individual, even where the collector mistakenly sends one letter may give rise to a claim under the FDCPA *as a matter of law*.") (emphasis added); *Valdez v. Capital Mgmt. Servs., LP,* 2010 WL 4643272 at *12 (S.D.Tex.2010) ("Several district courts have held that attempting to collect a debt from a person whom the debt collector knows does not owe the debt misrepresents the 'character' or 'legal status' of the debt and is actionable under 15 U.S.C. § 1692e(2)(A). [Plaintiff] has alleged that [defendant] continued to attempt to collect the debt ... despite knowing that [plaintiff] did not incur or owe the debt.  This action would, if true, misrepresent the 'character' or 'legal status' of the debt." (citations omitted)); *Johnson v. Bullhead Invs., LLC,* No. 09CV639, 2010 WL 118274 at *6 (M.D.N.C.2010) ("[T]he act of serving a complaint and summons to the address of a person with almost the exact same name as the true debtor, when the debt collector *knows* that the person is not the true debtor, is a false and deceptive representation of the legal nature of the debt and is therefore a violation of the FDCPA."); *Owens v. Howe*, 2004 WL 6070565 (N.D. Ind.2004) ("[M]erely dunning a person who is not legally

obligated to pay the debt makes the debt collector liable under [15 U.S.C. § 1692e(2)(A) ] as a matter of law because it is, *ipso facto,* a false representation about the status or character of the debt."); *Beattie v. D.M. Collections, Inc.,* 754 F.Supp. 383, 392 (D.Del.1991) ("[D]ebt collectors may be found in violation of subsection 1692e(2)(A) for mistakenly dunning the wrong individuals when they fail to exercise reasonable care in ascertaining the facts, such as by relying upon information on which a reasonable person would not have relied."). *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 253–54 (S.D.N.Y. 2011)

Dunning the wrong person also violates 15 U.S.C. § 1692e(10), *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 251–52, 254 n. 18 (S.D.N.Y. 2011); *Covell v. Chiari & Ilecki*, LLP, 2012 WL 7177830, at *6 (W.D.N.Y.2012), report and recommendation adopted, 2013 WL 655517 (W.D.N.Y.2013).

In applying the "least sophisticated consumer" standard to collection activity directed to a non-debtor, most, if not all, courts to consider this issue have held that "an attempt to collect a debt from a non-debtor constitutes a 'false representation' as to the character or status of the debt." *See Christopher v. RJM Acquisitions LLC*, 2015 WL 437541, at *4 (D. Ariz.2015); *Stuart v. AR Res., Inc.,* 2011 WL 904167, at *4 (E.D.Pa.2011) (citing *Beattie v. D.M. Collections, Inc.,* 754 F.Supp. 383, 392 (D.Del.1991); *Dutton v. Wolhar,* 809 F.Supp. 1130, 1137 (D.Del.1992)); *Velazquez v. NCO Fin. Sys., Inc.,* 2011 WL 2135633, at *5 (E.D.Pa.2011); *Berndt v. Fairfield Resorts, Inc.,* 337 F.Supp.2d 1120, 1131 (W.D.Wis.2004); *Owens v. Howe,* 2004 WL 6070565, at *11 (N.D.Ind.2004).

The rationale behind this conclusion is that an unsophisticated consumer could be "'shaken' by a debt collector's inaccurate representation of a debt, even if the consumer knew she

did not owe what the collector said that she did." *Crafton v. Law Firm of Jonathan B. Levine,*

957 F.Supp.2d 992, 997 (E.D.Wis.2013).

The Defendant, undoubtedly, will claim that they did not dun the wrong person; that all

of their communications were addressed to William J. Wagner, Jr., not William J. Wagner.

However, in *Johnson v. Bullhead Investments, LLC*, 2010 WL 118274 (M.D.N.C.2010), a case

also involving collection activity aimed a debtor with a similar, though not identical, name with

that of the Plaintiff, the Court found otherwise:

> Applying the least sophisticated consumer test to the facts here, a plaintiff who is
> served with a summons at her residential address directed to a person with almost
> the same exact name, after the plaintiff has already informed the debt collector
> that she is not the true debtor, could reasonably assume that the debt collector was
> still trying to hold her liable for the alleged debt and therefore deem it necessary
> to obtain an attorney to resolve the matter. In other words, when a debt collection
> agency continues to hound a consumer even after she has provided them with
> clear proof that she is not the true debtor, and when it files a lawsuit that is served
> at her residential address, an unsophisticated consumer would reasonably believe
> that the collector is still trying to make her liable for the debt.

