```
1   UNITED STATES DISTRICT COURT

2   WESTERN DISTRICT OF NEW YORK

3   _____

4   WILLIAM J. WAGNER,

5         Plaintiff,

6
            vs            Docket No. 15-CV-633-JTC
7

8   CHIARI & ILECKI, LLP,

9         Defendant.
    _____
10

11  Examination Before Trial of MELISSA OVERBECK, ESQ.,

12  held pursuant to the Federal Rules of Civil Procedure,

13  in the law offices of CONNORS LLP, 1000 Liberty

14  Building, 424 Main Street, Buffalo, New York, on

15  Wednesday, October 5, 2016 at 1:13 p.m. before Molly

16  Fenske, Notary Public.

17

18

19

20

21

22

23

24

25
```

```
 1   APPEARANCES:

 2
     LAW OFFICES OF KENNETH HILLER, PLLC
 3   BY:   SETH J. ANDREWS, ESQ.
     6000 North Bailey Avenue, Suite 1A
 4   Amherst, New York  14226
     sandrews@kennethhiller.com
 5   Appearing for the Plaintiff.

 6
     CONNORS LLP
 7   BY:   PAUL A. WOODARD, ESQ.
     1000 Liberty Building
 8   424 Main Street
     Buffalo, New York  14202
 9   paw@connorsllp.com
     Appearing for the Defendant.
10

11

12   PRESENT:

13   William Ilecki, Esq.

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    INDEX TO WITNESS

2

3    MELISSA OVERBECK, ESQ.                        PAGE

4

5    Examination by Mr. Andrews....................5

6

7

8

9                    INDEX TO EXHIBITS

10

11   EXHIBIT                                       PAGE

12

13   Exhibit Plaintiff's E, February 9, 2015

14       letter...................................15

15   Exhibit Plaintiff's F, subpoena duces tecum

16       with restraining notice..................18

17              Exhibits retained by counsel.

18

19

20

21

22

23

24

25
```

```
 1              (Whereupon, the following stipulations
 2    were entered into by the respective parties:
 3              It is hereby stipulated by and between
 4    counsel for the respective parties that the oath of
 5    the referee is waived, that filing and certification
 6    of the transcript are waived, and all objections,
 7    except as to the form of the question, are reserved
 8    until the time of trial.)
 9              THE REPORTER:  Mr. Andrews, you'll supply
10    Mr. Woodard?
11              MR. ANDREWS:  Of course.
12              THE REPORTER:  Usual stipulations or read
13    and sign?
14              MR. WOODARD:  Usual stipulations is what
15    we did for the first one; right?  Yeah, sixty days, if
16    that's agreeable.
17              MR. ILECKI:  Yeah.
18              MELISSA OVERBECK, ESQ., 610 Youngs Road,
19    Unit E, Amherst, New York 14221, having been duly
20    called and sworn, was examined and testified as
21    follows:
22              MR. ANDREWS:  Melissa, hi.  My name is
23    Seth Andrews.  I'm the attorney for the plaintiff in
24    this matter, William J. Wagner.  He's filed an action
25    naming Chiari & Ilecki as the defendant in a lawsuit
```

1   review that goes into locating someone.

2       Q.  Let's look at -- is that A?  I think so, yeah.

3   I'm showing you a document that's been previously

4   marked as Plaintiff's Exhibit A.

5       A.  Sure.

6       Q.  It's labeled Chiari 164, 165, 166.  Have you

7   ever seen this document before?

8       A.  Yes.

9       Q.  What is this document to your knowledge?

10      A.  This is an event log from our file regarding

11  William J. Wagner.

12      Q.  And if we turn to 165 and we see date, February

13  9, 2015 in the event date column?  It's got LX, DMV --

14  I'm sorry, it's got credit report, and then far left

15  column, event user, Missy.  Are you Missy?

16      A.  Yes.

17      Q.  So on that date, you ordered a credit report

18  for William J. Wagner, Junior; is that correct?

19      A.  Yes.

20      Q.  And you also did an employment search for

21  William J. Wagner, Junior?

22      A.  For our judgment debtor, yes.

23      Q.  And the address 1571 Eggert Road, that was

24  found to be an invalid address based on your search?

