UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILLIAM J. WAGNER,

    Plaintiff,

-vs-

CHIARI & ILECKI, LLP,

    Defendant.

**DECLARATION**

Docket No. 15-cv-633-FPG

---

MELISSA OVERBECK, ESQ., declares under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am an attorney at law duly licensed to practice my profession in the State of New York and an associate with the defendant, CHIARI & ILECKI, LLP, in this matter. As such, I am familiar with the facts and circumstances involved in this litigation.

2. I submit this declaration in opposition to the plaintiff's motion for summary judgment and in support of Chiari & Ilecki's cross-motion for summary judgment.

3. I have been employed by Chiari & Ilecki for almost nine years, including nearly the last five years as an attorney.

4. A large percentage of Chiari & Ilecki's practice involves representing creditors in litigation involving real estate, mortgages, and retail and commercial collections across Western and Upstate New York.

5. Thus, I have gained extensive experience in searching for debtors over the course of the past decade that I have worked for Chiari & Ilecki. I typically run many such searches every day.

6. In that regard, I was assigned to handle a collections case involving a debtor named William J. Wagner, Jr.

7. When I was assigned to the case, a judgment already had been entered in favor of our client, M.J. Peterson, LLC, and against the debtor, William J. Wagner, Jr.

8. Our firm had attempted to collect the debt at issue on numerous previous occasions, but we did not have any success.

9. Therefore, when I was assigned the case, I began by reviewing the file and running multiple new searches to attempt to determine the debtor's current address.

10. On February 9, 2015, I ran searches on the LexisNexis public records database and the Real Info real estate database, and I also ordered a credit report from TransUnion.

11. The TransUnion report was not delivered to our office until February 12, 2015, but based on my Real Info and Lexis searches and my review of the information in our file, I was confident that the debtor was currently residing at 5419 Roberts Road, Hamburg, New York 14075.

12. Specifically, the Lexis report was generated for the debtor's full name – William J. Wagner, Jr. – and Social Security number, and it indicated that 5419 Roberts Road was one of the top possible addresses for the debtor.

13. The Lexis report also indicated that the debtor was related to a Julia or Julie Wagner who lived at 5419 Roberts Road.

14. The Real Info report, in turn, confirmed that 5419 Roberts Road was owned by a William Wagner and Julie Wagner.

15. I also noted that our firm had previously ruled out the other top possible addresses that the Lexis report or older credit reports in our file listed for the debtor.

16. Based on those several connections to 5419 Roberts Road – as well as my experience – I strongly believed that this was the debtor's address.

17. I memorialized my searches and my conclusion in our firm's events log for the debtor's file, a redacted copy of which is attached as *Exhibit A*.

18. Plaintiff's counsel argues that I "did not retain a copy of these searches." *See* Plaintiff's Statement of Facts, ¶ 29. But that characterization is not accurate.

19. The Real Info and Lexis searches I ran were on the internet.

20. Thus, I did not take affirmative action to destroy the Real Info and Lexis reports I used to identify the plaintiff's address; rather, I simply did not print out the electronic search results that I viewed online.

21. That is our firm's policy because, quite simply, it would be impractical to print out the results for every single search that we run. Nor is there any need to print out such search results. I contemporaneously memorialized the findings of my search in our events log, and if we ever needed to access the information again, we could simply log back in to Real Info or Lexis and run the search again.

22. Indeed, we ran those searches again in connection with this lawsuit, and the reports corroborate my recollection and the notes that I made in our events log.

23. Specifically, a Lexis report generated for the debtor's full name – William J. Wagner, Jr. – and Social Security number, which we obtained on December 31, 2015, lists 5419 Roberts Road as one of the top possible addresses and identifies a Julia or Julie Wagner living at 5419 Roberts Road as a potential relative. A redacted copy of that report is attached as *Exhibit B*.

24. Likewise, a Real Info report obtained on May 9, 2016, indicates that during the time period at issue, the 5419 Roberts Road property was owned by a William Wagner and Julie Wagner. A copy of that report is attached as *Exhibit C*.

25. Although the Lexis report lists 5419 Roberts Road as the debtor's third address, we already had ruled out the first two addresses – namely, 1571 Eggert Road, Buffalo, New York 14226, and 356 Hartford Road, Buffalo, New York 14226. *See Exhibit B*.

26. Specifically, the United States Postal Service had advised us that mail was not deliverable to the debtor at 1571 Eggert Road. A copy of a returned letter mailed to the debtor at that address is attached as *Exhibit D*.

27. Moreover, in the lease agreement which gave rise to the underlying collection action, the debtor listed 356 Hartford Road as his parents' address, rather than his own address, and the Postal Service had previously advised that the debtor did not receive mail there. A redacted copy of the lease agreement and a copy of the post office notice are attached as *Exhibits E* and *F*, respectively.

28. Plaintiff's counsel notes that TransUnion reports we obtained also identified 378 Windermere Boulevard, Amherst, New York 14226, as another one of several possible addresses for the debtor.

