# EXHIBIT I

*WILLIAM J. WAGNER vs.*
*CHIARI & ILECKI, LLP.*

---

*MELISSA OVERBECK, ESQ.*
*October 5, 2016*

---



**METSCHL**
AND ASSOCIATES
COURT REPORTERS • LEGAL VIDEO SERVICES
**Buffalo, NY**: 716 856-1906
**Rochester, NY**: 585 697-0969
**Toll Free:** 800 397-1796

*Min-U-Script® with Word Index*

1   UNITED STATES DISTRICT COURT

2   WESTERN DISTRICT OF NEW YORK

3   _____

4   WILLIAM J. WAGNER,

5          Plaintiff,

6          vs              Docket No. 15-CV-633-JTC

7

8   CHIARI & ILECKI, LLP,

9          Defendant.

    _____

10

11  Examination Before Trial of MELISSA OVERBECK, ESQ.,

12  held pursuant to the Federal Rules of Civil Procedure,

13  in the law offices of CONNORS LLP, 1000 Liberty

14  Building, 424 Main Street, Buffalo, New York, on

15  Wednesday, October 5, 2016 at 1:13 p.m. before Molly

16  Fenske, Notary Public.

17

18

19

20

21

22

23

24

25

```
 1   APPEARANCES:

 2
     LAW OFFICES OF KENNETH HILLER, PLLC
 3   BY:   SETH J. ANDREWS, ESQ.
     6000 North Bailey Avenue, Suite 1A
 4   Amherst, New York  14226
     sandrews@kennethhiller.com
 5   Appearing for the Plaintiff.

 6
     CONNORS LLP
 7   BY:   PAUL A. WOODARD, ESQ.
     1000 Liberty Building
 8   424 Main Street
     Buffalo, New York  14202
 9   paw@connorsllp.com
     Appearing for the Defendant.
10

11

12   PRESENT:

13   William Ilecki, Esq.

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    INDEX TO WITNESS

2

3    MELISSA OVERBECK, ESQ.                          PAGE

4

5    Examination by Mr. Andrews....................5

6

7

8

9                    INDEX TO EXHIBITS

10

11   EXHIBIT                                         PAGE

12

13   Exhibit Plaintiff's E, February 9, 2015

14       letter...................................15

15   Exhibit Plaintiff's F, subpoena duces tecum

16       with restraining notice..................18

17              Exhibits retained by counsel.

18

19

20

21

22

23

24

25

