# EXHIBIT J

# WILLIAM J. WAGNER vs. CHIARI & ILECKI, LLP.

## KAREN SANDFORD
### October 5, 2016



**METSCHL**
AND ASSOCIATES
COURT REPORTERS • LEGAL VIDEO SERVICES

Buffalo, NY: 716 856-1906
Rochester, NY: 585 697-0969
Toll Free: 800 397-1796

*Min-U-Script® with Word Index*

1

```
 1  UNITED STATES DISTRICT COURT
 2  WESTERN DISTRICT OF NEW YORK
 3  _____
 4  WILLIAM J. WAGNER,
 5       Plaintiff,
 6
         vs              Docket No. 15-CV-633-JTC
 7
 8  CHIARI & ILECKI, LLP,
 9       Defendant.
10  _____
11  Examination Before Trial of KAREN SANDFORD, held
12  pursuant to the Federal Rules of Civil Procedure, in
13  the law offices of CONNORS LLP, 1000 Liberty Building,
14  424 Main Street, Buffalo, New York, on Wednesday,
15  October 5, 2016 at 2:07 p.m. before Molly Fenske,
16  Notary Public.
17
18
19
20
21
22
23
24
25
```

```
 1   APPEARANCES:

 2
     LAW OFFICES OF KENNETH HILLER, PLLC
 3   BY:   SETH J. ANDREWS, ESQ.
     6000 North Bailey Avenue, Suite 1A
 4   Amherst, New York  14226
     sandrews@kennethhiller.com
 5   Appearing for the Plaintiff.

 6
     CONNORS LLP
 7   BY:   PAUL A. WOODARD, ESQ.
     1000 Liberty Building
 8   424 Main Street
     Buffalo, New York  14202
 9   paw@connorsllp.com
     Appearing for the Defendant.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    INDEX TO WITNESS
 2
 3  KAREN SANDFORD                                    PAGE
 4
 5  Examination by Mr. Andrews.....................5
 6
 7
 8
 9                    INDEX TO EXHIBITS
10
11                    None marked.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    (Whereupon, the following stipulations
 2      were entered into by the respective parties:
 3                    It is hereby stipulated by and between
 4      counsel for the respective parties that the oath of
 5      the referee is waived, that filing and certification
 6      of the transcript are waived, and all objections,
 7      except as to the form of the question, are reserved
 8      until the time of trial.)
 9                    THE REPORTER:  Mr. Andrews, you'll supply
10      Mr. Woodard?
11                    MR. ANDREWS:  Yes.
12                    THE REPORTER:  Read and sign in sixty
13      days?
14                    MR. WOODARD:  Right.
15                    KAREN SANDFORD, 58 Edgebrook Estates,
16      Apartment 4, Cheektowaga, New York 14227, having been
17      duly called and sworn, was examined and testified as
18      follows:
19                    MR. ANDREWS:  Karen, hi.  My name is Seth
20      Andrews.  I'm the attorney for the plaintiff in this
21      matter, William J. Wagner.  He has filed a lawsuit in
22      federal court naming Chiari & Ilecki as defendants
23      alleging various violations of the Fair Debt
24      Collection Practices Act.  We're here today to take
25      your deposition as a fact witness as it pertains to
```

```
 1   some of the events that gave rise to this complaint,
 2   okay?
 3                THE WITNESS:  Okay.
 4                MR. ANDREWS:  I'm going to ask you some
 5   questions.  Do your best to provide me with responses.
 6   They have to be verbal.  They can't be uh-huhs or head
 7   nods, otherwise the court reporter can't take down an
 8   accurate account of what happened today.
 9                If you need to take a break at any time,
10   let me know.  We're going to be pretty quick though so
11   I don't anticipate it, but if something comes up, no
12   problem.  I just ask that if there's a question out
13   there, you answer the question prior to the break.
14                If at any time you don't understand, let
15   me know.  I'll try to rephrase.
16                If I'm speaking too fast, tell me to slow
17   down.  I do that a lot.  That's about it.
18                THE WITNESS:  Okay.
19   EXAMINATION BY MR. ANDREWS:
20      Q.   Any reason that you can't provide accurate and
21   truthful testimony today?
22      A.   Not at all.
23      Q.   Not on any medication that would impact your
24   ability to recall or provide accurate testimony?
25      A.   No.
```

```
 1     Q.   What's your date of birth?
 2     A.   ██████, 1971.
 3     Q.   And where were you born?
 4     A.   Olean, New York.
 5     Q.   Highest level of education you've obtained?
 6     A.   Associate's degree.
 7     Q.   Where did you get that degree from?
 8     A.   Erie Community College.
 9     Q.   And roughly when did you get that, do you
10   remember?
11     A.   1994.
12     Q.   In preparation for your deposition today, did
13   you discuss the case with anyone other than your
14   attorney or --
15     A.   No, no.
16     Q.   Did you review any documents at all in
17   preparation?
18     A.   No.
19     Q.   Never been arrested before?
20     A.   No.
21     Q.   Ever been convicted of any crimes?
22     A.   No.
23     Q.   Have you ever sued anyone before?
24     A.   No.
25     Q.   Ever been sued before?
```

```
 1      A.  No.
 2      Q.  Ever testified in court as a party?
 3      A.  No.
 4      Q.  Ever testified in court as a witness?
 5      A.  No.
 6      Q.  Good, quick.  How long have you worked for
 7   Chiari & Ilecki?
 8      A.  I've worked for Chiari & Ilecki for three
 9   years.
10      Q.  And when you first started, what was your
11   position?
12      A.  Legal assistant.
13      Q.  Is that your current position?
14      A.  Yes.
15      Q.  What does that entail?  What's your general job
16   duties?
17      A.  General job duties are take telephone calls,
