# EXHIBIT K

*WILLIAM J. WAGNER vs.*
*CHIARI & ILECKI, LLP.*

*KRISTIAN L. BROWN*
*October 5, 2016*



METSCHL
AND ASSOCIATES
COURT REPORTERS • LEGAL VIDEO SERVICES
Buffalo, NY: 716 856-1906
Rochester, NY: 585 697-0969
Toll Free: 800 397-1796

*Min-U-Script® with Word Index*

1  UNITED STATES DISTRICT COURT

2  WESTERN DISTRICT OF NEW YORK

3  _____

4  WILLIAM J. WAGNER,

5        Plaintiff,

6        vs              Docket No. 15-CV-633-JTC

7

8  CHIARI & ILECKI, LLP,

9        Defendant.

10  _____

11  Examination Before Trial of KRISTIAN L. BROWN, held

12  pursuant to the Federal Rules of Civil Procedure, in

13  the law offices of CONNORS LLP, 1000 Liberty Building,

14  424 Main Street, Buffalo, New York, on Wednesday,

15  October 5, 2016 at 2:24 p.m. before Molly Fenske,

16  Notary Public.

17

18

19

20

21

22

23

24

25

```
 1   APPEARANCES:

 2
     LAW OFFICES OF KENNETH HILLER, PLLC
 3   BY:   SETH J. ANDREWS, ESQ.
     6000 North Bailey Avenue, Suite 1A
 4   Amherst, New York  14226
     sandrews@kennethhiller.com
 5   Appearing for the Plaintiff.

 6
     CONNORS LLP
 7   BY:   PAUL A. WOODARD, ESQ.
     1000 Liberty Building
 8   424 Main Street
     Buffalo, New York  14202
 9   paw@connorsllp.com
     Appearing for the Defendant.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    INDEX TO WITNESS

2

3   KRISTIAN L. BROWN                             PAGE

4

5   Examination by Mr. Andrews....................5

6

7

8

9                    INDEX TO EXHIBITS

10

11                      None marked.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    (Whereupon, the following stipulations
 2      were entered into by the respective parties:
 3                    It is hereby stipulated by and between
 4      counsel for the respective parties that the oath of
 5      the referee is waived, that filing and certification
 6      of the transcript are waived, and all objections,
 7      except as to the form of the question, are reserved
 8      until the time of trial.)
 9                    THE REPORTER:  Mr. Andrews, you'll supply
10      Mr. Woodard?
11                    MR. ANDREWS:  Yes.
12                    THE REPORTER:  Read and sign in sixty
13      days?
14                    MR. WOODARD:  Yep.
15                    KRISTIAN L. BROWN, 92 Peter Street,
16      Buffalo, New York 14207, having been duly called and
17      sworn, was examined and testified as follows:
18                    MR. ANDREWS:  Hello, my name is Seth
19      Andrews.  I am the attorney for the plaintiff in this
20      matter, William J. Wagner.  He's filed a lawsuit
21      naming Chiari & Ilecki, the defendant, alleging
22      violations of the Fair Debt Collection Practices Act.
23      We're here today to take your deposition as a fact
24      witness as it pertains to some of the circumstances
25      leading up to the complaint.
```

```
 1            I'm going to ask you some questions.  Do
 2   your best to respond the best you can.  I need you to
 3   give me verbal responses.  You can't do head nods.  I
 4   know it's something that's -- I do it all the time.
 5            THE WITNESS:  Force of habit, okay.  Yes.
 6            MR. ANDREWS:  I'll help you.  We do it to
 7   maintain a clear record.
 8            If you think you know what I'm going to
 9   say, which probably sometimes happens a lot, wait
10   until I'm done so we don't have an overlapping.  She
11   can't take it down if we're both talking over each
12   other.
13            If for some reason I'm speaking too fast,
14   which also happens a lot, let me know and I'll try to
15   slow down.
16            If you don't understand a question, let me
17   know.  I'll rephrase it.
18            If you need to take a break at any time,
19   that's fine too.  We're probably going to be real
20   quick so I don't anticipate it, but if something came
21   up, no problem.  I would just ask that if I asked you
22   a question, you answer the question prior to your
23   break.  That's pretty much it.
24            THE WITNESS:  Okay.
25   EXAMINATION BY MR. ANDREWS:
```

1    Q.  Before I get into the some of the questions

2    though, I just want to make sure, there's no reason

3    that you can think of today that you would be unable

4    to provide accurate and truthful testimony?

