UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILLIAM J. WAGNER,

Plaintiff,

-vs-

CHIARI & ILECKI, LLP,

Defendant.

---

Docket No. 15-cv-633-FPG

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION
FOR A PROTECTIVE ORDER, FOR IN LIMINE
RELIEF, AND TO DISQUALIFY COUNSEL**

Terrence M. Connors, Esq.
Paul A. Woodard, Esq.
**CONNORS LLP**
Attorneys for Defendant
1000 Liberty Building
Buffalo, New York 14202
(716) 852-5533
tmc@connorsllp.com
paw@connorsllp.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT.........................................................................................................................3

    I.    THIS COURT SHOULD GRANT CHIARI & ILECKI
        SUMMARY JUDGMENT AND DENY THIS MOTION AS
        MOOT. .............................................................................................. 3

    II.   THIS COURT SHOULD DENY THE MOTION IN LIMINE
        BECAUSE MR. ANDREWS' PRE-LAWSUIT
        COMMUNICATIONS WITH CHIARI & ILECKI ARE
        RELEVANT AND ADMISSIBLE. .......................................................... 3

    III.  THIS COURT SHOULD DENY THE MOTION FOR A
        PROTECTIVE ORDER BECAUSE CHIARI & ILECKI IS
        ENTITLED TO DEPOSE MR. ANDREWS REGARDING HIS
        COMMUNICATIONS. .......................................................................... 11

    IV.  THIS COURT SHOULD DENY THE MOTION TO
        DISQUALIFY BECAUSE NO CONFLICT EXISTS............................ 15

CONCLUSION.....................................................................................................................21

## PRELIMINARY STATEMENT

Chiari & Ilecki, LLP, sought to collect an actual debt from the actual debtor. There was no violation of the FDCPA, and even if there was (there was not), the bona fide error defense applies to shield the reasonable and good-faith efforts of Chiari & Ilecki.

Prior to commencing this action, plaintiff's counsel, Seth Andrews, Esq., contacted Chiari & Ilecki to attempt to resolve the underlying identity dispute. One of Chiari & Ilecki's attorneys, Melissa Overbeck, Esq., explained to Mr. Andrews that her firm could not simply accept the plaintiff's unsubstantiated claim of mistaken identity. Chiari & Ilecki needed verifiable proof of identity, such as a driver's license. Mr. Andrews indicated that he appreciated Chiari & Ilecki's need for such proof and that he would attempt to convince his client to produce a copy of his license.

For obvious reasons, Mr. Andrews' pre-lawsuit communications with Chiari & Ilecki are relevant to this action and, in particular, Chiari & Ilecki's bona fide error defense. The plaintiff confirmed that by listing Mr. Andrews as someone – indeed one of only three people – with relevant knowledge or information. Therefore, Chiari & Ilecki is entitled to depose Mr. Andrews and offer evidence of his pre-lawsuit communications with Chiari & Ilecki if this matter proceeds to trial.

Because the plaintiff has no basis to avoid Mr. Andrews' deposition, he instead argues that Connors LLP should be disqualified as defense counsel because its predecessor, Connors & Vilardo, LLP, formerly represented Mr. Andrews' firm, The Law Offices of Kenneth Hiller, PLLC, and its principal, Kenneth Hiller, Esq.

But neither Mr. Hiller nor his firm is a party to this action, and, thus, they have no cognizable "interest" in this proceeding so as to give rise to a possible conflict of interest.  And beyond that, the previous representation of the Hiller firm ended years ago and involved completely unrelated matters that have no bearing whatsoever on Mr. Andrews' pre-lawsuit communications with Chiari & Ilecki here. In fact, at the onset of this litigation, Mr. Hiller himself agreed that there is no conflict and expressly consented in writing to Connors LLP's representation of Chiari & Ilecki.  Therefore, the plaintiff's motion should be denied.

