UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

WILLIAM J. WAGNER,

        Plaintiff,                      **DECLARATION**

    -vs-                                  Docket No. 15-cv-633-FPG

CHIARI & ILECKI, LLP,

        Defendant.
───────────────────────────────────────

        PAUL A WOODARD, ESQ., declares under penalty of perjury, pursuant to 28 U.S.C. § 1746:

    1.    I am an attorney at law duly licensed to practice my profession in the State of New York and an associate with the law firm, CONNORS LLP, attorneys for the defendant, CHIARI & ILECKI, LLP, in this matter. As such, I am familiar with the facts and circumstances involved in this litigation.

    2.    I submit this declaration in opposition to the plaintiff's motion for a protective order, motion in limine, and motion to disqualify counsel.

    3.    Chiari & Ilecki, LLP, is a law firm that primarily represents creditors in litigation involving real estate, mortgages, and retail and commercial collections across Western and Upstate New York.

    4.    On July 15, 2015, the plaintiff commenced this action against Chiari & Ilecki by filing the complaint, a copy of which is attached as *Exhibit A*.

    5.    The complaint presents a single cause of action for violation of the Federal Debt Collection Practices Act ("FDCPA"). *See Exhibit A*, ¶¶ 23-24.

6. According to the plaintiff, Chiari & Ilecki "violated the FDCPA by sending him letters in an attempt to collect a debt that Plaintiff does not owe, and subsequently served him with a subpoena for a debtor exam despite the fact that he is not the judgment debtor." *See* Affirmation of Kenneth R. Hiller, Esq., dated December 15, 2016 ("Hiller Aff."), ¶ 3.

7. On September 11, 2015, Chiari & Ilecki filed and served its answer, a copy of which is attached as *Exhibit B*.

8. As set forth in the answer, Chiari & Ilecki maintains that it has not violated the FDCPA. *See Exhibit B*, ¶ 23.

9. And even if the firm did technically violate the FDCPA, it certainly was unintentional and the result of a bona fide error. *See id.*, ¶ 35.

10. Therefore, Chiari & Ilecki is shielded from liability under the bona fide error defense. *See* 15 U.S.C. § 1692k(c).

11. Simply put, the plaintiff cannot prevail on the merits of his FDCPA claim, and this Court should grant Chiari & Ilecki's pending summary judgment motion in its entirety.

12. This declaration, however, responds to the plaintiff's motion for a protective order, for in limine relief, and to disqualify our law firm.

13. The plaintiff's motion presents three fairly straightforward and simple issues.

14. First, is evidence that Chiari & Ilecki attempted to verify the plaintiff's identity before requiring compliance with the subpoena duces tecum at issue

relevant and admissible in connection with Chiari & Ilecki's bona fide error defense?

15. Second, is Chiari & Ilecki entitled to depose one of the plaintiff's attorneys, Seth J. Andrews, Esq., on the narrow issue of his pre-lawsuit communications with Chiari & Ilecki when (1) Chiari & Ilecki spoke with Mr. Andrews regarding attempting to verify the plaintiff's identity, and (2) in his interrogatory responses, the plaintiff himself has identified Mr. Andrews as someone with relevant knowledge or information?

16. Third, is our firm, Connors LLP, entitled to continue representing Chiari & Ilecki in this action when (1) we represented plaintiff's counsel (the Law Offices of Kenneth Hiller PLLC and its principal, Kenneth R. Hiller, Esq.) several years ago in two completely unrelated actions; (2) Mr. Hiller already consented to our representation of Chiari & Ilecki at the outset of this litigation; and (3) as a result, we have represented Chiari & Ilecki up through the very end of fact discovery?

17. As set forth below and in the attached memorandum of law, the obvious answer to each of these questions is the correct one:   Yes.

18. Therefore, this Court should deny the plaintiff's motion.

## Factual Background

19. Resolution of the plaintiff's request for a protective order and in limine relief requires a brief recitation of the events that gave rise to this litigation.

20. The following statement of facts is made upon information and belief and based primarily upon information and documents provided by Chiari & Ilecki, including its events sheet for the debt at issue, a redacted copy of which is attached as *Exhibit C*.

21. We also incorporate by reference the declaration of Melissa Overbeck, Esq., dated March 2, 2017, ("Overbeck Decl.") and the other papers submitted in opposition to the plaintiff's motion for summary judgment and in support of Chiari & Ilecki's cross-motion for summary judgment.

22. Chiari & Ilecki was retained by M.J. Peterson to collect a debt ("the debt") owed by an individual named William J. Wagner, Jr. ("the debtor"). *See Exhibit A*.

