UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————

WILLIAM J. WAGNER,

                                    Plaintiffs,

        v.                                    Civil Action No.1:15-cv-633-FPG

CHIARI & ILECKI, LLP,

                                    Defendant.
———————————————————————

### MEMORANDUM OF LAW IN REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

        Plaintiff submits this Memorandum of Law as his Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgement.

### ARGUMENT

        The important facts of this case are no longer in dispute.  The Defendant states that the first indication they had that the debtor resided at the Roberts Road address was the Real Info report they obtained on February 9, 2015.[1]  However they admit that the Real Info report does *not* show that William J. Wagner, Jr. owned or lived at the property; it only states that William J. Wagner, without the Jr., owns the property.  Melissa Overbeck, the attorney handling the collection says, she cannot recall whether she even checked if the report stated that there was a Jr. referenced on the report.

---

[1] The Defendant claims that a Lexis report dated February 9, 2015 provides information associating the debtor with the property.  They ask this Court to presume that the February 9, report was identical to a December 31, 2015 report they obtained for this litigation.  However, the account notes for February 9, 2015 only states, "Lx-nothing current."  Regardless, as will be shown below, the December 31, 2015 report does not link the debtor to the Roberts Road property.

Nonetheless, a dunning letter addressed to the debtor was mailed to the Plaintiff's residence.  The Plaintiff called the Defendant and informed them he is William Wagner, without a Jr., just as listed on the Real Info report, and that they have the wrong person.  Over the course of two telephone calls, he provided them with his date of birth and last two digits of his social security number, neither of which match the information for the debtor.  They then pull a LexisNexis report on June 5, 2015.  They do not preserve this report either.  Ms. Overbeck notes in the account log that the report that shows that William Wagner, Sr. and William Wagner, Jr. live at the Roberts Road address.  They ask this Court to presume that the June 5, 2015 report is identical to the December 31, 2015 report that they obtained for the purposes of this litigation.  However, the December 31, 2015 report, if examined closely, does not link William J. Wagner, Jr. to the Roberts Road address.  Despite the Defendant's repeated claims to that effect, the report does *not* show that the debtor ever lived at that address.

Page 1 of the LexisNexis report does, indeed, list name variations for the searched party, including William J. Wagner, Jr. and William J. Wagner. (Pl. Exh. J-1, Bates No. CHIARI000182).  It also states that the debtor's address is 1571 Eggert Road.  Further down, the report identifies a variety of possible alternate addresses, and in some cases, identifies the household members.  For 5149 Roberts Road, Hamburg, NY, the report lists the household members as follows:

**3: 5419 ROBERTS RD HAMBURG, NY 14075-5728**
**Address**
5419 ROBERTS RD
HAMBURG, NY 14075-5728
ERIE COUNTY
5/1985 - 4/2015 (716) 627-
3806(716) 833-
0783
**Census Data for Geographical Region**
Median Head of Household Age: 40
Median Income: $102,196
Median Home Value: $173,370
Median Education: 15 years
**Household Members**

WAGNER, ANDREW R
WAGNER, JULIA LEONA
WAGNER, WILLIAM G
WAGNER, WILLIAM J
**Other Associates**
None Listed

The report does ***not*** list William J. Wagner, Jr. as a household member. (Pl. Exh. J-1, Bates No.

CHIARI000183-184).

In addition, the LexisNexis report warns the reader not to rely on the accuracy of the

report with a disclaimer that states as follows:

> **Important:** The Public Records and commercially available data sources used on
> reports have errors. Data is sometimes entered poorly, processed incorrectly and
> is generally not free from defect. This system should not be relied upon as
> definitively accurate. Before relying on any data this system supplies, it should be
> independently verified. For Secretary of State documents, the following data is for
> information purposes only and is not an official record. Certified copies may
> be obtained from that individual state's Department of State.

(Pl. Exh. J-1, Bates No. CHIARI000191).

The Defendant ignores that warning and makes no effort to seek independent verification

of the LexisNexis information.   Instead, they decide to ratchet up the pressure on the Plaintiff by

serving him with a subpoena duces tecum ("SDT") that requires him to supply virtually all of his

financial information or face contempt of court charges.  Had the Defendant inspected the public

records, they would have discovered unassailable proof that the owners of the Roberts Road

property were William J. Wagner, without the Jr., and Julie Wagner (until recently when she was

taken off the deed).  Only when they are contacted by an attorney does the Defendant agree to

postpone the SDT.

This cannot be a bona fide error, and the caselaw submitted establishes that fact.

**I.    THE DEFENDANT IS NOT ENTITLED TO THE BONA FIDE ERROR DEFENSE**

**A.  The Defendant's Actions Were Intentional**

There appears to be a conflict among the circuits, post-*Jerman.*  The Seventh Circuit has found that to meet the unintentional requirement, the debt collector must show that the conduct was not intention; not that there was an intention to violate the FDCPA. *Leeb v. Nationwide Credit Corporation,* 806 F.3d 895, 899 (7th Cir. 2015).  The Eleventh Circuit has held that there must be an intent to violate the Act. *Arnold.  Arnold v. Bayview Loan Servicing, LLC*, 659 F.App'x 568, 570 (11th Cir.2016).

The bona fide error defense has been traditionally reserved for clerical errors.  *Mirabal v. Gen. Motors Acceptance Corp.*, 537 F.2d 871, 879 (7th Cir. 1976).  This was not a clerical error. This was a lawfirm recklessly dunning and serving Plaintiff with legal process.[2]  Both Mr. Ilecki and Ms. Overbeck admit that they did not know if the debtor resided at the Roberts Road address. (Ilecki Dep. 45/9-12, 66/5-11; Overbeck Dep. 23/10-20).  The intentional act was directing their collection activity at Plaintiff without knowing if he was the debtor, and in fact, having been provided with proof that he was not the debtor.  It is submitted that this procedure should not be endorsed.

**B.  The Defendant's Actions Were Not "Bona Fide"**

The Defendant primarily relies on LexisNexis and Real Info reports, which they failed to preserve, in support of their argument that their error was bona fide. (Def. Mem., at 34-35).  The Defendant proffers several absurd arguments as to why they could not and should not have been required to preserve these reports.

