

BOX 53
Purchase Money
(ADJUSTABLE RATE)
**Mortgage**

FROM

WILLIAM J. WAGNER and
JULIA L. WAGNER, his wife

TO

Empire of America FSA

Dated   August 14,   19 84   ($28,000.00)

Recorded in Liber 8933

page 363, on the 14 day of Aug

19 84, at 2:05 o'clock P M.

_____ Clerk

Erie   STATE OF NEW YORK, COUNTY CLERK'S OFFICE

S-5419 Roberts Ave., Hamburg, NY 14075

EMPIRE OF AMERICA FSA
ONE MAIN PLACE
BUFFALO, NEW YORK

(ADJUSTABLE RATE)
# PURCHASE MONEY MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated ........ August 14 ........ 19 84 .... will be called the "Security Instrument."
(B) "Borrower." ..... WILLIAM J. WAGNER and JULIA L. WAGNER, his wife .....
sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender." ..... EMPIRE OF AMERICA FSA .....
will be called "Lender." Lender is a corporation or association which exists under the laws of .....
the United States of America, being a Federal Savings & Loan Association
Lender's address is ..... One Main Place   Buffalo, New York 14202 .....
(D) "Note." The note signed by Borrower and dated ........ August 14 ........ 19 84 .... will be called the "Note." The Note shows that I owe Lender ..... TWENTY EIGHT THOUSAND AND 00/100 .....
---------------- Dollars (U.S. $ 28,000.00 .....) plus interest.
I have promised to pay this debt in monthly payments and to pay the debt in full by ..... September 1, 1999 .....
(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."
(F) "Sums secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "sums secured."

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**
I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note;
(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and
(C) Keep all of my other promises and agreements under this Security Instrument.

**DESCRIPTION OF THE PROPERTY**
I give Lender rights in the Property described in (A) through (J) below:

(A) The Property which is located at ..... S-5419 Roberts Avenue .....
                                                              [Street]
..... Hamburg ....., New York ..... 14075 ..... This Property is in
       [City]                                    [Zip Code]
..... Erie ..... County. It has the following legal description:

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Hamburg, County of Erie and State of New York, being part of Lot Number thirty-nine (39), Township nine (9), Range eight (8) of the Holland Land Company's Survey and being further distinguished as Subdivision Lot Number seventeen (17) in Block Number five (5) as shown on a map filed in the Erie County Clerk's Office under Cover Number 1240, being situate on the east side of Roberts Avenue, (formerly Elmridge Road), being a triangular parcel of land and being two hundred fifty-six and eighty-nine hundredths (256.89) feet front and one hundred seventy-seven and sixty-four hundredths (177.64) feet in depth on the northeast line and one hundred eighty-five and fifty-seven hundredths (185.57) feet in depth on the southeast line, commencing thirty-two and thirty-four hundredths (32.34) feet southerly from the intersection of said line of Roberts Avenue with the southeast line of Hakanaw Avenue, as shown on said map.

TOGETHER WITH the rights and subject to the burdens of easements and restrictions of record.

"The maximum amount to be secured by this Mortgage, under any contingency at this time or any time hereafter, is $35,000.00."
I have received a completed copy of this Mortgage, Note and an Empire of America FSA Truth-in-Lending Disclosure Statement. **This property is improved by a single or double dwelling only.**

NEW YORK—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT                             Form 3033  5/84
201

LIBER 8933 PAGE 363

15-39-2-1240 - Sub 17 - Blk 5

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements, rights and appurtenances attached to the Property";

(D) All rents or royalties from the Property described in subparagraph (A) of this section;

(E) All mineral, oil and gas rights and profits, water rights and stock that are part of the Property described in subparagraph (A) of this section;

(F) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;

(G) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;

(H) All of the rights and property described in subparagraphs (B) through (G) of this section that I acquire in the future;

(I) All replacements of or additions to the Property described in subparagraphs (B) through (H) of this section; and

(J) All of the amounts that I pay to Lender under Paragraph 2 below.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**
I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**
This Security Instrument contains uniform promises and agreements that are used in real property security instruments all over the country. It also contains non-uniform promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

## UNIFORM COVENANTS

I promise and I agree with Lender as follows:

**1. BORROWER'S PROMISE TO PAY**
I will pay to Lender on time principal and interest due under the Note and any prepayment and late charges due under the Note.

