UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────────

WILLIAM J. WAGNER,

                                                Plaintiff,

v.                                                Civil Action No.1:15-cv-633-FPG

CHIARI & ILECKI, LLP,

                                                Defendant.

───────────────────────────────────────────

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER, MOTION IN LIMINE, AND MOTION TO DISQUALIFY**

On December 15, 2016, Plaintiff filed a Motion for a Protective Order to prevent the Defendant from deposing Plaintiff's counsel, Seth Andrews, and to excuse Plaintiff from having to answer Plaintiff's First Requests for Admission. Plaintiff also filed a Motion in Limine seeking to prohibit the Defendant from introducing evidence regarding telephone conversations that took place between Seth Andrews and Melissa Overbeck on June 29, 2015, and from introducing any evidence questioning the motives of Plaintiff's counsel. Finally, Plaintiff moved to disqualify Connors LLP from representing the Defendant in this case due to a conflict of interest.

The Defendant filed a Memorandum of Law in response to Plaintiff's motions on March 2, 016. This Memorandum of Law is submitted in reply to that response.

**MOTION IN LIMINE**

In his motion, Plaintiff requested that this Court order that at the trial of this matter, that Defendant and/or their counsel may not refer to, introduce evidence of, or conduct examination related to:

1

1. Plaintiff and/or plaintiff's counsel's potential claim for attorney's fees in this action.
2. Plaintiff's counsel's procedures in investigating, filing and litigating consumer lawsuits.
3. The number of consumer lawsuits filed by Plaintiff's counsel.
4. Plaintiff's counsel's actions on behalf of Plaintiff prior to the filing of this lawsuit, including but not limited to Plaintiff's counsel's failure to provide written evidence of Plaintiff's identity to Defendant, or Plaintiff's counsel's failure to inform or warn Defendant of their intent to file a civil lawsuit against them.
5. Plaintiff's counsel's motivation in filing this lawsuit on behalf of Plaintiff.

The Defendant assents to items 1, 2, 3 and 5 above, but not item 4. (Def. Memorandum of Law, *3-4).  However, they do not consent to item 4 above. Id.

The Defendant has failed to identify any possible relevance of Seth Andrews pre-suit communications with them.  The Defendant argues that the conversations are relevant because they show that, 1) the Defendant was attempting to confirm Plaintiff's identity, 2) the Defendant repeatedly attempted to verify the Plaintiff's identity and immediately agreed to adjourn the subpoena duces tecum, and 3) Mr. Andrews alleged statements in the telephone calls are evidence that Defendant's procedure of requiring a driver's license before stopping judgment enforcement proceedings was objectively reasonable.

The fact that the Defendant was attempting to confirm Plaintiff's identity on June 29, 2015, three weeks after they had committed their last of their multiple violations of the FDCPA, is not relevant to this case.  The relevant question in this case is the Defendant's conduct when the tortious events occurred.

The fact that the Defendant agreed to adjourn the SDT is completely irrelevant to this case.  It is notable that it was only when Mr. Andrews, an attorney, called the Defendant that

they agreed to postpone the SDT.  By their own account, Mr. Andrews had supplied no documentation whatsoever, and made no promise to do so.  Yet the adjourned the SDT. (See Plaintiff's Exhibit C annexed to Motion-the events log).

No such courtesy was given the Plaintiff when he called the Defendant's office.  They never even formally asked him for identifying documentation; they simply told him he could submit them if he would like.  When Mr. Wagner called without an attorney, there was never any agreement to postpone the SDT.  To the contrary, they were ready to go forward with the deposition, and if he did not fully comply, they were ready to bring contempt of court proceedings.

All of this shows that the procedures that applied when Mr. Andrews called were decidedly different than when Mr. Wagner called.  As such, the procedures in place when Mr. Andrews called are not relevant to establishing the procedures when Mr. Wagner called.

The only evidence that Mr. Andrews attempted to convince the Plaintiff to produce his driver's license is Ms. Overbeck's self-serving statement.  The events log records no such statement from Mr. Andrews. (Plaintiff's Exhibit C-events log).  To remove any doubt about this fact, an affirmation from Mr. Andrews has been submitted herewith in which he denies ever saying he would attempt to persuade his client to submit his driver's license to resolve this issue once and for all

Even if Mr. Andrews had stated that he was going to try to persuade the Plaintiff to supply his driver's license, it would not suggest he was endorsing the Defendant's procedure.  To the contrary, he could have decided to convince the Plaintiff to supply his driver's license because he knew that the Defendant's procedures were completely *unreasonable*; and that he

knew that if the Plaintiff did not supply the documentation, they would unreasonably enforce the subpoena.

