UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WILLIAM J. WAGNER,

Plaintiff,

-vs-

CHIARI & ILECKI, LLP,

Defendant.

_____

Docket No. 15-cv-633-FPG

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Terrence M. Connors, Esq.
Paul A. Woodard, Esq.
**CONNORS LLP**
Attorneys for Defendant
1000 Liberty Building
Buffalo, New York 14202
(716) 852-5533
tmc@connorsllp.com
paw@connorsllp.com

## TABLE OF CONTENTS

ARGUMENT ...................................................................................................................1

    I.      The Plaintiff Does Not Oppose Summary Judgment on Several of His
           Claims. ....................................................................................................1

    II.     Chiari & Ilecki Is Not Vicariously Liable for the Independent Process
           Server. ....................................................................................................2

    III.    The Plaintiff Cannot Establish a Violation of § 1692e or § 1692f. .........4

    IV.    The Plaintiff Does Not Have Standing to Assert a § 1692e or § 1692f
           Claim. ....................................................................................................6

    V.     The Bona Fide Error Defense Shields Chiari & Ilecki From Liability. ...................7

        A.      Any FDCPA Violation Was Unintentional. ................................7

        B.      Any FDCPA Violation Was the Result of a Bona Fide Error. ...................8

        C.      Chiari & Ilecki Maintained Reasonable Procedures. ...................9

CONCLUSION..............................................................................................................10

**ARGUMENT**

**I.      The Plaintiff Does Not Oppose Summary Judgment on Several of His Claims.**

The plaintiff asserts claims against Chiari & Ilecki for violations of §§ 1692d, 1692e, and 1692f of the FDCPA in connection with three communications addressed to the debtor, William J. Wagner, Jr., at the residence of the plaintiff, William J. Wagner:  (1) a CPLR § 5222 notice mailed on February 9, 2015; (2) an information subpoena mailed on February 11, 2015; and (3) a subpoena duces tecum, which an independent process server delivered on June 17, 2015.  The plaintiff, however, does not actually dispute that most of those claims are subject to dismissal.

First, the plaintiff does not dispute that Chiari & Ilecki is entitled to summary judgment on the § 1692d claim.  Simply put, the conduct at issue – sending, at most, three written communications to a debtor at the wrong address – does not come close to the type of "oppressive" or "outrageous" conduct necessary to establish a violation of § 1692d.  *See* Doc. 30-3 at 12-14.  Recognizing this, the plaintiff's opposition ignores his § 1692d claim altogether.

Second, the plaintiff argues that Chiari & Ilecki violated § 1692e and § 1692f by directing the subpoena duces tecum at his residence after he had told the firm that he was not the debtor.  But the plaintiff does *not* disagree that Chiari & Ilecki's initial communications – *i.e.*, the CPLR § 5222 notice and information subpoena – do not violate § 1692e or § 1692f.[1]  *See* Doc. 30-3 at 16-17.  In fact, the plaintiff admits that (1) he "recognized that the CPLR § 5222 notice was not addressed to him" and "did not think that Chiari & Ilecki was attempting to collect a debt from him," and (2) he "understood that the notices [for the information subpoena]

---

[1] Indeed, none of the plaintiff's cases suggests that those initial communications could be construed as an attempt to collect a debt from the plaintiff and, thus, in violation of § 1692e or § 1692f.  *See* Doc. 30-3 at 15-18.  In fact, in *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246 (S.D.N.Y. 2011) – which the plaintiff claims is "virtually identical [to] this case," *see* Doc. 34 at 26 – the court expressly noted that if the debt collector's initial communications "had been the sum of plaintiff Ibrahim Bodur's interactions with [the debt collector], this Court would not be inclined to find a FDCPA violation."  *See* 829 F. Supp. 2d at 254-55.

were intended for the debtor, rather than the plaintiff himself, and for that reason, the plaintiff did not accept the deliveries." *Compare* Doc. 30-1, ¶¶ 23, 24, 30, *with* Doc. 34-1, ¶¶ 23, 24, 30.

