UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM J. WAGNER,

                Plaintiff,

-vs-

CHIARI & ILECKI, LLP,

                Defendant.

**REPLY DECLARATION**

Docket No. 15-cv-633-FPG

WILLIAM ILECKI, ESQ., declares under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.     I am an attorney at law duly licensed to practice my profession in the State of New York and a partner in – and principal of – the defendant, CHIARI & ILECKI, LLP, in this matter.   As such, I am familiar with the facts and circumstances involved in this litigation.

2.     I submit this reply declaration in further support of Chiari & Ilecki's cross-motion for summary judgment.

3.     In his response to Chiari & Ilecki's motion, the plaintiff criticizes our procedures for ensuring that we identify the correct address for a debtor and direct collection efforts only at the debtor.   But the plaintiff's criticisms are without merit.

4.     Simply put, our firm's record speaks for itself.

5.     Although we handle hundreds of collection cases each year, our firm has never once been found to have violated the Fair Debt Collection Practices Act ("FDCPA").

6.     Our firm has never once paid to settle any FDCPA claim.

7.     And our firm has never once before been sued for identifying the wrong address for a debtor.

8.     Clearly, our procedures are reasonably adapted to avoid any such error.

9.     The plaintiff suggests that our firm cannot reasonably rely on reports from the Lexis public records database, but, again, he is mistaken.

10.     As I explained in my declaration dated March 2, 2017, I have been performing file review and skip tracing on a daily basis for over twenty-seven years, and in my experience, reports from the Lexis and Westlaw public records databases are the most reliable.   *See* Doc. 30-4 at 8 (¶¶ 59-61).

11.     Product literature discussing the advantages of SmartLinx – the specific Lexis product that our firm used during the time period at issue – is attached as *Exhibits A, B,* and *C.*

12.     One of the reasons why Lexis and Westlaw reports are so reliable is that they pull information from a number of different sources that typically have the most reliable data available.   These sources include utility records, change-of-address records, and credit reports.

13.     I clearly am not alone in finding Lexis and Westlaw reliable as they have been the two leading database providers within the legal community for decades.

14.     In fact, Lexis' public records information is so reliable that law enforcement agencies across the country are able to rely on it as well.

15.   Product literature available on Lexis' website, an example of which is attached as *Exhibit D*, reveals that over 4,000 law enforcement agencies in the United States rely on Accurint for Law Enforcement, one of Lexis' public records search tools.

16.   Thus, certainly, our firm is justified in relying on Lexis' public records information as well.

17.   The plaintiff also argues that it is not reasonable to rely solely on Lexis to identify a debtor's address.   But even assuming, *arguendo*, that the plaintiff is correct, that is altogether irrelevant here.

18.   As I have explained before, whenever we perform skip tracing, we always review the information available in our file and run various reports on the debtor.   *See* Doc. 30-4 at 8 (¶ 58).

19.   In other words, it is not our procedure to rely solely on a single Lexis or Westlaw report.   Rather, we verify the information in such reports by comparing it to the information in our file or obtainable from other sources.

20.   In this case, for instance, Melissa Overbeck, Esq., obtained a Lexis report generated based on the debtor's Social Security number and full name, William J. Wagner, Jr.   *See* Doc. 30-5 at 2 (¶ 12); Doc. 30-7 at 1.

21.   The Lexis report indicated that 5419 Roberts Road, Hamburg, New York 14075, was a potential address for the debtor and that he had a potential relative named Julia or Julie Wagner living at the same address.   *See* Doc. 30-5 at 2-3 (¶¶ 12-13); Doc. 30-7 at 1, 7-8.

22.     Ms. Overbeck did not rely on the information in that Lexis report alone, however.   Rather, she verified it by comparing it to the information in our file and obtaining a report from the Real Info real estate database, which confirmed that 5419 Roberts Road was owned by a William Wagner and Julie Wagner.  *See* Doc. 30-5 at 3 (¶¶ 14-15); Doc. 30-8.

23.     The plaintiff also suggests that it is not reasonable for Chiari & Ilecki to have a policy that when an individual calls our office claiming that he is not a debtor, we do not blindly accept his unsubstantiated claim of mistaken identity and instead request that he provide verifiable proof of identity, such as a copy of his driver's license and redacted Social Security card.

24.     Although the plaintiff feigns ignorance, it is no industry secret that debtors who are unable to repay what they owe often resort to misrepresenting their identities or addresses to avoid collection efforts.

25.     Based on my nearly thirty years of experience in handling collection cases, I can certainly testify to that fact.

