2017 WL 4864491
Only the Westlaw citation is currently available.
United States District Court,
C.D. California.

Mohammad Ali HEDAYATI, Plaintiff,
v.
The PERRY LAW FIRM, Defendant.

Case No. SA CV 16–0846–DOC (DFMx)
|
Signed 10/27/2017

**Attorneys and Law Firms**

[Andrew Paul Rundquist](), Law Office of Andrew P. Rundquist, San Diego, CA, [Tracy R. Horn](), The Torkzadeh Law Firm, Los Angeles, CA, for Plaintiff.

Evan Goldsmith, Riverside County District Attorneys Office, Riverside, CA, [Larry Michael Roberts](), [Michael R. Perry](), The Perry Law Firm, Lake Forest, CA, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

[DAVID O. CARTER](), UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

**\*1** A bench trial on this Fair Debt Collections Practices Act ("FDCPA") matter was held on May 31, 2017.

This action stems from Defendant The Perry Law Firm's ("Perry" or "Defendant") attempts to collect a debt owed by a "Mohammad Hedayati" for unpaid homeowners' association dues related to maintenance of a residence at 5011 Corkwood Lane. In attempting to collect the debt, The Perry Law Firm targeted Plaintiff Mohammad Ali Hedayati ("Plaintiff"), mistakenly believing him to be debtor "Mohammad Hedayati," who was actually Plaintiff's brother. Plaintiff claims that Defendant's efforts to collect the debt from him violated the FDCPA.

At the conclusion of Plaintiff's case at trial, Defendant moved for dismissal, arguing that Plaintiff had failed to establish a prima facie case. The Court granted a directed verdict as to the claim of actual or emotional distress damages, finding that there was "insufficient evidence to show that [Plaintiff] was personally distressed by [D]efendant's efforts," but declined to decide the issue of liability or statutory damages. Transcript ("Tr.") Vol. II (Dkt. 85), at 25:10–19. At the close of trial, the Court requested additional briefing regarding the bona fide error defense. *See* Tr. Vol. II, at 25:23–26:3.

The Court issues the following findings of fact and conclusions of law pursuant to [Federal Rule of Civil Procedure 52](). To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

### II. FINDINGS OF FACT

1. Plaintiff is named Mohammad Ali Hedayati; he was born in Iran and moved to the United States in 1986. Transcript ("Tr.") Vol. I (Dkt. 82), 41:2–25.

2. Plaintiff has a brother named Mohammad Hedayati, who has no middle name and resides at 5011 Corkwood Lane in Irvine, California ("Corkwood Property"). *Id.* at 42:3–17.

3. Defendant engages in the collection of debts on behalf of creditors, including Parkside Community Association. *See* Trial Exhibits ("Tr. Exs.") 8, 10, 11.

**A. Efforts to Collect Debt Owed by Mohammad Hedayati**

4. On January 28, 2015, Defendant received a file from Parkside Community Association for homeowners' association debts owed by "Mohammad Hedayati." *See* Tr. Ex. 10 at 1, Tr. Ex. 18 at 44–47.

5. The obligations related to the Corkwood Property were incurred primarily for personal, family or household purposes. *See* Tr. Ex. 18 at 44–47.

6. The file showed the "mailing address" and "community address" for the homeowner as 5011 Corkwood Lane, Irvine, California. Tr. Vol. I, 106:19–107:16.; Tr. Ex. 18 at 44.

7. Defendant's clients usually provide Defendant with a debtor's full name and address, and the balance owed,

but not with the debtor's social security number or phone number. Tr. Vol. I, 18:16–19:15.

8. On January 28, 2015, Defendant sent an Alternative Dispute Resolution letter to the Corkwood Property via certified and first class mail, return receipt requested. *See id.* at 74:15–18; Tr. Ex. 8.

**\*2** 9. On January 29, 2015, Defendant conducted a LexNexis public records search to identify the homeowner's address. Tr. Vol. I, 32:14–33:18; Tr. Ex. 38.

