UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM J. WAGNER,

               Plaintiff,

    -vs-                               Docket No. 15-cv-633-FPG

CHIARI & ILECKI, LLP,

               Defendant.
_____

## <u>DEFENDANT'S STATEMENT OF UNDISPUTED FACTS</u>

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56(a)(1), the defendant, CHIARI & ILECKI, LLP, submits that the following facts are undisputed and demand that summary judgment be granted in Chiari & Ilecki's favor.

1.    Chiari & Ilecki was retained by M.J. Peterson LLC to collect a debt owed by a debtor named William J. Wagner, Jr.   *See* Declaration of William Ilecki, Esq., dated March 2, 2017 ("Ilecki Decl."), ¶ 4.

2.    Melissa Overbeck, Esq. – one of Chiari & Ilecki's FDCPA-trained attorneys – reviewed the information in Chiari & Ilecki's file and performed skip tracing to attempt to determine the debtor's current address.   *See* Declaration of Melissa Overbeck, Esq., dated March 2, 2017 ("Overbeck Decl."), ¶ 9.

3.    On February 9, 2015, Ms. Overbeck ran multiple searches regarding the debtor, including on the LexisNexis public records database and the Real Info real estate information database.   *See* Overbeck Decl., ¶ 10.

4.     A Lexis report was generated based on the debtor's full name –
William J. Wagner, Jr. – and Social Security number, and it indicated that 5419
Roberts Road, Hamburg, New York 14075, was one of the top possible addresses for
the debtor.   *See* Overbeck Decl., ¶ 12; *Exhibit B* (December 2015 Lexis Report).

5.     The Lexis report also indicated that the debtor was possibly related to
a Julia or Julie Wagner who lived at 5419 Roberts Road.   *See* Overbeck Decl., ¶ 13;
*Exhibit B* (December 2015 Lexis Report).

6.     In addition, a Real Info report confirmed that 5419 Roberts Road was
owned by a William Wagner and Julie Wagner.   *See* Overbeck Decl., ¶ 14; *Exhibit
C* (May 2016 Real Info Report).

7.     Chiari & Ilecki had previously ruled out the other top possible
addresses that the Lexis report or other credit reports listed for the debtor –
namely, (1) 1571 Eggert Road, Buffalo, New York 14226, (2) 356 Hartford Road,
Buffalo, New York 14226, and (3) 378 Windermere Boulevard, Amherst New York
14226.   *See* Overbeck Decl., ¶¶ 15, 25-30; *Exhibits B, D-H*.

8.     Based on her review of Chiari & Ilecki's file and the searches she ran
on February 9, 2015, Ms. Overbeck concluded that 5419 Roberts Road was the
debtor's address.   *See* Overbeck Decl., ¶ 16.

9.     Ms. Overbeck prepared an information subpoena with restraining
notice to serve on the debtor at the Roberts Road address via certified mail.   *See*
Overbeck Decl., ¶ 32; *Exhibit I* (Information Subpoena).

10.    The information subpoena was specifically addressed to "William J.
Wagner Jr." – the debtor – and referenced the judgment entered against the debtor

and in favor of M.J. Peterson.   *See* Overbeck Decl., ¶ 33; *Exhibit I* (Information Subpoena).

11.     As required by law, Ms. Overbeck also prepared a CPLR § 5222 notice to serve on the debtor via first-class mail.   *See* Overbeck Decl., ¶ 34; *Exhibit J* (CPLR § 5222 Notice).

12.     The enclosure letter for the CPLR § 5222 notice was specifically addressed to "William J. Wagner Jr." – the debtor – and referenced the debt he owed to M.J. Peterson.   *See* Overbeck Decl., ¶ 35; *Exhibit J* (CPLR § 5222 Notice).

13.     On February 9 and 11, 2015, respectively, Chiari & Ilecki mailed the CPLR § 5222 notice and the information subpoena.   *See* Overbeck Decl., ¶ 36; *Exhibit K* (Affidavit of Service).

14.     Those were the only papers that Chiari & Ilecki mailed to the debtor at 5419 Roberts Road throughout the firm's collection efforts at issue.   *See* Overbeck Decl., ¶ 37.

15.     On February 12, 2015, Chiari & Ilecki's CPLR § 5222 notice to the debtor was delivered to 5419 Roberts Road and opened by the plaintiff.   *See* Declaration of Paul A. Woodard, Esq., dated March 2, 2017 ("Woodard Decl."), *Exhibit G* (Wagner Dep.) at 22:12 – 23:5; Affidavit of William J. Wagner, sworn to on December 14, 2016 ("Wagner Aff."), ¶ 16.