*Johnson v. Bullhead Investments, LLC*, 2010 WL 118274, at *5 (M.D.N.C. 2010); *see also*

*Christopher v. RJM Acquisitions LLC*, 2015 WL 437541, at *4 (D. Ariz.2015) ("While many—

perhaps most—consumers would not be confused by a collection letter alleging a debt they did

not owe, the law requires that debt collectors tailor their practices to protect even the most

uninformed, naïve, unsophisticated consumer.  Especially when faced with the intimidating

nature of the debt collection process, such a consumer could question his or her own recollection

of events and wonder whether he or she does, in fact, owe the debt.").

In *Johnson,* the only "proof" that the Plaintiff provided the Defendant that she was not

the debtor was to verbally confirm that her social security number did not match that of the

debtor.  Further, similar to the facts in this case, the Defendant asked the Plaintiff to prove that

he was not the debtor, and the Plaintiff refused to do so.[7]  However, notwithstanding the

Plaintiff's refusal to provide written proof of her identity, the Court charged the Defendant with

*knowing* that that the Plaintiff was not the debtor. *Id.,* at *2, 6.

Even if this Court is not willing to charge the Defendant with knowing they were

collecting from the wrong person, liability would still attach.  The Seventh Circuit has concluded

that a violation of 15 U.S.C. § 1692e(2) leads to liability even when the false representation is

unintentional. *Turner v. J.V.D.B. Assocs.,* 330 F.3d 991, 998 (7th Cir.2003); *Gearing v. Check*

*Brokerage Corp.* 233 F.3d 469, 472 (7th Cir.2000) (citing *Russell v. Equifax A.R.S.,* 74 F.3d 30,

33 (2d Cir.1996) (because the Act imposes strict liability, a consumer need not show intentional

conduct by the debt collector to be entitled to damages)); *Owens v. Howe*, 2004 WL 6070565, at

*11 (N.D. Ind.2004) ("Therefore, the remaining question is not what Howe knew, but whether

his August 26 letter, and later the state-court complaint, both targeting the wrong person, would

deceive or mislead an unsophisticated, but reasonable, consumer. *Turner,* 330 F.3d at 995(citing

*Gammon v. GC Servs. Ltd. P'Ship,* 27 F.3d 1254, 1257 (7th Cir.1994)");

By reason of the above, it is submitted that the Chiari & Ilecki, LLP violated §§1692e,

e(2)(A) and e(10) of the FDCPA.

## 2.  Defendant's §1692f violations[8]

"A debt collector may not use unfair or unconscionable means to collect or attempt to

collect any debt." § 1692f.  "Congress enacted Section 1692f to catch conduct not otherwise

covered by the FDCPA." *Baker v. Allstate Fin. Servs., Inc.,* 554 F.Supp.2d 945, 953

---

[7] In the instant case, the Plaintiff never *refused* to provide written proof of his social security
number.  Rather, he was merely told he could send if such proof "if he'd like," and was not
informed that collection efforts targeted at him would continue if he declined to do so. (SOF, ¶
36).

[8] Although alleged in the complaint, Plaintiff does not seek summary judgment on his claim that
the Defendant violated §1692f(1).

(D.Minn.2008) (citing S.Rep. No. 95–382, at 4 (1977) ("[T]his bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.")). "[C]onduct that may be deemed 'unfair or unconscionable' is not limited to the acts enumerated in subsections (1) through (8)." *Bryant v. Bonded Account Serv./Check Recovery, Inc.,* 208 F.R.D. 251, 258 (D.Minn.2000).

§ 1692f is not concerned with deceptive representations, but with unfair practices. *Compare* § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."), *with* § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.").

Plaintiff asserts this claim as an alternative claim to his claim that Defendant's conduct was deceptive.  Thus, even of the Defendant's conduct were to be found not deceptive because, for example, the Court found that the Plaintiff knew that he was not liable on the debt, liability would still attach because the Defendant's conduct was unfair and unconscionable. *Davis v. Midland Funding, LLC*, 41 F. Supp. 3d 919, 925 (E.D. Cal.2014) ("It is difficult to conceive of a more *unfair* debt collection practice than dunning the wrong person.").

### D. DEFENDANT'S VIOLATIONS OF THE FDCPA CANNOT BE EXCUSED AS A BONA FIDE ERROR

The Fair Debt Collection Practices Act provides a "bona fide error" defense to liability:

"A debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

To succeed on this affirmative defense, the Defendant has the burden of proof to establish each element in the District Court: (1) unintentional violation, (2) bona fide error, and (3)

procedures reasonably adapted to avoid the error. *Owen v. LC. System, Inc.,* 629 F.3d 1263, 1271 (11th Cir. 2011). Chiari & Ilecki fails with their burden of proof with respect to all three elements.

### 1. <u>Chiari & Ilecki's Violations Were Not Unintentional</u>

A violation is unintentional for purposes of the bona fide error defense only if "the conduct giving rise to the violation" was unintentional. *Jerman v. Carlisle, McNellie, Rini, Kramer & Wrich, L.P.A.,* 559 U.S. 573, 585-586(2010).