25      A.  Yes.

```
1        Q.  And if we look down it says invalid address,

2   review, dash, credit report, and then the event

3   comment section, Real, dash, Info, DBTR, debtor, owns

4   5419 Roberts RD, period, W, slash, wife, semi-colon,

5   LX, dash, nothing current.  What lead you to that

6   determination that William J. Wagner, Junior owns 5419

7   Roberts Road?

8                MR. WOODARD:  Form.

9                THE WITNESS:  Well, when I -- like I said

10  before, when I review a file, I look at the search

11  that comes up on the legal database and I compare it

12  to other sites such as Real Info.

13                In this case, I saw that William J.

14  Wagner, Junior had an address listed of 5419 Roberts

15  Road.  So to verify that, I looked on the Real Info

16  website and confirmed that William J. Wagner, Junior

17  did own 5419 Roberts Road with his wife, the wife

18  being listed as a spouse on the Lexis report.

19                MR. ANDREWS:  I'm going to show you a

20  document that's listed, or sorry, labeled as

21  Plaintiff's Exhibit C.  Paul, do you have a copy still

22  of it?

23                MR. WOODARD:  Mhmm.

24  BY MR. ANDREWS:

25       Q.  It's identified as Chiari 192.  Is that -- is
```

1  this similar to the type of report you would have ran

2  on I think you testified Real it's called or Real

3  Info?

4      A.  Yes.

5      Q.  Okay.  When you run those reports, do you print

6  out the reports?

7      A.  No.

8      Q.  So you wouldn't through the normal course of

9  your employment print out reports for Real or for any

10  of the other search tools, like Lexis or Westlaw?

11      A.  Print out in paper form?

12      Q.  Yeah.

13      A.  Sometimes I will print it and convert it to a

14  PDF and attach it to a file, not all the time.

15      Q.  Do you know if you did that in this particular

16  case?

17      A.  I did not.

18      Q.  Any reason why not?

19      A.  Because I marked it on the event log.

20      Q.  And obviously, we don't have a copy of -- this

21  was taken in May 9th of 2016.  We don't have a copy of

22  the record report that you pulled that day, but to the

23  best of your recollection, you believe it had William

24  Wagner, Junior listed as the owner of 5419 Roberts

25  Road?

1    A.  I can only go by what the event log says, and

2  it says on February 9, 2015 I confirmed with Real Info

3  that 5419 Roberts Road was owned by a William Wagner.

4    Q.  If you look at Plaintiff's Exhibit C, under

5  ownership information it says Wagner, William;

6  correct?

7    A.  Yes.

8    Q.  There's no junior on there; correct?

9    A.  Right.

10    Q.  So what I'm asking is if you can recall that

11  junior was on there when you pulled it, if that was

12  your recollection?

13          MR. WOODARD:  The word junior?

14          MR. ANDREWS:  Yeah, yeah.

15          THE WITNESS:  I don't recall.

16  BY MR. ANDREWS:

17    Q.  Okay.  Keeping on that Chiari 165, on 2/9/15

18  then looking at the event comment, there's a letter to

19  debtor on that date, as well as an information

20  subpoena to debtor on that date.  Do you see that?

21    A.  On 165?

22    Q.  Yes.

23    A.  Yes, yes, I see it.

24    Q.  Okay.  Ignoring the handwriting on there, is

25  that the letter that you recall signing?

```
 1                    MR. WOODARD:  Are we going to mark this
 2     one?
 3                    MR. ANDREWS:  Yeah.
 4                    MR. WOODARD:  We're going to mark it?
 5                    MR. ANDREWS:  Yeah.
 6                    MR. WOODARD:  Just so the record is clear,
 7     it's a February 9, 2015 letter with handwriting on it.
 8                    MR. ANDREWS:  Yeah.
 9                    THE WITNESS:  I'm sorry, are you asking me
10     if this is the letter that was sent?
11     BY MR. ANDREWS:
12        Q.  Is that your signature?
13        A.  Yes.
14        Q.  Did you draft this letter?
15        A.  Yes.
16                    MR. ILECKI:  Can I recommend that we mark
17     that?  And I'll tell you why, because I think that is
18     a letter that may have been referenced in the morning
19     by you.
20                    MR. ANDREWS:  We're going to mark it.
21                    MR. ILECKI:  And that's distinct from the
22     other letter because there's markings on it.
23                    MR. WOODARD:  Correct.
24                    MR. ANDREWS:  Yeah.
25                    (Whereupon, Exhibit Plaintiff's E, a
```

 1   February 9, 2015 letter, was marked for

 2   identification.)

 3            MR. WOODARD:  So the letter that we've

 4   just been discussing has just been marked as

 5   Plaintiff's Exhibit E.

 6            MR. ANDREWS:  Yeah.

 7   BY MR. ANDREWS:

 8     Q.  Just to backtrack real quick, if we go up to

 9   that other event comment where it says LX, dash,

10   nothing current, does that mean you did a Lexis search

11   and it provided no current information?