29. But, once again, our office had already ruled out the possibility that the debtor was living at 378 Windermere Boulevard.

30. Specifically, on August 10, 2007, our office instructed a process server to serve an order to show cause on the debtor at 378 Windermere Boulevard, but later that day, the resident of that address informed the process server that the debtor no longer lived there. Copies of our letter to the process server and a responsive note from the process server are attached as *Exhibits G* and *H*, respectively.

31. Based on this history and the Real Info and Lexis reports I obtained, I logically concluded – and honestly believed – that as of February 9, 2015, the debtor resided at 5419 Roberts Road.

32. Therefore, I prepared an information subpoena with restraining notice to serve on the debtor at that address via certified mail. An unsigned copy of that information subpoena is attached as *Exhibit I*.

33. The information subpoena was specifically addressed to "William J. Wagner Jr." – the debtor – and referenced the judgment entered against the debtor and in favor of M.J. Peterson. *See Exhibit I*.

34. As required by law, I also prepared a CPLR § 5222 notice to serve on the debtor via first-class mail. An unsigned copy of my letter and the enclosed CPLR § 5222 notice is attached as *Exhibit J*.

35. Like the information subpoena, the enclosure letter for the CPLR § 5222 notice was specifically addressed to "William J. Wagner Jr." – the debtor – and referenced the debt he owed to M.J. Peterson. *See Exhibit J.*

36. I mailed the CPLR § 5222 notice, via first-class mail, on February 9, 2015, and our firm's receptionist, Rita Marti, mailed the information subpoena, via certified mail, on February 11, 2015. A copy of the affidavit of service for the information subpoena is attached as *Exhibit K.*

37. Those were the only papers that our firm mailed to 5419 Roberts Road throughout our collection efforts at issue.

38. On the following day, February 12, 2015, our firm received the TransUnion credit report that I had ordered on February 9, 2015, a redacted copy of which is attached as *Exhibit L.*

39. The report did not include any new addresses for the debtor. Rather, it listed the three possible addresses for the debtor that we already had ruled out (356 Hartford Road, 1571 Eggert Road, and 378 Windermere Boulevard). *See Exhibit L.*

40. On the same day, February 12, 2015, I received an email from one of our legal assistants, Karen Sandford, informing me that a man named William Wagner had called our office, claiming that he lived at the Roberts Road address but was not the debtor. A copy of Ms. Sandford's email is attached as *Exhibit M.*

41. I noted this email and waited to see if we received a response to our information subpoena before undertaking any further collection efforts against the debtor.

42. On or about May 11, 2015, the Postal Service returned the information subpoena to our office as unclaimed. In other words, there was no indication that the debtor had moved or that the information subpoena was undeliverable as addressed. A copy of the envelope is attached as *Exhibit N*.

43. Therefore, on June 5, 2015, I reviewed our file on the debtor to determine how to proceed.

44. Specifically, I reviewed our events log and noted the February 12, 2015 telephone call that Ms. Sandford had emailed me about. *See Exhibit A.*

45. I also noted that a man identifying himself as William Wagner had called our office one other time – on March 19, 2015 – and spoken to another one of our legal assistants, Kristian Brown. As before, the caller claimed that he was not the debtor. *See id.*

46. I observed that over the course of the two telephone calls, the caller had supposedly provided the last two digits of his Social Security number and the month and year of his birth.

47. Unfortunately, receiving such basic (and easily discoverable) information is insufficient to allow us to verify a caller's identity.

48. Given the nature of our practice, our office routinely receives calls from individuals making unsubstantiated claims of mistaken identity.

49. If we were to accept every one of these representations at face value, without any substantiation, we simply would not be able to practice our profession.

50. Therefore, when a caller claims mistaken identity, we ask for verifiable proof of identity, including documentary proof, such as a driver's license and Social Security card.

51. On March 19, 2015, Ms. Brown invited the man claiming not to be the debtor to do exactly that – provide a copy of his driver's license and Social Security card. *See id.*

52. As of my review of the file on June 5, 2015, however, we had not received that or any other verifiable, documentary proof of the caller's identity.

53. Nevertheless, given the claims of mistaken identity, our office policy required me to double-check my analysis of the debtor's address before undertaking any additional collection efforts.

54. Therefore, on June 5, 2015, I once again researched the debtor's address, including on Lexis.

55. Given the numerous connections between the debtor, William J. Wagner, Jr., and 5419 Roberts Road noted above, I still concluded after my second round of searching that the debtor lived at that address.

56. In reaching that conclusion, I considered the caller's assertions, but I was skeptical of their veracity given that he refused to provide any verifiable, documentary proof of his identity.

57. Therefore, I prepared a subpoena duces tecum to be served on the debtor at 5419 Roberts Road by a process server. An unsigned copy of the subpoena is attached as *Exhibit O*.