```
 1              (Whereupon, the following stipulations
 2    were entered into by the respective parties:
 3              It is hereby stipulated by and between
 4    counsel for the respective parties that the oath of
 5    the referee is waived, that filing and certification
 6    of the transcript are waived, and all objections,
 7    except as to the form of the question, are reserved
 8    until the time of trial.)
 9              THE REPORTER:  Mr. Andrews, you'll supply
10    Mr. Woodard?
11              MR. ANDREWS:  Of course.
12              THE REPORTER:  Usual stipulations or read
13    and sign?
14              MR. WOODARD:  Usual stipulations is what
15    we did for the first one; right?  Yeah, sixty days, if
16    that's agreeable.
17              MR. ILECKI:  Yeah.
18              MELISSA OVERBECK, ESQ., 610 Youngs Road,
19    Unit E, Amherst, New York 14221, having been duly
20    called and sworn, was examined and testified as
21    follows:
22              MR. ANDREWS:  Melissa, hi.  My name is
23    Seth Andrews.  I'm the attorney for the plaintiff in
24    this matter, William J. Wagner.  He's filed an action
25    naming Chiari & Ilecki as the defendant in a lawsuit
```

1   alleging violations of the Fair Debt Collection

2   Practices Act.  We're here to take your deposition

3   with respect to that lawsuit.

4           I'm going to be asking you some questions.

5   Please do your best to respond verbally.

6           I don't know if you've ever been deposed

7   before.  If for some reason there's a question that

8   you don't understand, let me know and I'll try to

9   rephrase it.

10          If I'm speaking too fast, which I'm prone

11  to do, let me know.  I'll try to slow down.  The court

12  reporter is going to do a good -- did a good job at

13  the last one of keeping me on track with that.

14          If you need to take a break at any time,

15  let me know.  It's no problem.  I would just ask that

16  if there's a question that's asked, you answer it

17  prior to any break.  That's pretty much it.

18  EXAMINATION BY MR. ANDREWS:

19    Q.  Before we start, is there any reason you can't

20  provide truthful or accurate testimony today?

21    A.  No.

22    Q.  Not taking any medication that would impair

23  your ability to recall or testify fairly?

24    A.  No.

25    Q.  What's your date of birth?

1   A.   ████/85.

2   Q.   And where were you born?

3   A.   Buffalo, New York.

4   Q.   And highest level of education you've obtained?

5   A.   A law degree.

6   Q.   And where did you get your JD at?

7   A.   University of Buffalo.

8   Q.   And when did you get it?

9   A.   I graduated in 2011.

10   Q.   In preparation for today's deposition, did you

11   discuss this case with anyone other than your

12   attorney?

13   A.   I reviewed some documentation and briefly

14   discussed the case with some people from my work.

15   Q.   Who were those people?

16   A.   I discussed it briefly with William Ilecki,

17   Antoinette Ferraro, Karen Sandford, Kristian Brown,

18   Rita Marty.

19   Q.   Those other four individuals, what was the

20   basis or what were the substance of the discussions?

21            MR. WOODARD:  The ones outside my

22   presence.

23            MR. ANDREWS:  Yes, outside your presence.

24   Correct.

25            THE WITNESS:  Actually, there wasn't any

1   outside of his presence.

2   BY MR. ANDREWS:

3       Q.   Okay, easy enough.   You said you reviewed some

4   documents?

5       A.   Yes, the discovery responses that we provided.

6       Q.   Did you review any other documents?

7       A.   No.

8       Q.   Have you ever testified in court before?

9       A.   No.

10      Q.   Have you ever provided deposition testimony

11  before?

12      A.   No.

13      Q.   After you graduated UB, where did you first

14  work?

15      A.   At Chiari & Ilecki.

16      Q.   So you've been here since graduation?

17      A.   Since before graduation, I've been here since

18  March 2008.

19      Q.   Summered?

20      A.   I'm sorry?

21      Q.   You summered?

22      A.   I started --

23           MR. ILECKI:  I have to object to the

24  question.  I'm not sure I know what that means.  Are

25  you talking about clerking?