18   process the mail that comes in, once in a while I'll
19   post payments to the accounts, I schedule motions.
20      Q.  Do you ever make any calls to debtors?
21      A.  No.
22      Q.  Do you receive incoming calls from debtors?
23      A.  Yes.
24      Q.  Do you recall if you were trained in Fair Debt
25   Collection Practices Act compliance?
```

```
 1       A.   Yes.
 2       Q.   Do you recall who trained you?
 3       A.   Well, I've been a legal -- I've been doing
 4  collections for twenty years, so my previous employer
 5  I was trained as well.
 6       Q.   Who was your previous employer?
 7       A.   Dugan, Somerstein and Hutter.
 8       Q.   How long did you work for them for?
 9       A.   I worked for them for approximately sixteen
10  years.
11       Q.   So between them and Chiari & Ilecki that makes
12  it twenty or am I missing a year in there?
13       A.   Approximately twenty, yes, that's correct.
14       Q.   When you came over to Chiari & Ilecki, I
15  understand that you had this background.  Did you get
16  any additional training in the FDC --
17       A.   I did take an online FDCPA certification
18  course.
19       Q.   That was offered through your employer, through
20  Chiari & Ilecki?
21       A.   Yes.
22       Q.   Is that mandatory or is that --
23       A.   Yes.
24       Q.   It wasn't just you just wanted to do it for the
25  sake of doing it?
```

```
 1      A.   It was mandatory.
 2      Q.   Do all legal assistants take it, do you know?
 3      A.   Yes.
 4      Q.   I assume you passed?
 5      A.   Yes.
 6      Q.   Do you have -- strike that.
 7           Do you take any internal examinations from your
 8  employer?  Do they provide you any internal testing to
 9  make sure that you're up-to-date with compliance?
10      A.   I'm not sure what you mean by internal.
11      Q.   You said it was a third-party that you took a
12  test with; right?
13      A.   Right.
14      Q.   I'm just saying does Chiari & Ilecki say okay,
15  in a month we're going to give you our own exam, we
16  want to make sure that you're, you know, proceeding
17  with the current compliance that the law, you know,
18  allows for?
19      A.   Not an exam, but we do have monthly meetings
20  and weekly meetings.
21      Q.   Who are those meetings with?
22      A.   The monthly meetings are with the attorneys and
23  the other legal assistants and then the legal
24  assistants have a weekly meeting.
25      Q.   Do you know if you're ever provided any written
```

```
 1  material with respect to FDCPA compliance, you
 2  personally?
 3     A.  No.
 4     Q.  Never provided any kind of, like, training
 5  manual or compliance manual?
 6     A.  I believe one time it was a pamphlet through
 7  NARCA.  I might have that name wrong.  I might be
 8  wrong there.
 9     Q.  Are you generally involved in assisting
10  attorneys or working accounts that have judgments on
11  them?
12              MR. WOODARD:  Object to form.
13              MR. ANDREWS:  You can answer.
14              MR. WOODARD:  You can answer.
15              THE WITNESS:  Yes.
16  BY MR. ANDREWS:
17     Q.  Tell me a little bit about what your role is
18  with accounts.
19     A.  If there's a judgment?
20     Q.  Yeah.
21     A.  If someone calls the office and wants to set
22  up, like, a payment arrangement I'll help them with
23  that, and then the attorney approves or doesn't
24  approve it.
25     Q.  Any other activity you would work an account
```

```
 1   with a judgment that's regular for your job duties?
 2       A.   Well, if there's a motion to be scheduled, I
 3   will do that.
 4       Q.   Do you ever aid the attorneys in drafting any
 5   documents?
 6       A.   No.
 7       Q.   Here's a document I'm showing you that's been
 8   previously marked as Plaintiff's Exhibit A.  Have you
 9   ever seen that document before today?
10       A.   Yes.
11       Q.   When did you recall seeing it prior to today?
12       A.   When we met with Paul.
13       Q.   I don't want to know anything about what you
14   did with him, that's okay, as far as substance, you
15   know.
16            Other than meeting with your attorney, do you
17   recall ever seeing this document?
18       A.   No.
19       Q.   If we turn to the second page of the document,
20   165, and we look at the column -- it's on the front
21   page, but event done date and then there's description
22   and event comment.  It's basically the three far
23   right-most columns, and we look -- we see on February
24   12, 2015 there's a telephone call?
25       A.   Yes.
```

```
 1      Q.   And you see your name listed on the far left
 2   column?
 3      A.   Yes.
 4      Q.   And the comments section reads a William Wagner
 5   calls office, comma.  He lives at the Roberts RD
 6   address, comma.  Claims it's not him, comma.  He is
 7   not a JR, period.  Claims this has been REC stuff for
 8   last six, dash, seven YRS, four D, period.  Gave me
 9   last couple numbers of SS, pound, open paren, sixteen,
10   closed paren.  Told him would note file and E-mail
11   ATYY, period.  E-mailed MO.  Is that right, is that...
12      A.   That's correct.
13      Q.   So MO, is that Melissa Overbeck?
14      A.   Yes.
15      Q.   That sixteen, is that -- what does that
16   signify, the last two of the social security number?
17      A.   Yes.
18      Q.   When you input that, those notes in, are you
19   able to see those later on?  Are you able to go back