5    A.  No, no reason.

6    Q.  Not on any kind of medication that would

7    prohibit accurate recall or, you know, allow you to

8    provide accurate testimony?

9    A.  No.

10   Q.  What's your date of birth?

11   A.  ████/86.

12   Q.  Where were you born?

13   A.  Buffalo, New York.

14   Q.  What's the highest level of education you've

15   obtained?

16   A.  High school.

17   Q.  Where did you go to high school?

18   A.  Hutchinson Technical.  Hutch-Tech, sorry, it's

19   a long time ago.

20   Q.  In preparation for your deposition today, did

21   you discuss the case with anyone other than your

22   attorney?

23   A.  Office workers, co-workers.

24   Q.  What co-workers did you discuss it with?  And

25   again, I want -- I'm not talking about anything that

```
 1   Paul or another attorney was present for, just
 2   conversations you had outside of your counsel.
 3       A.   Oh, then no.
 4       Q.   Do you remember if you reviewed any documents
 5   in preparing for your deposition testimony today?
 6       A.   Other than with Mr. Woodard?
 7       Q.   Yeah.
 8       A.   No.
 9       Q.   Have you ever been arrested before?
10       A.   No.
11       Q.   Ever been convicted of any crimes?
12       A.   No.
13       Q.   Ever sued anyone before?
14       A.   No.
15       Q.   Ever been sued before?
16       A.   No.
17       Q.   Ever testified in court as a party?
18       A.   I'm sorry?
19       Q.   Ever testified in court as a party?
20       A.   No.
21       Q.   Ever testified in court as a witness?
22       A.   No.
23       Q.   Have you ever provided deposition testimony
24   prior to today?
25       A.   No.
```

1    Q.   How long have you worked for Chiari & Ilecki?

2    A.   Since April of 2008, so three-and-a-half years

3  (sic).

4    Q.   And what's your position?

5    A.   Legal secretary, legal assistant.

6    Q.   Is that what you were when you first started?

7    A.   Yes.

8    Q.   And just briefly, what's that entail?  What are

9  your general responsibilities or duties?

10   A.   Handling incoming phone calls, paperwork that

11  comes back and forth from the courts, judges,

12  paralegal work, any type of work that the attorneys

13  actually assign to us as well, processing mail.

14   Q.   Do you aid attorneys in drafting any

15  correspondence?

16   A.   Not necessarily.  Usually everything is

17  reviewed by the attorneys, and if there are forms that

18  we do assist with, they're already prepared by the

19  attorneys and they're reviewed before they go out.

20   Q.   Do you know if you assisted in any preparation

21  of any documents on the William J. Wagner, Junior

22  file?

23   A.   The only thing that I did in that particular

24  file was just one phone call.

25   Q.   When you started with Chiari & Ilecki, do you

```
1   recall if you were trained in fair debt collection or

2   practices compliance?

3      A.  We were trained -- actually, yeah, I was

4   trained by Antoinette and she is -- she was FDCPA

5   certified.  She is the one that trained me on

6   telephone calls and also all of the other work that I

7   did as well.

8      Q.  Who is Antoinette?

9      A.  Antoinette is the office paralegal.  She's

10  actually Bill's paralegal, and then any other training

11  came directly from Mr. Ilecki himself.

12     Q.  Did you take any exams?

13     A.  Yes, we did become FDCPA certified.

14     Q.  When you say FDCPA certified, was that from a

15  third-party or was that internal, meaning did Chiari &

16  Ilecki give you an exam or did a third-party?

17     A.  It was a third-party.

18     Q.  Do you remember when that was when you took

19  your exam?

20     A.  I believe it was -- I would have to confirm the

21  exact date, but I believe it was around August.  It

22  was either July or August of last year.

23     Q.  So when you first started, you don't think you

24  took the exam?

25     A.  When I first started --
```

```
 1              MR. WOODARD:  Form.
 2   BY MR. ANDREWS:
 3     Q.  You can answer.  When you first started at
 4   Chiari & Ilecki?
 5     A.  I did not take it right away, no.
 6     Q.  To the best of your recollection, it was July
 7   or August of 2015?
 8     A.  Correct.
 9     Q.  Did you pass?
10     A.  Yes.
11     Q.  I figured as much, you're sitting here.
12     A.  I believe I got a 96.5.
13     Q.  Probably better than I would do.
14     A.  We're trained very, very well, very, very
15   thoroughly, especially as far as phone calls go, very,
16   very thoroughly.
17     Q.  Are you aware of any written material that the
18   firm provides to you with respect to FDCPA compliance?
19     A.  We did get -- we did actually get stuff from
20   the third-party that you were able to print out if you
21   did have any further questions, and if we did ever
22   have questions as far as if there was a possibility of
23   something like that, we would always ask.  We would
24   either be asking a paralegal or going directly to the
25   attorney and say, you know, I have a question.
```

Q.  As far as you know, there's no training manual
or some kind of compliance manual that you're given by
Chiari & Ilecki?