## ARGUMENT

### I.    THIS COURT SHOULD GRANT CHIARI & ILECKI SUMMARY JUDGMENT AND DENY THIS MOTION AS MOOT.

The plaintiff's motion is first and foremost a motion in limine.  Specifically, the plaintiff asks this Court to preclude Chiari & Ilecki from offering at trial, *inter alia*, Mr. Andrews' pre-lawsuit communications with Chiari & Ilecki or plaintiff's counsel's procedures.  In the alternative, the plaintiff asks this Court to prohibit Chiari & Ilecki from deposing Mr. Andrews and disqualify Connors LLP as defense counsel.  In other words, the plaintiff's entire motion is rendered moot if this case does not proceed to trial.

Although Chiari & Ilecki should have had the opportunity to depose Mr. Andrews first, the plaintiff has moved for summary judgment and thereby forced Chiari & Ilecki to cross-move for summary judgment as well.  As set forth in its motion papers, Chiari & Ilecki is entitled to summary judgment on each of the plaintiff's claims.  Therefore, this case should not proceed to trial, and this Court should deny the present motion as moot.

### II.   THIS COURT SHOULD DENY THE MOTION IN LIMINE BECAUSE MR. ANDREWS' PRE-LAWSUIT COMMUNICATIONS WITH CHIARI & ILECKI ARE RELEVANT AND ADMISSIBLE.

The plaintiff asks this Court to preclude Chiari & Ilecki from mentioning five topics at trial:  (1) the plaintiff's claim for attorney's fees; (2) plaintiff's counsel's procedures in investigating, filing, and litigating consumer lawsuits; (3) the number of consumer lawsuits filed by plaintiff's counsel; (4) Mr. Andrews' pre-lawsuit communications with Chiari & Ilecki; and (5) plaintiff's counsel's motivation in

filing this lawsuit. *See* Plaintiff's Memorandum of Law (Doc. 19-1) at 11. To be perfectly clear, Chiari & Ilecki has no intention of raising any of those issues at trial except for Mr. Andrews' pre-lawsuit communications. Therefore, except for that topic, Chiari & Ilecki does not oppose the plaintiff's motion in limine.

With respect to the request to preclude any mention of Mr. Andrews' pre-lawsuit communications, however, the plaintiff's motion should be denied. As the plaintiff recognizes, "[e]vidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Wechsler v. Hunt Health Systems, Ltd.*, 381 F. Supp. 2d 135, 140 (S.D.N.Y. 2003). And, here, Mr. Andrews' testimony regarding his communications with Chiari & Ilecki is both relevant and admissible.

The crux of the plaintiff's claims in this action is that Chiari & Ilecki violated the FDCPA by attempting to collect a debt from the plaintiff that he did not owe. As discussed in detail in Chiari & Ilecki's cross-motion for summary judgment, Chiari & Ilecki adamantly disputes that it attempted to collect the debt at issue from anyone but the debtor himself, and, thus, Chiari & Ilecki did not violate the FDCPA.

Even if it did, however, the bona fide error defense immunizes Chiari & Ilecki from liability. *See* 15 U.S.C. § 1692k(c). To establish the defense, Chiari & Ilecki is required to prove, *inter alia*, that (1) the alleged FDCPA violation was "not intentional," and (2) "the error resulting in a violation was made in good faith" and

"objectively reasonable." *See Arnold v. Bayview Loan Servicing, LLC*, 659 F. App'x 568, 570-71 (11th Cir. 2016).

Here, Mr. Andrews' pre-lawsuit communications with Chiari & Ilecki are relevant to both of those issues. On or about June 17, 2015, a process server handed the plaintiff – William J. Wagner – a subpoena duces tecum that Chiari & Ilecki had addressed to "William J. Wagner Jr." – the debtor. *See* Declaration of Melissa Overbeck, Esq., dated March 2, 2017 ("Overbeck Decl."), *Exhibit O* (Subpoena Duces Tecum); *Exhibit Q* (Affidavit of Service). In response, Mr. Andrews called Ms. Overbeck, claiming that the plaintiff was not the debtor. *See* Overbeck Decl., ¶ 68.