23. On February 9, 2015, Melissa Overbeck, Esq., reviewed the information in her office's file and performed skip tracing, including by running Lexis and Real Info reports, to attempt to determine the debtor's current address. *See* Overbeck Decl., ¶ 10.

24. Based upon those reports, she concluded that the debtor lived at 5419 Roberts Road, Hamburg, New York 14075 ("5419 Roberts Road"). *See id.*, ¶¶ 11-16.

25. Therefore, Ms. Overbeck prepared an information subpoena and the accompanying notice required under CPLR § 5222 to be mailed to the debtor. *See id.*, ¶¶ 32-35  Copies of the information subpoena and CPLR § 5222 notice are attached as *Exhibits D* and *E*, respectively.

26. The CPLR § 5222 notice and information subpoena were mailed to the debtor – William J. Wagner, Jr. – at 5419 Roberts Road on February 9 and 11, 2015, respectively. *See* Overbeck Decl., ¶ 36. A copy of the affidavit of service for the information subpoena is attached as *Exhibit F*.

27. Thereafter, on February 12, 2015, and March 19, 2015, an individual identifying himself as "William Wagner" – apparently, the plaintiff in this action – called Chiari & Ilecki twice. *See Exhibit C* at 2.

28. During these conversations, the plaintiff claimed that (1) he lived at 5419 Roberts Road; (2) he was not a "Jr."; and (3) he was not the debtor. *See id.*

29. Chiari & Ilecki invited the plaintiff to send the firm a copy of his driver's license so that they could verify his identity, but he declined to do so. *See id.*

30. On or about May 11, 2015, the information subpoena was returned to Chiari & Ilecki unclaimed by the debtor. *See id.*

31. Therefore, the firm proceeded to prepare a subpoena duces tecum to take the debtor's deposition. *See id.*

32. In light of the plaintiff's claims that he was not the debtor, Ms. Overbeck once again performed file review and skip tracing, including running a Lexis search, and once again concluded that the debtor lived at 5419 Roberts Road. *See* Overbeck Decl., ¶¶ 54-56.

33. Therefore, while she addressed the subpoena duces tecum to the debtor – William J. Wagner, Jr. – at 5419 Roberts Road, she also warned the process server that there could be more than one "William J. Wagner" (*i.e.*, a "Sr." and a

"Jr.") living at 5419 Roberts Road, and she specifically instructed the process server to "be sure to serve the correct William J. Wagner" (*i.e.*, "Jr."). Copies of the subpoena duces tecum and letter to the process server are attached as *Exhibits G* and *H*, respectively.

34. Apparently, the process server ultimately delivered the subpoena to the plaintiff. *See Exhibit C* at 3.

### Mr. Andrews' Communications with Chiari & Ilecki

35. On June 29, 2015, Seth J. Andrews, Esq., called Chiari & Ilecki on behalf of the plaintiff and claimed that the plaintiff was not the debtor. *See* Overbeck Decl., ¶¶ 67-68.

36. Ms. Overbeck explained to Mr. Andrews that Chiari & Ilecki could not simply accept the plaintiff's unsubstantiated word, and Mr. Andrews indicated that he understood and appreciated the firm's position. *See id.*, ¶ 69.

37. Just as her office had repeatedly asked the plaintiff himself before, Ms. Overbeck requested that Mr. Andrews provide a copy of the plaintiff's driver's license to allow Chiari & Ilecki to verify the plaintiff's identity. *See id.*, ¶ 70.

38. Mr. Andrews said that he would try to convince the plaintiff to produce it. *See id.*, ¶ 71.

39. Ms. Overbeck, in turn, agreed to send Mr. Andrews a copy of the lease that the debtor had signed so that each of them could attempt to verify the plaintiff's identity by comparing the debtor's signature on the lease to the plaintiff's signature on his driver's license. *See id.*, ¶ 72.

40. Mr. Andrews and Ms. Overbeck also agreed to a general adjournment of the pending subpoena to take the debtor's deposition while they attempted to resolve the issue of the plaintiff's identity. *See id.*, ¶ 73.

41. Ms. Overbeck confirmed this agreement in a facsimile that she sent Mr. Andrews later that day, June 29, 2015. A copy of her facsimile is attached as *Exhibit I*.

42. Mr. Andrews, however, never sent Chiari & Ilecki a copy of the plaintiff's driver's license or otherwise contacted Chiari & Ilecki again about this matter. *See* Overbeck Decl., ¶ 75.