First, the Defendant incredulously asserts that Plaintiff was not prejudiced by the destruction of the reports—the very reports they rely upon for their defense.  They assert that

---

[2] The Defendant attempts to foreclose Plaintiff in some fashion because his interrogatory responses cited a collection letter addressed to Plaintiff, and a subpoena served on Plaintiff.  The letter, of course was mailed to the debtor at Plaintiff's address.  The nature of the letter was made abundantly clear at Plaintiff's deposition.  Further, contrary to Defendant's assertion, a subpoena *was* served on Plaintiff.

there is no prejudice because they were able to obtain the same reports months later.  However, these reports are not static.  New information is gathered by Real Info and LexisNexis regularly, which results in the information in the reports being changed regularly.  There is no way of knowing what the earlier reports contained because they were not saved.

The Defendant then asserts that "As the plaintiff acknowledges, those reports [the later reports] were produced during discovery and Plaintiff, thus, he has suffered no prejudice at all." (Def. Mem., at 39).  However, the only reason "acknowledges" this is because he has no other choice.  The Defendant coyly does not explicitly swear that the saved reports were identical to the reports Ms. Overbeck reviewed.  At trial, the Defendant may assert that the later reports cannot be assumed to be identical to the earlier reports.  And in truth, that would be correct. They may argue that Ms. Overbeck's contemporaneous notes of the contents of the reports are more reliable than the later dated reports that are subject to change.  And because they have failed to preserve the reports, the Plaintiff will have no effective means to rebut Ms. Overbeck's testimony at trial relative to the contents of those reports.

The Defendant also makes the absurd claim that they could not have saved the reports because LexisNexis requires them to be secure.  They also claim that if they had to print all the credit reports they view have to store thousands of reports in filing cabinets. (Ilecki Aff., ¶¶ 106-107).  However, Ms. Overbeck admitted that they sometimes save the reports. (Overbeck Dep. 13/8-14).  In addition, this is not the 1970's.  They would not have to print and store the reports. They could simply convert the reports to adobe format and save them on their presumably secure computer.  It is simply not fair for them to say they reasonably relied on the contents of a report to conclude that the debtor resided at the Roberts address, destroy the reports, and then insist that the Plaintiff accept their unsubstantiated claims as to what the reports contained.  Plaintiff is

significantly prejudiced by the destruction of the evidence.  He is unable to verify the accuracy

of Ms. Overbeck's characterizations of the contents of the reports.  In addition, all available

evidence is that the destroyed reports did *not* link the debtor to the Roberts Road property.  As

such, it is submitted that the appropriate sanction in this case should be presumed for the

purposes of this motion that the reports did not link the debtor to the Roberts Road address in any

way, and that the Defendant should not be permitted to present testimony about the alleged

contents of the reports they destroyed in opposition to this motion, or at trial.

Mr. Ilecki has sworn that over his career, he has found LexisNexis reports to be reliable,

and thus, it was reasonable to rely on its contents. (Ilecki Aff, ¶¶ 59-61).  This self-serving

assertion is belied by the numerous reports from Lexis identifying erroneous addresses *just in

this case.* For example, the event log notes that Lexis reports dated March 16, 2009, July 14,

2009, September 5, 2010, November 26, 2011, and February 9, 2015 all showed incorrect

addresses for the debtor. (Pl. Exh. J-1, Bates No. CHIARI000164-165).  The December 31, 2015

LexisNexis report contains the following errors: 1) it lists the debtor's address as 1571 Eggert

Road, Buffalo, NY, which the Defendant concedes is not the debtor's address. (Overbeck Aff., ¶

25) 2), it lists two different dates of birth for the debtor, and 3) it lists 9 potential addresses for

the debtor, all of which are incorrect. (Overbeck Aff., ¶15).  However, most telling is the fact

that the LexisNexis warns the users of its reports that they are not reliable with the following

disclaimer:

> **Important:** The Public Records and commercially available data sources used on
> reports have errors. Data is sometimes entered poorly, processed incorrectly and
> is generally not free from defect. This system should not be relied upon as
> definitively accurate. Before relying on any data this system supplies, it should be
> independently verified. For Secretary of State documents, the following data is for
> information purposes only and is not an official record. Certified copies may
> be obtained from that individual state's Department of State.

The use of databases such as Accurint[3] and LexisNexis was considered in *Scott v. Portfolio Recovery Associates, LLC*, 139 F. Supp. 3d 956, 972–73 (S.D. Iowa 2015).  The Court found as follows:

> Portfolio also argues that Abbott should be entitled to the bona fide error defense in his own capacity because, according to Portfolio, Abbott, their attorney, reasonably relied on Accurint and The WorkNumber when searching for the Debtor's personal information, properly followed Iowa garnishment procedure when garnishing Plaintiff's wages, and promptly issued a Release of Garnishment upon learning he had the wrong Denise Scott. Plaintiff counters that reliance on Accurint, without more, would be an insufficient precaution given Accurint's disclaimer to its users, which states:
>
>> Due to the nature of the origin of public record information, the public records and commercially available data sources used in reports may contain errors. Source data is sometimes reported or entered inaccurately, processed poorly or incorrectly, and is generally not free from defect. This product or service aggregates and reports data, as provided by the public records and commercially available data sources, and is not the source of the data, nor is it a comprehensive compilation of the data. Before relying on any data, it should be independently verified.
>
> Pl's App. in Resist. to Def.'s Mot. 45, ECF No. 24–2. Because Accurint warns users not to rely on it without independent verification, and because there is no evidence Abbott conducted independent verification—Abbott admittedly relied solely on the accuracy of Accurint—Abbott has not established this element of the bona fide error defense. For these reasons, the Court finds Portfolio has failed to demonstrate on this record that it is entitled to summary judgment on the defense.

*Scott v. Portfolio Recovery Associates, LLC*, 139 F. Supp. 3d 956, 972–73 (S.D. Iowa 2015); *see also Haskins v. First American Title Insu. Co.,* 2014 WL 294654 (D.N.J.2014 (criticizing reliance on a LexisNexis database search in light of their disclaimer).

The Defendant cites *Wetzel v. AFNI, Inc,* 2011 WL 6122963, at *5 (D.Or.2011) in support of their argument that Lexis reports can be reasonably relied on.  However, *Wetzel* was not the endorsement that the Defendant suggests.  The Court noted, initially, that "[t]he fact that [a verification service] has provided accurate information in the past cannot, in and of itself . . .