**2. MONTHLY PAYMENTS FOR TAXES AND INSURANCE**
(A) Borrower's Obligations
I will pay to Lender all amounts necessary to pay for taxes, assessments, leasehold payments or ground rents (if any), and hazard insurance on the Property and mortgage insurance (if any). I will pay those amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make those payments on the same day that my monthly payments of principal and interest are due under the Note.

Each of my payments under this Paragraph 2 will be the sum of the following:
(i) One-twelfth of the estimated yearly taxes and assessments on the Property which under the law may be superior to this Security Instrument; plus
(ii) One-twelfth of the estimated yearly leasehold payments or ground rents on the Property, if any; plus
(iii) One-twelfth of the estimated yearly premium for hazard insurance covering the Property; plus
(iv) One-twelfth of the estimated yearly premium for mortgage insurance (if any).

Lender will estimate from time to time my yearly taxes, assessments, leasehold payments or ground rents and insurance premiums, which will be called the "escrow items." Lender will use existing assessments and bills and reasonable estimates of future assessments and bills. The amounts that I pay to Lender for escrow items under this Paragraph 2 will be called the "Funds."

(B) Lender's Obligations
Lender will keep the Funds in a savings or banking institution which has its deposits or accounts insured or guaranteed by a federal or state agency. If Lender is such an institution, Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay the escrow items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay escrow items, for analyzing my payments of Funds, or for receiving, verifying and totalling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Security Instrument, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

(C) Adjustments to the Funds
If Lender's estimates are too high or if taxes and insurance rates go down, the amounts that I pay under this Paragraph 2 will be too large. If this happens at a time when I am keeping all of my promises and agreements made in this Security Instrument, I will have the right to have the excess amount either promptly repaid to me as a direct refund or credited to my future monthly payments of Funds. There will be excess amounts if, at any time, the sum of (i) the amount of Funds which Lender is holding or keeping, plus (ii) the amount of the monthly payments of Funds which I still must pay between that time and the due dates of escrow items is greater than the amount necessary to pay the escrow items when they are due.

LIBER 8933 PAGE 964      page 2 of 6 pages

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums in the manner described in Paragraph 2 above.

### 8. LENDER'S RIGHT TO INSPECT THE PROPERTY
Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

### 9. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY
A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the sums secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the sums secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the sums secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

### 10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS
(A) Borrower's Obligations
Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

(B) Lender's Rights
Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 19 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

### 11. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS
Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the sums secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument; and (B) that person is not personally obligated to pay the sums secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

### 12. LOAN CHARGES
If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

### 13. LEGISLATION AFFECTING LENDER'S RIGHTS
If a change in applicable law would make any provision of the Note or this Security Instrument unenforceable, Lender may require immediate payment in full of all sums secured by this Security Instrument as that phrase is defined in Paragraph 19 below. If Lender requires immediate payment in full under this Paragraph 13, Lender will take the steps and may act as specified in the last paragraph of Paragraph 17 below.

LIBER 8933 PAGE 365                page 4 of 6 pages

If, when payments of escrow items are due, Lender has not received enough Funds to make those payments, I will pay to Lender whatever additional amount is necessary to pay the escrow items in full. I must pay that additional amount in one or more payments as Lender may require.

When I have paid all of the sums secured, Lender will promptly refund to me any Funds that are then being held by Lender. If, under Paragraph 20 below, either Lender acquires the Property or the Property is sold, then immediately before the acquisition or sale, Lender will use any Funds which Lender is holding at that time to reduce the sums secured.

**3. APPLICATION OF BORROWER'S PAYMENTS**
Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay late charges due under the Note;

Next, to pay prepayment charges due under the Note;

Next, to pay the amounts due to Lender under Paragraph 2 above;

Next, to pay interest due; and

Last, to pay principal due.

**4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien." I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE**
I will obtain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the sums secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 19 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the sums secured immediately before the Property is acquired by Lender or sold.