The most intrusive aspect of the Defendant's practice of requesting proof of identity was not their demand for the caller's driver's license anyway.  It was the demand for the Social Security card that was most intrusive; and the Defendant admits that Mr. Andrews told them the Plaintiff would not supply that and made no promise to try to persuade him otherwise.  This was not an endorsement of their procedures.  It was a rejection of them.

In addition, Mr. Andrew's opinion regarding the reasonableness of the Defendant's demand that Plaintiff provide his private identification documents is not at issue.  It is for this Court or the jury to decide whether the procedure was reasonable, not the parties attorneys.

It is submitted that it would be folly to have a significant portion of the trial devoted to conflicting testimony by the attorneys about whether Mr. Andrews really said he would attempt to persuade his client to submit his driver's license.  It would be an ancillary dispute having nothing to do with whether the Defendant violated the FDCPA prior to those conversations.  The jury would undoubtedly become confused.  They might think that whether Mr. Andrews offered to persuade his client to supply his driver's license is an important issue in this case.  It is not.  The issue is the legality of the Defendant's conduct in dunning the Plaintiff, and then serving legal process on him, despite the fact he is not the debtor.

The Defendant states that they have a right to tell its story to the jury exactly as it wishes.  However, that does not mean that they are permitted to submit irrelevant evidence to tell their story.  And they can tell their story without discussion of these conversations anyway.  The Defendant states that they want to be able to dispel any notion "that this lawsuit was filed because Chiari & Ilecki continued to direct collection efforts at the debtor at 5419 Roberts Road

even after receiving the requested documentary proof of the plaintiff's identity." (Def. Memorandum of Law, at 10). However, that can be done very simply without any introduction of the conversations between Ms. Overbeck and Mr. Andrews. All they would need to do it have Mr. Ilecki testify that they never received documentary proof of Mr. Wagner's identity prior to the filing of this suit. That would fully dispel any such notion.

## MOTION FOR A PROTECTIVE ORDER

With respect to the Motion for a Protective Order, Plaintiff generally relies on the arguments in his opening brief, but adds the following. If this Court agrees to grant Plaintiff's Motion in Limine with respect to the conversations between Mr. Andrews and Ms. Overbeck, then the protective order should undoubtedly be granted because there would be no relevant, admissible evidence that could be obtained through a deposition of Mr. Andrews.

Plaintiff also wishes to dispute the Defendant's assertion that "[i]n voluntarily appearing as counsel for the plaintiff in this action, Mr. Andrews has submitted himself to this Court's jurisdiction, and, therefore, this Court has the authority to order his deposition." (Def. Memorandum of Law, at 14). Only parties submit themselves to the Court's jurisdiction. Mr. Andrews is not a party. He has not submitted himself to the jurisdiction of this court.

## MOTION TO DISQUALIFY COUNSEL

The Defendant states that they have no intention of making Plaintiff's counsel's history or conduct an issue in this case because they do not practice law that way. However, they have already done so. Their Requests for Admissions could not have been clearer. The Defendant's First Request for Admissions numbers 9 and 10 asked for the following admissions:

**Request No. 9:** Mr. Andrews never sent Chiai & Ilecki a copy of the plaintiff's driver's license or Social Security card and never contacted Chiari & Ilecki again about this matter.

**Request No. 10:** Instead, Mr. Andrews filed this lawsuit against Chiari & Ilecki without warning.

(Exhibit J to Plaintiff's Motion).

Mr. Andrews was personally named in the Requests, and there can be no doubt that they seek to attack him. Notably, the Defendant provides no benign explanation for these loaded Requests in their reply papers.

Much of Plaintiff's concern about opposing counsel's potential conflict of interest has been ameliorated by their agreement to all but one of the issues in Plaintiff's Motion in Limine. The concerns would be ameliorated further if the Motion in Limine were granted in its entirety. However, even if that occurs, it is submitted that opposing counsel cannot put the toothpaste back into the tube. They have already shown that they wish to bring Plaintiff's counsel's conduct into this case. There is no assurance that the Defendant will not revive these tactics at trial.

For these reasons, it is respectfully submitted that this Court grant Plaintiff's Motion to Disqualify Counsel.

With respect to the balance of Defendant's arguments, Plaintiff relies on his initial brief.

DATED:  April 10, 2017               /s/Kenneth R. Hiller, Esq.___
                                      Kenneth R. Hiller, Esq.
                                      Law Offices of Kenneth Hiller PLLC
                                      *Attorneys for Plaintiff*

6000 North Bailey Ave., Suite 1A  
Amherst, New York 14226  
(716) 564-3288  
khiller@kennethhiller.com