Thus, the plaintiff opposes Chiari & Ilecki's summary judgment motion only with respect to his § 1692e and § 1692f claims and only to the extent they are premised on the final communication at issue – *i.e.*, the subpoena duces tecum.  But for any and all of the alternative reasons below, Chiari & Ilecki is entitled to summary judgment on those claims as well.

## II.   Chiari & Ilecki Is Not Vicariously Liable for the Independent Process Server.

First, Chiari & Ilecki cannot be held liable for the subpoena duces tecum because it was delivered by an independent process server, who was not Chiari & Ilecki's agent or employee.

In opposition, the plaintiff cites a handful of cases for the proposition that traditional agency rules either (1) do not govern the issue of vicarious liability under the FDCPA or (2) do not require a showing that the principal has the right to control the agent.  But the Supreme Court's decision in *Meyer v. Holley*, 537 U.S. 280 (2003), forecloses both of those arguments.

First, the Supreme Court assumes that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules."  *See id.* at 285.  "Congress' silence, while permitting an inference that Congress intended to apply *ordinary* background tort principles, cannot show that it intended to apply an unusual modification of those rules."  *Id.* at 286.  Thus, the Court "has applied unusually strict rules only where Congress has specified that such was its intent."  *Id.* at 287.  And, here, the plaintiff has not identified any specific manifestation of congressional intent for the FDCPA to depart from traditional vicarious liability rules.[2]

---

[2] The plaintiff seems to suggest that the public policy behind the FDCPA justifies an expansion of traditional agency rules.  But the Supreme Court already has confirmed that "characteriz[ing a] statute's objective as an 'overriding societal priority'" is not a valid basis for departing from ordinary rules of vicarious liability.  *See Meyer*, 537 U.S. at 290-91.

Furthermore, the Supreme Court has confirmed that "the relevant principal/agency relationship demands . . . control (or the right to direct or control)." *See id.* at 286; *see also Bynog v. Ciprinani Group, Inc.*, 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692, 694-95 (2003). Thus, in order to hold Chiari & Ilecki liable for Action Services' delivery of the subpoena, the plaintiff must demonstrate that Action Services was Chiari & Ilecki's agent and subject to its control.

As discussed in Chiari & Ilecki's moving papers, courts have consistently declined to hold a law firm liable for an alleged FDCPA violation by an independent process server. *See* Doc. 30-3 at 10-11. And, tellingly, *the plaintiff has failed to identity even a single case in which a law firm has been held vicariously liable for a process server's FDCPA violation.* The reason why is simple: A process server is almost always an independent contractor, and, thus, the law firm lacks the degree of control necessary to create an agency relationship.

This case is no different. The only supposed proof of control that the plaintiff can identify is the mere fact that Chiari & Ilecki "gave [Action Services] specific instructions to only serve William J. Wagner, Jr." *See* Doc. 34 at 13. But that suggests only that Chiari & Ilecki gave Action Services a specific assignment – not that the firm had any right to control how the assignment was completed. Indeed, "[f]actors relevant to assessing control include whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Bynog*, 1 N.Y.3d at 198, 770 N.Y.S.2d at 695. And the uncontroverted testimony of William Ilecki, Esq., establishes that each of those factors indicates that Chiari & Ilecki had no right to control Action Services, and, thus, no agency relationship existed. *See* Doc. 30-4, ¶¶ 26-35.

The plaintiff also argues that Chiari & Ilecki "ratified the process server's conduct." *See* Doc. 34 at 15. But "[w]hen an actor is not an agent and does not purport to be one, the agency-

-3-

law doctrine of ratification is not a basis on which another person may become subject to the legal consequences of the actor's conduct." *See* Restatement (Third) of Agency § 4.03, Cmt. b. And in any event, there is no such proof of ratification here.

"Under the law of agency ratification can only occur when the principal, having knowledge of the material facts involved in a transaction, evidences an intent to ratify it." *Breen Air Freight, Ltd. v. Air Cargo, Inc.*, 470 F.2d 767, 773 (2d Cir. 1972). And the "intent required for ratification 'must be clearly established and may not be inferred from doubtful or equivocal acts or language.'" *In re Adelphia Recovery Trust*, 634 F.3d 678, 693 (2d Cir. 2011).