26.     One particularly memorable example is when I was retained to collect on the debt owed in *Parkside Medical Anesthesia Associates, P.C. v. Adamo*, Buffalo City Court, Index No. B96873.

27.     In that case, the debtor and his sister told the Sheriff's Office on two separate occasions that the debtor was deceased.

28.     Following our firm's procedures, I performed skip tracing on the debtor, including on Lexis.

29.     On the Lexis public records database, I discovered that the debtor was not listed in the Social Security Administration's death records and had recent financial activity, both of which indicated that he was, in fact, still alive.

30.     After I brought this information to the attention of the Sheriff's Office, they finally were able to bring the debtor and his sister to court, where they ultimately admitted that they had lied about the debtor's fate.

31.     The debtor has since been regularly paying off the debt.

32.     In other words, if I had simply accepted the debtor's unsubstantiated representations and not relied on Lexis – as the plaintiff suggests I should – the debtor would have avoided the judgment without paying a single penny.

33.     Moreover, our practice of requesting a copy of an individual's driver's license and redacted Social Security card is an accepted, minimally intrusive method of verifying an individual's identity.

34.     In my experience, the great majority of individuals agree to supply a driver's license, and many also agree to provide Social Security information.

35.     In fact, the Federal Rules of Bankruptcy Procedure typically require a debtor to provide the bankruptcy trustee with "a picture identification issued by a governmental unit" – such as a driver's license – and "evidence of social-security number(s)" – such as a Social Security card – in order to establish his identity.   *See* Fed. R. Bankr. P. 4002(b)(1).

36.     And even the plaintiff himself has confirmed that this information is necessary to establish an individual's identity by voluntarily submitting a redacted

copy of his driver's license and Social Security card to this Court in order to demonstrate that he is not the debtor.   *See* Doc. 25-6; Doc. 25-7.

37.    The plaintiff also suggests that our firm has a policy of directing collection efforts at an address even if we have not confirmed that the debtor lives there.   But once again, that misrepresents the truth.

38.    As the plaintiff notes, I testified that as of the time of my deposition, I did not "know" if the debtor lived at 5419 Roberts Road.   *See* Doc. 30-37 at 45:11 – 45:12, 66:8 – 66:11.

39.    But I also made it clear that when our firm directed collection efforts at the debtor at 5419 Roberts Road, we "believed" that the debtor lived there.   *See id.* at 48:16 – 48:20, 75:11 – 75:14.

40.    Indeed, I have repeatedly explained that either Ms. Overbeck or I always review a file before our firm undertakes any collection efforts, and while we cannot know the debtor's address for certain until we make contact with the debtor, we also do not proceed until we feel confident that we have the right address.   *See, e.g.,* Doc. 30-4 at 9 (¶ 73).

41.    In responding to Chiari & Ilecki's Statement of Undisputed Facts, the plaintiff flippantly remarks that "[t]here are many potential motivations that Ms. Overbeck may have had to pursue the Plaintiff even though the Lexis reports did not confirm that the debtor resided at Plaintiff's address."   *See* Doc. 34-1 at 16 (¶ 70).

42.    As an initial matter, the plaintiff is simply wrong that the Lexis reports did not confirm that the debtor resided at the plaintiff's address.

-6-

43.     Regardless, that is a bold accusation to make against an attorney like Ms. Overbeck, who is in good standing, has no history of discipline, and has consistently demonstrated a commitment to the highest professional and ethical standards.

44.     Not surprisingly, the plaintiff does not cite to a single shred of evidence in support of his conjecture.   *See id.*

45.     The reason why is obvious:   Of course, Ms. Overbeck did not intend to direct collection efforts at the wrong address for the debtor.

46.     In attempting to locate the debtor, Ms. Overbeck followed our procedures that are specifically designed to prevent any such error, and she obtained multiple reports that indicated that the debtor lived at 5419 Roberts Road.

47.     Even if one of those reports contained incorrect information and caused Ms. Overbeck to identify an incorrect address for the debtor, her analysis and conclusion were reasonable.

48.     Given that the plaintiff refused to provide verifiable proof of his identity, and our letter to the debtor was never returned as undeliverable, it was also reasonable for Ms. Overbeck not to accept the plaintiff's unsubstantiated claim of mistaken identity and instead re-run and continue to rely on the reports that indicated that the debtor resided at 5419 Roberts Road.

49.     Accordingly, Chiari & Ilecki cannot be held liable under the FDCPA, and this Court should grant Chiari & Ilecki's cross-motion for summary judgment in its entirety.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   May 8, 2017

_____
William Ilecki, Esq.