10. The LexisNexis report was generated using as search terms the name "Mohammad Hedayati" and the Corkwood Property address. Tr. Vol. II, 9:23–25. The resulting report listed thirteen name variations, including "Mohammad Ali Hedayati," as well as multiple social security numbers and multiple dates of birth. Tr. Ex. 38 at 2; Tr. Vol. I, 34:24–36:4. Among the many addresses listed in the report were Plaintiff's rental property address and his work address. Tr. Ex. 38 at 5, 23. The report also provided two potential email addresses for Mohammad Hedayati: usflooring@sbcglobal.net and bruce_hedayati@yahoo.com. *Id.* at 2.

11. Given all the information contained in the LexisNexis report, Defendant's inference that "Mohammad Ali Hedayati" and "Mohammad Hedayati" might both be aliases of the debtor was reasonable. *See* Tr. Ex. 38; Tr. Vol. II, 12:15–16:19 (describing all the specific information in the LexisNexis report that "either confused or conflated the names of 'Mohammad Hedayati' and 'Mohommad Ali Hedayati' ").

12. If Defendant had somehow obtained the debtor's social security number from Parkside Community Association and used just that social security number as a search term to conduct a LexisNexis public records search, the report that would have been generated would likely be practically identical to the report actually generated in this case using the debtor's name and address as search terms. Tr. Vol. II, 9:11–10:4.

13. Defendant also generated a transaction history report for the Corkwood Property, which showed "numerous Notice of Defaults and a Notice of Trustee Sale that was set," so Defendant did not know whether the debtor was still residing at the address. *Id.* at 87:24–88:2; Tr. Ex. 36.

14. At least one document mailed by Defendant to the Corkwood Property was returned as undeliverable or not signed for. Tr. Vol. I, 87:22–23.

15. On June 5, 2015, Defendant called U.S. Floor Kitchen & Bath, Inc. and asked to speak to Mohammad Hedayati. *See* Tr. Ex. 11 at 2 (note dated 6/5/2015 by Cody Henderson). Defendant was told that Mohammad Hedayati was not in that day, which seemed to corroborate the LexisNexis Public Records Report's findings that Mohammad Hedayati was the president of U.S. Floor, Kitchen & Bath, Inc., and that his e-mail address was usflooring@sbcglobal.net. *See* Tr. Vol. I, 115:9–21; Tr. Ex. 38 at 5; Tr. Ex. 11 at 2.

16. On June 9, 2015, Defendant employee Cody Henderson first spoke with Plaintiff by phone, at which time Plaintiff informed Defendant he had lived in Ladera Ranch for the last eight years and had never resided in Parkside Community Association. *See* Tr. Ex. 11 at 3 (note dated 6/9/15 by Cody Henderson).

17. On July 6, 2015, Defendant served via substitute service the "Resolution to Foreclose" regarding outstanding homeowners' association obligations for the Corkwood Property upon Plaintiff's tenant residing at 42 Hallcrest Drive, Ladera Ranch ("Ladera Property"). *See id.* (notes dated 7/6/15 by Rick Zoss and Erik Joscak).

18. Later that day, Defendant received a phone call from "John" who said he had been served with paperwork at the Ladera Property, which he was renting from "Bruce." *Id.* (note dated 7/6/15 by Erik Joscak). This seemed to corroborate the LexisNexis report's findings that Mohammad Hedayati also owned the Ladera Property, and that his e-mail address was bruce_hedayati@yahoo.com. *See* Tr. Vol. I, 116:14–117:11; Tr. Ex. No. 11 at 3. Defendant employee Erik Joscak pulled title on the Ladera Property and confirmed it appeared to be owned by the debtor. *See* Tr. Ex. 11 at 3 (note dated 7/6/15 by Erik Joscak).

**\*3** 19. On August 25, 2015, Defendant's employee Richard Zoss checked the deed of the Corkwood property and confirmed that the name listed was

Mohammad Hedayati. Tr. Vol. I, 36:11–12; Tr. Ex. 11 at 3 (note dated 8/25/15). He therefore named "Mohammad Hedayati" as the Defendant in the Corkwood property foreclosure lawsuit. Tr. Vol. I., 39:16–18.