16.     According to the plaintiff, he is named "William J. Wagner," but he is not a "Jr.," has never been referred to as a "Jr.," and is not the debtor.   *See* Wagner Aff., ¶ 1; Woodard Decl., *Exhibit G* (Wagner Dep.) at 20:22 – 21:4.

17.     According to the plaintiff, he resides at 5419 Roberts Road, and the debtor does not.   *See* Wagner Aff., ¶ 9; Woodard Decl., *Exhibit G* (Wagner Dep.) at 20:22 – 21:11.

18.     Before February 2015, the plaintiff – William J. Wagner – had been receiving communications intended for the debtor – William J. Wagner, Jr. – for the past six or seven years.   *See* Declaration of Karen Sandford, dated March 1, 2017 ("Sandford Decl."), ¶ 5; *Exhibit A* (Events Log).

19.     Before February 2015, multiple other debt collectors had attempted to reach the debtor at 5419 Roberts Road, and Chiari & Ilecki was not one of them. *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 30:9 – 34:13; Overbeck Decl., ¶ 37.

20.     When the plaintiff opened Chiari & Ilecki's CPLR § 5222 notice to the debtor on February 12, 2015, he saw that it was addressed to "William J. Wagner Jr." and concerned a debt owed to M.J. Peterson.   *See* Wagner Aff., ¶ 16.

21.     The plaintiff knew that he had never conducted business with M.J. Peterson.   *See* Wagner Aff., ¶ 3; Woodard Decl., *Exhibit G* (Wagner Dep.) at 21:14 – 21:16.

22.     The plaintiff knew that he did not owe a debt to M.J. Peterson.   *See* Wagner Aff., ¶ 3; Woodard Decl., *Exhibit G* (Wagner Dep.) at 21:17 – 21:19.

23.     The plaintiff recognized that the CPLR § 5222 notice was not addressed to him.   *See* Wagner Aff., ¶ 16; Woodard Decl., *Exhibit G* (Wagner Dep.) at 23:4 – 23:18, 25:14 – 25:17.

24.     At the time, the plaintiff did not think that Chiari & Ilecki was attempting to collect a debt from him.   *See* Wagner Aff., ¶ 16; Woodard Decl., *Exhibit G* (Wagner Dep.) at 25:18 – 25:21.

25.     After reading the CPLR § 5222 notice on February 12, 2015, the plaintiff called Chiari & Ilecki later that day, claiming that he was not a "Jr." or the debtor that Chiari & Ilecki was looking for.   *See* Sandford Decl., ¶¶ 3-4; *Exhibit A* (Events Log).

26.     During the February 12, 2015 telephone call, the plaintiff told one of Chiari & Ilecki's legal assistants, Karen Sandford, only the last two digits of his Social Security number.   He did not provide a copy of his driver's license or Social Security card.   *See* Sandford Decl., ¶ 6; *Exhibit A* (Events Log).

27.     Ms. Sandford noted the February 12, 2015 telephone call in the firm's events log for the debtor's file and notified Ms. Overbeck of the plaintiff's claim. *See* Sandford Decl., ¶¶ 8-9; *Exhibit A* (Events Log); *Exhibit B* (Sandford Email to Overbeck).

28.     Thereafter, the United States Postal Service twice attempted to deliver the information subpoena that Chiari & Ilecki had sent to the debtor at 5419 Roberts Road, by certified mail, on February 11, 2015 – the day before the plaintiff first called Chiari & Ilecki.   *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 36:19 – 37:4, 38:15 – 39:4; 42:12 – 42:16, 45:21 – 46:4; *Exhibit N* (Postal Service Notices); Overbeck Decl., ¶¶ 32-33, 36, 40; *Exhibit K* (Affidavit of Service).

29.     The first notice that the Postal Service left at 5419 Roberts Road was addressed to "William J. Wagner, Jr.," and the second notice was addressed to "W. Wagner, Jr."   *See* Woodard Decl., *Exhibit N* (Postal Service Notices).

30.     Therefore, the plaintiff understood that the notices were intended for the debtor, rather than the plaintiff himself, and for that reason, the plaintiff did not accept the deliveries.   *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 37:12 – 37:19, 38:18 – 38:22.

31.     As such, the plaintiff never received or read the information subpoena.   *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 47:17 – 47:20.

32.     The plaintiff thereafter called Chiari & Ilecki a second time – on March 19, 2015 – and again claimed that he was not the debtor.   *See* Declaration of Kristian Brown, dated March 1, 2017 ("Brown Decl."), ¶¶ 3-4; *Exhibit A* (Events Log).