Thus, a debt collector cannot establish this element of the defense merely by showing that it did not willfully violate the act. *Id, Randolph v. IMES,* 368 F.3d 726, 730 (7th Cir. 2004) (the FDCPA provides the bona fide error defense "in lieu of a scienter requirement"). Thus, if Chiari & Ilecki's' only argument is that "it was not Chiari and Ilecki's intention to violate the FDCPA, its bona fide error defense must fail.

In *Jerman,* the debt collector law firm (Carlisle), and the dissent, argued that "the Act refers not to an unintentional 'act' but rather an unintentional 'violation'" and thus "impose[s] liability only when a party knows its conduct is unlawful." *Jerman,* 559 U.S. at 581. The Court "decline[d] to adopt the expansive reading of§ 1692k(c) that Carlisle propose[d]." *Id.* In reaching its conclusion, the Court noted that it had already "rejected the distinction the dissent would draw today between the term 'violation' and a reference to 'the conduct giving rise to the violation.'" *Id* at 586, n.7, *citing United States v. International Minerals & Chemical Corp.,* 402 U.S. 558, 559, 563 (1971).

The *Jerman* court also relied on the distinction between the bona fide error defense provision in §1692k(c) and the administrative penalty provision in § 16921, which imposes civil penalties of up to $16,000 per day against debt collectors who act with *"actual knowledge or*

*knowledge fairly implied* on the basis of objective circumstances that such act is prohibited under

the FD CPA." *Jerman,* 559 U.S at 577, *citing* the Federal Trade Commission Act (FTC Act),

15 U.S.C. § 45(m)(l)(A), (C) (emphasis added).8  The Court reasoned that:

> Given the absence of similar language in § 1692k(c), it is a fair inference that
> Congress chose to permit injured consumers to recover actual damages, costs,
> fees, and modest statutory damages for *'intentional' conduct,* including violations
> resulting from mistaken interpretation of the FDCPA, while reserving the more
> onerous penalties of the FTC Act for debt collectors whose intentional actions
> also reflected 'knowledge fairly implied on the basis of objective circumstances'
> that the conduct was prohibited .... " *Id* at 584 (emphasis added).

Thus, *Jerman* establishes that the bona fide error defense does not confine liability to willful

violations of the statute.

The Defendant will likely argue that *Jerman* is inapposite because they are not claiming

an ignorance of law defense, but rather, a factual error.  While it is true that the ultimate issue in

*Jerman* was whether the bona fide error defense applies to mistakes of law, the Court's holding

explicitly rejects any distinction between unintentional conduct and an unintentional violation for

purposes of the FDCPA's bona fide error defense.  Indeed, the Seventh Circuit, citing *Jerman,*

found that a defendant asserting a bona fide error defense must establish its *conduct* was

unintentional, not merely that they did not intend to violate the FDCPA. *Leeb v. Nationwide*

*Credit Corporation,* 806 F.3d 895, 899 (7th Cir. 2015) ("To show that its violation was not

intentional, Nationwide relies on an affidavit from the employee who sent the January 5 letter.

The employee swears that she sent the letter intentionally but that she did not intend to violate

the FDCPA. At this stage, that entitles Nationwide to the conclusion that its violation was not

willful—but liability is not confined to willful violations").

Lower courts have also repeatedly held *post-Jerman* that the bona fide error defense requires a showing of unintentional conduct.  For instance, in *Allen v. Checkredi of Kentucky, LLC,* the court discussed *Jerman* in depth and held:

> "Following Jerman, the intentional prong of the bona fide error defense can no longer be whether a defendant specifically intended its actions to violate the FDCPA ... .ln holding that the bona fide error defense does not apply to a mistake of law, the Supreme Court indicated that "not intentional" covers only a defendant who did not intend to commit the act that violated the FDCPA." 2010 U.S. Dist. LEXIS 122301, *25-33 (E.D. K.Y. 2010)(emphasis added).

*See also Evon v. Law Offices of Sidney Mickell,* 688 F.3d 1015, 1030-31 (9th Cir. 2012); *Bassett v. LC. System,* 715 F.Supp.2d 803, 813 (N.D. Ill. 2010); *McNall v. Credit Bureau of Josephine County, Inc.,* 2010 U.S. Dist. LEXIS 85619, *8-10 (D. Oregon 2010); *Yazzie v. Law Offices of Farrell* & *Seldin,* 2011 U.S. Dist. Lexis 157648, *8 (D. N.M. 2011); *Karr v. Med-1 Solutions, LLC,* 2014 U.S. Dist. Lexis 63424, *16 (S.D. Ind. 2014); *Isaac v. RMB, Inc.,* 2014 U.S. Dist. LEXIS 97543, *40 (N.D. Ala 2014).