12     A.  Yes.

13     Q.  So Mr. Wagner based on, again, 165 calls in and

14   states that he's not the debtor.  He's not junior,

15   provides last couple numbers of his social security

16   number, and the individual he speaks with knows that

17   they e-mailed MO.  That's you; correct?

18     A.  Yes.

19     Q.  Showing you a document that's marked already as

20   Plaintiff's Exhibit B, do you recall reviewing this

21   document prior to today?

22     A.  Yes.

23     Q.  When did you review it?

24     A.  I couldn't tell you specifically.

25     Q.  Okay.  When you got that from Karen, what was

1    your course of action, if any?

2        A.   Well, usually when that happens, the assistant

3    would have asked the person who called to submit proof

4    that they are not in fact the debtor.  So at that

5    point, I would -- I waited to see if the defendant or

6    if the person who called actually submitted proof.

7        Q.   So this didn't trigger any additional

8    investigation on your part?

9              MR. WOODARD:  Form.

10             THE WITNESS:  I had just investigated it

11   three days before.

12             MR. ANDREWS:  So you didn't investigate it

13   any further after receiving this?

14             MR. WOODARD:  Object to form.

15             MR. ANDREWS:  Did you investigate it any

16   further after receiving this?

17             MR. WOODARD:  Form.

18             THE WITNESS:  Well, yeah, I mean, there's

19   more.  When -- when are you asking me, when did I

20   review this?

21             MR. ANDREWS:  Yeah.  After you got this,

22   did -- what steps, if any, did you take to investigate

23   that that individual calling in was in fact the

24   debtor?

25             MR. WOODARD:  Form.

1          THE WITNESS:  Well, I looked again on June
2     5th.  I did another review to make sure that it was
3     him before anything else went out to that person.
4     BY MR. ANDREWS:
5        Q.  What search tool did you use?
6        A.  I used a Lexis search.
7        Q.  And you didn't print out a copy of that Lexis
8     search; correct?
9        A.  No.
10          MR. ILECKI:  Correct, are you saying
11     that --
12          THE WITNESS:  No, I did not print it out.
13          MR. ILECKI:  Okay.
14          (Whereupon, Exhibit Plaintiff's F, a
15     subpoena duces tecum with restraining notice, was
16     marked for identification.)
17     BY MR. ANDREWS:
18        Q.  You've been handed a document labeled
19     Plaintiff's Exhibit F.  Are you familiar with this
20     document?
21        A.  Yes.
22        Q.  What is it?
23        A.  A subpoena duces tecum with restraining notice.
24        Q.  If we turn to the second page, it's got a
25     signature on there.  Is that your signature?

1    A.  Yes.

2    Q.  Did you -- I recognize this is a form document,

3  but did you prepare the document?

4    A.  I did not actually merge the document, no.

5    Q.  You just signed-off on it?

6         MR. WOODARD:  Form.

7         THE WITNESS:  Well, yes, but I review it

8  first.

9  BY MR. ANDREWS:

10    Q.  Okay.  To the best of your knowledge, that

11  address, that was the intended address for service of

12  this subpoena, is that right, 5419 Roberts Road,

13  Hamburg, New York 14075?

14    A.  Is the intended address did you say?

15    Q.  Yes.

16    A.  Yes.

17    Q.  Okay.  Are you aware of any procedures in place

18  at your office when a debtor or someone calling in

19  disputes that they are the debtor?

20    A.  Yes, I am aware of the procedure.

21    Q.  What's that procedure?

22    A.  An attorney is notified and it's up to the

23  attorney to do a review of the file.  Also, when the

24  person calls in claiming they're not the judgment

25  debtor, our assistants are to ask them to send in

```
 1   proof verifying that they are not in fact the judgment
 2   debtor.
 3       Q.   And is this procedure, are you aware of
 4   anything in writing to that effect that you just
 5   described?
 6       A.   No.
 7       Q.   You testified that the employee or person
 8   taking the call is to request verifying information.
 9   How are they made aware of that procedure, do you
10   know?
11       A.   How are the assistants made aware to ask?
12       Q.   Yeah.
13       A.   In their training.  When they're hired, they're
14   trained.
15       Q.   Is there anything written to that effect?
16       A.   No.
17       Q.   When you made the determination that that was
18   -- that the 5419 Roberts Road was a good address for
19   the debtor, did you discuss that with any other
20   attorneys in the office?
21       A.   No.
22       Q.   Looking at 165, which I think it's again
23   Plaintiff's A?
24              MR. WOODARD:  I believe so, yeah.
25   BY MR. ANDREWS:
```

1    Q.  If we look on 6/5/2015, review credit report,

2   LX, DMV, and then the comment section says LX, dash,

3   looks like WW, comma, SR, period, and WW, comma, JR,

4   period, live at same address.  Do you see that?