58. The subpoena was specifically addressed to "William J. Wagner Jr." – the debtor – and referenced the judgment entered against the debtor and in favor of M.J. Peterson. *See Exhibit O.*

59. I did recognize (and recorded in our events log), however, that there might be more than one William J. Wagner – that is, both a "Jr." and a "Sr." – living at the Roberts Road address. *See Exhibit A.*

60. Therefore, I took special care to ensure that the subpoena duces tecum was served only on the debtor – William J. Wagner, Jr. – and not any other William Wagner living at that residence.

61. Specifically, in my enclosure letter for the subpoena, a redacted, unsigned copy of which is attached as *Exhibit P*, I specifically warned and instructed the process server, in bold-faced type, **"Please be sure to serve the correct William J. Wagner. We believe there is a William J. Wagner, Sr. and William J. Wagner, Jr. living at the same address."**

62. I had worked with this process service company – Action Services & Research, Inc. – a number of times before, and I had never received any complaints about the company's work.

63. Therefore, I fully believed that Action Services would ensure that it served only the debtor – William J. Wagner, Jr. – and not any other William J. Wagner residing at 5419 Roberts Road.

64. Unfortunately, however, it appears that one of Action Services' process servers – John M. Celano – handed the subpoena to the plaintiff. A redacted copy of the affidavit of service is attached as *Exhibit Q.*

65. On June 17, 2015, a man identifying himself as William Wagner – apparently the plaintiff – called our office again and told Karen Sandford that he had been served but was not the debtor. *See Exhibit A.*

66. Ms. Sandford once again inquired about the caller sending us a copy of his driver's license, but he responded by threatening to contact his attorney. *See id.*

67. On June 29, 2015, I was, in fact, called by Seth Andrews, Esq., one of the plaintiff's attorneys in this action.

68. Mr. Andrews claimed that the plaintiff – William J. Wagner – was not the debtor – William J. Wagner, Jr.

69. I explained to Mr. Andrews that we could not simply accept the plaintiff's unsubstantiated word, and Mr. Andrews indicated that he understood and appreciated our position.

70. As our office had repeatedly done before, I requested that Mr. Andrews provide a copy of the plaintiff's driver's license and a partially redacted copy of his Social Security card in order to allow us to verify the plaintiff's identity.

71. Mr. Andrews told me that his client probably would not agree to send in even a redacted copy of his Social Security card, but he would try to convince the plaintiff to produce a copy of his driver's license.

72. I agreed, in turn, to send Mr. Andrews a copy of the lease that the debtor had signed with M.J. Peterson so that each of us could attempt to verify the plaintiff's identity by comparing the debtor's signature on the lease to the plaintiff's signature on his driver's license.

73. We also agreed to a general adjournment of the pending subpoena duces tecum while we attempted to resolve the issue of the plaintiff's identity.

74. Later that day – June 29, 2015 – I confirmed our agreement in a facsimile to Mr. Andrews, a copy of which is attached as *Exhibit R*.

75. Mr. Andrews never sent our office a copy of the plaintiff's driver's license or Social Security card, however, and we did not hear anything more about the matter until we were served with the summons and complaint in this action.

76. We never received a copy of the plaintiff's driver's license or Social Security card (or any other verifiable proof of his identity) until after he publicly filed those documents a few weeks ago in connection with his motion for summary judgment. *See* Docs. 25-6, 25-7.

77. Based on that evidence, it appears that the Lexis report I reviewed incorrectly listed 5419 Roberts Road as an address for the debtor, and, therefore, when I viewed this information in conjunction with the information in our file and available on Real Info, I erroneously concluded that this was the debtor's address.

78. That error was not intentional, however. Consistent with Chiari & Ilecki's procedures, I thoroughly researched the debtor's address, and as explained above, I reasonably concluded that the debtor lived at 5419 Roberts Road.

79. I certainly never dunned or attempted to collect the debt at issue from anyone other than the debtor himself.

80. Quoting my deposition testimony out of context, plaintiff's counsel intimates that I was simply guessing that the debtor resided at 5419 Roberts Road.

*See* Plaintiff's Statement of Facts, ¶¶ 46-47. But that misconstrues the intent and substance of my testimony.

81. Of course, unless we personally know a debtor, we can never know with absolute certainty if a debtor resides at a particular address.

82. But our firm does not simply guess at where a debtor lives. As a matter of practice, we do not undertake any collection efforts until we are confident that we have the right address.

83. That certainly was the case here. Based on my investigation outlined above, I reasonably and honestly believed that the debtor lived at 5419 Roberts Road.

84. As explained in the accompanying memorandum of law, the facts of this case simply do not establish a violation of the Federal Debt Collection Practices Act.

85. Furthermore, any error was unintentional and bona fide and thus cannot be the basis for FDCPA liability.

86. Accordingly, I respectfully request that this Court deny the plaintiff's motion for summary judgment and grant Chiari & Ilecki's cross-motion for summary judgment in its entirety.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: March 2, 2017

_____
Melissa Overbeck, Esq.