```
 1              MR. ANDREWS:  Yeah, summered.
 2              MR. ILECKI:  Actually -- okay.
 3              MR. ANDREWS:  Come on, she knows what it
 4    means.
 5              MR. ILECKI:  I didn't know what --
 6              MR. ANDREWS:  Really?  That's two for two,
 7    wow.
 8              THE WITNESS:  I actually started as a
 9    receptionist right out of my undergraduate education
10    and then I became promoted to legal assistant and a
11    law clerk and now associate attorney.
12    BY MR. ANDREWS:
13       Q.  Wow, okay.  When you became an attorney with
14    the firm, were you trained in Fair Debt Collection
15    Practices Act compliance?
16       A.  Yes.
17       Q.  Do you remember who trained you?
18       A.  William Ilecki.
19       Q.  Do you remember generally the process?
20       A.  He and I would meet almost daily to go over
21    files.  We would discuss fair debt cases that came
22    out.  He would advise me as to the procedure of how to
23    review a file, how to handle a file from start to
24    finish.
25       Q.  Did you take any written exams?
```

1    A.  No.

2    Q.  Were you ever provided any kind of training

3  manual or material with respect to the FDCPA

4  compliance?

5              MR. WOODARD:  Form.

6              THE WITNESS:  I received past documents

7  that William Ilecki had written on the topic of Fair

8  Debt Collection Practices Act.

9  BY MR. ANDREWS:

10    Q.  Did you ever sign anything acknowledging

11  receipt of those documents you received?

12    A.  No.  I received a handbook, an employee

13  handbook which talks about our office policies, and we

14  do sign for those.

15    Q.  But nothing as far as the FDCPA compliance?

16    A.  No.

17    Q.  Are you aware of any procedures in place at

18  your office for collecting on accounts that have

19  judgments?

20              MR. WOODARD:  Form.

21              THE WITNESS:  Am I aware of procedures,

22  yes.

23              MR. ANDREWS:  What -- what's -- and

24  obviously I know this can be in depth, but just a

25  basic procedure as far as related to your work at the

1  firm of a file comes in for collection on judgment,

2  what would your involvement be in that?

3             MR. WOODARD:  Form.

4             THE WITNESS:  Can you get a little more

5  specific?  There's a lot of different facets to

6  collecting on a judgment.

7  BY MR. ANDREWS:

8    Q.  Judgment debtor needs to be located and the

9  file is assigned to you.

10   A.  So to be clear, you're asking me our procedures

11  for skip tracing?

12   Q.  Yep.

13   A.  Typically, a skip tracing is done generally by

14  William Ilecki or myself in the office.  My own

15  personal procedure?  I would look up a search of the

16  defendant by social security number and last name

17  using a legal database like Westlaw.  I'll review the

18  information on there.  I will look at credit reports

19  if they're available.  I will look at any

20  correspondence we received from the post office if we

21  ran a postal search.  I will look at the history of

22  the case to see if there's any addresses that have

23  previously been confirmed to not be where the debtor

24  resides.  If there is real property involved I will

25  look at the Real Info report, so there's a lot of

 1  review that goes into locating someone.

 2      Q.  Let's look at -- is that A?  I think so, yeah.

 3  I'm showing you a document that's been previously

 4  marked as Plaintiff's Exhibit A.

 5      A.  Sure.

 6      Q.  It's labeled Chiari 164, 165, 166.  Have you

 7  ever seen this document before?

 8      A.  Yes.

 9      Q.  What is this document to your knowledge?

10      A.  This is an event log from our file regarding

11  William J. Wagner.

12      Q.  And if we turn to 165 and we see date, February