20   and look at those notes?
21      A.   Yes.
22      Q.   Can you alter those notes?
23      A.   Yes.
24      Q.   When you e-mailed Melissa, showing you a
25   document that's previously been marked as Plaintiff's
```

```
 1    Exhibit B, is that the E-mail you recall sending her?
 2        A.   Yes.
 3        Q.   Did you ever hear back from her after you sent
 4    this E-mail to her?
 5        A.   No.
 6        Q.   She never talked to you about follow-up with
 7    Mr. Wagner?
 8        A.   No.
 9              MR. WOODARD:   Form.
10    BY MR. ANDREWS:
11        Q.   Do you know, is there a protocol that legal
12    assistants are supposed to follow when a person calls
13    in to dispute they're the debtor?
14        A.   Yes.
15        Q.   What's that protocol?
16        A.   We usually obtain the last four numbers.  We
17    ask for their last four numbers of their social and
18    their date of birth and also if they would be willing
19    to send us a copy of their driver's license and their
20    social security card.
21        Q.   And in this case, based on your notes, Mr.
22    Wagner provided the last two of his social security;
23    is that right?
24        A.   Yes.
25        Q.   Do you recall if he gave you his date of birth?
```

```
 1      A.  No, I don't believe I asked.
 2      Q.  Do you remember -- obviously I realize this is
 3  a year-and-a-half ago, so it's okay if you don't have
 4  the recall.  I don't want you to guess, but on the off
 5  chance that you did, do you have to, you know,
 6  anything stand out as far as his demeanor on that
 7  phone call, if you can recall?  Was he upset?  Did he
 8  seem irritated, agitated?  Was he calm?  Again, if you
 9  don't recall, I don't want you to guess.
10      A.  I don't remember.
11      Q.  That's fine.  It's a long time ago.  It's
12  understandable.
13          How many calls do you -- just on average do you
14  think you take per day?
15      A.  I would say between eight and ten.
16      Q.  So yeah, that's...
17      A.  Yeah.
18      Q.  Probably not -- unless it was something really
19  memorable, which means it was probably really bad.
20          That protocol you just described, do you know
21  if there's anything in writing that states what you
22  just told me as far as the firm policy, that protocol?
23      A.  That I don't know.
24      Q.  So you were never provided what you told me,
25  that protocol, in writing?
```

```
 1      A.   No.
 2      Q.   How did you come to learn of it?
 3      A.   From the other legal assistants.
 4      Q.   Just kind of passed down as you worked there?
 5      A.   Yes.
 6           MR. WOODARD:  Form.
 7  BY MR. ANDREWS:
 8      Q.   Is it policy to E-mail the attorney or was that
 9  just something you just did on your own initiative
10  when there's a dispute with respect to a debtor's
11  identity?
12      A.   If the attorney is available, we'll call them.
13  If not, we E-mail them.
14      Q.   In every instance?
15      A.   Yes.
16      Q.   And then you kind of wash your hands with it,
17  unless you hear back from the attorney?
18      A.   Yes.
19      Q.   Does the attorney ever say I need you to do
20  some follow-up, call the potential debtor and get me
21  some more follow-up information?  Does that ever
22  happen?
23      A.   We don't call defendants.
24      Q.   Looking at that note -- strike that.
25           If you didn't look at that note and I asked you
```

```
 1   about a conversation on February 9, 2015 with a
 2   William J. Wagner, would you have any recollection?
 3      A.   No.
 4              MR. WOODARD:  When you say that note,
 5   you're talking about on the event sheet, Exhibit A?
 6              MR. ANDREWS:  Yes, yeah, yeah.
 7   BY MR. ANDREWS:
 8      Q.   So you have no independent recollection of that
 9   phone call absent looking at the note on the event
10   sheet?
11      A.   Right.
12      Q.   I think I asked this, I just want to
13   double-check.  You're not involved in any way in
14   drafting or preparing any correspondence or legal
15   forms the attorneys send out?
16      A.   Correct.
17      Q.   That's not part of your job duty?
18      A.   No.
19              MR. ANDREWS:  You're free to go.
20              MR. WOODARD:  No questions.
21              ***2:22 p.m.***
22
23
24
25
```

```
 1                        ERRATA SHEET
 2
 3      PAGE  LINE
         9    7
 4      change: Dubin, Sommerstein & Hunter
           reason: misspelled
 5      ____  ____
        change: _____
 6         reason: _____
        ____  ____
 7      change: _____
           reason: _____
 8      ____  ____
        change: _____
 9         reason: _____
        ____  ____
10      change: _____
           reason: _____
11      ____  ____
        change: _____
12         reason: _____
        ____  ____
13      change: _____
           reason: _____
14      ____  ____
        change: _____
15         reason: _____
        ____  ____
16      change: _____
           reason: _____
17
18
        I Karen Sandford                         hereby certify
19      that I did review and if necessary correct this
        deposition and that the foregoing pages  4   through
20      16   are a true and accurate recording of said
        proceedings.
21             Karen Sandford

22      Subscribed and sworn to before me this
        13  day of  December                 , 20 16 .
23
              Patrick
24           Notary Public

25
```