A.  There is, I believe it was actually handed out
with the office handbook.  It was what -- I don't know
if you would say -- if I would call it compliance, but
it was definitely rules of the office and how to
handle it.  I would have to look at it again.

Q.  That was your recollection, that you received
this?

A.  Correct.

Q.  Do you know if that manual is updated ever or
we'll call it, you know, the correspondence?

A.  Almost like an office handbook.

Q.  Yeah.

A.  I do believe it is updated and I believe
Antoinette is the one that actually -- she updates it.

Q.  I'm going to have you look at -- you've already
got it in front of you, perfect.  So the document that
was magically placed in front of you, I think it was
left from the last witness, it's Plaintiff's Exhibit
A, and have you seen that document prior to today?

A.  Yes.

Q.  If we look at 165, Chiari 165, and if we look
at 3/19/25 (sic) and the third column for the dates,

1  are you following me?

2       A.   I'm sorry, I was like where are you talking

3  about?  Oh, it actually is that one.  164, 166, 165,

4  there we go.  Okay, sorry.

5       Q.   So it's the third column from the right.  It's

6  got dates 3/19/2005 (sic).  The next one says

7  telephone call, and if we look all the way to the left

8  it's got your name, okay?  So I'm just going to read

9  that comment section, which is the column to the far

10  right.  William Wagner CO, I assume that means called

11  in?

12       A.   Called office.

13       Q.   Called off, O for off makes sense (sic).  Dash,

14  says he is not DBTR.  Says his DOB is in ███ 1950.

15  Dash, very upset he keeps getting LTRS from our

16  office.  Dash, ADV and can send a copy of DL and SS,

17  pound, if he'd like.  Dash, he says for us to just let

18  WI know that he is not DBTR.  Dash, ADV we did E-mail

19  ATNY.  Was that accurate?

20       A.   Correct.

21       Q.   Did you ever notify any attorney of that

22  conversation?

23       A.   I did not because the attorney had already been

24  notified that he had contacted.

25                 MR. WOODARD:  Form.

```
 1    BY MR. ANDREWS:

 2        Q.   So when you say advise we did e-mail attorney,

 3    meaning I'm not -- I'm not going to e-mail attorney,

 4    you're telling Mr. Wagner we already e-mailed an

 5    attorney about your dispute?

 6        A.   Correct, we had already notified an attorney

 7    that he had called.

 8        Q.   Do you know, is there an office procedure or

 9    protocol in place for legal assistants to follow when

10    a person who you think is the debtor or is identified

11    as the debtor is disputing that they are in fact the

12    debtor?

13        A.   If a person calls our office and they claim to

14    not be the debtor or the person that we're trying to

15    get in contact with --

16        Q.   The debt from?

17        A.   Correct.  We ask them to provide some type of

18    proof if they can, whether it be a copy of a driver's

19    license that will have their date of birth, and if

20    they're willing to provide something with, you know,

21    even the last four of their social, and then we can

22    confirm, you know, that it is not the file that we

23    have in our office.  We usually say if it's okay, you

24    know, if they feel comfortable doing that, but other

25    than that -- and then if they're not willing to do
```

1   that, we always notify the attorney.  We always note

2   the file of what they've said.  We always note the

3   file of who's called, and we also notify them that

4   we're going to notify the attorney.

5       Q.  That policy you just testified to that's in

6   place, do you know if that's in writing anywhere?

7       A.  I would have to check, but that is the office

8   policy.  That's always what has been enforced.  If

9   it's, you know, if that is the situation, it is always

10  up to the attorney to handle.

11      Q.  Assuming it's not in writing, how did you come

12  to learn of that policy?

13      A.  We were trained that way.  If that was the case

14  when I was trained on phone calls, if there was a

15  situation that happened like that, we were to note the

16  file, notify the attorney if necessary, and it would

17  be up to the attorney to review the file and go

18  forward and as they see fit.

19      Q.  Were you to notify attorney in every instance

20  of a dispute?