Ms. Overbeck explained that Chiari & Ilecki could not simply accept the plaintiff's unsubstantiated word, and Mr. Andrews indicated that he understood and appreciated the firm's position. *See id.*, ¶ 69. Therefore, Ms. Overbeck requested a copy of the plaintiff's driver's license, and Mr. Andrews said that he would try convince his client to produce it. *See id.*, ¶¶ 70-71. Ms. Overbeck agreed, in turn, to send Mr. Andrews a copy of a lease that the debtor had signed so that each of the attorneys could attempt to verify the plaintiff's identity by comparing the debtor's signature on the lease to the plaintiff's signature on his driver's license. *See id.*, ¶ 72. And Ms. Overbeck also agreed to a general adjournment of the pending subpoena duces tecum while she and Mr. Andrews attempted to resolve the identity dispute. *See id.*, ¶¶ 73-74; *Exhibit R* (Facsimile to Andrews).

In sum, Mr. Andrews' discussions with Ms. Overbeck confirm that Chiari & Ilecki was actively attempting to confirm the plaintiff's identity. And there can be no question that Chiari & Ilecki was attempting to collect the debt at issue from only the debtor because Chiari & Ilecki immediately agreed to adjourn the subpoena duces tecum until the identity dispute could be resolved. Thus, Mr. Andrews' communications with Ms. Overbeck are powerful evidence that Chiari & Ilecki did not intend to violate the FDCPA.

Furthermore, the fact that Mr. Andrews acknowledged understanding that Chiari & Ilecki could not simply accept the plaintiff's unsubstantiated claim of mistaken identity confirms that it was objectively reasonable for Chiari & Ilecki to question the plaintiff's claims. And the fact that Mr. Andrews agreed to try to convince the plaintiff to produce his driver's license similarly shows that it was objectively reasonable for Chiari & Ilecki to request such proof of his identity. Therefore, Mr. Andrews' communications with Ms. Overbeck are also powerful evidence that any alleged FDCPA violation resulted from a bona fide error. And, thus, there can be no question that Mr. Andrews' communications are relevant to Chiari & Ilecki's bona fide error defense.

In fact, in his responses to Chiari & Ilecki's interrogatories, **the plaintiff himself expressly stated that Mr. Andrews has relevant information**. Specifically, Chiari & Ilecki's Interrogatory No. 1 asked the plaintiff to "[i]dentify each and every person who may have information or knowledge relevant to this action." *See* Declaration of Paul A. Woodard, Esq. dated March 2, 2017 ("Woodard Decl."),

*Exhibit K* at 2.  The plaintiff responded with three names:  "Plaintiff, **Seth J. Andrews, Esq.**, and Kenneth R. Hiller, Esq."  *See id.* (emphasis added).  Those interrogatory responses were apparently signed by Mr. Andrews and verified by the plaintiff.  *See id.* at 8-9.

The plaintiff suggests that evidence of Mr. Andrews' pre-lawsuit communications with Chiari & Ilecki has little probative value.  *See* Plaintiff's Memorandum of Law at 6.  But, to the contrary, it is difficult to imagine what better evidence there could be of Chiari & Ilecki's intentions than proof that Chiari & Ilecki repeatedly attempted to verify the plaintiff's identity and immediately agreed to adjourn the subpoena duces tecum until the identity dispute had been resolved.  And it is equally difficult to imagine what better evidence there could be of the reasonableness of Chiari & Ilecki's requests for the plaintiff's driver's license than plaintiff's acknowledgment of the firm's need for such information.

The plaintiff contends that the reasonableness of Chiari & Ilecki's requests for a driver's license is not relevant to this case.  *See* Plaintiff's Memorandum of Law at 6.  But that too is incorrect.  The plaintiff's chief complaint is that on June 17, 2015, he was handed a subpoena duces tecum addressed to the debtor **after** the plaintiff already had called Chiari & Ilecki claiming that he was not the debtor in February and March 2015.  According to the plaintiff, Chiari & Ilecki should have stopped looking for the debtor at 5419 Roberts Road (the plaintiff's address) then and there.  But the reasons why Chiari & Ilecki continued to believe that the debtor lived at 5419 Roberts Road – and proceeded to have the subpoena duces tecum

served on the debtor at that address – are that (1) Chiari & Ilecki's research indicated that 5419 Roberts Road was, in fact, the debtor's address, and (2) despite claiming that he was not the debtor, **the plaintiff refused to provide a copy of his driver's license or other verifiable, documentary proof of his identity**. Thus, the reasonableness of Chiari & Ilecki's request for the plaintiff's driver's license is directly relevant to whether the bona fide error defense shields Chiari & Ilecki from liability for any alleged FDCPA violation based on the June 2015 subpoena.