43. Instead, the plaintiff commenced the present action against Chiari & Ilecki on July 15, 2015. *See Exhibit A*.

### The Relevance of Mr. Andrews' Communications

44. As noted above, the bona fide error defense shields a debt collector from FDCPA liability if the debt collector demonstrates that "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *See* 15 U.S.C. § 1692k(c).

45. Here, Chiari & Ilecki's repeated attempts to verify the plaintiff's identity and willingness to adjourn the debtor's examination until the identity dispute was resolved is, of course, powerful evidence that any FDCPA violation "was not intentional and resulted from a bona fide error." *See id.*

46. Likewise, Mr. Andrews' recognition of Chiari & Ilecki's need for a copy of the plaintiff's driver's license evidences the reasonableness of the firm's request. *See id.*

47. Therefore, Mr. Andrews' pre-lawsuit communications with Chiari & Ilecki are both relevant and important to establishing Chiari & Ilecki's bona fide error defense.

48. For precisely that reason, on May 23, 2016, Chiari & Ilecki disclosed Mr. Andrews as a "witness Defendant may call at trial" in response to the plaintiff's Interrogatory No. 17.  A copy of Chiari & Ilecki's response to the plaintiff's interrogatories is attached as *Exhibit J*.

49. Chiari & Ilecki specifically disclosed that Mr. Andrews might be called to testify regarding "his communications with defendant, defendant's requests for verifiable proof of plaintiff's identity, and other information relevant to the bona fide error defense."  *See Exhibit J* at 19-20 (Response to Interrogatory No. 17).

50. Over the next five months, the plaintiff and his attorneys made no objection to the designation of Mr. Andrews as a witness.

51. To the contrary, in his response to Chiari & Ilecki's Interrogatory No. 1, <u>the plaintiff himself identified Mr. Andrews as one of only three people with "information or knowledge relevant to this action."</u>  A copy of the plaintiff's responses to Chiari & Ilecki's interrogatories is attached as *Exhibit K*.

52. And those interrogatory responses were apparently signed by Mr. Andrews himself and verified by the plaintiff.  *See Exhibit K.*

### Attempts to Obtain Discovery Regarding
### Mr. Andrews' Communications

53. Given that the parties agreed that Mr. Andrews possesses knowledge or information relevant to this action, we decided to notice Mr. Andrews' deposition.

54. We did not make that decision lightly. Given the importance of Mr. Andrews' communications with Chiari & Ilecki to the bona fide error defense, we decided that Mr. Andrews' deposition was necessary to confirm that there was no dispute regarding the content of their communications.

55. As a professional courtesy and in the spirit of cooperation, I called Mr. Andrews twice on October 18, 2016, before noticing his deposition.

56. Mr. Andrews did not take either call, so I left him two voicemails. In the second voicemail, I specifically explained that we needed to pursue his deposition in light of his pre-lawsuit communications with Chiari & Ilecki.

57. I did not receive an immediate response to these voicemails, so I proceeded to serve our deposition notice on Mr. Andrews via email and U.S. mail at the end of that same day, October 18, 2016. A copy of my email and the attached letter and deposition notice is attached as *Exhibit L*.

58. Within two hours of sending that email, I received a responsive email from the plaintiff's other attorney, Kenneth R. Hiller, Esq., a copy of which is attached as *Exhibit M*.

59. In his email, Mr. Hiller made one single objection to our notice to depose Mr. Andrews – our firm's previous representation of Mr. Hiller in connection with another matter. According to Mr. Hiller, this former representation created a

conflict of interest that prevented our firm from continuing to represent Chiari & Ilecki in this action.  *See Exhibit M.*

60. But at the outset of this litigation, we specifically addressed that issue, and Mr. Hiller acknowledged that there was no conflict and consented to our representation of Chiari & Ilecki.

61. Specifically, on August 12, 2015, after our firm alerted Mr. Hiller that Chiari & Ilecki had asked us to serve as counsel in this action, Mr. Hiller emailed Terrence M. Connors, Esq., and questioned whether our former representation of him and his firm created a conflict of interest.  A copy of Mr. Hiller's email is attached as *Exhibit N.*

62. On August 20, 2015, Mr. Connors responded and provided Mr. Hiller with our detailed analysis of why there is no conflict of interest.  A copy of Mr. Connors' email and attached letter to Mr. Hiller is attached as *Exhibit O.*

63. Later that day, Mr. Hiller replied, "It seems reasonable to me.  I have no objection to you representing Chiari & Ilecki."  A copy of Mr. Hiller's email is attached as *Exhibit P.*

64. We proceeded to answer the complaint on behalf of Chiari & Ilecki, and over the course of the next year, we worked with plaintiff's counsel to complete nearly all the fact discovery in this case.