---

[3] Accurint is affiliated with LexisNexis.  *Liberi v. Taitz,* 2012 WL 10919115 (C.D.Cal.2012).

act as a substitute for the maintenance of procedures to avoid future mistakes. (*quoting Reichert v. National Credit Systems, Inc.,* 531 F.3d 1002, 1007 (9th Cir. 2008).  The *Wetzel* Court also noted that upon receiving a letter from the purported debtor that they had dunned the wrong person, *they never contacted him again.*  But perhaps the greatest distinction is that the LexisNexis report specifically matched the debtor's exact name to the specific address they sent the dunning letter to.  Here, there was no such linkage.  Neither of the reports relied upon linked the William J. Wagner, Jr. to the Roberts Road address.

The Defendant argues that the Real Info report provided the verification that was suggested in the LexisNexis disclaimer.  However, that is clearly not the case.  The Real Info report says William J. Wagner, not William J. Wagner, Jr., resides at the Robert Road address. Amazingly, at her deposition, Mr. Overbeck testified she could not recall whether the Real Info report identified the owner as William J. Wagner, Jr. (Overbeck Dep. 14/4-15).  In her affidavit, she now admits that the Real Info report listed the owners of the Roberts Road property as William J. Wagner, without a Jr., and Julie Wagner. (Overbeck Aff., ¶ 24).  Thus, Real Info report does not verify the accuracy of the LexisNexis report; it directly contracts it.

Neither the Lexis, nor the Real Info reports provided any information that the debtor resided at the Roberts Road address.  Even if the Lexis report had done so, it was unreasonable for the Defendant to rely on it without independent verification.  As such, the Defendant's error cannot be considered "bona fide."

### C.  The Defendant Does Not Maintain Procedures Reasonably Adapted to Avoid Errors

The Defendant's procedures are not reasonably adapted to avoid errors.  First, the procedures are not in writing.  *See Lee v. Kucher & Bruh, LLP,* 958 F.Supp. 2d 524, 530 (S.D.N.Y.2013) (citing lack of written procedures as one reason to deny bona fide error defense).

Second, the procedures do not require verification of LexisNexis searches by inspection of public records despite the LexisNexis disclaimer warning the user not to rely on the information contained therein without verifying it through inspection of public records.

Third, the Defendant's de facto procedure, as evidenced by the testimony of Mr. Ilecki and Ms. Overbeck, endorses the practice of sending collection letters and serving legal process at addresses that they have not confirmed to be occupied by the debtor.  Both Mr. Ilecki and Ms. Overbeck acknowledged that they did not know if the debtor resided at the Roberts Road address, yet they still directed letters and legal process to the occupants of that property. (Ilecki Dep. 45/9-12, 66/5-11; Overbeck Dep. 23/10-20).

Fourth, the Defendant's procedures imposed a duty on a non-debtor to provide their private information, including their Social Security number and driver's license in order to cease collection activity.  "[T]he extensive use of Social Security numbers as universal identifiers in both the public and private sectors is one of the most serious manifestations of privacy concerns in the nation." *Sheet Metal Workers Int'l Ass'n, Local Union No. 19 v. U.S. Dep't of Veterans Affairs*, 135 F.3d 891, 898 (3d Cir. 1998) (*quoting International Bhd. of Elec. Workers Local Union No. 5 v. United States Dep't of Hous. and Urban Dev.,* 852 F.2d 87, 89 (3d Cir.1988). The government warns consumers not to provide their social security numbers to persons or entities they are not familiar with.[4]  The Plaintiff had no business relationship with M.J. Peterson, and had no prior dealings with the Defendant.  He had virtually no assurance that the Defendant was a legitimate entity or that they would not misuse the information.  Further, Mr. Ilecki conceded that in the absence of a subpoena, a non-debtor has no legal requirement to provide such documentation. (Ilecki dep. 69/19-70/25).

---

[4] See, for example: https://www.consumer.ftc.gov/articles/0272-how-keep-your-personal-information-secure

Mr. Ilecki affirms that the Defendant's policy is to only request a *redacted* copy an individual's Social Security card when an individual denies being the debtor. (Pl. Exh. R, Response to Interrogatory No. 24).  Ms. Overbeck asserts that Plaintiff was offered the opportunity to provide a redacted Social Security card by either Ms. Brown, Ms. Sandford, or both, and that she offered Mr. Andrews that opportunity as well. (Overbeck Aff., ¶¶ 70-71). However, the Defendant admits that this supposed policy is not in writing. (Ilecki Dep., 64/1-17; Overbeck Dep., 19/17-20/6).  In addition, Ms. Sandford stated that the policy was to ask for the individual's last four numbers of their Social Security number over the phone, and then to request that the entire Social Security card be sent in. (Sandford Dep., 13/11-20).  To the extent that Ms. Overbeck is asserting that either Ms. Sandford or Brown requested a redacted Social Security card, it is inadmissible hearsay, and contradicted by Ms. Sandford's testimony.  Her testimony that she requested that Mr. Andrews supply a redacted Social Security card is contradicted by the account notes that make no mention of such a request.

In short, there is no evidence that the Defendant ever asked Mr. Wagner for a redacted copy of his Social Security card, and there is no evidence, other than the Defendant's self-serving, post hoc assertions that there is any such policy.

Fifth, the Defendant's de facto procedure is to ignore suffixes in names, such as Jr. or Sr. Ms. Overbeck repeatedly states that the Real Info and LexisNexis reports confirmed that the debtor resided at the Roberts Road address, despite the fact that the Wagner identified in both reports as residing at that address did not have a Jr. after his name.  Mr. Ilecki testified at his deposition that it is perfectly acceptable to assume that Mr. Wagner and Mr. Wagner, Jr. are one and the same person. (Ilecki Dep. 58/24-59/18).  However, as explained in *Bodur v. Palisades Collection, LLC*:

> [T]he FDCPA was enacted, in part, to "eliminate the recurring problem of debt
> collectors dunning the wrong person." S.Rep. No. 95–382, at 4 (1977), *reprinted
> in* 1977 U.S.C.C.A.N. 1695, 1699; *see also* page 9 above. Requiring a plaintiff to
> believe that he is the actual debtor would circumvent Congressional intent,
> "allow[ing] unscrupulous debt collectors, and particularly buyers of junk debt
> who cannot verify the accuracy of the debts or the identities of the debtors, to
> simply file debt collection actions with impunity against all persons having a
> similar name as the debtor, on the chance that one of the named defendants is the
> true debtor, or that one of the named defendants will simply pay the debt
> allegedly owed under the threat of having a judgment obtained against them, with
> a resulting levy against their property."