**6. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**
I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate. If I do not own but am a tenant on the property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY; MORTGAGE INSURANCE**
If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

NEW YORK—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT         Form 3033 12/83         page 3 of 6 pages

LIBER 8933 PAGE 366

### 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in paragraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT

This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

### 16. BORROWER'S COPY

I will be given one conformed copy of the Note and of this Security Instrument.

### 17. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require immediate payment in full of all sums secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

### 18. BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED

Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:

(A) I pay to Lender the full amount that would have been due under this Security Instrument and the Note if Lender had not required immediate payment in full; and

(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and

(C) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees; and

(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all of the conditions in this Paragraph 18, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraphs 13 or 17 above.

### NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

### 19. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS

Except as provided in Paragraphs 13 and 17 above, if all of the conditions stated in subparagraphs (A), (B) and (C) of this Paragraph 19 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under this Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs allowed by law.

Lender may require immediate payment in full under this Paragraph 19 only if all of the following conditions are met:

(A) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the sums secured.

(B) Lender sends to me, in the manner described in Paragraph 14 above, a notice that states:
   (i) The promise or agreement that I failed to keep;
   (ii) The action that I must take to correct that default;
   (iii) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;
   (iv) That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;
   (v) That if I meet the conditions stated in Paragraph 18 above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and
   (vi) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have.

LIBER 8933 PAGE 367

page 5 of 6 pages

(C) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**20. LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**
If Lender requires immediate payment in full, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter on and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 20, I agree that the tenants may make those rental payments to Lender without having to ask whether I have failed to keep my promises and agreements under this Security Instrument.

If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to occupy the Property.

All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 20, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the sums secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the cost of any necessary bonds.

**21. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT**
When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

**22. AGREEMENTS ABOUT NEW YORK LIEN LAW**
I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Paragraph 22.

**23. RIDERS TO THIS SECURITY INSTRUMENT**
If one or more riders are signed by Borrower and recorded together with this Security Instrument, the promises and agreements of each rider are incorporated as a part of this Security Instrument. [Check applicable box(es)]

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] 2-4 Family Rider
[ ] Graduated Payment Rider  [ ] Planned Unit Development Rider
[ ] Other(s) [specify]

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 6 of this Security Instrument and in any rider(s) signed by me and recorded with it.

Witnesses:

X _William J. Wagner_ (Seal)
WILLIAM J. WAGNER — Borrower

X _Julia L. Wagner_ (Seal)
JULIA L. WAGNER — Borrower

State of New York, .....ERIE..... County ss:
On this ...14th... day of ....August...., 19.84..., before me personally came .................
.........WILLIAM J. WAGNER and JULIA L. WAGNER, his wife.................. to me known and known to me to be the individual(s) described in and who executed the foregoing instrument, and they duly acknowledged to me that they executed the same.

JANET GUNNER
Notary Public, State of New York
Qualified in Erie County
My Commission Expires March 30, 19__

_Janet Gunner_
Notary Public

STATE OF NEW YORK ................................. County ss:
On this ...... day of ................, 19....., before me personally came .................... to me known, who, being by me duly sworn, did depose and state that he resides at ........................
.................................................................; that he is the ..............................
..................... of .........................................................................,
............................................................., the corporation named in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he signed b name thereto by order of the Board of Directors of said corporation.

.......................................................
Notary Public

page 6 of 6 pages

LIBER 8933 PAGE 368

ADJUSTABLE RATE RIDER
(1 Year Index--Payment Cap)

THIS ADJUSTABLE RATE RIDER is made this 14th day of August, 19 84, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Empire of America FSA (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

S-5419 Roberts Avenue, Hamburg, New York 14075
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE. IN NO EVENT SHALL THE INTEREST RATE INCREASE TO A RATE THAT IS MORE THAN 15-5/8%. IF MY INTEREST RATE INCREASES, MY MONTHLY PAYMENTS WILL BE HIGHER. IF MY INTEREST RATE DECREASES, MY MONTHLY PAYMENTS WILL BE LOWER. EXCEPT AT EACH FIFTH CHANGE DATE, ANY MONTHLY PAYMENT INCREASE SHALL NOT EXCEED 7-1/2% OF THE LAST MONTHLY PAYMENT DUE BEFORE THE CHANGE DATE. AS CONTAINED IN THIS NOTE, THIS 7-1/2% LIMITATION IS SUBJECT TO THE PROVISION THAT MY UNPAID PRINCIPAL BALANCE CANNOT EXCEED 125% OF THE AMOUNT I ORIGINALLY BORROWED.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 9-7/8%. The Note provides for changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES; BORROWER'S RIGHT TO LIMIT PAYMENT