Here, Chiari & Ilecki specifically instructed Action Services that there might be a "**William J. Wagner, Sr. and William J. Wagner, Jr. living at the same address**" and that the process server should "**be sure to serve the correct William J. Wagner**." *See* Doc. 30-21. As soon as plaintiff's counsel contacted Chiari & Ilecki regarding his client's claim of mistaken identity, the firm agreed to adjourn the subpoena until the dispute could be resolved. *See* Doc. 30-6 at 3; Doc. 30-23. Thus, there are no facts that "clearly establish" that Chiari & Ilecki intended to ratify Action Services' decision to deliver the subpoena to someone other than the debtor, and, therefore, Chiari & Ilecki cannot be held liable for its service of the subpoena.

## III.    The Plaintiff Cannot Establish a Violation of § 1692e or § 1692f.

Chiari & Ilecki also is entitled to summary judgment on the § 1692e and § 1692f claims because the subpoena duces tecum clearly was not an attempt to collect a debt from the plaintiff.

The plaintiff relies primarily on *Bodur* and *Johnson v. Bullhead Investments, LLC*, in which debt collectors were found to have violated § 1692e when they continued to direct collection efforts at the plaintiffs' addresses even after the plaintiffs proved they were not the debtors. But the facts of *Bodur* and *Johnson* are distinguishable and do not imply that Chiari & Ilecki violated the FDCPA simply by attempting to serve a subpoena on the debtor at the

-4-

plaintiff's address after the plaintiff had made an unsubstantiated claim of mistaken identity but refused to provide verifiable, documentary proof of his identity.  *See* Doc. 30-3 at 20-21.

The dispositive inquiry is whether under all the facts of this case, the least sophisticated consumer, standing in the plaintiff's shoes, would have objectively viewed the subpoena duces tecum as deceptive.  *See, e.g., David v. FMS Servs.*, 475 F. Supp. 2d 447, 449 (S.D.N.Y. 2007).  And in that regard, courts repeatedly have held that when a non-debtor receives a communication which is addressed to someone else or contains other indicia that it is intended for someone else, neither § 1692e nor § 1692f has been violated.  *See* Doc. 30-3 at 17-18, 23.  After all, "[e]ven an unsophisticated consumer knows her own name."  *See David*, 475 F. Supp. 2d at 449.

Here, the subpoena was specifically addressed to the debtor, "William J. Wagner Jr.," and referenced a debt owed to M.J. Peterson.  *See* Doc. 30-20.  But as the plaintiff himself admits, he has never been known as a "Jr.," never conducted business with M.J. Peterson, and never owed the company money.  *See* Doc. 25-4, ¶¶ 1, 3.  And, significantly, the plaintiff also admits he was aware that other debt collectors had been trying to reach the debtor at his address for years.  *See* Doc. 30-24, ¶ 5; Doc. 30-36 at 30:9 – 34:13.  Thus, the only logical conclusion a consumer in the plaintiff's position could make is that Chiari & Ilecki was attempting to contact someone else.[3] *See David*, 475 F. Supp. 2d at 449; *see also* Doc. 30-3 at 17-18, 23.  For that reason as well, Chiari & Ilecki is entitled to summary judgment on the plaintiff's § 1692e and § 1692f claims.[4]

---

[3] Indeed, even the plaintiff himself reached that conclusion.  Although the plaintiff has made the self-serving claim that he thought Chiari & Ilecki was attempting to collect a debt from him, when pressed further, he consistently has acknowledged that he understood that the collection efforts were intended for someone else, and his real complaint was that he felt harassed.  *See id.* at 53:4 – 53:14, 55:2 – 55:9, 64:20 – 65:13, 82:10 – 82:12.

[4] In addition, Chiari & Ilecki is entitled to summary judgment on the § 1692f claim because the plaintiff still "does not identify any misconduct beyond that which [he] assert[s] violate[s] other provisions of the FDCPA."  *See Corson v. Accounts Receivable Mgmt.*, No. 13-cv-1903, 2013 U.S. Dist. LEXIS 112282, at *21 (D.N.J. Aug. 9, 2013) (alterations in original).