20. On September 9, 2015, Defendant served the foreclosure lawsuit via substitute service at Plaintiff's place of employment in Rancho Santa Margarita, CA. *See* Tr. Ex. 11 at 3 (note dated 9/16/15 by Cody Henderson); *id.* at 7 (email from attorney Mike Ayaz to Dena Sites).

21. On November 23, 2015, Defendant received a phone call from "Hunter," who claimed to represent Mohammad Hedayati and told Defendant it was pursuing the wrong individual. Tr. Ex. 11 at 4 (note dated 11/23/2015 by Cody Henderson); Tr. Vol. I, 118:3–10. Defendant employee Cody Henderson asked Hunter to email him any proof he had that Defendant was pursuing the wrong individual, but Defendant never received anything further from Hunter. *See* Tr. Vol. I, 118:9–119:4; Tr. Ex. 11. at 4 (note dated 11/23/2015 by Cody Henderson).

22. When Defendant submitted its abstract of judgment in the foreclosure lawsuit, Plaintiff's place of employment was listed as the "last known address" of the judgment debtor. *See* Tr. Ex. 28 at 4.

23. Because of Defendant's recordation of the abstract of judgment, Plaintiff received a "Notice of Involuntary Lien" from the County Recorder of San Bernardino. *See id.*

24. On March 18, 2016, Defendant generated a Westlaw People Map Report for Mohammad Hedayati, which included name variations of "Mohammad A Hedayati" and "Mohammad Ali Hedayati" and only showed one social security number. *See* Tr. Vol. II, 17:9–18:2; Tr. Ex. 39.

25. On April 27, 2016, Defendant called attorney Mike Ayaz, who claimed to be representing the debtor Mohammad Hedayati, after receiving a voicemail from him. Tr. Ex. 11 at 6 (note dated 4/27/16 by Dena N. Sites); Tr. Vol. I, 120:1–2. On the call, Mr. Ayaz informed Defendant that service was invalid, because Defendant had served Mohammad Ali Hedayati instead of his brother Mohammad Hedayati, who was the actual debtor. Tr. Ex. 11 at 6 (note dated 4/27/16 by Dena N. Sites); Tr. Vol. I, 120:4–12.

26. When Defendant finally learned that it had served the wrong brother, it ceased collection activity against Plaintiff and agreed to vacate the judgment it had obtained. *See* Tr. Vol. I, 119:18–120:5; Tr. Exs. 11, 31.

27. In summary, despite relying on public records and cross-referencing with other public records, Defendant unintentionally sent debt-collection documents to someone who was not the actual debtor, namely, to the Plaintiff in this case—the debtor's brother. Tr. Vol. II, 5:20–6:1.

28. Plaintiff received mail addressed to "Mohammad Hedayati" from Defendant Perry at his work address and rental property address. *Id.* at 44:2–12, 45:14–16. Rather than returning it, he opened the mail, saw what it concerned, and at some point notified his brother that Defendant was seeking to collect on a debt the brother owed. *Id.* at 45:20–46:8.

29. As soon as Plaintiff learned the address that the debt concerned, he knew it was not his debt, but rather his brother's debt; he thus knew that Defendant was actually seeking to collect the debt from his brother. *See id.* at 62:18–19, 63:13–64:4.

**\*4** 30. All of the documents Plaintiff received from Defendant or a process server listed "Mohammad Hedayati," not "Mohammad Ali Hedayati," as the debtor. *Id.* at 64:5–12.

31. Plaintiff told Defendant that he was not the debtor, but never informed Defendant that his brother was the debtor. *Id.* at 47:16–18, 49:4–9.

32. Plaintiff never provided any documentation or evidence to Defendant to prove that he was not the debtor. *Id.* at 72:3–16.

33. Defendant never received any written notice of dispute of the debt. *Id.* at 127:25–128:3.

**B. Defendant's Procedures**

34. Defendant holds FDCPA training sessions with each of its employees every quarter. *See* Tr. Vol. I, 74:1–3.

35. Defendant's FDCPA training covers disputed debts, what employees should do if a debt is disputed, and how to communicate with third parties to verify a debt. *See* Tr. Vol. II, 7:1–4.