33.     During the March 19, 2015 telephone call, the plaintiff provided the month and year of his birth to Kristian Brown, one of Chiari & Ilecki's legal assistants.   Ms. Brown invited the plaintiff to send Chiari & Ilecki a copy of his driver's license and Social Security card so that the firm could verify his identity, but the plaintiff declined to do so.   *See* Brown Decl., ¶¶ 4-6; *Exhibit A* (Events Log).

34.     According to the plaintiff, it was not until after this March 19, 2015 telephone call that he first felt harassed by Chiari & Ilecki.   *See* Wagner Aff., ¶¶ 22-23.

35.     Ms. Brown documented the March 19, 2015 telephone call in the firm's events log for the debtor's file.   *See* Brown Decl., ¶ 7; *Exhibit A* (Events Log).

36.     On or about May 11, 2015, the United States Postal Service returned the information subpoena to Chiari & Ilecki as unclaimed.   *See* Overbeck Decl., ¶ 42; *Exhibit N* (Returned Envelope).

37.     On June 5, 2015, Ms. Overbeck reviewed the events log, read the summaries of the plaintiff's two telephone calls, and noted that the plaintiff had not sent in a copy of his driver's license or Social Security card.   *See* Overbeck Decl., ¶¶ 43-45, 52.

38.     Ms. Overbeck thereafter researched the debtor's address a second time, including on Lexis, and once again concluded that the debtor lived at 5419 Roberts Road. *See* Overbeck Decl., ¶¶ 54-55.

39.     After verifying the debtor's address a second time, Ms. Overbeck prepared a subpoena duces tecum to be served on the debtor at 5419 Roberts Road by a process server.   *See* Overbeck Decl., ¶ 57; *Exhibit O* (Subpoena Duces Tecum).

40.     The subpoena was specifically addressed to "William J. Wagner Jr." – the debtor – and referenced the judgment entered against the debtor and in favor of M.J. Peterson.   *See* Overbeck Decl., *Exhibit O* (Subpoena Duces Tecum).

41.     In her enclosure letter, Ms. Overbeck specifically warned the process service company – Action Services & Research, Inc. – that there could be more than one William J. Wagner – *i.e.*, both a "Sr." and a "Jr." residing at 5419 Roberts Road.  *See* Overbeck Decl., *Exhibit P* (Letter to Action Services).

42.     Ms. Overbeck specifically instructed Action Services to ensure that it served only the debtor – William J. Wagner, Jr. – and not any other William J.

Wagner living at the Roberts Road address.   *See* Overbeck Decl., *Exhibit P* (Letter to Action Services).

43.     Specifically, Ms. Overbeck wrote in bold-faced type, **"Please be sure to serve the correct William J. Wagner.   We believe there is a William J. Wagner, Sr. and William J. Wagner, Jr. living at the same address."**   *See* Overbeck Decl., *Exhibit P* (Letter to Action Services).

44.     On June 17, 2015, one of Action Services' process servers, John M. Celano, handed the subpoena duces tecum to the plaintiff.   *See* Overbeck Decl., ¶ 64; *Exhibit Q* (Affidavit of Service).

45.     Neither Action Services nor Mr. Celano has ever been an employee of Chiari & Ilecki.   *See* Ilecki Decl., ¶ 26.

46.     Action Services is a completely separate company with its own independent business.   *See* Ilecki Decl., ¶ 27.

47.     In terms of ownership and management, Action Services and Chiari & Ilecki are wholly unrelated.   *See* Ilecki Decl., ¶ 28.

48.     In both this case and a number of other cases, Chiari & Ilecki has engaged Action Services to serve legal papers for the firm, but Chiari & Ilecki has no control over how Action Services accomplishes that work.   *See* Ilecki Decl., ¶ 29.

49.     Action Services has sole authority to decide what individual process servers to use when completing the assignments Chiari & Ilecki gives them – in this case, Mr. Celano.   *See* Ilecki Decl., ¶ 30.

50.     Action Services also furnishes all its own tools, supplies, and materials in completing Chiari & Ilecki's assignments.   *See* Ilecki Decl., ¶ 31.

51. Action Services is not on Chiari & Ilecki's regular payroll. Rather, Chiari & Ilecki compensates Action Services on a per-assignment basis. *See* Ilecki Decl., ¶ 32.

52. Chiari & Ilecki is free to give Action Services – or any other process service company – as much or as little of its business as the firm wishes, and Action Services is free to decline any assignment Chiari & Ilecki gives them. *See* Ilecki Decl., ¶ 33.