Chiari and Ilecki's conduct was intentional on a number of levels.  There is no dispute that they intentionally addressed a collection letter to Plaintiff's home, and subsequently served him with a SDT for him to appear at a debtor examination.  But beyond that, Chiari & Ilecki intentionally delivered the letter and served the subpoena despite knowing that they were unsure whether the debtor even resided at that residence.  Both Ms. Overbeck and William J. Ilecki, Esq., testifying as the Defendant's corporate representative, acknowledged as much at their depositions. (SOF, ¶¶ 34, 44, 46-47).

The Defendant must establish that its delivery of the January 5th letter to Plaintiff was not intentional in order to prevail on its bona fide error defense.  However, Chiari & Ilecki's conduct was deliberate.  Therefore, Defendant's bona fide error defense must fail.

**2.  Chiari & Ilecki's Errors Were Not "Bona Fide" Errors.**

The second prong of the bona fide error defense is that the Defendant must show that its

violation of the act "was a bona fide error." *Edwards v. Niagara Credit Solutions, Inc.,* 584 F.3d

1350, 1353 (11th Cir. 2009).  "As used in the Act, 'bona fide' means that the error resulting in a

violation was 'made in good faith; a genuine mistake, as opposed to a contrived mistake." *Id*. at

1353 (citing *Kort v. Diversified Collection Servs*., *Inc.,* 394 F.3d 530, 538 (7th Cir. 2005)).

An error does not qualify for the bona fide error defense if the collector is on notice of the

error but continues the wrongful debt collection anyway. *McCollough v. Johnson, Rodenburg &*

*Lauinger, LLC*, 637 F.3d 939, 949 (9th Cir. 2011).  In *McCollough*, the Ninth Circuit held that in

the face of multiple notices of error, a defendant's continued reliance and collection on the basis

of erroneous information was "unreasonable as a matter of law." *Id.* at 949; *see also Castillo v.*

*Nationstar Mortg. LLC*, 2016 WL 6873526, at *6 (N.D. Cal. Nov. 22, 2016); *Christopher v. RJM*

*Acquisitions LLC*, No. CV-13-02274, 2015 WL 437541, at *6 (D. Ariz. Feb. 3, 2015).

"To be considered a bona fide error, the debt collector's mistake must also be objectively

reasonable." *Kort v. Diversified Collection Servs*., *Inc.,* 394 F.3d 530, 538 (7th Cir. 2005)Id.

*Arnold v. Bayview Loan Servicing, LLC*, 2016 WL 4750211, at *3 (11th Cir. Sept. 13, 2016).

In this case, the evidence is overwhelming that the Defendant's conduct was objectively

unreasonable. The Defendant possesses no information linking the debtor to 5419 Roberts Road,

Hamburg, New York, the address where the offending letter and subpoena were delivered to.  To

the contrary, the Defendant obtained no less than eight reports that failed to link William J.

Wagner, Jr. to the Roberts Road property, four of which were provided in discovery. ((SOF ¶¶

25-31, 42, 49-52).  The only reports that allegedly link the debtor to the Roberts Road address

were destroyed by the Defendant. (SOF ¶¶ 32, 42).  In addition, the information that is known

about the destroyed reports do not provided an objective basis for concluding that the debtor resided at the Roberts Road address. (SOF ¶¶ 35, 40, 44-47).

Ms. Overbeck claimed that a February 9, 2015 Real-Info report disclosed that the debtor owns 5419 Roberts Road, Hamburg, New York with his wife. (SOF, ¶ 31).  However, this almost certainly was not the case.  Remarkably, at her deposition, Ms. Overbeck admitted that she could not recall whether the Real-Info report she reviewed stated that the William Wagner who owned 5419 Roberts Road, Hamburg, New York had a "Jr." associated with his name. (SOF, ¶ 31).  This was an admission that the report provided no objective evidence that the debtor owned or resided at the Roberts Road address when Ms. Overbeck mailed the February 9, 2015 collection letter and information subpoena to that address.

The Defendant's corporate representative, William J. Ilecki, testified that on May 9, 2016, an updated Real-Info report was obtained, and that a copy of it was retained.[9]  That report shows that the owners of 5419 Roberts Road, Hamburg, New York were William Wagner (without the "Jr.") and Julie Wagner, and that the property was transferred to William Wagner, individually, on April 15, 2015.  Mr. Ilecki conceded that the results of the Real-Info report that Ms. Overbeck obtained "probably would have been the same," except that the transfer to Mr. Wagner individually would not have been reflected. (SOF, ¶¶ 51-52).  Thus, the Defendant is asking this Court to find that reliance on a document that was destroyed and *probably did not* contain information linking the debtor to the Roberts Road address was a bona fide error.  This is simply not objectively reasonable or bona fide under any definition of those terms.