5    A.  Yes.

6    Q.  What search tool provided you with that

7   information?

8    A.  Lexis.

9    Q.  You don't -- there's no print-out of the actual

10  report --

11   A.  No.

12   Q.  -- that you're aware of?

13       Did you consider at all prior to sending out

14  that subpoena duces tecum that Mr. Wagner had called

15  in twice saying that he wasn't the debtor?

16   A.  I considered that he called in twice and was

17  told to send in proof verifying who he was and he

18  still hadn't done that.

19   Q.  Did he provide his -- at least a little bit of

20  a social security number?

21            MR. WOODARD:  Form.

22            THE WITNESS:  It looks like he provided

23  the last two of his social security number.

24            MR. ANDREWS:  Did he provide his date of

25  birth or his birth month and birth year?

```
 1            MR. WOODARD:  Form.
 2            THE WITNESS:  You would have to ask Karen.
 3   She's the one who took that event.
 4   BY MR. ANDREWS:
 5      Q.  But that information was made available to you
 6   prior to deciding to serve him with the --
 7      A.  Yes.
 8      Q.  -- subpoena?  Yes.
 9          Let's look at 166.  So if we look at June 29,
10   2015 comment section says original file, opened docs.
11   What's that?
12      A.  When we open a file, we scan everything into
13   the system that the client refers to us, so it looks
14   like I just scanned those in.
15      Q.  What would those docs have been?
16      A.  I don't remember specifically what they were
17   here.
18      Q.  Like, docs in terms -- I mean, docs as far as
19   the judgment or information about the debtor?
20      A.  Whatever the client sends to us.
21      Q.  Okay, so this case originated sometime prior to
22   '06.  Why were you scanning documents in in 2015,
23   original file, opened docs?
24      A.  My thought is to make sure that everything was
25   scanned in.  I mean, scanning wasn't made available
```

1   until -- it could have been 2006.  I don't remember

2   specifically, but there was a time when our system

3   operated without scanning being available.

4       Q.  So this is just housekeeping you got to in

5   other words?  There was nothing significant.  No one

6   told you to do this.  It wasn't part of your

7   procedure.  It was just general housekeeping; is that

8   fair to say?

9       A.  No one told me to do it.

10      Q.  If we look down below, it says review credit

11  report, LX, DMV, and then the comment section, it says

12  confirm there is a William Wagner, W, slash, SS,

13  pound, ending in 3918, comma, DOB 10/23/50, living at

14  Roberts RD, period, not our DBTR.  So at that point,

15  you confirmed that the debtor did not reside at 5419

16  Roberts Road?

17              MR. WOODARD:  Object to form.

18              THE WITNESS:  No, I did not confirm that

19  at that time.  I didn't know if the debtor resided

20  there.  He never sent us proof.

21  BY MR. ANDREWS:

22      Q.  So is it your understanding at that point

23  there's a William Wagner with social security 3918,

24  date of birth 10/23/50, living at Roberts Road; is

25  that right?

1     A.  That's what it looks like, yes.

2     Q.  Is (sic) the debtor's social security number

3  end in 3918?

4             MR. WOODARD:  Form.

5  BY MR. ANDREWS:

6     Q.  Do you know if the debtor's social security

7  number ends in 3918?

8     A.  I don't know.

9     Q.  Would that have been -- would that information

10  have been available to you in the original file of

11  open docs you scanned in?

12     A.  What information?

13     Q.  His social security number.

14     A.  Yes, I don't have it in front of me here.  I

15  don't know what it is offhand.

16     Q.  Yeah.  So when you say not our debtor, doesn't

17  that indicate that you don't believe that William

18  Wagner living at 1020, or I'm sorry, at 5419 Roberts

19  Road is the debtor?

20             MR. WOODARD:  Form.

21             THE WITNESS:  No, all that tells me is

22  that there was a William Wagner living at the Roberts

23  Road address with that date of birth and social

24  security number.  I had no idea if our debtor was

25  residing there as well.  I don't know.