13  9, 2015 in the event date column?  It's got LX, DMV --

14  I'm sorry, it's got credit report, and then far left

15  column, event user, Missy.  Are you Missy?

16      A.  Yes.

17      Q.  So on that date, you ordered a credit report

18  for William J. Wagner, Junior; is that correct?

19      A.  Yes.

20      Q.  And you also did an employment search for

21  William J. Wagner, Junior?

22      A.  For our judgment debtor, yes.

23      Q.  And the address 1571 Eggert Road, that was

24  found to be an invalid address based on your search?

25      A.  Yes.

1    Q.  And if we look down it says invalid address,

2  review, dash, credit report, and then the event

3  comment section, Real, dash, Info, DBTR, debtor, owns

4  5419 Roberts RD, period, W, slash, wife, semi-colon,

5  LX, dash, nothing current.  What lead you to that

6  determination that William J. Wagner, Junior owns 5419

7  Roberts Road?

8             MR. WOODARD:  Form.

9             THE WITNESS:  Well, when I -- like I said

10  before, when I review a file, I look at the search

11  that comes up on the legal database and I compare it

12  to other sites such as Real Info.

13             In this case, I saw that William J.

14  Wagner, Junior had an address listed of 5419 Roberts

15  Road.  So to verify that, I looked on the Real Info

16  website and confirmed that William J. Wagner, Junior

17  did own 5419 Roberts Road with his wife, the wife

18  being listed as a spouse on the Lexis report.

19             MR. ANDREWS:  I'm going to show you a

20  document that's listed, or sorry, labeled as

21  Plaintiff's Exhibit C.  Paul, do you have a copy still

22  of it?

23             MR. WOODARD:  Mhmm.

24  BY MR. ANDREWS:

25    Q.  It's identified as Chiari 192.  Is that -- is

1  this similar to the type of report you would have ran

2  on I think you testified Real it's called or Real

3  Info?

4      A.  Yes.

5      Q.  Okay.  When you run those reports, do you print

6  out the reports?

7      A.  No.

8      Q.  So you wouldn't through the normal course of

9  your employment print out reports for Real or for any

10 of the other search tools, like Lexis or Westlaw?

11     A.  Print out in paper form?

12     Q.  Yeah.

13     A.  Sometimes I will print it and convert it to a

14 PDF and attach it to a file, not all the time.

15     Q.  Do you know if you did that in this particular

16 case?

17     A.  I did not.

18     Q.  Any reason why not?

19     A.  Because I marked it on the event log.

20     Q.  And obviously, we don't have a copy of -- this

21 was taken in May 9th of 2016.  We don't have a copy of

22 the record report that you pulled that day, but to the

23 best of your recollection, you believe it had William

24 Wagner, Junior listed as the owner of 5419 Roberts

25 Road?

1     A.   I can only go by what the event log says, and

2  it says on February 9, 2015 I confirmed with Real Info

3  that 5419 Roberts Road was owned by a William Wagner.

4     Q.   If you look at Plaintiff's Exhibit C, under

5  ownership information it says Wagner, William;

6  correct?

7     A.   Yes.

8     Q.   There's no junior on there; correct?

9     A.   Right.

10     Q.   So what I'm asking is if you can recall that

11  junior was on there when you pulled it, if that was

12  your recollection?

13               MR. WOODARD:   The word junior?

14               MR. ANDREWS:   Yeah, yeah.

15               THE WITNESS:   I don't recall.

16  BY MR. ANDREWS:

17     Q.   Okay.   Keeping on that Chiari 165, on 2/9/15

18  then looking at the event comment, there's a letter to

19  debtor on that date, as well as an information

20  subpoena to debtor on that date.   Do you see that?

21     A.   On 165?

22     Q.   Yes.

23     A.   Yes, yes, I see it.

24     Q.   Okay.   Ignoring the handwriting on there, is

25  that the letter that you recall signing?