PATRICK DONOVAN
NOTARY PUBLIC
STATE OF NEW YORK
LICENSED IN NIAGARA COUNTY
NO. 01DO6349216
MY COMM. EXP. 10/17/2020

METSCHL & ASSOCIATES
Buffalo: 716-856-1906   Rochester: 585-697-0969

```
1    STATE OF NEW YORK
     COUNTY OF ERIE
2
         I, Molly Fenske, a Notary Public in and for the
3    State of New York, do hereby certify:

4        That the witness whose testimony appears herein
     before was, before the commencement of his deposition,
5    duly sworn to testify to the truth, the whole truth
     and nothing but the truth; that such testimony was
6    taken pursuant to notice at the time and place herein
     set forth; that said testimony was taken down in
7    shorthand by me and thereafter under my supervision
     transcribed into the English language, and I hereby
8    certify the foregoing testimony is a full, true and
     correct transcription of the shorthand notes so taken.
9
         I further certify that I am neither counsel for
10   nor related to any parties to said action, nor in
     anywise interested in the outcome thereof.
11
         IN WITNESS WHEREOF, I have hereunto subscribed my
12   name this 10th day of November, 2016.

13

14

15
                    [signature: Molly K. Fenske]
16

17
                    Notary Public
18                  State of New York
19

20

21

22

23

24

25
```