21              MR. WOODARD:  Form.

22              THE WITNESS:  If -- in particular, if they

23  hadn't been notified already, then we could.  If they

24  absolutely insisted, like, we have a lot of times

25  people will call with the same question.  If they

```
 1   absolutely insist we can send multiple messages, but
 2   if the attorney has already been notified, we can tell
 3   them that the attorney has already been notified.
 4   BY MR. ANDREWS:
 5       Q.   Not looking at the notes, would you remember
 6   the 3/19/2015 telephone conversation with Mr. Wagner?
 7       A.   Not necessarily.
 8       Q.   As you sit here today, would you remember it?
 9       A.   Would I remember it word for word exactly?
10       Q.   Can you remember the conversation?  Do you
11   remember parts of it?
12       A.   I remember vaguely.
13       Q.   Do you remember his -- it's okay if you don't,
14   I don't want you to guess -- his tone or his demeanor?
15   I mean, was he calm?  Was he irate?  Was he screaming?
16   Was he yelling?  I mean, was there anything that stood
17   out?
18       A.   I don't remember him being that way, but that's
19   why we note the file when we take the phone call.
20   Because if there was an instance say where you were to
21   ask me today, you know, do you remember who you talked
22   to two weeks ago, we wouldn't necessarily remember it
23   unless it was yesterday, but that's why we note the
24   file when it happens, so that way going back we can
25   see what exactly happened that day and the time that
```

1    we took the phone call.

2        Q.   Is there anything -- you said you vaguely

3    remember I believe.   Is there anything that sticks out

4    in your mind?

5        A.   He might have been frustrated.

6        Q.   Anything else?

7        A.   Not really, no.

8        Q.   Do you remember if you stated to him that he

9    would no longer be contacted by your office?

10       A.   I would never have said that because that's not

11   up to -- it wouldn't have been up to me to decide to

12   stop contacting him.

13       Q.   Do you remember if you told him you would send

14   an E-mail to the attorney?

15       A.   No.   If I had seen in there that it was already

16   sent to the attorney, I wouldn't send another one.   I

17   would note the file so that way when the attorney did

18   review the file they would see okay, he's called.

19   He's called again, you know, and that is also why we

20   note the file too.   So that way when the attorney

21   reviews the file they say okay, you know, he talked to

22   this person and then he called again and talked to

23   this person after that.

24       Q.   In your capacity as legal assistant, do you --

25   do you assist in any way any of the preparation of the

```
1   documents on this matter?

2       A.  Not on that particular file, no.

3               MR. ANDREWS:  Last one, you're all done.

4               MR. WOODARD:  No questions.

5               ***2:39 p.m.***

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    ERRATA SHEET

2

3    PAGE LINE
      8    2
4    change: 2008 should read 2013
        reason: Start date was in April 2013
5    12   6
     change: 3/19/2005 should read 2015
6        reason: incorrect year
     12   13
7    change: off should read office
        reason: _____
8    _____ ____
     change: _____
9        reason: _____
10   _____ ____
     change: _____
11       reason: _____
12   _____ ____
     change: _____
13       reason: _____
14   _____ ____
     change: _____
15       reason: _____
16   _____ ____
     change: _____
17       reason: _____

18
     I   Kristian Brown              hereby certify
19   that I did review and if necessary correct this
     deposition and that the foregoing pages _1_ through
20   18  are a true and accurate recording of said
     proceedings.
21       Kristian Brown

22   Subscribed and sworn to before me this
         day of December                , 20 16 .
23   Victoria E. Hamilton
24       Notary Public          VICTORIA E HAMILTON
                                 NOTARY PUBLIC, STATE OF NEW YORK
                                 LICENSED IN NIAGARA COUNTY
25                               NO. 01HA6349307
                                 MY COMM. EXP. 10/7/2020
```

METSCHL & ASSOCIATES
Buffalo: 716-856-1906   Rochester: 585-697-0969

19

STATE OF NEW YORK
COUNTY OF ERIE

     I, Molly Fenske, a Notary Public in and for the
State of New York, do hereby certify:

     That the witness whose testimony appears herein
before was, before the commencement of his deposition,
duly sworn to testify to the truth, the whole truth
and nothing but the truth; that such testimony was
taken pursuant to notice at the time and place herein
set forth; that said testimony was taken down in
shorthand by me and thereafter under my supervision
transcribed into the English language, and I hereby
certify the foregoing testimony is a full, true and
correct transcription of the shorthand notes so taken.

     I further certify that I am neither counsel for
nor related to any parties to said action, nor in
anywise interested in the outcome thereof.

     IN WITNESS WHEREOF, I have hereunto subscribed my
name this 11th day of November, 2016.




                    _Molly K. Fenske_
                    Notary Public
                    State of New York