The plaintiff also argues that evidence of Mr. Andrews' communications will cause juror confusion for a host of reasons, but none of them is compelling. Most notably, the plaintiff suggests that "if Mr. Andrews was called as a witness at trial, or if his deposition testimony were introduced, it would confuse the jury" – presumably because of Mr. Andrews' status as plaintiff's counsel. *See* Plaintiff's Memorandum of Law at 14. But that is not Chiari & Ilecki's fault. The plaintiff chose to have Mr. Andrews represent him in connection with both (1) the underlying identity dispute and (2) this derivative FDCPA action. Thus, the plaintiff assumed the risk that Mr. Andrews might be called as a fact witness – and, in fact, disclosed him as someone with relevant information. *See* Woodard Decl., *Exhibit K* at 2. Simply put, Chiari & Ilecki should not be punished for the plaintiff's decision.

Indeed, the New York Rules of Professional Conduct make it clear that the appropriate method for avoiding juror confusion in this situation would not be to preclude the admission of relevant evidence; rather, it would be to disqualify plaintiff's counsel. Rule 3.7(a) provides that a "lawyer shall not act as advocate

before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact" unless "the testimony relates solely to an uncontested issue" or some other enumerated exception applies. *See* N.Y. Rules of Professional Conduct, 22 NYCRR § 1200.00, Rule 3.7(a). And, in fact, under Rule 3.7(b), the lawyer's entire firm may be prohibited from appearing if the lawyer "is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client." *See id.*, Rule 3.7(b).

At this time, we are not suggesting that such a conflict exists because we are hopeful that there will not be any "significant issue of fact" concerning Mr. Andrews' communications with Chiari & Ilecki. Indeed, that is precisely why we proposed using requests for admission that could be read to the jury in lieu of calling Mr. Andrews as a witness. Otherwise, if Mr. Andrews' testimony would confuse a jury, Rule 3.7 is clear that the appropriate remedy is disqualification of counsel – not exclusion of relevant testimony.

Finally, the plaintiff suggests that evidence of Mr. Andrews' pre-lawsuit communications with Chiari & Ilecki should be excluded because Chiari & Ilecki's true intent is to disparage plaintiff's counsel. To be perfectly clear, it is not. Neither Chiari & Ilecki nor Connors LLP practices law that way.

Apparently, the basis of the plaintiff's concern is that Chiari & Ilecki requested that he admit that after speaking with Ms. Overbeck, "Mr. Andrews never sent Chiari & Ilecki a copy of the plaintiff's driver's license and never contacted Chiari & Ilecki again," and, instead, he "filed this lawsuit against Chiari

& Ilecki." *See* Woodard Decl., *Exhibit Y* at 3 (Request Nos. 9-10).  But the purpose of those requests was not to cast aspersions on plaintiff's counsel.  The purpose was to tell Chiari & Ilecki's story.

Chiari & Ilecki has the right to narrative integrity.  That is, Chiari & Ilecki is entitled to tell its story to the jury and to tell it exactly as it wishes.  *See generally Old Chief v. United States*, 519 U.S. 172 (1997).  And, here, the resolution of the underlying identity dispute – or the lack thereof – is part of Chiari & Ilecki's story. A jury might speculate that this lawsuit was filed because Chiari & Ilecki continued to direct collection efforts at the debtor at 5419 Roberts Road even after receiving the requested documentary proof of the plaintiff's identity.  Chiari & Ilecki ought to be able to dispel such speculation.