65. After the exchange on August 20, 2015, plaintiff's counsel made no further mention of a possible conflict of interest until over a year later when we noticed Mr. Andrews' deposition on October 18, 2016.

66. After his initial email objecting to our deposition notice, Mr. Hiller followed up on October 25, 2016, with a letter in which he accused our firm of engaging in improper gamesmanship by noticing Mr. Andrews' deposition. A copy of that letter is attached as *Exhibit Q*.

67. On October 28, 2016, I responded to Mr. Hiller, explaining that Mr. Andrews possessed relevant information regarding his pre-lawsuit communications with Chiari & Ilecki, and that there was no possible conflict of interest. A copy of my email and attached letter, with enclosures, is attached as *Exhibit R*.

68. On November 1, 2016, Mr. Hiller responded by email, placing the conflict issue on hold and instead inquiring whether we would be "willing to restrict the issues that may be addressed at the deposition." A copy of Mr. Hiller's email is attached as *Exhibit S*.

69. On November 3, 2016, Mr. Hiller and I spoke on the phone regarding Mr. Andrews' deposition. Consistent with my previous voicemail and letter to plaintiff's counsel, I agreed to limit Mr. Andrews' deposition to the subject of his pre-lawsuit communications with Chiari & Ilecki.

70. Mr. Hiller inquired whether we would be willing to stipulate to the contents of Chiari & Ilecki's events log in lieu of deposing Mr. Andrews. I told him that I would have to discuss this option within our firm and with our client.

71. The next day, Friday, November 4, 2016, Mr. Hiller followed up by email, informing me that he intended to move for a protective order on Monday unless we agreed to "withdraw the deposition notice based upon our stipulation that

Mr. Andrews will not be called as a witness at trial." A copy of Mr. Hiller's email is attached as *Exhibit T*.

72. On Sunday, November 6, 2016, I responded, proposing that we adjourn Mr. Andrews' deposition and jointly ask this Court for a brief extension of the discovery deadline to give us time to discuss mutually agreeable alternatives to taking Mr. Andrews' deposition. A copy of my email is attached as *Exhibit U*.

73. Later that day, Mr. Hiller replied, declining my proposal and indicating that he would be "filing the motion tomorrow unless we can reach a stipulation before 10:00 a.m." A copy of Mr. Hiller's email is attached as *Exhibit V*.

74. On the following day, Monday, November 7, 2016, I called Mr. Hiller to discuss the matter further. We agreed to adjourn Mr. Andrews' deposition so that we could explore the possibility of avoiding the need for his deposition by utilizing requests for admission and a stipulation instead. After our conversation, I confirmed this understanding in an email, a copy of which is attached as *Exhibit W*.

75. Further to that agreement, we prepared requests for admission and a proposed stipulation regarding Mr. Andrews' pre-lawsuit communications with Chiari & Ilecki, which I emailed to Mr. Hiller on November 16, 2016. Copies of my email, Chiari & Ilecki's first set of requests for admission, and the proposed stipulation are attached as *Exhibits X, Y,* and *Z*, respectively.

76. On November 21, 2016, Mr. Hiller responded, objecting to the terms of our proposed stipulation and all but one of the requests for admission. A copy of Mr. Hiller's email is attached as *Exhibit AA*.

77. In the spirit of cooperation, we revised the proposed stipulation to address Mr. Hiller's concerns. I then emailed him on November 23, 2016, explaining our position regarding the requests for admission, attaching the revised stipulation, and encouraging Mr. Hiller to reconsider the need for motion practice. Copies of my email and the revised stipulation are attached as *Exhibits BB* and *CC*, respectively.

78. On December 1, 2016, I called Mr. Hiller to follow up on my email and inquire whether we could resolve this discovery dispute amicably. Mr. Hiller indicated that he would be filing the present motion.

79. Simply put, we have made every reasonable effort to obtain the discovery needed to confirm Mr. Andrews' position regarding his pre-lawsuit communications with Chiari & Ilecki without the need for motion practice.

80. Mr. Andrews' testimony is both relevant and admissible and certainly does not create a conflict of interest for our firm.

81. Therefore, this Court should deny the plaintiff's motion in its entirety.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: March 2, 2017

                s/Paul A. Woodard
                Paul A. Woodard, Esq.