*Bodur v. Palisades Collection,* 829 F.Supp.2d 246, (S.D.N.Y.2011) (*quoting Johnson v.*

*Bullhead Invs., LLC,* 2010 WL 118274 at *6. (M.D.N.C.2010).

The Defendant's procedures are not reasonably adapted to avoid errors.  To the contrary,

they invite errors, just as were committed in this case.  Accordingly, the Defendant cannot meet

their burden of proof in establishing the bona fide error defense.

## II.   THE DEFENDANT IS NOT SHIELDED FROM LIABILITY FOR THE ACTS OF THEIR PROCESS SERVER

Contrary to the representation of the Defendant in their brief, courts are decidedly split as

to whether a debt collector can be held vicariously liable for FDCPA violations committed by the

people who worked for them, but not under their direct control.  All three Circuits that have

considered this issue have found that debt collectors are vicariously liable for the actions taken

by others to collect debts on their behalf. *Janetos v. Fulton, Friedman & Gullace, LLP,* 825 F.3d

317, 325-326 (7th Cir. 2016; *Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404 (3d

Cir.2000); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994).

The Defendant cites *Clark v. Capital Credit & Collection Services, Inc.,* 460 F.3d 1162,

1173 (9th Cir.2006) in support of their argument that there is no vicarious liability.  However, in

*Clark,* the attorney against whom vicarious liability was sought had no involvement with the

debt collector that had committed the FDCPA violations.  His only crime was that he was the

debt collector's attorney.  All of the FDCPA violations had occurred prior to his involvement. *Id., Janetos,* 825 F.3d at 325-326 (finding that *Clark* did not overrule *Fox*).

A number of district court cases in this Circuit have followed the reasoning of the three circuit court decision cited above and found a debt collector vicariously liable for the actions taken by others to collect debts on their behalf. *Gomez v. Resurgent Capital Services, LP,* 129 F.Supp.3d 147; *Okyere v. Palisades Collection, LLC,* 961 F.Supp.2d 508 (S.D.N.Y.2013); *. See also, e.g., Plummer,* 66 F.Supp.3d at 493; *Fritz v. Resurgent Cap. Servs., LP,* 955 F.Supp.2d 163, 177 (E.D.N.Y.2013).

The Defendant cites a number of district court cases that support their position that the laws of agency apply. *Bodur v. Palisades Collection, LLC,* 829 F.Supp.2d 246, 259 (S.D.N.Y.2011). *See also, e.g., Nichols v. Niagara Credit Recovery, Inc.,* No. 12–cv–1068, 2013 WL 1899947, at *5 (N.D.N.Y.2013); *Sanchez v. Abderrahman,* No. 10 Civ. 3641, 2013 WL 8170157, at *6 (E.D.N.Y. 2013); *Herzlinger v. Nichter,* 2011 WL 1434609, at *9 (S.D.N.Y.2011); *Suquilanda v. Cohen & Slamowitz, LLP,* 2011 WL 4344044, at *4 (S.D.N.Y.2011).

The earliest of these cases, *Suquilanda,* though citing *Pollice* and *Fox*, inexplicitly applied traditional agency law in assessing two of the defendant's potential vicarious liability. *Suquilanda,* at *4 despite the fact that *Pollice* and *Fox* had declined to apply agency law.  The next case, *Bodur,* carried forward the erroneous analysis of *Suquilanda.*  The Court correctly cited *Pollice* and *Fox* for the proposition that there can be vicarious liability.  However, it then cited *Clark* for the proposition that there must be some control over the agent to be vicariously liable without understanding that the holding in *Clark* was different than *Pollice* and *Fox.*  The

remaining cases cited, and thereby carried forward, the errors in *Bodur* and *Suquilanda*,

including their incorrect interpretation of *Clark*.

It is submitted that holdings of the *Fox, Pollice,* and *Janetos* cases that debt collectors are

vicariously liable for FDCPA violations committed by agents acting on their behalf, whether or

not they exercised direct control over them are correct.  Among the primary reasons for the

enactment of the FDCPA was to "eliminate the recurring problem of debt collectors dunning the

wrong person." S.Rep. No. 95–382, at 4, *reprinted in* 1977 U.S.C.C.A.N. at 1699; *see also* H.R.

Rep. 95–131, at 8 (1977) ("This bill also protects people who do not owe money at all.  In the

collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken

identity or mistaken facts.  This bill will make collectors behave responsibly towards people with

whom they deal.... Certainly a person who has a common name and is being hounded by a debt

collector because of the debts of another person deserves the protection this legislation will offer.

In far too many cases debt collectors do not even bother to double check common names before

beginning collection efforts."). *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 251–52

(S.D.N.Y. 2011).

The *Janetos* Court agreed:

We believe this is a fair result because an entity that is itself a 'debt collector'—
and hence subject to the FDCPA—should bear the burden of monitoring the
activities of those it enlists to collect debts on its behalf."

*Janetos,* at 325 (*quoting Pollice,* at 405).

It is submitted that even if traditional common law agency principles are used, the

Defendant is liable.  The process server in this case was the Defendant's agent.  The Defendant

*admits* that they had control over the process server.  That is why they gave him specific

instructions to only serve William J. Wagner, Jr.

The information provided by the Defendant to the process server was incorrect. They informed the process server that either William J. Wagner, Sr. or William J. Wagner, Jr. resided at the Roberts Road address. However, the only "Wagner" who resided there was William J. Wagner. There were no Sr.'s or Jr.'s residing at the premises.

The Defendant imposed restrictions on the process server (only serve William J. Wagner, Jr.), and were clearly able to impose additional instructions on the process server if they had so desired. The Defendant gave the process server no guidance as to what lengths he should go to verify that he was serving William J. Wagner, Jr. They did not instruct him as to whether he should require identification, or whether he should accept a bare assertion from the individual that they were not William J. Wagner, Jr. The process server determined, based on his observations that the Plaintiff was between the ages of 51 and 65. He concluded that this was a sufficient confirmation to conclude that the person he ultimately served was William J. Wagner, Jr. The Defendant never instructed him that this was an incorrect approach. This has been found sufficient to establish an agency relationship, and therefore, vicarious liability for acts of process servers. *Freeman v. ABC Legal Servs. Inc.*, 827 F. Supp. 2d 1065, 1076 (N.D. Cal. 2011).