(A) Change Dates

The interest rate I will pay may change on the first day of March 1, 19 85, and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date".

(B) The Index

Changes in the interest rate will relate to the value of the Index. This "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date sixty (60) days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding two & four hundred seventy five thousandths percentage points (2.475%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe on the Change Date in substantially equal payments by the maturity date at my new interest rate. The result of this calculation will be the new amount of my monthly payment, subject to the limitation in E(iii) below.

LIBER 8933 PAGE 369

(D) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(E) Limitations on Changes

The following limitations on changes apply to this Note:

(i) After the first interest adjustment, no change of interest rate shall occur unless the Index differs at least one-tenth of one percentage point (0.1%) from the Index upon which the previous adjustment was based.

(ii) In no event shall the interest rate be increased to a rate that is more than 15-5/8%.

(iii) Any monthly payment increase set under the provisions of paragraph 4(C) shall not exceed 7-1/2% of the last monthly payment due prior to the Change Date except at each fifth Change Date. At each fifth Change Date, payments will be adjustable without the 7-1/2% limitation.

(F) Additions to My Unpaid Balance

My monthly payment could be less than the amount of the interest portion of a monthly payment which then would be sufficient to repay my unpaid balance in full on the maturity date at my current interest rate in substantially equal payments. If so, each month that the payment amount is less than the interest portion, the Note Holder will subtract the payment amount from the amount of the interest portion and will add the difference to my unpaid principal balance. The Note Holder will also add interest on the amount of this difference to my unpaid balance each month. The interest rate on the interest added to principal will be the rate required by Section 4(C) above.

(G) Limit on My Unpaid Principal; Increased Monthly Payment

Notwithstanding Sections 4(E) and 4(F), my unpaid principal can never exceed a maximum amount equal to one hundred twenty-five percent (125%) of the principal amount I originally borrowed. Therefore, on the date that my paying an amount limited under Section 4(E)(iii) would cause me to exceed that 125% limit, I will instead begin paying a new monthly payment until the next Change Date. The new monthly payment will be in an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my current interest rate in substantially equal payments.

(H) Notice of Changes

The Note Holder will mail or deliver to me a notice before each Change Date. The notice will advise me of:

(i) the new interest rate on my loan as of the Change Date;

(ii) the amount of my monthly payment following the Change Date;

(iii) any additional matters which the Note Holder is required to disclose; and

(iv) the title and telephone number of a person who will answer any question I may have regarding the notice.

By signing below, the parties to this Agreement consent to all of the above provisions.

X _____ William J. Wagner
   WILLIAM J. WAGNER

X _____ Julia L. Wagner
   JULIA L. WAGNER

LIBER 8933 PAGE 370

STATE OF __NEW YORK__ )
                      ) SS.:
COUNTY OF __ERIE__    )

On this __14th__ day of __August__, 19__84__, before me personally came __WILLIAM J. WAGNER and JULIA L. WAGNER, his wife__ to me known and known to me to be the individual(s) described in and who executed the foregoing instrument, and __they__ duly acknowledged to me that __they__ executed the same.

_____
Notary Public

JANET GUNNER
Notary Public, State of New York
Qualified in Erie County
My Commission Expires March 30, 19__86__

Ser. C.B. __9305__ __Aug 14__ 19 __84__
Received $ __75.00__ Basic $ __162.50__ Add.
$ __87.50__ S.A.T. __325.00__ TOTAL
MORTGAGE RECORDING TAX ON THIS INSTRUMENT
GENEVIEVE M. STAROSCIAK, Recording Officer, Erie County, N.Y.

LIBER 8933 PAGE 271