**IV.     The Plaintiff Does Not Have Standing to Assert a § 1692e or § 1692f Claim.**

The plaintiff's claims also must be dismissed because he cannot demonstrate an "injury in fact" under Article III of the Constitution.  The plaintiff cites a number of cases that have found that an FDCPA violation may satisfy Article III, but under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), he still must show here that "the deprivation of a right created by statute is accompanied by 'some concrete interest that is affected by the deprivation.'"  *See Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 582 (6th Cir. 2016) (quoting *Spokeo*, 136 S. Ct. at 1549). That is, the "statutory violation must constitute a 'risk of real harm' to the plaintiff."  *See id.*

Here, even if the subpoena duces tecum technically violated § 1692e or § 1692f , the plaintiff has not faced any "risk of real harm."  The plaintiff has conceded that he understood that he did not owe the debt at issue and that the subpoena was not directed to him.  *See* Doc. 30-36 at 57:2 – 58:11, 64:20 – 65:1, 82:10 – 82:12.  And anyone in the plaintiff's position would have reached the same conclusion because the subpoena clearly was addressed to "William J. Wagner, Jr." – a name which the plaintiff never had used – and identified a debt owed to M.J. Peterson – a company with which the plaintiff never had done business.  *See* Doc. 25-4, ¶¶ 1, 3; Doc. 30-20. Thus, the subpoena presented no "risk of real harm," and the plaintiff cannot satisfy Article III.[5]

Furthermore, the plaintiff cannot demonstrate that he has a right of action under the FDCPA.  *See* Doc. 30-3 at 27-29.  In opposition, the plaintiff does not dispute that he is not a "consumer" and instead attempts to demonstrate "injurious exposure."  But "a letter addressed specifically to the debtor does not communicate with a third party, even if it is mailed to the address of a third party."  *See Davis v. Phelan Hallinan & Diamond PC*, No. 16-1952, 2017 WL 1437192, at *3 (3d Cir. Apr. 24, 2017).  And, here, the plaintiff fully understood that the

---

[5] Nor can the plaintiff rely on his unsubstantiated claims of emotional injury.  "[G]eneral emotional 'harm,' no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes."  *Humane Soc. of U.S. v. Babbitt*, 46 F.3d 93, 98 (D.C. Cir. 1995); *see* Doc. 30-3 at 25.

subpoena was not addressed to him or intended for him.  *See* Doc. 30-36 at 57:2 – 58:11, 64:20 –

65:1, 82:10 – 82:12.  Thus, he cannot demonstrate "injurious exposure," and he does not have a

right of action under the FDCPA.[6]  *See* Doc. 30-3 at 28-29.

## V.     The Bona Fide Error Defense Shields Chiari & Ilecki From Liability.

Finally, even if Chiari & Ilecki has committed a technical violation of the FDCPA – and

it has not – the firm is entitled to summary judgment on its bona fide error defense.

### A.     Any FDCPA Violation Was Unintentional.

The facts of this case speak for themselves:  Chiari & Ilecki (1) reviewed the information

in its file and ran multiple searches to locate the debtor before undertaking any collection efforts;

(2) repeatedly attempted to verify the plaintiff's identity when he claimed that he had received

the firm's communications but was not the debtor; (3) performed skip tracing a second time in

light of the plaintiff's claims; (4) specifically warned its process server only to serve the debtor

and not any other William Wagner at the same address; and (5) immediately agreed to adjourn

the subpoena until the identity dispute could be resolved.  *See* Doc. 30-3 at 32.  Thus, the only

logical conclusion is that Chiari & Ilecki did not intend to dun anyone but the debtor.