36. Additionally, as part of Defendant's monthly assessment collection staff meetings, employees are all briefed on FDCPA compliance. *See* Tr. Vol. I, 111:22–112:18.

37. When Defendant hires new employees, it teaches the new employees to follow procedures that are specifically tailored to avoiding FDCPA violations. *See* Tr. Vol. I, 16:24–17:4.

38. Defendant uses research databases and cross-references public records and other sources with the information it receives from clients in order to ensure that the correct address is used for debt collection mail. *Id.* at 76:15–19, 87:14–15; Tr. Vol. II, 7:7–20, 8:12–18.

39. Defendant utilizes public records and databases to conduct research in order to locate individuals, because sometimes the location information clients provide Defendant is not accurate. Tr. Vol. I, 81:5–10; *see, e.g.*, Tr. Ex. 38. For example, this research is used when mail is returned unsigned or as undeliverable, or when a process server is unable to locate an individual. Tr. Vol. I, 81:13–18.

40. In addition, Defendant does title searches at various times throughout the debt collection process to verify or determine debtors' addresses. *Id.* at 112:22–113:16; *see, e.g.*, Tr. Ex. 36. A title search done in this case showed the Corkwood Property's ownership, the owner's name, and documents recorded in relation to the property, such as the Grant Deed and mortgage information. Tr. Vol. I, 113:21–24; Tr. Ex. 36.

41. Defendant also pulls property reports that show any other properties owned by the debtor. Tr. Vol. I, 114:6–11; *see, e.g.*, Tr. Ex. 37.

42. When a supposed debtor calls and informs Defendant that they have the wrong person, Defendant's procedure is to ask for documents showing that the caller is not the actual debtor. *See id.* at 92:17–21, 95:10–18, 118:9–10, 120:18–25.

43. In light of the procedures Defendant followed and the information contained in the reports generated by various database searches Defendant conducted, Defendant's debt-collection actions, including mistakenly believing that Plaintiff was the debtor, were reasonable.

### III. CONCLUSIONS OF LAW

44. The FDCPA provides that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of [15 U.S.C.] sections 1692b to 1692j, inclusive ...." 15 U.S.C. § 1692, *et seq.*

45. Thus, to succeed on his claim that Defendant violated the FDCPA, Plaintiff must prove that: (1) Defendant was attempting to collect a "debt," (2) Defendant is a "debt collector," (3) Plaintiff is a "consumer," and (4) Defendant violated at least one subsection of the FDCPA.

**\*5** 46. Under the FDCPA, "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

47. The term "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6).

48. Defendant the Perry Law Firm is a "debt collector" and was attempting to collect a "debt" as defined by the FDCPA.

49. The FDCPA defines "consumer" to mean "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

50. Defendant argues that Plaintiff is not a consumer under the FDCPA, because only "Mohammad Hedayati"—not Plaintiff "Mohammad Ali Hedayati"—was obligated or allegedly obligated to pay any debt. Plaintiff

argues that courts have held that the definition of "consumer" includes individuals from whom debt collectors mistakenly attempt to collect money.

51. In *Dunham v. Portfolio Recovery Associates, LLC*, the Eighth Circuit explicitly rejected Defendant's reading of the term "consumer." 663 F.3d 997 (8th Cir. 2011). That court pointed out that under Defendant's interpretation of the FDCPA, "a person who has been abused by a debt collector's harassing tactics, which the FDCPA generally prohibits, could not invoke the protection of the FDCPA if the debt collector contacted the individual by mistake." *Id.* at 1002. Instead, Defendant's interpretation would read "allegedly obligated" as applying only to those who "actually owe or owed the specific debt at issue, despite whether a debt collector asserted a person owes the specific debt." *Id.*