53. Thus, Chiari & Ilecki did not have the right to exercise – and did not exercise – control over the manner in which Action Services or Mr. Celano went about serving the subpoena duces tecum in this case. *See* Ilecki Decl., ¶ 34.

54. In other words, Action Services and Mr. Celano were independent contractors rather than agents of Chiari & Ilecki. *See* Ilecki Decl., ¶ 35.

55. When the plaintiff was handed the subpoena duces tecum on June 17, 2015, he saw that it was addressed to "William J. Wagner Jr." and concerned a judgment entered against "William J. Wagner Jr." and in favor of M.J. Peterson. *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 57:8 – 58:11.

56. The plaintiff knew that he had never been involved in a lawsuit with M.J. Peterson. *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 58:4 – 58:8.

57. The plaintiff knew that a judgment had not been entered against him and in favor of M.J. Peterson. *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 58:9 – 58:11.

58.     As such, the plaintiff recognized that the subpoena duces tecum was not addressed to him and did not concern him.   *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 57:8 – 58:3.

59.     The plaintiff still knew that he was not the person that Chiari & Ilecki was looking for.   *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 82:23 – 83:12.

60.     On June 29, 2015, Chiari & Ilecki was called by Seth Andrews, Esq., one of the plaintiff's attorneys in this action.   *See* Overbeck Decl., ¶ 67; *Exhibit A* (Events Log).

61.     Mr. Andrews spoke with Ms. Overbeck and claimed that the plaintiff – William J. Wagner – was not the debtor – William J. Wagner, Jr.   *See* Overbeck Decl., ¶ 68; *Exhibit A* (Events Log).

62.     Ms. Overbeck explained to Mr. Andrews that Chiari & Ilecki could not simply accept the plaintiff's unsubstantiated word, and Mr. Andrews indicated that he understood and appreciated the firm's position.   *See* Overbeck Decl., ¶ 69.

63.     As her office had done before, Ms. Overbeck requested that Mr. Andrews provide a copy of the plaintiff's driver's license and Social Security card in order to allow Chiari & Ilecki to verify the plaintiff's identity.   *See* Overbeck Decl., ¶ 70; *Exhibit A* (Events Log).

64.     In response, Mr. Andrews told Ms. Overbeck that his client probably would not agree to send in even a redacted copy of his Social Security card, but he would try to convince the plaintiff to produce a copy of his driver's license.   *See* Overbeck Decl., ¶ 71; *Exhibit A* (Events Log).

65.     Ms. Overbeck agreed, in turn, to send Mr. Andrews a copy of the lease that the debtor had signed with M.J. Peterson so that each of them could attempt to verify the plaintiff's identity by comparing the debtor's signature on the lease to the plaintiff's signature on his driver's license.   *See* Overbeck Decl., ¶ 72; *Exhibit A* (Events Log).

66.     Mr. Andrews and Ms. Overbeck also agreed to a general adjournment of the pending subpoena duces tecum while they attempted to resolve the issue of the plaintiff's identity.   *See* Overbeck Decl., ¶ 73; *Exhibit A* (Events Log).

67.     Later that day – June 29, 2015 – Ms. Overbeck confirmed their agreement in a facsimile to Mr. Andrews.   *See* Overbeck Decl., ¶ 74; *Exhibit R* (Facsimile to Andrews).

68.     Mr. Andrews never sent Chiari & Ilecki a copy of the plaintiff's driver's license or Social Security card, however, and Chiari & Ilecki did not hear anything more about the matter until the firm was served with the summons and complaint in this action.   *See* Overbeck Decl., ¶ 75.

69.     Chiari & Ilecki never received a copy of the plaintiff's driver's license or Social Security card until after the plaintiff publicly filed those documents in January 2017 in connection with his summary judgment motion.   *See* Overbeck Decl., ¶ 76; Woodard Decl., *Exhibit G* (Wagner Dep.) at 63:10 – 64:3.

70.     If the plaintiff's evidence is accepted as true, the Lexis report that Ms. Overbeck reviewed was incorrect in listing 5419 Roberts Road as an address for the debtor, and, therefore, when Ms. Overbeck viewed this information in conjunction with the information in her office's file and on Real Info, she erroneously concluded

that this was the debtor's address. This error, however, was not intentional.   *See* Overbeck Decl., ¶¶ 77-78.

72.   Chiari & Ilecki never intended to collect the debt at issue from anyone other than the debtor himself.   *See* Overbeck Decl., ¶ 79.