Ms. Overbeck also noted in the event sheet that she obtained a LexisNexis report on June 5, 2015.  Ms. Overbeck claims that this report indicated that it "looks like" William Wagner, Sr.

---

[9] William J. Ilecki testified as the Defendant's corporate representative at a deposition on October 5, 2016. (SOF, ¶ 56).

and William Wagner, Jr. resided at the same address.  She did not indicate what specific information on that report led her to conclude as such, and she did not retain a copy of the report. (SOF, ¶ 42).

Once again, a subsequently obtained LexisNexis report undermines Ms. Overbeck's claim.  On December 15, 2015, the Defendant obtained a LexisNexis report for William J. Wagner, Jr.  That report lists William Wagner as a name variation for William J. Wagner, Jr., and lists 5419 Roberts Road, Hamburg, New York in an "address summary."  However, the report then lists all of the addresses associated with those names, and gives additional information for each address. (SOF, ¶¶49-50).

For 5419 Roberts Road, Hamburg, New York, the report lists William J. Wagner, William G. Wagner, Julia Wagner, and Andrew R. Wagner as the household members.  William J. Wagner, Jr. is *not* listed among the household members.  Thus, this report, which was obtained just five months after the report from the same company that Ms. Overbeck referenced in the event sheet, does not suggest that William J. Wagner, Jr. lives at 5419 Roberts Road, Hamburg, New York.  To the contrary, it states that he is not a household member. (SOF, ¶¶49-50).

However, assuming arguendo that the Real-Info and Lexis Nexis reports gave some indication that the debtor might be residing at the Roberts Road address, it still would not be reasonable to rely on those reports.  First, the Real-Info records show that William Wagner purchased the property in 1985, and that he has been the owner continuously thereafter.[10]  It would, therefore, be extremely unusual for him to enter into a residential lease with M. J. Peterson in 2005 at a time that he owned real property in Hamburg.  Was it possible?  Yes.  But extremely unlikely.

---

[10] The report is wrong.  The deed transferring title to him and his wife was filed on August 14, 1984. SOF, ¶ 6).

Second, not one of the credit reports obtained by the Defendant over the years indicated that the debtor had ever owed a mortgage on the Roberts Road address.  Again, is it possible that the Roberts Road property was purchased with cash by this person who was not renting from M.J. Peterson?  Yes.  Is it likely?  Absolutely not.[11]

These incongruities should have caused the Defendant to investigate further.  Upon receiving the Real-Info report that William Wagner owned the 5419 Roberts Road property, the Defendant should have obtained the deed and mortgage on the property, which were readily available at the Erie County Clerk's Office.  They reveal that all title documents and the mortgages are in the name of and signed by William Wagner, without a Jr. (SOF, ¶¶ 6, 12-15).

It would not be possible for William J. Wagner to close on a house and a mortgage, or subsequently obtain a home equity loan, without using his full name of William J. Wagner, Jr. if that were, in fact, his real name.  As such, that simple search would have proven beyond any reasonable doubt that William J. Wagner, the owner of 5419 Roberts Road, Hamburg, New York was not the debtor they were looking for.

The Defendant may respond to this motion with an affidavit from Ms. Overbeck attesting to the contents of the earlier Real-Info and LexisNexis reports.  However, it is submitted that given her destruction of those reports, she should not be permitted to do so.

The " 'obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation ... for example when a party should have known that the evidence may be relevant to future litigation.' " *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co., Ltd.,* 769 F.Supp.2d 269, 289 (S.D.N.Y.2011) (Francis, M.J.) (alteration in original), *quoting Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir.1998), *overruled on other grounds, Rotella*

---

[11] The Wagner's obtained a 10 year mortgage to finance the purchase and, as such, it was paid off in 1994. However, a further search would have revealed Plaintiff's home equity loans which have been outstanding since 2013.

*v. Wood,* 528 U.S. 549, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000).  Put another way, "the preservation requirement arises when a party 'reasonably anticipates litigation.' " *Orbit One Commc'ns, Inc. v. Numerex Corp.,* 271 F.R.D. 429, 436 (S.D.N.Y.2010) (Francis, M.J.) (internal citations omitted). *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 313 (S.D.N.Y. 2013).

It is submitted that the Defendant should have realized that the reports they relied on to locate the Defendant "may be relevant to future litigation."  This was especially so given the repeated protestations of the Plaintiff that they were harassing him, and that he was not the debtor.  In addition, the Defendant is a debt collection law firm that had been sued before for collection activity taken against the wrong party.  As lawyers with expertise in the field of debt collection, they were on notice that they might be required to present the evidence that they relied on in deciding to mail letters to, and serve documents on the Plaintiff.