```
 1              MR. WOODARD:  Are we going to mark this
 2   one?
 3              MR. ANDREWS:  Yeah.
 4              MR. WOODARD:  We're going to mark it?
 5              MR. ANDREWS:  Yeah.
 6              MR. WOODARD:  Just so the record is clear,
 7   it's a February 9, 2015 letter with handwriting on it.
 8              MR. ANDREWS:  Yeah.
 9              THE WITNESS:  I'm sorry, are you asking me
10   if this is the letter that was sent?
11   BY MR. ANDREWS:
12      Q.  Is that your signature?
13      A.  Yes.
14      Q.  Did you draft this letter?
15      A.  Yes.
16              MR. ILECKI:  Can I recommend that we mark
17   that?  And I'll tell you why, because I think that is
18   a letter that may have been referenced in the morning
19   by you.
20              MR. ANDREWS:  We're going to mark it.
21              MR. ILECKI:  And that's distinct from the
22   other letter because there's markings on it.
23              MR. WOODARD:  Correct.
24              MR. ANDREWS:  Yeah.
25              (Whereupon, Exhibit Plaintiff's E, a
```

 1  February 9, 2015 letter, was marked for

 2  identification.)

 3              MR. WOODARD:   So the letter that we've

 4  just been discussing has just been marked as

 5  Plaintiff's Exhibit E.

 6              MR. ANDREWS:   Yeah.

 7  BY MR. ANDREWS:

 8     Q.   Just to backtrack real quick, if we go up to

 9  that other event comment where it says LX, dash,

10  nothing current, does that mean you did a Lexis search

11  and it provided no current information?

12     A.   Yes.

13     Q.   So Mr. Wagner based on, again, 165 calls in and

14  states that he's not the debtor.  He's not junior,

15  provides last couple numbers of his social security

16  number, and the individual he speaks with knows that

17  they e-mailed MO.  That's you; correct?

18     A.   Yes.

19     Q.   Showing you a document that's marked already as

20  Plaintiff's Exhibit B, do you recall reviewing this

21  document prior to today?

22     A.   Yes.

23     Q.   When did you review it?

24     A.   I couldn't tell you specifically.

25     Q.   Okay.  When you got that from Karen, what was