To reiterate, Chiari & Ilecki has no intention of disparaging plaintiff's counsel or delving into their internal procedures.  That is why Chiari & Ilecki does not object to the plaintiff's motion in limine with respect to those topics.  Rather, Chiari & Ilecki seeks only to offer evidence regarding Mr. Andrews' relevant pre-lawsuit communications with Chiari & Ilecki regarding the plaintiff's identity.  The plaintiff has failed to demonstrate that such "evidence is clearly inadmissible on all potential grounds." *See Wechsler*, 381 F. Supp. 2d at 140.  Therefore, this Court should deny the plaintiff's motion in limine with respect to Mr. Andrews' communications.

III.   **THIS COURT SHOULD DENY THE MOTION FOR A PROTECTIVE ORDER BECAUSE CHIARI & ILECKI IS ENTITLED TO DEPOSE MR. ANDREWS REGARDING HIS COMMUNICATIONS.**

The plaintiff next asks this Court to issue "a protective order finding that Plaintiff should not be required to answer Defendant's First Set of Requests for Admission, and prohibiting Defendant from deposing Plaintiff's attorney, Seth Andrews, as a non-party witness." *See* Plaintiff's Memorandum of Law at 11. But this request should be denied as well.

As an initial matter, Chiari & Ilecki served its requests for admission on the plaintiff in connection with the parties' agreement to explore alternatives to deposing Mr. Andrews. *See* Woodard Decl., *Exhibits W, X*. When plaintiff's counsel objected to the requests for admission, we indicated that we would "withdraw them and ask [him] to propose a new date for Mr. Andrews' deposition." *See* Woodard Decl., *Exhibit BB*. To the extent clarification is necessary, Chiari & Ilecki's requests for admission are withdrawn. Therefore, the plaintiff's motion for a protective order concerning the requests for admission should be denied as moot.

As for Mr. Andrews' deposition, the plaintiff first argues that the deposition notice was untimely. *See* Plaintiff's Memorandum of Law at 12. But that is incorrect. This Court ordered that fact discovery be completed by November 8, 2016. *See* Doc. 17. As the plaintiff notes, Chiari & Ilecki selected that date – November 8, 2016 – for Mr. Andrews' deposition and served notice, via email and U.S. mail, on October 18, 2016 – twenty-one days in advance. *See* Woodard Decl., *Exhibit L*. Therefore, Chiari & Ilecki provided timely notice of Mr. Andrews'

deposition under Local Rule 30(a).[1]  *See* Local R. Civ. P. 30(a) ("Absent agreement of the parties or Court order, each notice to take the deposition of a party or other witness shall be served at least twenty-one (21) days prior to the date set for examination.").

The plaintiff also argues that a protective order is warranted because Chiari & Ilecki did not serve Mr. Andrews with a subpoena by October 18, 2016 – twenty-one days in advance of his deposition.  *See* Plaintiff's Memorandum of Law at 12. This argument fails as well.  As a professional courtesy, we called and left two voicemails for Mr. Andrews before noticing his deposition.  *See* Woodard Decl., ¶¶ 55-56.  When he did not immediately respond, we served notice of his deposition, but, again, in the spirit of cooperation, we inquired whether he would demand a subpoena instead of simply showing up at his office and potentially embarrassing him.  *See* Woodard Decl., *Exhibit L.*  If Mr. Andrews had ignored the deposition notice or requested a subpoena, we would have served one.

The plaintiff suggests that under Local Rule 30(a), a subpoena could not have been timely served after October 18, 2016.  *See* Plaintiff's Memorandum of Law at 12.  But to the contrary, Local Rule 30(a) governs deposition notices – not subpoenas.  *See* Local R. Civ. P. 30(a).  And Rule 45 – which does govern subpoenas – does not require twenty-one days' notice.  *See* Fed. R. Civ. P. 45.  Indeed, the

---

[1] If the plaintiff is suggesting that under Rule 6(d), three days should have been added for service by mail, he is mistaken.  Rule 6(d) "does not alter a deadline for a party to serve a deposition notice under the Local Rules."  *Ernest v. Lockheed Martin Corp.*, No. 07-cv-2038, 2008 U.S. Dist. LEXIS 43734, at *4-5 (D. Col. June 3, 2008); *accord Scott v. Palmer*, No. 09-cv-1329, 2014 U.S. Dist. LEXIS 165655, at *4-5 (E.D. Cal. Nov. 25, 2014).