It is also untrue that the process server acted outside the scope of his authority. He was instructed to serve William J. Wagner, Jr., but given no guidance as to how he should make that determination. The process server determined that since the Plaintiff appeared to be the age of the debtor, that his identity had been adequately proven. The Defendant provided him with no instructions to the contrary.

In finding vicarious liability, the *Janetos* Court noted: "A debt collector should not be able to avoid liability for unlawful debt collection practices simply by contracting with another company to do what the law does not allow it to do itself. Like the Third Circuit, we think it is

fair and consistent with the Act to require a debt collector who is independently obliged to comply with the Act to monitor the actions of those it enlists to collect debts on its behalf." As such, regardless of the vicarious liability standard adopted by this Court, Ilecki & Chiari should not escape being held accountable for serving a SDT punishable by contempt on the wrong person. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016).

Even if the Defendant were to be held to be immunized because the SDT was served by a process server, they should still be held liable because they ratified the process server's conduct. New York law recognizes the well-established principle of ratification, which imputes an agent's conduct to a principal who "condones those acts and accepts the benefits of them." *In Matter of New York State Medical Transporters Assoc.,* 160 A.D.2d 710, 553 N.Y.S.2d 790, 792 (2d Dep't 1990), *aff'd* 77 N.Y.2d 126, 564 N.Y.S.2d 1007, 566 N.E.2d 134 (1990); *see also Munroe v. Harriman,* 85 F.2d 493, 495 (2d Cir.1936) (acts of agent imputed to principal "if the principal adopts the unauthorized act of his agent in order to retain a benefit for himself.") *In re Bennett Funding Grp., Inc.,* 336 F.3d 94, 100 (2d Cir. 2003). A party may also be held liable for the unlawful actions of an independent contractor if it ratifies those actions. *Guzman v. Bevona*, 90 F.3d 641, 649 (2d Cir. 1996).

In this case, the Defendant continued to pursue Mr. Wagner even after he called them to inform them that they had served the wrong person. They accepted the benefit of the wrongful service and condoned it by not immediately withdrawing the subpoena.

Finally, it should be noted that the service of the SDT on Plaintiff only represents one aspect of his claim against the Defendant. He also alleges FDCPA violations both before and after the service of the SDT.

## III. PLAINTIFF HAS ESTABLISHED VIOLATIONS UNDER 15 U.S.C.§§ 1692e, e(A)(2), and e(10)

The Defendant attempts to distinguish some the cases cited by Plaintiff on the grounds that the courts, in those cases, found that the violations were intentional.  However, none of those cases stated that intentionality was required to make out a claim.  If they had, it would have constituted legal error.

The FDCPA is strict liability statute.  As such proving that a violation is intentional is not required. *Russell v. Equifax A.R.S.,* 74 F.3d 30, 33 (2d Cir.1996).  There is one exception specifically noted in the statue. (*see* 15 U.S.C.§§1692d(5)).  A lack of intent is not even sufficient to establish a bona fide error defense, as that element is only one of the three prongs necessary to establish the defense. 15 U.S.C.§1692k(c).

The Defendant also argues that the Plaintiff must have known that the collection letter and SDT did not relate to him and that, as such, he did not owe it.  However, the deception was not in making the Defendant think he was the debtor, but that they were going to attempt to collect William J. Wagner, Jr.'s debt from him even if he did no owe the debt.

The Defendant cites a number of cases that they claim support their position.  However, virtually every case cited involved one written communication, or telephone calls to the wrong person, *which were promptly discontinued after the plaintiff informed the debt collector of their error. McDermott v. Randall S. Mille & Associates, P.C.,* 835 F.Supp.2d 362 (E.D.Mich.2012) (only one letter received); *Blauer v. Zucker, Goldberg, and Ackerman,* 2011 WL 1113280 (D.Del.2011) (plaintiff served with summons and amended summons; debt collector ceased collection efforts after being informed of error); *Hill v. Javitch, Block & Rathbone, LLP,* 574 F.Supp.2d 819 (S.D.Ohio2008) (debt collector sued, but voluntarily dismissed case after receiving answer informing them they had served the wrong person); *Kujawa v. Palisades*

*Collection, L.L.C.,* 614 F.Supp.2d 788 (E.D.Mich.2008) (only one letter sent); *David v. FMS Services,* (only one letter sent);

In *Kane v. National Action Financial Services, Inc.,* 2011 WL 6018403 (E.D.Mich.2011) and *Kaniewski v. National Action Financial Services,* 678 F.Supp.2d 541 (E.D.Mich.2011), the communications were limited to telephone calls. In *Kane,* the debt collector made robocalls to the plaintiff that did not provide a means for plaintiff to stop the calls. Eventually, the defendant changed their system to allow plaintiff to inform them he was not the debtor, after which, the calls stopped. In *Kaniewski,* the debt collector could not initially find Plaintiff's telephone number in their system. It appears that once they found it, the calls stopped. These cases were really about faulty automated telephone system, and in both cases, the debt collector stopped calling as soon as they were able to do so. It is submitted that these cases are simply not on point with the instant case.

The two cases bearing the closest similarity to the instant case are *Bodur v. Palisades Collection, LLC,* 829 F.Supp.2d 246, 254-255 (S.D.N.Y.2011) and *Johnson v. Bullhead Investments, LLC,* 2010 WL 118274 (M.D.N.C.2010). In both of these cases, as with the instant case, the debt collector continued with their collection efforts after being informed by the plaintiff that they were collecting from the wrong person; and in both cases, the court found the Defendant to have violated 15 U.S.C.§1692e and its relevant subsections. The Defendant attempts to distinguish these cases on the grounds that the debt collectors received "clear proof" that the plaintiffs were not the debtors. (See Defendant's Memorandum of Law, at 18). However, this is simply not true. In both cases, the debt collector, as in this case, only received a verbal statement from the plaintiff of his date of birth and/or social security number. *Bodur,* at 248; *Johnson,* at *1.

The Defendant also attempts to distinguish *Bodur* and *Johnson* on the grounds that in both cases, the debt collection activity continued unexpectedly after the debtor had provided his identifying information.  First, that is not true.  The Plaintiff has sworn and testified that he thought, after his initial telephone call with the Defendant, that their collection activity aimed at him would stop. (Wagner Dep., 52/5-23; Wagner Aff., ¶ 19).  Second, it does not matter whether the Plaintiff expected further collection activity or not.  The point is that the Defendant continued after being informed that they had the wrong person.