In opposition, the plaintiff argues that "[t]here are many potential motivations that the

Defendant may have had to pursue the Plaintiff."  *See* Doc. 34-1, ¶ 71.  But, tellingly, the

plaintiff has not identified one shred of evidence that suggests that Chiari & Ilecki intended to

---

[6] In addition, the plaintiff's § 1692e and § 1692f claims fail the "zone of interests" test. *See* Doc. 30-3 at 29-30.  Although the plaintiff has made the self-serving claim that he thought Chiari & Ilecki was attempting to collect a debt from him, when pressed further, he consistently has acknowledged that he understood that Chiari & Ilecki's collection efforts were intended for someone else and that his true complaint was simply that he felt harassed. *See, e.g.,* Doc. 30-36 at 53:4 – 53:14, 55:2 – 55:9, 64:20 – 65:13, 82:10 – 82:12.  But the prevention of harassing collection practices is the purpose of § 1692d – not § 1692e or § 1692f.  *See* 15 U.S.C. §§ 1692d, 1692e, 1692f; S. Rep. 95-382, 1977 U.S.C.C.A.N. 1695, 1696 (1977).  Therefore, the plaintiff's claims do not fall within the zones of interests of § 1692e and § 1692f.

dun or harass the plaintiff, and his mere speculation cannot defeat summary judgment.  *See, e.g.,*

*Golden Pacific Bancorp v. F.D.I.C.*, 375 F.3d 196, 200-01 (2d Cir. 2004).

> **B.      Any FDCPA Violation Was the Result of a Bona Fide Error.**

Before Chiari & Ilecki undertook any collection efforts, one of its attorneys, Melissa

Overbeck, Esq., reviewed the firm's file and ran multiple searches on the debtor, including on

the Lexis and Real Info databases.  Based on that research, she concluded that the debtor lived at

5419 Roberts Road, Hamburg, New York 14075.[7]

The plaintiff argues that the Lexis report does not link the debtor to 5419 Roberts Road.

But that is pure fiction.  The Lexis report was generated specifically for the debtor based on his

Social Security number and full name, William J. Wagner, Jr.  *See* Overbeck Reply Decl., ¶¶ 13-

14; *Exhibit A* at 1.  In both the Address Summary and the Address Details sections of the report,

5419 Roberts Road is listed as one of the top three addresses for the debtor.  *See id.*, ¶¶ 15-16;

*Exhibit A* at 1-3.  In fact, the Address Details section of the report notes that 5419 Roberts Road

had been verified as an address for the debtor as late as April 2015 – two months after Ms.

Overbeck ran the searches at issue.  *See id.*, ¶¶ 21-22; *Exhibit A* at 3.  And the Potential Relatives

section of the report also indicates that one of the top three potential relatives for the debtor is a

Julia or Julie Wagner, who also resides at 5419 Roberts Road.  *See id.*, ¶ 23; *Exhibit A* at 7-8.

Moreover, Ms. Overbeck did not rely on the Lexis report alone.  Rather, she compared it

to the information in Chiari & Ilecki's file, which revealed that the firm had ruled out the other

---

[7] Tacitly recognizing that this conclusion was reasonable, the plaintiff focuses his opposition on arguing that Chiari & Ilecki should be sanctioned for failing to preserve the original Lexis and Real Info reports.  But the plaintiff does not even attempt to make the required threshold showing that Chiari & Ilecki "had any obligation to preserve the evidence."  *See Henkel Corp. v. Polyglass USA, Inc.*, 194 F.R.D. 454, 456 (E.D.N.Y. 2000).  Indeed, it is undisputed that when Ms. Overbeck ran the Lexis and Real Info searches on February 9, 2015, and June 5, 2015, there was no threat of litigation, and the plaintiff did not even mention contacting an attorney until June 17, 2015.  *See* Doc. 30-3 at 37.  Thus, Chiari & Ilecki had no obligation to preserve the reports, and the spoliation analysis ends there.  *See id.* at 36-39.

top possible addresses that the Lexis report listed for the debtor.  *See* Doc. 30-5, ¶¶ 25-30.  And she also verified the Lexis report by searching Real Info, which confirmed that William Wagner owned 5419 Roberts Road.  *See* Overbeck Reply Decl., ¶ 27; *Exhibit B*.  And Real Info also confirmed that 5419 Roberts Road was co-owned by Julie Wagner, *see id.*, ¶ 30; *Exhibit B* – the woman the Lexis report listed as the debtor's potential relative, *see id.*, ¶ 23; *Exhibit A* at 7-8.