52. Other courts in the Ninth Circuit have adopted the reasoning of *Dunham*. *See, e.g.*, *Davis v. Midland Funding*, LLC, 41 F. Supp. 3d 919, 924 (E.D. Cal. 2014) (commenting that the FDCPA's text "strongly suggests that Congress intended the FDCPA to protect consumers who were subjected to collection efforts for obligations they did not owe" and concluding that the statute encompassed claims brought by such individuals); *Gonzalez v. Law Firm of Sam Chandra, APC,* No. 13–CV–0097–TOR, 2013 WL 4758944, at *3 (E.D. Wash. Sep. 4, 2013) (adopting *Dunham*'s reasoning to conclude that "the fact that the debt actually belonged to someone else does not strip Plaintiff of a cause of action under the FDCPA," and finding that plaintiff was a consumer because "Defendants 'alleged' that Plaintiff owed a debt when they mailed her 'dunning' letters").

53. This Court agrees with the reasoning set forth in *Dunham* and *Davis* and reads the term "consumer" to encompass persons from whom debt collectors mistakenly attempt to collect money, because through such collection efforts the debt collector effectively "alleges" that the individual is "obligated" to pay the debt. *See* 15 U.S.C. § 1692a(3).

### A. Violation of the FDCPA's Subsections

54. Plaintiff claims that Defendant violated 15 U.S.C. §§ 1692e and 1692e(10) when attempting to collect Mohammad Hedayati's debt from Plaintiff.

**\*6** 55. Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." One example of such prohibited conduct is the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10).

56. The FDCPA is a strict liability statute, which means that Plaintiff need not show that any alleged violation by Defendant was intentional. *See Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002, 1004 (9th Cir. 2008) (citing *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1176 & n.11 (9th Cir. 2006)) ("The FDCPA is a strict liability statute in that a plaintiff need not prover an error was intentional."); *Hunt v. Check Recovery Sys., Inc.*, 487 F. Supp. 2d 1157, 1169 (N.D. Cal. 2007) ("[D]ebt collectors generally are liable for violating the FDCPA's requirements without regard to intent, knowledge or willfulness." (citations omitted)).

57. Defendant argues that it never falsely represented that Plaintiff owed a debt, even though it mistakenly targeted Plaintiff with its debt collection efforts, because it only ever represented that "Mohammad Hedayati" owed the debt—none of its documents list "Mohammad Ali Hedayati" as the debtor.

58. Whether conduct violates § 1692e "requires an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by a communication.' " *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (citing *Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 934 (9th Cir. 2007)). "The objective least sophisticated debtor standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.' " *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1027 (9th Cir. 2012) (quoting *Terran v. Kaplan,* 109 F.3d 1428, 1431–32 (9th Cir. 1997)). However, "although the least sophisticated debtor may be uninformed, naive, and gullible, nonetheless her interpretation of a collection notice cannot be bizarre or unreasonable," and she is presumed to have "a basic level of understanding and willingness to read with care." *Id.* (citations omitted).

59. While Plaintiff does not point to any specific false or misleading statements contained in communications from the Defendant, Plaintiff claims that Defendant violated § 1692e by dispatching process servers and mailing debt collection documents to property owned by Plaintiff and to Plaintiff's place of employment. Plaintiff claims this constituted the use of false representations and deceptive means in violation of the FDCPA, because Plaintiff had informed Defendant that he was not the debtor "Mohammad Hedayati" who had incurred the obligation.

60. To support his contention that Defendant's actions violated the FDCPA, Plaintiff cites one case from the District of Utah (which Plaintiff miscites as a Tenth Circuit case) and quotes that court's conclusion that "[b]ecause attempts to collect a debt from a non-debtor violate the FDCPA and because Plaintiff reasonably believed that the Constantino Defendants were attempting to collect a debt from him, the Constantino Defendants' actions were sufficient to qualify as a violation of the FDCPA." *Gallegos v. LVNV Funding LLC*, 169 F. Supp. 3d 1235, 1242 (D. Utah 2016); *see* Plaintiff's Trial Brief ("Pl. Tr. Brief") at 10.