72.   Chiari & Ilecki has instituted policies and procedures intended to ensure that the firm identifies the correct address for a debtor and only directs collection efforts to the debtor himself.   *See* Ilecki Decl., ¶¶ 53-85; Plaintiff's Statement of Facts, ¶ 54.

73.   Before Chiari & Ilecki undertakes collection efforts in any case, an FDCPA-trained attorney always performs skip tracing and reviews information relative to the debtor.   *See* Ilecki Decl., ¶ 57.

74.   If a paralegal or junior attorney performs initial skip tracing, either Ms. Overbeck or Mr. Ilecki personally double-checks the paralegal's or attorney's research and analysis by separately conducting the same searches.   *See* Ilecki Decl., ¶ 68

75.   When performing skip tracing and file review, the attorney or paralegal always begins by reviewing the firm's file and then running various reports on the debtor.   *See* Ilecki Decl., ¶ 58.

76.   When more than one potential address for the debtor is identified, the attorney or paralegal compares reports and the information in the firm's file and utilizes experience, common sense, and reasoned judgment to attempt to determine which address is most likely the correct one.   *See* Ilecki Decl., ¶ 67.

77.     Either Ms. Overbeck or Mr. Ilecki always reviews the file before Chiari & Ilecki undertakes any collection efforts, and they do not proceed until they feel confident that they have the right address for the debtor.   *See* Ilecki Decl., ¶ 73.

78.     In the event that an individual calls Chiari & Ilecki claiming that (1) the firm has directed collection efforts towards his residence, (2) he has a name similar to that of the debtor, and (3) the debtor does not reside with him, one of Chiari & Ilecki's FDCPA-trained legal assistants takes the call.   *See* Ilecki Decl., ¶ 74.

79.     The legal assistant who takes the call requests that the alleged non-debtor provide verifiable proof of his identity (*e.g.,* date of birth or Social Security number) and may request a copy of the individual's driver's license and Social Security card in order to confirm that he is not the debtor.   *See* Ilecki Decl., ¶ 75.

80.     The legal assistant who takes the call immediately inputs a summary of the conversation into the events log that Chiari & Ilecki maintains for the debtor's file.   *See* Ilecki Decl., ¶ 76.

81.     If the attorney assigned to the file has not previously been made aware of the situation, the legal assistant is required to alert Mr. Ilecki or Ms. Overbeck regarding the caller's allegations.   *See* Ilecki Decl., ¶ 77.

82.     Additionally, the attorney checks the events log for developments in the case before undertaking any additional collection efforts.   *See* Ilecki Decl., ¶ 78.

83.     If the attorney concludes that the caller has provided verifiable proof that he is not the debtor and that the debtor does not reside at his address, Chiari &

Ilecki immediately stops collection efforts directed to the debtor at that address. *See* Ilecki Decl., ¶ 79.

84.     There are many instances where a debtor misrepresents his identity or address in communications with Chiari & Ilecki.   *See* Ilecki Decl., ¶ 80.

85.     Therefore, if a caller refuses to provide verifiable proof of his identity, the attorney performs additional skip tracing, including carefully reviewing the information contained in the firm's file and also running additional searches (such as on Lexis or Westlaw), to confirm the debtor's address.   *See* Ilecki Decl., ¶ 81.

86.     Once again, Ms. Overbeck or Mr. Ilecki always reviews the file before any additional collection efforts are undertaken.   *See* Ilecki Decl., ¶ 82.

87.     If Ms. Overbeck or Mr. Ilecki concludes that the debtor likely does not reside at the address in question, Chiari & Ilecki immediately stops collection efforts directed to the debtor at that address.   *See* Ilecki Decl., ¶ 83.

88.     If, however, Ms. Overbeck or Mr. Ilecki still believes that the debtor resides at the address in question, Chiari & Ilecki may continue to undertake collection efforts against the debtor at that address.   *See* Ilecki Decl., ¶ 84.

89.     In that case, Chiari & Ilecki takes steps to ensure that communications are directed at only the debtor and not anyone else at that address. The attorney warns the staff, process servers, or other third parties engaged to assist in collection efforts.   *See* Ilecki Decl., ¶ 85.

90.     Chiari & Ilecki followed its own procedures throughout its efforts to collect the debt at issue.   *See* Ilecki Decl., ¶¶ 86-97.

Dated:       Buffalo, New York
               March 2, 2017

    __s/Paul A. Woodard_____
    Terrence M. Connors, Esq.
    Paul A. Woodard, Esq.
    **CONNORS LLP**
    Attorneys for Defendant
    1000 Liberty Building
    Buffalo, New York 14202
    (716) 852-5533
    tmc@connorsllp.com
    paw@connorsllp.com