"Once a court has concluded that a party was under an obligation to preserve the evidence that it destroyed, it must then consider whether the evidence was intentionally destroyed, and the likely contents of that evidence." *Innis Arden Golf Club,* 257 F.R.D. at 339 (quoting *Fujitsu Ltd.,* 247 F.3d at 436). *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 289 (S.D.N.Y. 2011).  There must, in effect, be a culpable state of mind.  Here, the evidence was admittedly intentionally destroyed, and it is likely that the contents of that evidence did *not* link the Plaintiff to the Roberts Road address.  Thus, it is submitted that the Defendant had a culpable state of mind.

Appropriate sanctions should be tailored according to " 'the prejudice suffered by the party seeking sanctions,' " *Richard Green (Fine Paintings),* 262 F.R.D. at 291 (quoting *Klezmer v. Buynak,* 227 F.R.D. 43, 51 (E.D.N.Y.2005)), and "the severity of the sanctions imposed

should be congruent with the destroyer's degree of culpability," *id.* at 288; *see also Innis Arden Golf Club,* 257 F.R.D. at 341–42. *Cedar Petrochemicals, Inc.*, at 291.

Plaintiff is significantly prejudiced by the destruction of the evidence.  He is unable to verify the accuracy of Ms. Overbeck's characterizations of the contents of the reports.  In addition, all available evidence is that the destroyed reports did *not* link the debtor to the Roberts Road property.  As such, it is submitted that the appropriate sanction in this case should be that the Defendant should not be permitted to present testimony about the alleged contents of the reports they destroyed in opposition to this motion, or at trial.

> **3.  Chiari & Ilecki Did Not Maintain Procedures Reasonably Adapted to Avoid Sending the February 12, 2015 Letter to Plaintiff and Subsequently Serving Him With a Subpoena Duces Tecum Requiring His Attendance For a Debtor's Examination.**

In order to establish this element of the defense, a debt collector has the burden of proof to establish *specific procedures* that its employees follow in order to avoid the violations at issue and cannot merely rely on vague assertions about policies prohibiting conduct. *See Reichert v. National Credit Systems, Inc.,* 531 F.3d 1002, 1007 (9th Cir. 2008) ("a showing of 'procedures reasonably adapted to avoid any such error' must require more than a mere assertion to that effect.  The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error"); *see also Jenkins v. Heintz,* 124 F.3d 824, 834 (7th Cir. 1997); *Oglesby v. Rotche,* 1993 U.S. Dist. LEXIS 15687, *28-30 (N.D. Ill. 1993) (requires showing of "specific procedures" rather than a mere policy to comply with the law*); Lee v. Kucker & Bruh, LLP*, 958 F. Supp. 2d 524, 532 (S.D.N.Y. 2013) ("the absence of any procedure to avoid discoverable errors clearly is insufficient.").

> **a.  The Defendant's Procedures, To the Extent They Exist, Are Far Too Vague.**

The Defendant admits that they do not have written procedures addressing the handling of situations where 1) they think a debtor *may* reside at a particular location but are not sure, 2) they have location information for an individual with a similar name to that of the debtor, or 3) where a non-debtor with a name similar to the name of the debtor notifies them that they are collecting from the wrong person. (SOF, ¶ 53).  While there is no rule requiring that procedures be written to be considered reasonable, the lack of written procedures and a lack of training has been held to weaken, if not eliminate, a claim of bona fide error. *Heard v. Bonneville Billing and Collections*, 216 F.3d 1087, *3 (Table)(10th Cir. 2000).

In addition, the unwritten procedures that were allegedly in place at the time the events alleged herein took place were woefully inadequate.  There is no guidance as to what degree of certainty is needed before assuming that a debtor resides at a particular address, and there are no procedures for conducting further inquiries when there is uncertainty as to whether a debtor resides as a particular address.  Further, their procedure is to rely on attorney discretion, or "common sense" after an alleged non-debtor notifies them that they are collecting from the wrong person.  These procedures virtually guarantee that errors will be made on a regular basis. Further, using "common sense" is not a procedure. (SOF, ¶¶ 54).

For example, Mr. Ilecki stated that the purpose of February 9, 2015 letter to the debtor was to confirm whether the debtor resided at that address, and that they did not know at that time whether he resided at that address. (SOF, ¶ 34).  He further testified that at the time that the SDT was served on the Plaintiff, and the attorney handling the collection stated that she "had no idea if our debtor was residing there. (SOF, ¶¶ 47-47).  Despite this uncertainty, Mr. Ilecki refused to concede that there was any error in their procedures. (SOF, ¶ 56).

The *Jerman* majority found that § 1692k(c)'s phrase "the maintenance of procedures reasonably adapted to avoid any such error" is "more naturally read to apply to processes that have mechanical or other such 'regular orderly' steps to avoid mistakes." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587, 130 S. Ct. 1605, 176 L. Ed. 2d 519 (2010). The majority offered two such examples, citing "the kind of *internal controls* a debt collector might adopt to ensure its employees do not communicate with consumers at the wrong time of day or make false representations as to the amount of a debt." *Id.* (citations omitted) (emphasis added). The Supreme Court contrasted these procedures with procedures maintained to avoid mistakes in legal reasoning, which "is not a mechanical or strictly linear process." *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1272 (11th Cir. 2011) (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587, 130 S. Ct. 1605, 176 L. Ed. 2d 519 (2010).