```
 1   your course of action, if any?
 2       A.  Well, usually when that happens, the assistant
 3   would have asked the person who called to submit proof
 4   that they are not in fact the debtor.  So at that
 5   point, I would -- I waited to see if the defendant or
 6   if the person who called actually submitted proof.
 7       Q.  So this didn't trigger any additional
 8   investigation on your part?
 9                MR. WOODARD:  Form.
10                THE WITNESS:  I had just investigated it
11   three days before.
12                MR. ANDREWS:  So you didn't investigate it
13   any further after receiving this?
14                MR. WOODARD:  Object to form.
15                MR. ANDREWS:  Did you investigate it any
16   further after receiving this?
17                MR. WOODARD:  Form.
18                THE WITNESS:  Well, yeah, I mean, there's
19   more.  When -- when are you asking me, when did I
20   review this?
21                MR. ANDREWS:  Yeah.  After you got this,
22   did -- what steps, if any, did you take to investigate
23   that that individual calling in was in fact the
24   debtor?
25                MR. WOODARD:  Form.
```

1          THE WITNESS:  Well, I looked again on June

2     5th.  I did another review to make sure that it was

3     him before anything else went out to that person.

4     BY MR. ANDREWS:

5          Q.   What search tool did you use?

6          A.   I used a Lexis search.

7          Q.   And you didn't print out a copy of that Lexis

8     search; correct?

9          A.   No.

10          MR. ILECKI:  Correct, are you saying

11     that --

12          THE WITNESS:  No, I did not print it out.

13          MR. ILECKI:  Okay.

14          (Whereupon, Exhibit Plaintiff's F, a

15     subpoena duces tecum with restraining notice, was

16     marked for identification.)

17     BY MR. ANDREWS:

18          Q.   You've been handed a document labeled

19     Plaintiff's Exhibit F.  Are you familiar with this

20     document?

21          A.   Yes.

22          Q.   What is it?

23          A.   A subpoena duces tecum with restraining notice.

24          Q.   If we turn to the second page, it's got a

25     signature on there.  Is that your signature?

1    A.  Yes.

2    Q.  Did you -- I recognize this is a form document,

3  but did you prepare the document?

4    A.  I did not actually merge the document, no.

5    Q.  You just signed-off on it?

6         MR. WOODARD:  Form.

7         THE WITNESS:  Well, yes, but I review it

8  first.

9  BY MR. ANDREWS:

10    Q.  Okay.  To the best of your knowledge, that

11  address, that was the intended address for service of

12  this subpoena, is that right, 5419 Roberts Road,

13  Hamburg, New York 14075?

14    A.  Is the intended address did you say?

15    Q.  Yes.

16    A.  Yes.

17    Q.  Okay.  Are you aware of any procedures in place

18  at your office when a debtor or someone calling in

19  disputes that they are the debtor?

20    A.  Yes, I am aware of the procedure.

21    Q.  What's that procedure?

22    A.  An attorney is notified and it's up to the

23  attorney to do a review of the file.  Also, when the

24  person calls in claiming they're not the judgment

25  debtor, our assistants are to ask them to send in

1    proof verifying that they are not in fact the judgment

2    debtor.

3        Q.   And is this procedure, are you aware of

4    anything in writing to that effect that you just

5    described?

6        A.   No.

7        Q.   You testified that the employee or person

8    taking the call is to request verifying information.

9    How are they made aware of that procedure, do you

10   know?

11       A.   How are the assistants made aware to ask?

12       Q.   Yeah.

13       A.   In their training.  When they're hired, they're

14   trained.

15       Q.   Is there anything written to that effect?

16       A.   No.

17       Q.   When you made the determination that that was

18   -- that the 5419 Roberts Road was a good address for

19   the debtor, did you discuss that with any other

20   attorneys in the office?

21       A.   No.

22       Q.   Looking at 165, which I think it's again

23   Plaintiff's A?

24             MR. WOODARD:  I believe so, yeah.

25   BY MR. ANDREWS:

1    Q.  If we look on 6/5/2015, review credit report,

2   LX, DMV, and then the comment section says LX, dash,

3   looks like WW, comma, SR, period, and WW, comma, JR,

4   period, live at same address.  Do you see that?

5    A.  Yes.

6    Q.  What search tool provided you with that

7   information?

8    A.  Lexis.

9    Q.  You don't -- there's no print-out of the actual

10  report --

11   A.  No.

12   Q.  -- that you're aware of?

13      Did you consider at all prior to sending out

14  that subpoena duces tecum that Mr. Wagner had called

15  in twice saying that he wasn't the debtor?

16   A.  I considered that he called in twice and was

17  told to send in proof verifying who he was and he

18  still hadn't done that.

19   Q.  Did he provide his -- at least a little bit of

20  a social security number?

21          MR. WOODARD:  Form.

22          THE WITNESS:  It looks like he provided

23  the last two of his social security number.

24          MR. ANDREWS:  Did he provide his date of

25  birth or his birth month and birth year?

 1              MR. WOODARD:   Form.

 2              THE WITNESS:   You would have to ask Karen.

 3    She's the one who took that event.

 4    BY MR. ANDREWS:

 5       Q.   But that information was made available to you

 6    prior to deciding to serve him with the --

 7       A.   Yes.

 8       Q.   -- subpoena?   Yes.

 9            Let's look at 166.   So if we look at June 29,

10    2015 comment section says original file, opened docs.

11    What's that?

12       A.   When we open a file, we scan everything into

13    the system that the client refers to us, so it looks

14    like I just scanned those in.

15       Q.   What would those docs have been?

16       A.   I don't remember specifically what they were

17    here.

18       Q.   Like, docs in terms -- I mean, docs as far as

19    the judgment or information about the debtor?

20       A.   Whatever the client sends to us.

21       Q.   Okay, so this case originated sometime prior to

22    '06.   Why were you scanning documents in in 2015,

23    original file, opened docs?

24       A.   My thought is to make sure that everything was

25    scanned in.   I mean, scanning wasn't made available