default time period for responding to at least a document subpoena is only fourteen days, *see* Fed. R. Civ. P. 45(d)(2)(B), and even less notice may be deemed reasonable for a deposition, *see, e.g., Subair Systems, LLC v. Precisionaire Systems, Inc.*, No. 08-cv-60570, 2008 WL 1914876, at *2 n.4 (S.D. Fla. Apr. 26, 2008) ("ten days notice to the deponents . . . could be deemed 'reasonable'"). Therefore, Chiari & Ilecki could have – and would have – timely served a subpoena if Mr. Andrews had requested one (or ignored the deposition notice).

Within two hours of Chiari & Ilecki serving notice of Mr. Andrews' deposition, however, plaintiff's counsel responded by demanding that Connors LLP "withdraw as counsel in this case." *See* Woodard Decl., *Exhibit M*. It therefore was immediately apparent that the issue of Mr. Andrews' deposition would have to be resolved either by agreement of the parties or judicial intervention. We recognized that if we proceeded to subpoena Mr. Andrews, it would not have facilitated the parties' negotiations.

Over the next several weeks, the parties had ongoing discussions regarding Mr. Andrews' deposition, but plaintiff's counsel never once suggested that a subpoena was required. *See Exhibits M – BB*. Therefore, the plaintiff should be estopped from avoiding Mr. Andrews' deposition on that ground. And, furthermore, if the plaintiff does not have such privity with Mr. Andrews that a subpoena is required for Mr. Andrews' deposition, then the plaintiff certainly also does not have standing to assert Mr. Andrews' right to require a subpoena.

In voluntarily appearing as counsel for the plaintiff in this action, Mr. Andrews has submitted himself to this Court's jurisdiction, and, therefore, this Court has the authority to order his deposition. And, ultimately, all that the plaintiff's subpoena argument proves is that he cannot avoid Mr. Andrews' deposition on the merits.

Indeed, the plaintiff vaguely asserts that Mr. Andrews' testimony is "not relevant to this case" and "would confuse the jury." *See* Plaintiff's Memorandum of Law at 14. But those arguments fail for the reasons set forth above.

Next, the plaintiff contends that Mr. Andrews' "deposition risks interfering with the attorney-client relationship." *See id.* But federal law is clear that "the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition." *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003). And, here, the plaintiff has failed to identify any meaningful risk that Mr. Andrews' limited deposition would infringe on the attorney-client privilege. The plaintiff speculates that Chiari & Ilecki "might make inquiry" regarding "why Plaintiff did not supply his Social Security card or driver[']s license" and thereby "risk intrusion into Mr. Andrews['] confidential communications with the Plaintiff." *See* Plaintiff's Memorandum of Law at 14. But Chiari & Ilecki already has agreed to limit to Mr. Andrews' deposition to his pre-lawsuit communications with Chiari & Ilecki. Of course, such communications would not be privileged or confidential.

Accordingly, the plaintiff's motion for a protective order concerning Mr. Andrews' deposition should be denied.

## IV.    THIS COURT SHOULD DENY THE MOTION TO DISQUALIFY BECAUSE NO CONFLICT EXISTS.

Finally, the plaintiff argues that if his motion in limine is not granted, Connors LLP should be disqualified as defense counsel.  As the plaintiff reasons, Connors & Vilardo, LLP – the predecessor of Connors LLP – represented the Hiller firm in two previous actions.  But that does not give rise to a conflict here because neither Mr. Hiller nor his firm is a party to this action, and, furthermore, this action does not have even a remote connection to the prior representation.  In fact, Mr. Hiller himself has acknowledged that there is no conflict of interest.  Therefore, the plaintiff's request for disqualification should be denied as well.