In a last ditch effort to distinguish these cases, the Defendant notes that the Plaintiff only gave the last two numbers of his Social Security number, whereas in *Bodur* and *Johnson,* the plaintiff provided his entire number.  Again, this is a distinction without a difference.  The Plaintiff *did* provide his full date of birth, and providing the last two numbers of his Social Security number, which was sufficient for the Defendant to realize that they he was not the debtor. Ms. Sandford acknowledged that the information supplied by the Plaintiff did not match that of the debtor in an email. (Pl. Exh. J-1, Bates No. CHIARI000160); (*See also* Defendant's Answer, ¶ 17 in which Defendant admits that the date of birth and last two numbers of the social security number provided by Plaintiff did not match that of the debtor).

The Defendant next argues that the Plaintiff was never actually concerned that he could be held liable for the debt, or that he felt deceived. (Def. Mem. of Law, at 21).  However, the Plaintiff *repeatedly* stated that after the Defendant continued with their collection efforts after being informed that they were collecting from the wrong person, that he believed they were attempting to collect from him. (PSOF, ¶ 60).

## IV.   PLAINTIFF HAS ESTABLISHED A VIOLATION OF 15 U.S.C.§1692f

The Defendant argues that a 1692f claim cannot stand if there is no additional factual basis for the claim than those that underlie the other sections of the FDCPA that Plaintiff alleges were violated. (Defendant's Memorandum of Law, at 22-23).  However, this is incorrect when it comes to "unfair" practices.

"§1692f operates as a catchall for conduct that is recognizably unfair, but not explicitly enumerated in other sections of the FDCPA" *Okyere v. Palisades Collection, LLC,* 961 F.Supp.2d 522, 530-531 (E.D.N.Y.2013) (citing *Hoover v. Monark Recovery Mgmt,, Inc.,* 888 F.Supp.2d 589, 601 (E.D.P.2012); *Osborn v. Ekpsz, LLC,* 821 F.Supp.2d 878  (internal citation and quotation marks omitted) (specifically acknowledging  1692f's role in providing a cause of action for "those unfair practices which somehow manage to slip by §1692d and §1692e").

The Defendant has vigorously argued that they did not deceive or harass the Plaintiff sufficiently to violate §1692d or §1692e.  Yet, it is undeniable that dunning and suing the wrong person is an unfair practice.  *Davis v. Midland Funding, LLC*, 41 F. Supp. 3d 919, 925 (E.D. Cal.2014).  If the Defendant is correct that they did not explicitly violate §1692d or §1692e or its subsections, this is exactly the situation where §1692f should apply.

## V.    PLAINTIFF HAS STANDING TO BRING THIS SUIT.

The FDCPA provides for statutory damages, actual damages, attorney's fees and costs. 15 U.S.C.§ 1692k.  There is no requirement that the Plaintiff prove he was misled or otherwise injured to receive statutory damages.  All that is required for an award of statutory damages is proof that the statute was violated. *Savino v. Computer Credit, Inc.,* 164 F.3d 81, 86 (2d Cir.1998).

The majority of post-*Spokeo* decisions which have analyzed standing within the context of the FDCPA have determined that the FDCPA creates a *substantive right*, the violation of

which would itself give rise to a concrete injury. *See, e.g.*, *Church v. Accretive Health, Inc.*, 654 Fed.Appx. 990, 995 & n. 2 (11th Cir.2016) (finding that "through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosure ... Thus Congress provided Church with a substantive right to receive certain disclosures and Church has alleged that Accretive Health violated that substantive right."); *Zirogiannis v. Seterus,* 2016 WL 7410541, at *5-6 (E.D.N.Y.2016) ("[A] debtor has an interest in receiving accurate information regarding the amount of his debt, and courts analyzing Article III standing in the wake of *Spokeo* have held that a violation of the FDCPA is sufficient to establish a concrete harm."); *Bautz v. ARS Nat'l Servs., Inc.,* 2016 WL 7422301, at *11 (E.D.N.Y.2016) ("[T]he Court agrees with the weight of post-*Spokeo* authority holding that Section 1692e of the FDCPA ... creates a substantive right to be free from abusive debt communications."); *Hill v. Accounts Receivable Servs., LLC*, 2016 WL 6462119, at *4 (D. Minn.2016) ("[T]he FDCPA creates rights, violations of which may, in some circumstances, cause legally cognizable injury. Just as the *Church* court found that §§ 1692e and 1692g establish a right to disclosure of information, the Court finds that § 1692e establishes a right to truthful information regarding the collection of a debt and § 1692f establishes a right to be free from the collection of unauthorized interest."); *Biber v. Pioneer Credit Recovery, Inc.*, 2017 WL 118037, at *3 (E.D. Va. Jan. 11, 2017) ("Not surprisingly, in the wake of *Spokeo*, the overwhelming majority of courts have held that FDCPA claims similar to Biber's are sufficient to satisfy Article III's requirement that a plaintiff establish an injury in fact. The underlying logic in these opinions is (i) that Congress, in the FDCPA, created a right to accurate debt-related information and non-abusive collection practices, and (ii) that a debt collector's false, misleading, deceptive, or abusive conduct concretely harms a debtor by detrimentally affecting that debtor's

decisions regarding his debt."); *Kaymark v. Udren Law Offices, P.C.*, No. 13–419, 2016 WL 7187840, at *6–7 (W.D. Pa.2016) (plaintiff had standing to allege § 1692e claim because the complaint "alleged misrepresentation of the legal status and amount of [plaintiff's] debt itself" and the "alleged violation of [plaintiff's] right to truthful information and freedom of efforts to collect unauthorized debt constitute[d] a concrete injury"); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 2016 WL 7179367, at *3 (S.D. Ind.2016) (plaintiff had standing because "[p]laintiff allege[d] that she received deficient and misleading information regarding her debts, which is a harm defined and made cognizable by the FDCPA.") (internal quotations omitted); *Bowse v. Portfolio Recovery Assocs., LLC*, 2016 WL 6476545, at *3 (N.D. Ill. 2016) ("Because [plaintiff] has alleged a violation of § 1692e(8) of the FDCPA, which protects against the risk of harm created by a deficient disclosure of credit information to a third party, [plaintiff] has Article III standing to bring this suit."); *Hayes v. Convergent Healthcare Recoveries, Inc.*, No. 14–1467, 2016 WL 5867818, at *4 (C.D. Ill. Oct. 7, 2016) ("[A] violation of the right under § 1692e to be free from false or misleading representations from debt collectors creates a harm, or risk of harm, sufficient to meet the requirement of concreteness."); *Linehan v. Allianceone Receivables Mgmt., Inc.*, No. C15–1012, 2016 WL 4765839, at *8 (W.D. Wash.2016) ("The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury."); *Sayles v. Advanced Recovery Sys., Inc.*, 2016 WL 4522822, at *2–3 (S.D. Miss. 2016) (alleged violation of § 1692e(8) represents a concrete injury); *Quinn v. Specialized Loan Servicing, LLC*, 2016 WL 4264967, at *3–5 (alleged violation of §§ 1692e(10)–(11) is a concrete injury); *Irvine v. I.C. Sys., Inc.*, 2016 WL 4196812 at *3 (D. Colo. July 29, 2016) ("Through the FDCPA, Congress created statutory legal rights to be free from certain abusive debt collection practices, ... and a debt collector's violation of those rights