Thus, it was reasonable for Ms. Overbeck to conclude that the debtor resided at 5419 Roberts Road.  Indeed, *other debt collectors have reached the same conclusion and attempted to reach the debtor at that address*.  *See* Doc. 30-24, ¶ 5; Doc. 30-36 at 30:9 – 34:13.  As such, it is beyond dispute that if Chiari & Ilecki violated the FDCPA, it was the result of a bona fide error.

### C.   Chiari & Ilecki Maintained Reasonable Procedures.

As set forth in its moving papers, Chiari & Ilecki maintains procedures specifically designed to avoid identifying the wrong address for a debtor, including (1) having an experienced attorney oversee every step of the collection process; (2) reviewing the debtor's file and running multiple searches to locate the debtor before undertaking any collection activity; (3) attempting to verify any claim of mistaken identity by requesting documentation and performing additional skip tracing; and (4) immediately ceasing collection efforts if an attorney concludes that an address is incorrect.  *See* Doc. 30-3 at 41-43; Doc. 30-4, ¶¶ 45-85.

In opposition, the plaintiff criticizes Chiari & Ilecki's reliance on Lexis.  But Mr. Ilecki has provided uncontroverted testimony – based on nearly thirty years' experience in collections – that reports from the Lexis and Westlaw public records databases are the most reliable.  *See* Ilecki Reply Decl., ¶¶ 10-12.  And given that Lexis and Westlaw have long been the two leading database providers within the legal community, Mr. Ilecki clearly is not alone in reaching that conclusion.  *See id.*, ¶ 13.  In fact, Lexis' public records information is apparently so reliable that over 4,000 law enforcement agencies across the country rely on it as well.  *See id.*, ¶¶ 14-15.

The plaintiff also argues that it is not reasonable for Chiari & Ilecki to rely exclusively on a Lexis report.  But even assuming, *arguendo*, that the plaintiff is correct, that is irrelevant here because Chiari & Ilecki's procedure is *not* to rely solely on a single Lexis report.  *See* Ilecki Reply Decl., ¶¶ 18-19.  Rather, the firm independently verifies the information in such reports by comparing it to the information in its file or obtainable from other sources.  *See id.*, ¶ 19.

The plaintiff also criticizes Chiari & Ilecki's policy that when an individual claims that he is not a debtor, the firm requests a copy of his driver's license and redacted Social Security card.  But that is an entirely reasonable method of verifying an individual's identity.  Indeed, the Federal Rules of Bankruptcy Procedure typically require a debtor to provide the bankruptcy trustee with "a picture identification issued by a governmental unit" and "evidence of social-security number(s)" in order to establish his identity.  *See* Fed. R. Bankr. P. 4002(b)(1).  And even the plaintiff himself clearly recognizes that such information is necessary to prove his identity because he has voluntarily submitted a redacted copy of his driver's license and Social Security card to this Court to show that he is not the debtor.  *See* Doc. 25-6; Doc. 25-7.

The FDCPA "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution."  *Kort v. Diversified Collection Servs.*, 394 F.3d 531, 539 (7th Cir. 2005).  And, here, Chiari & Ilecki's record speaks for itself.  Although the firm handles hundreds of collection cases every year, the firm has (1) never been found to have violated the FDCPA, (2) never paid to settle an FDCPA claim, and (3) never before been sued for identifying the wrong address for a debtor.  *See* Ilecki Reply Decl., ¶¶ 5-7.  Chiari & Ilecki's procedures are clearly effective and entitle the firm to summary judgment.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Chiari & Ilecki summary judgment dismissing this action in its entirety.

-10-

Dated:      Buffalo, New York
               May 8, 2017

                                   s/Paul A. Woodard
                                   Terrence M. Connors, Esq.
                                   Paul A. Woodard, Esq.
                                   **CONNORS LLP**
                                   Attorneys for Defendant
                                   1000 Liberty Building
                                   Buffalo, New York 14202
                                   (716) 852-5533
                                   tmc@connorsllp.com
                                   paw@connorsllp.com