**\*7** 61. However, that case is not binding authority, nor does it involve entirely analogous facts. In *Gallegos*, the Plaintiff was named Luis Gallegos, and his father was Luis Gallegos, Sr. *Gallegos*, 169 F. Supp. 3d at 1239. Defendant debt collectors, in attempting to collect a debt owed by Gallegos, Sr., served Plaintiff with a summons and complaint that referred to a Luis Gallegos residing at *Plaintiff's* address, even though Gallegos, Sr. had never lived there. *Id.* Moreover, the complaint did not provide any additional identifying information, such as a birthdate or social security number, about the debtor. *Id.* The *Gallegos* court concluded that, although it appeared that the defendants "actually requested service on and filed lawsuits against Gallegos, Sr.," the "Plaintiff reasonably believed that the ... Defendants were trying to pursue a debt against him that he did not owe," because he "received debt collection letters, summonses, and complaints that only referenced his name and address." *Id.* at 1241–42. Thus, because receiving letters and complaints listing one's own name and address is likely to confuse the least sophisticated consumer, the court determined that the defendants' actions qualified as a violation of the FDCPA. *Id.* at 1242.

62. Here, on the other hand, all the documents Plaintiff received listed "Mohammad Hedayati" as the debtor and, importantly, made clear that the debt related to the Corkwood Property. Even the least sophisticated debtor knows his own address and can understand that, if he receives debt collection notices that list an address he doesn't recognize and a name similar to his own, that the debt collector likely has the wrong individual. In fact, that is exactly what happened in this case—as soon as Plaintiff saw the Corkwood Property listed on documents, he knew that he did not owe the debt and that Defendant was targeting the wrong individual. Thus, this Court cannot say that Defendant violated the FDCPA just because Defendant targeted the wrong person when it mailed and served documents that themselves did not contain false statements and in fact clearly listed the address of the Corkwood Property. *See Donohue*, 592 F.3d at 1034 ("In assessing FDCPA liability, we are ... concerned with ... genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response.").

63. Plaintiff also relies on *Gallegos* in arguing that Defendant violated the FDCPA by continuing to target Plaintiff with its debt collection efforts even after Plaintiff told Defendant that he was not the debtor and did not reside at the Corkwood address. The *Gallegos* court concluded that "a debt collector ... violat[es] the FDCPA by using 'false, deceptive, or misleading representations or means in connection with the collection' of a debt if the debt collector continues to pursue debt collection activities against a consumer after receiving clear notice that the consumer is likely not the debtor and without undertaking any efforts to verify the debtor's actual information." *Gallegos*, 169 F. Supp. 3d at 1242–43 (citing 15 U.S.C. § 1692(e)). That court explained its decision, and the factual basis for it, as follows:

> In this case, after the First Case was served on Plaintiff, Plaintiff wrote a letter to the court clearly stating that he was not the debtor, that his father was the debtor, and that his father did not live at [Plaintiff's address]. Even after receiving clear notice through Plaintiff's letter that they may have been given an incorrect address for the actual

debtor, which would have made service of process in the [f]irst [c]ase improper, the ... Defendants continued to pursue the debt by seeking default judgment in the First Case, by sending additional debt collection letters, by filing a Second Case, and by serving process in the Second Case. Plaintiff then called the ... Defendants multiple times to reaffirm that he was not the debtor and that the debtor did not live at his address. Even after the phone calls, the ... Defendants continued to pursue the debt by seeking default judgment in the Second Case and by requesting access to private employment records. Although the ... Defendants may not have violated the FDCPA by initially pursuing a debt in reliance on information from the creditor, continuing to pursue the debt without confirming the debtor's information after multiple, clear notices that some of the debtor's information may have been incorrect is a violation of the FDCPA.

**\*8** *Id.* at 1242.

64. However, even under the reasoning set out in *Gallegos*, Plaintiff in this case has not shown that Defendant violated the FDCPA. Although Defendant continued to target Plaintiff with its debt collection efforts even after Plaintiff notified Defendant that he was not the debtor, Plaintiff did not give Defendant the same kind of clear notice as the plaintiff provided the defendants in *Gallegos*, and in this case Defendant *did* attempt on multiple occasions to confirm the debtor's information. In *Gallegos*, the plaintiff wrote a letter clearly stating "that he was not the debtor, *that his father was the debtor*, and that his father did not live at [Plaintiff's address]." *Id.* (emphasis added). Here, however, Plaintiff orally told Defendant that he was not the debtor, but never informed Defendant that he had a brother named "Mohammad Hedayati" who was the debtor. Nor did Plaintiff ever provide any evidence that he was not the debtor, let alone any written notice or dispute of the debt. In addition, Defendant in this case conducted numerous public records searches, checked the title to various properties, and spoke with Plaintiff's employee and Plaintiff's tenant, all of which reinforced Defendant's belief that Plaintiff was in fact the debtor.