Here, there were no steps or internal controls. Examples of some steps that could have been followed could have included:

1. When attempting to locate a debtor by obtaining credit reports or other searches, verify that the name on the search matches the debtor's name exactly (i.e. same middle initial, suffix, etc.)

2. Review prior searches performed to see if there are any inconsistencies or other indices that the information may not be the correct information for the debtor.

3. If a Real-Info search appears to provide location information for the debtor, verify the accuracy of the report by obtaining copies of any relevant deeds or mortgages.[12]

---

[12] Mr. Ilecki appears to agree that searching property records is sometimes advisable, but has never put in writing or otherwise any specific policies as to when such searches should be performed. SOF, ¶ 51. Given this lack of clarity, it is not surprising that Ms. Overbeck did not obtain records from the Erie County Clerk to verify who owned the Roberts Road property. (SOF, ¶ 55).

4. If it is suspected that a search has located the debtor, have a second person review the file to look for possible errors in that conclusion.

5. Keep copies of all searches or other documents relied upon in determining that the debtor resides at a particular address.

As noted in the "bona fide error" analysis above, Ms. Overbeck's conclusion that the debtor resided at the Roberts Address was not a "common sense" conclusion. If she had followed these steps, her error would have been caught.

The Defendant may claim that it provides training at the outset of employment, and updates training as the law develops and changes. However, that does not explain how that training and monitoring relates to the specific issue here. What procedures do Defendant's employees follow when they receive information that leads them to believe that a similarly named individual *may* be the debtor? What procedure do they follow when the similarly named person contacts them, denies he is the debtor, but declines to provide proof of their identity? Other than, "use common sense," the Defendant does not say. (SOF, ¶ 53). Its bona fide error defense must therefore fail.

**b.  It Was Not a Reasonable Procedure to Assume that William Wagner Was the Same Person As William J. Wagner, Jr.**

Ms. Overbeck decided to send the February 9, 2015 collection letter to the Plaintiff based solely on an unsaved report that allegedly identified "William Wagner" as the owner the Roberts Road property. (SOF, ¶¶ 31-32). The question, therefore, is whether it was reasonable for Ms. Overbeck to send a collection letter to that address in the idle hope that perhaps the debtor also went by the name of William Wagner, without the "Jr."

Mr. Ilecki testified that this was reasonable because it is always possible that William Wagner and William Wagner, Jr. are one and the same person. (SOF, ¶ 57). However, the

Defendant conceded that at the time the February 9, 2015 letters were sent to the William J. Wagner, Jr. at 5419 Roberts Road, Hamburg, New York, and later when the Plaintiff was served with a SDT at that address, that the Defendant did not know if William J. Wagner, Jr. actually lived there. (SOF, ¶¶ 34, 46-47).

It is submitted that this was not a reasonable procedure for two reasons.  First, while it perhaps true that a search turning up a name and address for William Wagner might be one and the same person as William Wagner, Jr., it is just as likely, if not more likely, that the two individuals are not one and the same person. Thus, the procedures followed by the Defendant in circumstances such as exist in this case acknowledge the possibility that non-debtor's will mistakenly be the subject of collection activity for debts that they do not owe.  This is exactly what the FDCPA seeks to prevent.  As such, it is not a procedure reasonably adapted to prevent the error that occurred in this case.  Rather, it is a procedure that guarantees that these types of errors will occur.

### c.   It Was Not a Reasonable Procedure to Have the Plaintiff Served At the Roberts Road Address Because the Debtor Might Have Been Residing There.

At the time that the Defendant decided to serve the Plaintiff with a SDT, they had received two telephone calls from the Plaintiff in which he had provided him with a portion of his Social Security number and date of birth, which the Defendant acknowledges did not match the information they had for the debtor.  At her deposition, Ms. Overbeck acknowledged that she knew after these telephone calls that the Plaintiff was not the debtor.  However, she nonetheless decided to send out the SDT for service because, "I had no idea if our debtor was residing there as well." (SOF, ¶¶ 44, 47).

It is submitted that sending out a SDT to be served at an address when the debt collection law firm has "no idea" if the debtor is living there, but at the same time knows that someone with

a similar name does reside there, is not a reasonable procedure.  It is absolutely true that the

debtor could have lived at the Roberts Road address.  However, it is just as likely that he did not,

or that he lived with any of the other hundreds of William Wagner's residing across the United

States; or elsewhere.  In effect, they were trying to find a needle in a haystack by serving the

SDT at that address.  That is not a procedure reasonably adapted to prevent errors.