```
 1    until -- it could have been 2006.  I don't remember

 2    specifically, but there was a time when our system

 3    operated without scanning being available.

 4        Q.  So this is just housekeeping you got to in

 5    other words?  There was nothing significant.  No one

 6    told you to do this.  It wasn't part of your

 7    procedure.  It was just general housekeeping; is that

 8    fair to say?

 9        A.  No one told me to do it.

10        Q.  If we look down below, it says review credit

11    report, LX, DMV, and then the comment section, it says

12    confirm there is a William Wagner, W, slash, SS,

13    pound, ending in 3918, comma, DOB ████/50, living at

14    Roberts RD, period, not our DBTR.  So at that point,

15    you confirmed that the debtor did not reside at 5419

16    Roberts Road?

17              MR. WOODARD:  Object to form.

18              THE WITNESS:  No, I did not confirm that

19    at that time.  I didn't know if the debtor resided

20    there.  He never sent us proof.

21    BY MR. ANDREWS:

22        Q.  So is it your understanding at that point

23    there's a William Wagner with social security 3918,

24    date of birth ████/50, living at Roberts Road; is

25    that right?
```

 1      A.   That's what it looks like, yes.

 2      Q.   Is (sic) the debtor's social security number

 3   end in 3918?

 4              MR. WOODARD:   Form.

 5   BY MR. ANDREWS:

 6      Q.   Do you know if the debtor's social security

 7   number ends in 3918?

 8      A.   I don't know.

 9      Q.   Would that have been -- would that information

10   have been available to you in the original file of

11   open docs you scanned in?

12      A.   What information?

13      Q.   His social security number.

14      A.   Yes, I don't have it in front of me here.   I

15   don't know what it is offhand.

16      Q.   Yeah.   So when you say not our debtor, doesn't

17   that indicate that you don't believe that William

18   Wagner living at 1020, or I'm sorry, at 5419 Roberts

19   Road is the debtor?

20              MR. WOODARD:   Form.

21              THE WITNESS:   No, all that tells me is

22   that there was a William Wagner living at the Roberts

23   Road address with that date of birth and social

24   security number.   I had no idea if our debtor was

25   residing there as well.   I don't know.

1  BY MR. ANDREWS:

2     Q.  So it's -- your thought process is there could

3  be a second William Wagner living there?

4     A.  Yes.

5     Q.  And that was based on what, what led you to

6  that assumption?

7     A.  The fact that there is this gentleman calling

8  saying that he is not our judgment debtor, yet refuses

9  to send proof.  I've reviewed a reference report, Real

10  Info report, all telling me that our debtor with the

11  social security number that I looked up is linked to

12  5419 Roberts Road, so that's what I had to go off of.

13     Q.  Show you a document that's been marked as

14  Plaintiff's Exhibit D.  Did you ever utilize Trans

15  Union to ascertain whether or not the debtor resided

16  at 5419 Roberts Road?

17     A.  The judgment debtor, yes.

18     Q.  Yes, and that address doesn't show up?

19     A.  No.

20           MR. ILECKI:  Objection to form.  Are you

21  talking about it doesn't show up on that exhibit?

22           MR. ANDREWS:  On this exhibit, yes.

23           THE WITNESS:  No, it does not.

24  BY MR. ANDREWS:

25     Q.  Do you know if your office has withdrawn the

1  subpoena duces tecum?

2      A.  I know that we agreed to a general adjournment

3  of it.

4      Q.  So do you know if it's your office's position

5  that William J. Wagner is the debtor?

6              MR. WOODARD:  Form.

7              THE WITNESS:  Can you repeat that?

8              MR. ANDREWS:  Do you know if it's your

9  office's position that William J. Wagner, the

10 plaintiff in this action, is the judgment debtor?

11             THE WITNESS:  It's our position that --

12             MR. WOODARD:  Form.

13             THE WITNESS:  -- we still don't know.  Why

14 would we withdraw the subpoena duces tecum?  We don't

15 know.

16             MR. ANDREWS:  I'm all set.

17             MR. WOODARD:  No questions.

18             ***1:46 p.m.***

19

20

21

22

23

24

25

ERRATA SHEET

PAGE LINE

__6__ __18__
change: _"Marty" to "Marti"_
   reason: _correct spelling of last name_

__10__ __13__
change: _remove "a" prior to "skip tracing"_
   reason: _extra word_

~~__22__ __22__~~
~~change: remove "in"~~ _18_
  ~~reason: extra word~~

__15__ __9__
change: _change "reference" to "Lexis"_
   reason: _typo_

change: _____
   reason: _____

change: _____
   reason: _____

change: _____
   reason: _____

change: _____
   reason: _____

change: _____
   reason: _____

I _Melissa Overbeck_ hereby certify
that I did review and if necessary correct this
deposition and that the foregoing pages _1_ through
_27_ are a true and accurate recording of said
proceedings.
   _Melissa Overbeck_

Subscribed and sworn to before me this
_5_ day of _December_ , 20_16_.

_Victoria E. Hamilton_
Notary Public

VICTORIA E HAMILTON
NOTARY PUBLIC, STATE OF NEW YORK
LICENSED IN NIAGARA COUNTY
NO. 01HA6349507
MY COMM. EXP. 10/17/2020

METSCHL & ASSOCIATES
Buffalo: 716-856-1906   Rochester: 585-697-0969

```
1    STATE OF NEW YORK
     COUNTY OF ERIE
2
          I, Molly Fenske, a Notary Public in and for the
3    State of New York, do hereby certify:

4         That the witness whose testimony appears herein
     before was, before the commencement of his deposition,
5    duly sworn to testify to the truth, the whole truth
     and nothing but the truth; that such testimony was
6    taken pursuant to notice at the time and place herein
     set forth; that said testimony was taken down in
7    shorthand by me and thereafter under my supervision
     transcribed into the English language, and I hereby
8    certify the foregoing testimony is a full, true and
     correct transcription of the shorthand notes so taken.
9
          I further certify that I am neither counsel for
10   nor related to any parties to said action, nor in
     anywise interested in the outcome thereof.
11
          IN WITNESS WHEREOF, I have hereunto subscribed my
12   name this 10th day of November, 2016.

13

14

15

16

17
                        Notary Public
18                      State of New York
19

20

21

22

23

24

25
```