"Motions to disqualify counsel have long been disfavored in this Circuit." *Agilent Techs., Inc. v. Micromuse, Inc.*, No. 04-cv-3090, 2004 U.S. Dist. LEXIS 20723, at *28 (S.D.N.Y. Oct. 19, 2004).  "Indeed, the Court of Appeals has warned courts not to grant motions to disqualify counsel indiscriminately since 'disqualification has a serious and immediate adverse effect by denying the client his choice of counsel.'"  *See Spinner v. City of N.Y.*, No. 01-cv-2715, 2002 U.S. Dist. LEXIS 263901, at *26 (E.D.N.Y. May 22, 2002) (internal citations omitted) (quoting *Society for Good Will to Retarded Children, Inc. v. Carey*, 466 F. Supp. 722, 724 (E.D.N.Y. 1979).  Therefore, "the Second Circuit has cautioned courts that disqualification of an attorney is only appropriate where there has been a clear violation of the Code of Professional Responsibility that leads to a 'significant risk of trial taint.'"  *Id.*, at *28 (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.3d 746, 748 (2d Cir. 1981)).

Where, as here, a party seeks disqualification based upon successive representation, the movant must establish three elements:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of the client.

*See United States v. Prevezon Holdings Ltd.*, 839 F. 3d 227, 239 (2d Cir. 2016) (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)); *accord* N.Y. Rules of Professional Conduct, 22 NYCRR § 1200.00, Rule 1.9(a).  Here, although we are unaware of any "relevant privileged information" in our possession, the Court need not reach that issue because the plaintiff clearly cannot establish the first two requirements for disqualification.

First, the moving party – plaintiff William J. Wagner – is not and never has been a client of Connors LLP.  Rather, the plaintiff seeks Connors LLP's disqualification based upon our prior representation of the Hiller firm – plaintiff's counsel.  But the test for disqualification does not depend on whether the moving party's counsel is a former client of the adverse party's counsel.  Rather, the moving party himself must be a former client, and, here, there is no question that Connors LLP has never represented the plaintiff.  *See Prevezon*, 839 F. 3d at 239.

Indeed, at the outset of this litigation, Mr. Hiller inquired whether there was a conflict given our previous representation of him and his firm.  *See* Woodard Decl., *Exhibit N.*  We took the time to research the issue and provide a detailed, written

explanation that there was no conflict because Mr. Hiller and his firm are merely the plaintiff's attorneys – not the plaintiffs themselves – and therefore they do not have an interest in this action so as to trigger a conflict of interest analysis under Rule 1.9(a) of the New York Rules of Professional Conduct.  *See* Woodard Decl., *Exhibit O*.  **Mr. Hiller reviewed our assessment, agreed that it "seems reasonable," and confirmed that he had "no objection to [Connors LLP] representing Chiari & Ilecki."**  *See* Woodard Decl., *Exhibit P* (emphasis added).

In moving to disqualify Connors LLP, the plaintiff simply glosses over the distinction between a party's interest in an action and a party's attorney's interest in the action.  But that distinction is key.  The test for disqualification requires that the "moving party" – not his attorney – "is a former client of the adverse party's counsel."  *See Prevezon*, 839 F. 3d at 239.  The plaintiff cannot establish that prerequisite for disqualification, and for that reason alone, the plaintiff's motion should be denied.

Nor can the plaintiff show that "there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit."  *See id.*  "A 'substantial relationship' exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation."  *Id.* (quoting *Agilent Techs.*, 2004 U.S. Dist. LEXIS 20723, at *29-30).  "Under this standard, proof of substantial similarity must be 'patently clear' to warrant disqualification."  *Agilent Techs.*, 2004 U.S. Dist. LEXIS

20723, at *29 (quoting *Decora Inc. v. DW Wallcovering, Inc.*, 899 F. Supp. 132, 136 (S.D.N.Y. 1995)).

The plaintiff's theory of why there is a "substantial relationship" between this action and Connors LLP's prior representation of the Hiller firm is quite simple:

> [T]he *Clayson* and *Ford* cases share in common with this case claims made by a Defendant that that Plaintiff's counsel acted unethically in its pre-suit activities, preparing the suit, and acting in their own selfish interests to obtain attorney[']s fees at the expense of their client's interests.