may constitute a concrete and particularized injury.") (citation omitted); *Macy v. GC Servs. Ltd.*

*P'ship*, No. 3:15-CV-819, 2016 WL 5661525, at *4 (W.D. Ky.2016) ("Macy and Stowe allege

that GC Services violated [15 U.S.C. § 1692g] (a)(4) and (5) by sending them notices that failed

to mention the in-writing requirement.  As a result of this omission, they claim, the least

sophisticated debtor might make an oral request instead, thereby waiving the protections of

subsection (b). The complaint thus adequately alleges injury in fact, and plaintiffs have standing

to pursue their claims."); *Guerrero v. GC Services Limited Partnership,* 2017 WL 1133358, at *

(E.D.N.Y.March 23, 2017) ("This Court agrees with the prevailing weight of authority and, as

such, similarly finds that 15 U.S.C. §§ 1692e and 1692g—the statutory sections at issue in the

present motion—confer certain substantive rights, consisting of the right "to receive required

disclosures in communications governed by the FDCPA," *Church*, 654 Fed.Appx. at 995, and

the right to "be free from abusive debt communications." *Bautz*, 2016 WL 7422301, at *11.").

In this case, Plaintiff suffered more than a statutory injury.  In a nutshell, his injuries are

that he was deceived and harassed.  Plaintiff has outlined the ways in which he was deceived in

the analysis of 1692e. (See Plaintiff's opening brief, at 10-13, and pages 14-17 above).  Courts

have found this to be a concrete injury. (see cases cited in the preceding paragraph).  In

harassment or other types of collection abuse, emotional distress, even slight in nature, has been

found sufficient to support an award of actual damages. *Miller v. Midpoint,* 2009 WL 959546

(W.D.N.Y.2009). ("When the emotional distress alleged to have been suffered is the sort that

would be experienced by reasonable people under the circumstances, some damage, even if

merely nominal damage, can be presumed.... The extent of plaintiff's injury can be proved by

plaintiff's testimony alone". *In re Baker,* 18 B.R. 243, 245 (Bk.W.D.N.Y.1982).  In this case,

Plaintiff was served with post-judgment enforcement paper that were served on him after he had

already informed the Defendant that they were collecting from the wrong person, and that he believed had been taken care of. He was concerned that they were continuing to target him with collection activity. The SDT required him to compile a wide array of financial documents and to testify under oath or be held in contempt of court. Although he knew that he was not the true debtor in this case, he was concerned that their continuance of collection activity aimed at him indicated they were attempting to collect the debt from him. He considered this harassment. (Wagner Dep. 54/20-55/9, 80/1-82/8). He also testified that he was emotionally upset at being accused of being a debtor and to provide his financial records to people he did not even know. (Wagner Dep. 80/6-14).

It is submitted that being dunned and served with post-judgment enforcement papers despite having provided the Defendant with verbal proof of identity are events that a reasonable juror could find sufficient to uphold an actual damage claim under the FDCPA. Fear of future legal proceedings and consequences associated with them have been to be actionable under the FDCPA. *Page v. Performance Debt Resolution,* 2013 WL 621197, at *6 (N.D.Cal.2013) (finding that emotional distress arising from the fear of the consequences of further legal proceedings is actionable under the FDCPA, and awarding $5,000.00,).

In *Bynum v. Calvary Portfolio Service, L.L.C.* 2006 WL 1047035 (N.D. Okla. 2006), it was held that the analysis used to assess the sufficiency of proof establishing emotional distress damages under the FDCPA is the same as is used in civil rights cases. Cases interpreting the requirements to prove emotional distress damages under the Fair Credit Reporting Act, 15 U.S.C.§1681 et seq. (FCRA) have reached a similar result. *Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001); *Caltabiano v. BSB Bank & Trust Co.*, 387 F.Supp.2d 135, 141-42 (E.D.N.Y. 2005). There would appear to be no basis for distinguishing the term "actual damage"

under the FCRA and FDCPA.  Both are consumer statutes that allow an aggrieved person to

obtain "actual damage", and neither statute undertakes to define that term. See 15

U.S.C.§1692k(a)(1) and 15 U.S.C.§1681o(a)(1).

The standard in this circuit to establish emotional distress damages in civil rights cases,

and by extension FDCPA cases as well, was stated in *Patrolmen's Benevolent Ass'n of City of*

*New York v. City of New York*, 310 F.3d 343, 355 (2d Cir. 2002):

> It is well-established that courts may award emotional distress damages in <u>section
> 1983</u> cases.  *Miner v. City of Glens Falls*, 999 F.2d 655, 662 (2d Cir.1993).
> However, the mere fact that a constitutional deprivation has occurred does not
> justify the award of such damages; the plaintiff must establish that she suffered an
> actual injury caused by the deprivation.  See *Carey v. Piphus*, 435 U.S. 247, 263-
> 64, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).  The damage award "must be
> supported by competent evidence concerning the injury." <u>Id.</u> at 264, n. 20, 98
> S.Ct. 1042.  A plaintiff's subjective testimony, standing alone, is generally
> insufficient to sustain an award of emotional distress damages. See, e.g., *Cohen v.
> Bd. of Educ.*, 728 F.2d 160, 162 (2d Cir.1984); *Annis v. County of Westchester*,
> 136 F.3d 239, 249 (2d Cir.1998). Cf. *Price v. City of Charlotte*, 93 F.3d 1241,
> 1254 (4th Cir.1996).  Rather, the plaintiff's testimony of emotional injury must be
> substantiated by other evidence that such an injury occurred, such as the
> testimony of witnesses to the plaintiff's distress, see *Miner*, 999 F.2d at 663, or the
> objective circumstances of the violation itself. See id.; *Walz v. Town of
> Smithtown*, 46 F.3d 162, 170 (2d Cir.1995).  Evidence that a plaintiff has sought
> medical treatment for the emotional injury, while helpful, see, e.g., *Carrero v.
> New York City Hous. Auth.*, 890 F.2d 569, 581 (2d Cir.1989), is not required.
> *Miner*, 999 F.2d at 663.