65. Thus, under the facts of this case, the Court cannot say that Defendant used any "false representations or deceptive means" in violation of the FDCPA when it attempted to collect Mohammad Hedayati's debt. *See* 15 U.S.C. § 1692(e).

### B. Bona Fide Error Defense

66. Even if Defendant's actions did constitute violations of the FDCPA, the bona fide error defense applies.

67. The FDCPA provides an affirmative defense for a debt collector who has been found to violate the FDCPA "if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such errors." 15 U.S.C. § 1692k(c). Thus, "to qualify for the bona fide error defense," the burden is on the defendant to "prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).

68. First, the error Defendant made by targeting the wrong brother with its debt collection efforts was unintentional. *See* Tr. Vol. II, 5:22–6:4. Plaintiff argues that all of Defendant's actions were intentional, in that Defendant intended to place phone calls, send mail, and dispatch process servers to Plaintiff. *See id.* at 6:5–14; Pl. Tr. Brief at 13. However, this argument is unavailing. While Defendant acted with volition in its debt collection efforts, its real intention was to contact, and collect the debt from, the actual debtor. Thus, Defendant unintentionally targeted Plaintiff instead of his brother.

69. Second, the error was bona fide—the evidence in the record shows that Defendant acted in good faith and without fraud in its efforts to collect Mohammad Hedayati's debt. *See Bona Fide*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Made in good faith; without fraud or deceit"); *see also Bona fide error*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("A violation that is unintentional and occurs despite procedures reasonably adapted to avoid any such error"). Defendant diligently attempted to

identify the correct individual by conducting public records searches and following training protocols, and there is no evidence that Defendant's employees at any time sought to deceive or mislead Plaintiff. Moreover, when Defendant discovered its error, it ceased collection activity against the Plaintiff and agreed to vacate the judgment it had obtained.

***9** 70. Finally, Defendant maintains procedures that are reasonably adapted to avoid attempting service on the wrong party. As discussed above, Defendant conducts public records searches to verify a debtor's address and other information, and it cross-references the results of its multiple searches. In addition, Defendant does title searches at various times during the debt-collection process to verify debtor's addresses. Defendant also trains its employees on the proper procedures for dealing with a disputed debt or a claim that the contacted individual is not the debtor.

71. In this case, Defendant's procedures were not able to prevent the error in large part because even public records can't differentiate between Plaintiff and his brother. Moreover, when Plaintiff notified Defendant that he was not the debtor, Defendant asked Plaintiff to provide evidence to that effect—which seems to be a procedure reasonably adapted to ensuring the correct person is targeted with debt collection efforts—but Plaintiff declined to ever do so.

72. The bona fide error defense does not require that the internal procedures actually avoid errors—otherwise the defense would have no purpose and [15 U.S.C. § 1692k(c)](#) would be largely meaningless. Rather, it requires that a defendant maintain internal procedures which are reasonably adapted to avoid the errors that occurred. Here, Defendant has established that it maintains procedures reasonably adapted to avoid targeting someone other than the actual debtor.

73. Thus, even if the Court had found that Defendant's actions violated the FDCPA, the bona fide error defense would apply.

### IV. CONCLUSION

For the reasons explained above, the Court HOLDS that Defendant did not violate the FDCPA, and that, in any case, the bona fide error defense applies.

Defendant The Perry Law Firm shall submit a proposed judgment **on or before November 4, 2017.**

**All Citations**

Slip Copy, 2017 WL 4864491

---

**End of Document**  © 2018 Thomson Reuters. No claim to original U.S. Government Works.