### d.   The Defendant Did Not Maintain the Deficient Procedures That They Had

In *Jermain,* the Supreme Court noted that the FDCPA's bona fide error defense parallels

the same defense provided in the Truth in Lending Act ("TILA"). *Jerman v. Carlisle, McNellie,*

*Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 590, 130 S. Ct. 1605, 1607, 176 L. Ed. 2d 519

(2010).  One TILA case in particular provides an excellent explanation of what the duty to

"maintain" procedures means:

> Congress required not only that procedures designed to avoid bona fide errors be
> established by creditors if they seek exemption under this section but also, that
> these procedures be maintained.  This means that the creditor must show that the
> proper procedures were followed time in and time out. As we noted in an earlier
> opinion, the exemption was provided to avoid imposing 'strict liability' for
> unavoidable clerical errors upon creditors. *Haynes v. Logan Furniture Mart, Inc.*,
> 503 F.2d 1161, 1167 (7th Cir. 1974). In the face of a showing that procedures
> containing a rechecking mechanism or other preventative device existed and were
> maintained consistently by a creditor, a court could conclude that whatever error
> occurred was unavoidable and that the congressional policy of requiring creditors
> to do everything reasonably possible to avoid disclosure errors was fulfilled.

*Mirabal v. Gen. Motors Acceptance Corp.*, 537 F.2d 871, 879 (7th Cir. 1976).

Here, any claim by the Defendant that its procedures were maintained is undercut by the

fact that do not have a policy to save copies of the reports that they rely upon to determine that a

debtor resides at a given location. (SOF, ¶ 58).  A debt collector simply cannot determine

whether their procedures are being followed "time in and time out" if there is no effective review

of the documents relied upon by the attorney handling the collection.  The lack of such

monitoring has been found fatal to a claim that a debt collector "maintained" reasonable procedures as required to assert the bona fide error defense. *Webster v. ACB Receivables Mgmt., Inc.*, 15 F. Supp. 3d 619, 629 (D. Md. 2014).

## III.   PLAINTIFFS RESERVE THE DETERMINATION OF THE DEFENDANT'S LIABILITY ON THEIR OTHER CLAIMS, AND FOR A DETERMINATION OF DEFENDANT'S LIABILITY ON DAMAGES FOR THE JURY.

By this motion, the Plaintiff seeks only an award of partial summary judgment with regard to the Defendant's liability for its' violations of 15 U.S.C.§1692e, e(2)(A), e(10) and f. Plaintiff also seeks to retain the right to have a determination of his claim for damages for the violations of his damages 15 U.S.C.§1692e(4) and (5) to be decided by a jury. *Sibley v. Fulton DeKalb Collection Services,* 677 F.2d 830 (11th Cir. 1982).  The Plaintiff wishes to reserve the other claims for liability and damages for the Defendant's violations of the FDCPA alleged in the complaint for presentation to a jury.

The FDCPA provides for statutory damages of up to $1,000.00 per Plaintiff, reasonable attorneys fees, costs and disbursements. 15 U.S.C.§1692k.  In addition, a Plaintiff is entitled to any actual damages suffered.  Damages attributable to emotional distress have been found to be a component of actual damages, and such damages are not limited statutory damages provided under the statute. *Smith v. Law Offices of Mitchell N. Kay*, 124 B.R. 182 (D. Del. 1991); *Donahue v. NFS, Inc.*, 781 F.Supp. 188 (W.D.N.Y. 1991); *Crossley v. Lieberman*, 90 B.R. 682 (E.D.Pa. 1988).

After the determination of liability on their other FDCPA claims and damages by a jury, Plaintiff will seek an award of attorney's fees pursuant to the Fair Debt Collections Act. 15 U.S.C. § 1692(a)(3). "Because the FDCPA was violated, however, the statute requires the award of costs and reasonable attorney's fees…" *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d at 28 (N.Y. 1989).

**<u>CONCLUSION</u>**

Defendant violated 15 U.S.C.§§1692e, 1692e(2)(A), 1692e(10), and 1692f.  There is no bona fide error defense available to the Defendant for those violations.

As such, partial summary judgment on the question of liability should be awarded in favor of Plaintiff William J. Wagner on these violations. Plaintiff requests that liability on his other claims and for damages on all claims that the Defendant is found liable on be determined at a trial by a jury.  Should this motion be denied, Plaintiff reserves his right to proceed to a trial by jury on all issues as requested in his complaint.


Dated:  January 24, 2017

/s/Kenneth R. Hiller_____
Kenneth R. Hiller, Esq.
Law Offices of Kenneth Hiller PLLC
*Attorneys for the Plaintiffs*
6000 North Bailey Avenue, Ste. 1A
Amherst, NY 14228
(716) 564-3288
Email: khiller@kennethhiller.com