*See* Plaintiff's Memorandum of Law at 22.  But once again, neither Chiari & Ilecki nor Connors LLP has any intention of advancing such a claim here.

To be perfectly clear, we do not oppose the plaintiff's request to exclude evidence of plaintiff's counsel's internal procedures or motivations for filing this lawsuit.  We only seek to depose Mr. Andrews – and, if this matter proceeds to trial, offer his testimony – regarding his pre-lawsuit communications with Chiari & Ilecki.  Plaintiff's counsel's internal procedures and personal motivations have no bearing on that topic; all that is at issue is what Mr. Andrews and Chiari & Ilecki communicated (or did not communicate) to one another.

Thus, the plaintiff has failed to demonstrate that it is "patently clear" that there is a substantial relationship between the present action and Connors LLP's previous representation of the Hiller firm.  In fact, it is "patently clear" that there is no such relationship.  And for that reason as well, the plaintiff's motion to disqualify must be rejected.

Finally, the plaintiff waived any right to seek disqualification long ago.  As noted above, Mr. Hiller raised the issue of a potential conflict at the outset of this

litigation.  *See* Woodard Decl., *Exhibit N*.  We promptly examined the issue,

concluded there was no conflict, and explained why to Mr. Hiller.  *See* Woodard

Decl., *Exhibit O*.  **Mr. Hiller agreed and expressly confirmed that he had "no**

**objection to [Connors LLP] representing Chiari & Ilecki."**  *See* Woodard Decl.,

*Exhibit P* (emphasis added).  He cannot simply claw back his consent now.

Indeed, nothing has changed since that time.  From the very beginning of this

case, the plaintiff and his counsel knew – or should have known – that Mr. Andrews

might be called to testify as a fact witness.  In fact, in its interrogatory responses

served on May 23, 2016, Chiari & Ilecki unequivocally disclosed that "Mr. Andrews

may testify regarding his communications with defendant, defendant's requests for

verifiable proof of plaintiff's identity, and other information relevant to the bona

fide error defense."  *See* Woodard Decl., *Exhibit J* at 19-20 (Response to

Interrogatory No. 17).

Over the next five months, the parties completed fact discovery, and the

plaintiff never once objected to the designation of Mr. Andrews as a witness.  To the

contrary, the plaintiff responded by cross-listing Mr. Andrews as someone with

knowledge or information relevant to the case.  *See* Woodard Decl., *Exhibit K* at 2

(Response to Interrogatory No. 1).  At this late hour, Chiari & Ilecki would be

substantially prejudiced by the plaintiff's delay in seeking to disqualify its

attorneys, and, therefore, the plaintiff must be deemed to have waived any right to

seek disqualification.  *See Hinterberger v. Catholic Health Sys., Inc.*, 2013 WL

2250591, at *27 (W.D.N.Y. May 21, 2013) ("Defendants' unexcused delay in

seeking . . . disqualification amply supports that Defendants have acquiesced . . . and waived their purported objection."); *see also Norman v. Niagara Mohawk Power Corp.,* 873 F.2d 634, 639 (2d Cir.1989).  For that reason also, this Court should deny the plaintiff's motion.

<u>CONCLUSION</u>

Mr. Andrews' pre-lawsuit communications with Chiari & Ilecki are clearly relevant to Chiari & Ilecki's bona fide error defense.  Indeed, even the plaintiff himself has identified Mr. Andrews as someone with relevant information.  And Connors LLP's previous representation of plaintiff's counsel has absolutely no bearing on Mr. Andrews' limited role as a fact witness in this case.  Therefore, this Court should deny the plaintiff's motion for a protective order, for in limine relief, and to disqualify Connors LLP.

Dated:      Buffalo, New York
            March 2, 2017


                                    s/Paul A. Woodard
                                   Terrence M. Connors, Esq.
                                   Paul A. Woodard, Esq.
                                   **CONNORS LLP**
                                   Attorneys for Defendant
                                   1000 Liberty Building
                                   Buffalo, New York 14202
                                   (716) 852-5533
                                   tmc@connorsllp.com
                                   paw@connorsllp.com