The proof necessary to corroborate a claim for emotional distress damages is minimal.

For example, in *Miner v. City of Glens Falls*, 999 F.2d 655, 662 (2d Cir. 1993), the Court found

that plaintiff's claim of emotional distress in the nature of embarrassment, inadequacy and stress

corroborated only by his wife's testimony regarding the tension that his loss of job caused at

home, was sufficient to state a claim.  In *Waltz v. Town of Smithtown* 46 F.3d 162, 170 (2d Cir.

1995), the Court found that the testimony of both plaintiffs (a husband and wife) that they each

suffered from emotional distress were sufficient to state a claim.  There is no indication in the decision that either spouse actually corroborated the claims of emotional distress of the other.

With respect to FDCPA claims, Magistrate Judge McCarthy, citing *In re Baker,* 18 B.R. 243, 245 (Bk.W.D.N.Y.1991), found that "The extent of plaintiff's injury can be proved by Plaintiff's testimony alone. *Miller,* at 394).

Thus, under the *Miller* standard, Plaintiff needs no corroboration.  However, in this case, there is corroboration because of in the emotional distress that would naturally flow from being served with an SDT punishable by contempt.  *Miner*, 999 F2d at 63.  In addition, the account log and two of Defendant's employees corroborate Plaintiff's contemporaneous statements that he felt they were harassing him and that he was upset. (Brown Dep. 15/5-16/5; Account Log entries of February 12, 2015 and June 17, 2015).

The Defendant next argues that Plaintiff did not suffer an "injurious exposure," and therefore does not have standing to sue in this case.  This argument simply restates Defendant's argument that because the Plaintiff knew the he did not legally owe M.J. Peterson money, he could not have believed he owed the money, should not have felt harassed, and therefore, could not have suffered any legal cognizable injury.  The cases cited by the Defendant are all clearly distinguishable from this case.  They involve situations in which a plaintiff sought to sue, essentially, because they claimed they were upset that a debt collector was seeking to collect money, or seize property from another person, usually a relative.  Or, the plaintiffs claimed some tangential relationship to the property being collected against, which was not legally cognizable.  None of the cases involved collection activities against individuals with similar names.  Most importantly, none of the cases involved collection activities targeting the wrong person, or

continuing collection activity against a person who had informed the debt collector that they were dunning or suing the wrong person.

In addition, Plaintiff has cited a number of cases involving similar circumstances to those present in this case which have found a sufficient injurious exposure to establish standing.  Those cases appear at pages 10 through 13 of Plaintiff's opening brief, and will not be repeated herein.

Finally, the Defendant makes the argument that a claims under 1692e and 1692f are not sufficient because 1) Plaintiff only alleged injuries are emotional distress and feeling harassed. The Defendant then, without citation, argues that sections e and f were not enacted to prevent harassment, and that only 1692d targeted harassment.

15 U.S.C.§1692k(a)(1) subjects a debt collector to liability for violations of the Act for "any actual damage sustained by such person . . .".  There is no limitation on the types of damage that can be obtained for any particular violation of the Act.  It is perfectly understandable that a person would be upset, suffer emotional distress, or feel harassed when a debt collector uses deceptive or unfair practices to attempt to collect a debt from him.

In addition, the Defendant once again mischaracterized Plaintiff's allegations.  Mr. Wagner repeatedly testified that not only did he feel harassed, but he came to believe that the Defendant was attempting to collect the debt from him even though he did not owe the money. WJW dep., 23/13-25/21, 49/4-55/9, 64/20-65/13, 70/10-71/4, 80/1-23).

## CONCLUSION

*Bodur v. Palisades Collecion, LLC*, 829 F.Supp.2d 246 (S.D.N.Y.2011) and *Johnson v. Bullhead Invs., LLC,* 2010 WL 118274 at *6. (M.D.N.C.2010) are virtually identical this case. In *Bodur,* the debtor and non-debtor had identical names, but different addresses.  In *Johnson,* the debtor and non-debtor had different middle names.  In both cases, the debt collector

continued to target their collection efforts to the non-debtor after he had provided verbal

confirmation of his social security number.  In both cases, the Court found that the debt collector

was liable, and that the non-debtor reasonably concluded that the debt collector was pursuing

him even though all of the communications noted that the debt was owed by the debtor, not him.

In *Bodur,* the Court granted the Plaintiff summary judgment.  In *Johnson,* the Court denied

Defendant's Motion to Dismiss.

> As noted in the *Johnson* decision:

> [T]o read the FDCPA in this manner would allow unscrupulous debt collectors,
> and particularly buyers of junk debt who cannot verify the accuracy of the debts
> or the identities of the debtors, to simply file debt collection actions with impunity
> against all persons having a similar name as the debtor, on the chance that one of
> the named defendants is the true debtor, or that one of the named defendants will
> simply pay the debt allegedly owed under the threat of having a judgment
> obtained against them, with a resulting levy against their property.

*Johnson,* at *6 (M.D.N.C. Jan. 11, 2010).

Accordingly, for the reasons stated herein, partial summary judgment on the question of

liability should be awarded in favor of Plaintiff William J. Wagner on the 1692e, 1692e(2)(A),

1692e(10) and 1692f violations. Plaintiff requests that liability on his other claims and for

damages on all claims that the Defendant is found liable on be determined at a trial by a jury.

In addition, Defendant's Motion for Summary Judgment should be denied.


Dated:  April 10, 2017

/s/Kenneth R. Hiller_____
Kenneth R. Hiller, Esq.
Law Offices of Kenneth Hiller PLLC
*Attorneys for the Plaintiffs*
6000 North Bailey Avenue, Ste. 1A
Amherst, NY 14228
(716) 564-3288
Email: khiller@kennethhiller.com