UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WILLIAM J. WAGNER,

Plaintiff,

-vs-

CHIARI & ILECKI, LLP,

Defendant.

_____

Docket No. 15-cv-633-FPG

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
<u>DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Terrence M. Connors, Esq.
Caitlin M. Higgins, Esq.
**CONNORS LLP**
Attorneys for Defendant
1000 Liberty Building
Buffalo, New York 14202
(716) 852-5533
tmc@connorsllp.com
cmh@connorsllp.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................1

STATEMENT OF FACTS ......................................................................1

ARGUMENT .......................................................................................7

I.      Chiari & Ilecki Cannot Be Held Vicariously Liable for the Independent
        Process Server's Delivery of the Subpoena Duces Tecum. ............................... 7

II.     The Plaintiff Cannot Establish an FDCPA Violation. ...................................... 11

        A.      The Plaintiff Has Not Identified Any Conduct Approaching the
                Type of Egregious Behavior Required to Establish a Violation of
                § 1692d. ..................................................................................... 11

        B.      Chiari & Ilecki's Communications Were Clearly Intended for the
                Debtor – Not the Plaintiff – and Therefore Do Not Violate
                § 1692e....................................................................................... 14

        C.      The Plaintiff's § 1692f Claim Falls with His § 1692e Claim. ................. 21

III.    The Plaintiff Lacks Standing........................................................................ 22

        A.      The Plaintiff Cannot Establish an Injury in Fact so as to Satisfy
                Article III Standing. ......................................................................... 22

        B.      The Plaintiff Is Not a Consumer and Cannot Show Injurious
                Exposure........................................................................................ 26

        C.      The Plaintiff's § 1692e and § 1692f Claims Do Not Fall Within the
                Zone of Interests of Those Sections. ................................................... 28

IV.     The Bona Fide Error Defense Shields Chiari & Ilecki From Liability as a
        Matter of Law. ......................................................................................... 29

        A.      Any FDCPA Violation Was Unintentional. ......................................... 30

        B.      Any FDCPA Violation Was the Result of a Bona Fide Error. ................. 33

        C.      Chiari & Ilecki Maintained Procedures Reasonably Adapted to
                Avoid Such Errors. .......................................................................... 39

CONCLUSION....................................................................................45

# TABLE OF AUTHORITIES

**Cases**

*Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1 (D.D.C. 2010) ............................................... 24

*Allen v. Wright*, 468 U.S. 737 (1984) ........................................................................... 28

*Andino v. Mercantile Adjustment Bureau, LLC*, No. 14-cv-59, 2016 U.S. Dist.
LEXIS 19758 (W.D.N.Y. Feb. 18, 2016) ................................................................. 27

*Arnold v. Bayview Loan Servicing, LLC*, 659 F. App'x 568, 570 (11th Cir. 2016) ... 30,
32, 33, 39

*Ass'n of Data Processing Serv. Organizations, Inc. v. Camp*, 397 U.S. 150 (1970) .. 28

*Barasch v. Estate Info. Servs., LLC*, No. 07-cv-1693, 2009 U.S. Dist. LEXIS 79338
(E.D.N.Y. Sept. 2, 2009) ........................................................................................... 28

*Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383 (D. Del. 1991) ...................... 12, 14

*Benali v. AFNI, Inc.*, No. 15-cv-3605, 2017 U.S. Dist. LEXIS 783 (D.N.J. Jan. 4,
2017) ........................................................................................................................... 26

*Bennett v. Spear*, 520 U.S. 154 (1997) ......................................................................... 28

*Blauer v. Zucker, Goldberg, & Ackerman, LLC*, No. 09-cv-934, 2011 U.S. Dist.
LEXIS 30551 (D. Del. Mar. 24, 2011) ........................................................ 16, 21, 22

*Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246 (S.D.N.Y. 2011) ... 10, 17, 19

*Burgess v. Lee Acceptance Corp.*, No. 08-cv-13713, 2008 U.S. Dist. LEXIS 107440
(E.D. Mich. Dec. 4, 2008) ......................................................................................... 11

*Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692 (2003) .... 8, 9, 12

*Cache La Poudre Feeds, LLC v. Land O'Lakes Farmland Feed, LLC*, 244 F.R.D. 614
(D. Col. 2007) ............................................................................................................ 35

*Charbonneau v. Mary Jane Elliott, P.C.*, 611 F. Supp. 2d 736 (E.D. Mich. 2009) .... 42

*Christopher v. RJM Acquisitions, LLC*, No. 13-cv-2274, 2015 WL 437541 (D. Ariz.
Feb. 3, 2015) ............................................................................................................. 14

*Christy v. EOS CCA*, 905 F. Supp. 2d 648 (E.D. Pa. 2012)...................... 11, 14, 16, 21

*Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162 (9th Cir. 2006) ............... 8

*Cole v. Procollect, Inc.*, No. H-09-cv-3240, 2010 U.S. Dist. LEXIS 142667 (S.D. Tex.
Dec. 23, 2010) ........................................................................................................... 32

*Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001)................................................. 27

*Condon v. Global Credit & Collection Corp.*, No. 8:10-cv-1526, 2010 U.S. Dist.
LEXIS 129343 (M.D. Fla. Dec. 6, 2010) ................................................................. 27

*Corson v. Accounts Receivable Mgmt.*, No. 13-cv-1903, 2013 U.S. Dist. LEXIS
112282 (D.N.J. Aug. 9, 2013) ................................................................................... 21

*Covell v. Chiari & Ilecki, LLP*, No. 12-cv-660, 2012 U. S. Dist. LEXIS 186330
(W.D.N.Y. Oct. 16, 2012) ......................................................................................... 14

*Crafton v. Law Firm of Levine*, 957 F. Supp. 2d 992 (E.D. Wis. 2013) ..................... 32

*Crisafulli v. Ameritas Life Ins. Co.*, No. 13-cv-5937, 2015 U.S. Dist. LEXIS 56499
(D.N.J. Apr. 30, 2015) .............................................................................................. 24

*Datiz v. Int'l Recovery Assocs.*, No. 15-cv-3549, 2016 U.S. Dist. LEXIS 102695
(E.D.N.Y. Aug. 4, 2016)............................................................................................ 28

*David v. FMS Servs.*, 475 F. Supp. 2d 447 (S.D.N.Y. 2007) ................................ 16, 21

*Delmoral v. Credit Prot. Ass'n, LP*, No. 13-cv-242, 2015 U.S. Dist. LEXIS 133760 (E.D.N.Y. Sept. 30, 2015) ............................................................................................ 42

*Douge v. Nationstar Mortgage LLC*, No. 14-cv-6139, 2016 U.S. Dist. LEXIS 39824 (E.D.N.Y. Mar. 27, 2016) ............................................................................................ 27

*Edwards v. Naigara Credit Solutions, Inc.*, 584 F.3d 1350 (11th Cir. 2009)  30, 33, 39

*Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494 (D. Md. 2009) ............................... 36

*Hammett v. Allianceone Receivables Mgmt.*, No. 11-cv-3172, 2011 U.S. Dist. LEXIS 97330 (E.D. Pa. Aug. 30, 2011) ............................................................................. 12

*Hedayati v. Perry Law Firm*, 2017 WL 4864491 (C.D. Cal. Oct. 27, 2017 ............... 43

*Henkel Corp. v. Polyglass U.S.*, 194 F.R.D. 454 (E.D.N.Y. 2000) ........................ 35, 36

*Humane Soc. of U.S. v. Babbitt*, 46 F.3d 93 (D.C. Cir. 1995) ................................... 24

*Hyman v. Tate*, 2003 WL 1565863, at *6 (N.D. Ill. Mar. 24, 2003) *aff'd*, 362 F.3d 965 (7th Cir. 2004), ..................................................................................................... 43

*In re Pfizer Inc.*, 288 F.R.D. 297 (S.D.N.Y. 2013) ...................................................... 35

*Jackson v. Abendroth & Russell, P.C.*, No. 4:16-cv-113, 2016 U.S. Dist. LEXIS 125986 (S.D. Iowa Sept. 12, 2016) ........................................................................... 25

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 599 U.S. 573 (2010) 31, 32

*Johnson v. Bullhead Investments, LLC*, No. 09-cv-639, 2010 WL 118274 (M.D.N.C. Jan. 11, 2010) ................................................................................... 17, 18, 19, 20

*Johnson v. Capital Mgmt. Servs.*, No. 10-cv-467, 2011 U.S. Dist. LEXIS 138023 (W.D.N.Y. Dec. 1, 2011) ............................................................................................. 13

*Johnson v. JP Morgan Chase Bank*, No. F:08-cv-0081, 2008 U.S. Dist. LEXIS 97130 (E.D. Cal. Nov. 26, 2008) ........................................................................................... 11

*Johnson v. Ocwen Loan Servicing*, 374 F. App'x 868 (11th Cir. 2010) ..................... 28

*Johnson v. Riddle*, 443 F.3d 723 (10th Cir. 2006) ...................................................... 32

*Johnston v. Midland Credit Mgmt.*, No. 16-cv-437, 2017 U.S. Dist. LEXIS 10610 (W.D. Mich. Jan. 26, 2017) ........................................................................................ 26

*Kane v. Nat'l Action Fin. Servs.*, No. 11-cv-11505, 2011 U.S. Dist. LEXIS 141480 (E.D. Mich. Nov. 7, 2011) ............................................................................. 16, 21, 22

*Kaniewski v. Nat'l Action Fin. Servs.*, 678 F. Supp. 2d 541 (E.D. Mich. 2009) ........ 27

*Kinkade v. Estate Info. Servs., LLC*, No. 11-cv-4787, 2012 U.S. Dist. LEXIS 144826 (E.D.N.Y. Sept. 28, 2012) .......................................................................................... 12

*Kort v. Diversified Collection Servs.*, 394 F.3d 531 (7th Cir. 2005) ......................... 42

*Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002) .................................................... 28

*Kujawa v. Palisades Collection , L.L.C.*, 814 F. Supp. 2d 788 (E.D. Mich. 2008) 16, 21

*LaCourte v. JP Morgan Chase & Co.*, No. 12-cv-9453, 2013 U.S. Dist. LEXIS 129993 (S.D.N.Y. Sept. 4, 2013) ............................................................................................... 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) ....... 28

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................... 23, 24

*McDermott v. Randall S. Miller & Assocs., P.C.*, 835 F. Supp. 2d 362 (E.D. Mich. 2011) ............................................................................................................. 16, 21, 22

*McGrail v. Law Offices of Michael R. Stillman*, 2018 WL 2740234 (E.D. Mi. 2018) 43

*Meyer v. Holley*, 537 U.S. 280 (2003) ................................................................. 8, 10

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003) ....................................... 25

*Monahan v. NRA Group, L.L.C.*, No. 3:10-cv-638, 2011 U.S. Dist. LEXIS 99753 (D. Conn. Sept. 6, 2011) ......................................................................................... 13

*Motes v. Midland Funding, LLC*, No. 6:15-cv-961, 2017 WL 192766 (N.D. Ala. Jan. 18, 2017) ........................................................................................................... 32

*Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980 (4th Cir. 1992) 35

*Orbit One Commc'ns., Inc. v. Numeriex Corp.*, 271 F.R.D. 429 (S.D.N.Y. 2010) ...... 35

*Owens v. Howe*, No. 04-cv-152, 2004 WL 6070565 (N.D. Ind. Nov. 8, 2004) ........... 14

*Puglisi v. Debt Recovery Solutions, LLC*, 822 F. Supp. 2d 218 (E.D.N.Y. Sept. 30, 2011). ............................................................................................................... 42

*Reynolds v. Collectioncenter, Inc.*, No. 15-cv-1060, 2016 WL 759215 (D. Col. Feb. 26, 2016) ................................................................................................................ 35

*Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414 (D.N.J. Oct. 17, 2013) ......................................................................................................... 21, 32

*Sanchez v. Abderrahman*, No. 10-cv-3641, 2013 U.S. Dist. LEXIS 186537 (E.D.N.Y. July 24, 2013) ........................................................................................................ 10

*Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp. 2d 635 (D. Md. 2010) .............. 44

*Schwartz v. Resurgent Capital Servs., LP*, No. 08-cv-2533, 2009 U.S. Dist. LEXIS 103903, at *11-14 (E.D.N.Y. Nov. 9, 2009) ............................................................. 27

*Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, 155 F. App'x 10 (2d Cir. 2005) ......................................................................................................... 26, 27

*Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576 (6th Cir. 2016) .......................... 24

*Spartalian v. Citibank, N.A.*, No. 2:12-cv-742, 2013 U.S. Dist. LEXIS 20092 (D. Nev. Feb. 13, 2013) ....................................................................................................... 10

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ............................................... 22, 24, 25

*Suquilanda v. Cohen & Slamowitz, LLP*, No. 10-cv-5868, 2011 U.S. Dist. LEXIS 102727 (S.D.N.Y. Sept. 8, 2011) ............................................................................ 8

*Todd v. Collecto, Inc.*, 731 F.3d 734 (7th Cir. 2013) .................................................. 28

*Treppel v. Biovail Corp.*, 233 F.R.D. 363 (S.D.N.Y. 2006) ........................................ 36

*Valle v. Bendett & McHugh, P.C.*, No. 3:14-cv-1796, 2015 U.S. Dist. LEXIS 133111 (D. Conn. Sept. 30, 2015) .................................................................................... 27

*Webster v. ACB Receivables Mgmt.*, 15 F. Supp. 3d 619 (D. Md. 2014) .................. 44

*Wetzel v. Afni, Inc.*, No. 11-cv-6159, 2011 U.S. Dist. LEXIS 142756 (D. Or. Oct. 20, 2011) ....................................................................................................... 34, 42, 43

*White v. Sherman Fin. Group, LLC*, 984 F. Supp. 2d 841 (E.D. Tenn. 2013) .......... 32

*Williams v. Web Equity Holdings, LLC*, No. 2:13-cv-13723, 2014 U.S. Dist. LEXIS 107078 (E.D. Mich. Aug. 5, 2014) ......................................................................... 14

*Woodson v. City of Richmond*, No. 3:13-cv-34, 2015 U.S. Dist. LEXIS 62825 (E.D. Va. May 13, 2015) .............................................................................................. 24

**Statutes**

15 U.S.C. § 1692a .................................................................................................... 31

15 U.S.C. § 1692d ...................................................................................................... *passim*

15 U.S.C. § 1692e ...................................................................................................... *passim*

15 U.S.C. § 1692f ....................................................................................................... *passim*

15 U.S.C. § 1692k ................................................................................................. 26, 30, 32

CPLR § 5222 ............................................................................................................... *passim*

## PRELIMINARY STATEMENT

It is difficult to determine which aspect of the plaintiff's lawsuit is most outrageous.  Is it that the plaintiff knew he was not the debtor at issue?  Is it that the plaintiff was "upset" because he received a letter and a subpoena he knew were not meant for him?  Is it that he sued a law firm instead of an independent process server apparently acting outside the scope of his authority?  Is it that he never had any healthcare treatment or counseling?  Is it that his blood pressure may have gone up once?  Is it that the plaintiff destroyed the only claimed objective evidence of damages when he knew that he was going to consult an attorney?  Is it that there is a statutory bona fide error defense?  Is it that the plaintiff sued in federal court at all?

One thing is certain, though.  Congress and the framers of our Constitution did not intend for the allegations here to become a federal lawsuit.  Indeed, the phrase "don't make a federal case out of it" has never been more apt than here.  This Court should dismiss this lawsuit.

## STATEMENT OF FACTS

Chiari & Ilecki, LLP, was retained by M.J. Peterson LLC to collect a debt owed by a debtor named William J. Wagner, Jr.  *See* Declaration of William Ilecki, Esq., dated March 2, 2017 ("Ilecki Decl."), ¶ 4.  Before undertaking any collection efforts, Melissa Overbeck, Esq. – one of Chiari & Ilecki's FDCPA-trained attorneys – reviewed the information in Chiari & Ilecki's file and performed skip tracing to attempt to determine the debtor's current address.  *See* Declaration of Melissa Overbeck, Esq., dated March 2, 2017 ("Overbeck Decl."), ¶ 9.  Specifically, on February 9, 2015, Ms. Overbeck ran multiple searches regarding the debtor, including on the LexisNexis public records database and the Real Info real estate information database.  *See id.*, ¶ 10.

A Lexis report was generated for the debtor based on both his Social Security number and full name – William J. Wagner, Jr. – and it indicated that 5419 Roberts Road, Hamburg, New York 14075, was one of the top possible addresses for the debtor.  *See id.*, ¶ 12; *Exhibit B* (December 2015 Lexis Report).  The report also indicated that the debtor was possibly related to a Julia or Julie Wagner living at 5419 Roberts Road.  *See id.*, ¶ 13; *Exhibit B* (December 2015 Lexis Report).  A Real Info report, in turn, confirmed that 5419 Roberts Road was owned by a William Wagner and Julie Wagner.  *See id.*, ¶ 14; *Exhibit C* (May 2016 Real Info Report).  And Chiari & Ilecki previously had ruled out the other top possible addresses that the Lexis report or older credit reports listed for the debtor – namely, (1) 1571 Eggert Road, Buffalo, New York 14226, (2) 356 Hartford Road, Buffalo, New York 14226, and (3) 378 Windermere Boulevard, Amherst New York 14226.  *See id.*, ¶¶ 15, 25-30; *Exhibits B, D-H*.  Therefore, Ms. Overbeck concluded that 5419 Roberts Road was the debtor's address.  *See id.*, ¶ 16.

Ms. Overbeck prepared an information subpoena with restraining notice to serve on the debtor at the Roberts Road address via certified mail.  *See id.*, ¶ 32; *Exhibit I* (Information Subpoena).  The information subpoena was specifically addressed to "William J. Wagner Jr." – the debtor – and referenced the judgment entered against the debtor and in favor of M.J. Peterson.  *See id.*, ¶ 33; *Exhibit I* (Information Subpoena).  As required by law, Ms. Overbeck also prepared a CPLR § 5222 notice to serve on the debtor via first-class mail.  *See id.*, ¶ 34; *Exhibit J* (CPLR § 5222 Notice).  Like the information subpoena, the enclosure letter for the CPLR § 5222 notice was specifically addressed to "William J. Wagner Jr." – the debtor – and referenced the debt he owed to M.J. Peterson.  *See id.*, ¶ 35; *Exhibit J* (CPLR § 5222 Notice).

On February 9 and 11, 2015, respectively, Chiari & Ilecki mailed the CPLR § 5222 notice and information subpoena.  *See id.*, ¶ 36; *Exhibit K* (Affidavit of Service).  Those were the

only papers that Chiari & Ilecki mailed to the debtor at 5419 Roberts Road throughout the firm's collection efforts at issue.  *See id.*, ¶ 37.

On February 12, 2015, the CPLR § 5222 notice to the debtor was delivered to 5419 Roberts Road and opened by the plaintiff.  *See* Declaration of Paul A. Woodard, Esq., dated March 2, 2017 ("Woodard Decl."), *Exhibit G* (Wagner Dep.) at 22:12 – 23:5; Affidavit of William J. Wagner, sworn to on December 14, 2016 ("Wagner Aff."), ¶ 16.  According to the plaintiff, he is named "William J. Wagner," but he is not a "Jr.," has never been referred to as a "Jr.," and is not the debtor.  *See* Wagner Aff., ¶ 1; Woodard Decl., *Exhibit G* (Wagner Dep.) at 20:22 – 21:4.  The plaintiff says that he resides at 5419 Roberts Road, and the debtor does not. *See* Wagner Aff., ¶ 9; Woodard Decl., *Exhibit G* (Wagner Dep.) at 20:22 – 21:11.  Before February 2015, the plaintiff – William J. Wagner – had been receiving communications intended for the debtor – William J. Wagner, Jr. – for the past six or seven years, including communications from other debt collectors (but not Chiari & Ilecki).  *See* Declaration of Karen Sandford, dated March 1, 2017 ("Sandford Decl."), ¶ 5; *Exhibit A* (Events Log); Woodard Decl., *Exhibit G* (Wagner Dep.) at 30:9 – 34:13.

When the plaintiff opened Chiari & Ilecki's CPLR § 5222 notice on February 12, 2015, he saw that it was addressed to "William J. Wagner Jr." and concerned a debt owed to M.J. Peterson.  *See* Wagner Aff., ¶ 16.  The plaintiff knew that he had never conducted business with M.J. Peterson and that he did not owe a debt to M.J. Peterson.  *See id.*, ¶ 3; Woodard Decl., *Exhibit G* (Wagner Dep.) at 21:14 – 21:19.  The plaintiff understood that the CPLR § 5222 notice was not addressed to him.  *See* Wagner Aff., ¶ 16; Woodard Decl., *Exhibit G* (Wagner Dep.) at 23:4 – 23:18, 25:14 – 25:17.  Thus, he did not think that Chiari & Ilecki was attempting

to collect a debt from him.  *See* Wagner Aff., ¶ 16; Woodard Decl., *Exhibit G* (Wagner Dep.) at 25:18 – 25:21.

After reading the CPLR § 5222 notice on February 12, 2015, the plaintiff called Chiari & Ilecki, claiming that he was not a "Jr." or the debtor for whom Chiari & Ilecki was looking.  *See* Sandford Decl., ¶¶ 3-4; *Exhibit A* (Events Log).  Upon request, the plaintiff gave the last two digits of his Social Security number to one of Chiari & Ilecki's legal assistants, Karen Sandford. But he did not provide a driver's license, Social Security card, or other documentary proof of identity.  *See id.*, ¶ 6; *Exhibit A* (Events Log).  Ms. Sandford noted the telephone call in the firm's events log for the debtor's file and notified Ms. Overbeck of the plaintiff's claim.  *See id.*, ¶¶ 8-9; *Exhibit A* (Events Log); *Exhibit B* (Sandford Email to Overbeck).

Thereafter, the United States Postal Service twice attempted to deliver the information subpoena that Chiari & Ilecki had sent to the debtor at 5419 Roberts Road, by certified mail, on February 11, 2015 – the day before the plaintiff called Chiari & Ilecki.  *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 36:19 – 37:4, 38:15 – 39:4, 42:12 – 42:16, 45:21 – 45:4; *Exhibit N* (Postal Service Notices); Overbeck Decl., ¶¶ 32-33; *Exhibit K* (Affidavit of Service).  The first notice that the Postal Service left at 5419 Roberts Road was addressed to "William J. Wagner, Jr.," and the second notice was addressed to "W. Wagner, Jr."  *See* Woodard Decl., *Exhibit N* (Postal Service Notices).  The plaintiff understood that the notices were intended for the debtor, rather than the plaintiff himself, and for that reason, the plaintiff did not accept the deliveries. *See id.*, *Exhibit G* (Wagner Dep.) at 37:12 – 37:19, 38:18 – 38:22.  As such, the plaintiff never received or read the information subpoena.  *See id.* at 47:17 – 47:20.

The plaintiff thereafter called Chiari & Ilecki a second time – on March 19, 2015 – and again claimed that he was not the debtor.  *See* Declaration of Kristian Brown, dated March 1,

2017 ("Brown Decl."), ¶¶ 3-4; *Exhibit A* (Events Log).  During the call, the plaintiff provided the

month and year of his birth to Kristian Brown, one of Chiari & Ilecki's legal assistants.  Ms.

Brown invited the plaintiff to send Chiari & Ilecki a copy of his driver's license and Social

Security card so that the firm could verify his identity, but the plaintiff declined to do so.  *See id.*,

¶¶ 4-6; *Exhibit A* (Events Log).  According to the plaintiff, it was not until after this March 19,

2015 telephone call that he first felt harassed by Chiari & Ilecki.  *See* Wagner Aff., ¶¶ 22-23.

Ms. Brown contemporaneously noted the telephone call in the firm's events log for the debtor's

file.  *See* Brown Decl., ¶ 7; *Exhibit A* (Events Log).

On or about May 11, 2015, the United States Postal Service returned the information

subpoena to Chiari & Ilecki as unclaimed.  *See* Overbeck Decl., ¶ 42; *Exhibit N* (Returned

Envelope).  On June 5, 2015, Ms. Overbeck reviewed the events log, read the summaries of the

plaintiff's two telephone calls, and noted that the plaintiff had not sent in a copy of his driver's

license or Social Security card.  *See id.*, ¶¶ 43-45, 52.  Ms. Overbeck therefore researched the

debtor's address a second time, including on Lexis, and once again concluded that the debtor

lived at 5419 Roberts Road.  *See id.*, ¶¶ 54-55.

After verifying the debtor's address a second time, Ms. Overbeck prepared a subpoena

duces tecum to be served on the debtor by a process server.  *See id.*, ¶ 57; *Exhibit O* (Subpoena

Duces Tecum).  The subpoena was specifically addressed to "William J. Wagner Jr." – the

debtor – and referenced the judgment entered against the debtor and in favor of M.J. Peterson.

*See id.*, *Exhibit O* (Subpoena Duces Tecum).  In her enclosure letter, Ms. Overbeck specifically

warned the process service company – Action Services & Research, Inc. – that there could be

more than one William J. Wagner – *i.e.*, both a "Sr." and a "Jr." – residing at 5419 Roberts Road.

*See id.*, *Exhibit P* (Letter to Action Services).  Ms. Overbeck specifically instructed Action

Services to ensure that it served only the debtor – William J. Wagner, Jr. – and not any other William J. Wagner living at the Roberts Road address. *See id.* Specifically, Ms. Overbeck wrote, in bold-faced type, **"Please be sure to serve the correct William J. Wagner. We believe there is a William J. Wagner, Sr. and William J. Wagner, Jr. living at the same address."** *See id.*

On June 17, 2015, one of Action Services' process servers, John M. Celano, handed the subpoena duces tecum to the plaintiff. *See* Overbeck Decl., ¶ 64; *Exhibit Q* (Affidavit of Service). The plaintiff observed that the subpoena was addressed to "William J. Wagner Jr.," and concerned a judgment entered against "William J. Wagner Jr.," and in favor of M.J. Peterson. *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 57:8 – 58:11. The plaintiff knew that he had never been involved in a lawsuit with M.J. Peterson and that a judgment had never been entered against him and in favor of M.J. Peterson. *See id.* at 58:4 – 58:11. As such, the plaintiff recognized that the subpoena duces tecum was not addressed to him and did not concern him. *See id.* at 57:8 – 58:3. The plaintiff still knew that he was not the person for whom Chiari & Ilecki was looking. *See id.* at 82:23 – 83:12.

On June 29, 2015, Chiari & Ilecki was called by Seth Andrews, Esq., one of the plaintiff's attorneys in this action. *See* Overbeck Decl., ¶ 67; *Exhibit A* (Events Log). Mr. Andrews spoke with Ms. Overbeck and claimed that the plaintiff – William J. Wagner – was not the debtor – William J. Wagner, Jr. *See id.*, ¶ 68; *Exhibit A* (Events Log). Ms. Overbeck explained that she could not simply accept the plaintiff's unsubstantiated claim, and Mr. Andrews indicated that he understood and appreciated Chiari & Ilecki's position. *See id.*, ¶ 69. As her office had done before, Ms. Overbeck requested that Mr. Andrews provide a copy of the plaintiff's driver's license and Social Security card in order to allow Chiari & Ilecki to verify the

plaintiff's identity.  *See id.*, ¶ 70; *Exhibit A* (Events Log).  In response, Mr. Andrews told Ms.

Overbeck that his client probably would not agree to send in even a redacted copy of his Social

Security card, but he would try to convince the plaintiff to produce a copy of his driver's license.

*See id.*, ¶ 71; *Exhibit A* (Events Log).  Ms. Overbeck agreed, in turn, to send Mr. Andrews a copy

of the lease that the debtor had signed with M.J. Peterson so that each of them could attempt to

verify the plaintiff's identity by comparing the debtor's signature on the lease to the plaintiff's

signature on his driver's license.  *See id.*, ¶ 72; *Exhibit A* (Events Log).

Mr. Andrews and Ms. Overbeck also agreed to a general adjournment of the pending

subpoena duces tecum while they attempted to resolve the issue of the plaintiff's identity.  *See

id.*, ¶ 73; *Exhibit A* (Events Log).  Later that day – June 29, 2015 – Ms. Overbeck confirmed their

agreement in a facsimile to Mr. Andrews.  *See id.*, ¶ 74; *Exhibit R* (Facsimile to Andrews).  Mr.

Andrews never sent Chiari & Ilecki a copy of the plaintiff's driver's license or Social Security

card, however, and Chiari & Ilecki did not hear anything more about the matter until the firm

was served with the summons and complaint in this action.  *See id.*, ¶ 75.

Following discovery, the plaintiff moved for summary judgment, and Chiari & Ilecki

now cross-moves for summary judgment.  For the reasons set forth below, this Court should

deny the plaintiff's motion and grant Chiari & Ilecki summary judgment dismissing this action in

its entirety.

## **ARGUMENT**

### I.  **Chiari & Ilecki Cannot Be Held Vicariously Liable for the Independent Process Server's Delivery of the Subpoena Duces Tecum.**

The plaintiff's chief complaint is that he was handed a subpoena duces tecum after he had

twice called Chiari & Ilecki and claimed that he was not the debtor.  But that subpoena was

delivered by an independent process server, and Chiari & Ilecki cannot be held vicariously liable for his mistake, if any.

Courts assume that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). Unless Congress has specifically expressed a contrary intent, courts apply traditional vicarious liability rules to a federal cause of action sounding in tort. *See id.* at 286-87. Therefore, in determining whether a debt collector can be held vicariously liable for the actions of another, courts look to the common-law rules of agency. *See, e.g., Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1173 (9th Cir. 2006); *LaCourte v. JP Morgan Chase & Co.*, No. 12-cv-9453, 2013 U.S. Dist. LEXIS 129993, at *14-15 (S.D.N.Y. Sept. 4, 2013); *Suquilanda v. Cohen & Slamowitz, LLP*, No. 10-cv-5868, 2011 U.S. Dist. LEXIS 102727, at *13-14 (S.D.N.Y. Sept. 8, 2011).

"It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Meyer*, 537 U.S. at 285. In other words, two elements must be present: First, a principal-agent or employer-employee relationship must exist. *See id.* at 286. Second, the agent or employee must be acting within the scope of his authority. *See id.* at 285. And, here, the plaintiff cannot establish either element.

The "critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692, 694-95 (2003); *see also Meyer*, 537 U.S. at 286 ("principal/agency relationship

demands . . . control (or the right to direct or control)").  "Factors relevant to assessing control include whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule."  *Bynog*, 1 N.Y.3d at 198, 770 N.Y.S.2d at 695.

Here, the subpoena duces tecum was delivered by a process server working for Action Services.  *See* Overbeck Decl., ¶ 64; *Exhibit Q* (Affidavit of Service).  But the plaintiff has offered absolutely no evidence indicating that either Action Services or the individual process server at issue – Mr. Celano – was acting as an agent of Chiari & Ilecki.  And, in fact, neither one of them has ever been employed by Chiari & Ilecki.  *See* Ilecki Decl. ¶ 26.  Action Services is a completely separate company with its own independent business.  *See id.*, ¶ 27.  In other words, in terms of ownership and management, Action Services and Chiari & Ilecki are wholly unrelated.  *See id.*, ¶ 28.

In both this case and a number of other cases, Chiari & Ilecki has engaged Action Services to serve legal papers for the firm, but Chiari & Ilecki has no control over how Action Services accomplishes that work.  *See id.*, ¶ 29.  Action Services has sole authority to decide what individual process servers to use when completing the assignments Chiari & Ilecki gives them – in this case, Mr. Celano.  *See id.*, ¶ 30.  Action Services also furnishes all its own tools, supplies, and materials in completing Chiari & Ilecki's assignments.  *See id.*, ¶ 31.

Action Services is not on Chiari & Ilecki's regular payroll.  Rather, Chiari & Ilecki compensates Action Services on a per-assignment basis.  *See id.*, ¶ 32.  Chiari & Ilecki is free to give Action Services – or any other process service company – as much or as little of its business as the firm wishes, and Action Services is free to decline any assignment Chiari & Ilecki gives them.  *See id.*, ¶ 33.  Thus, Chiari & Ilecki did not have the right to exercise – and did not

exercise – control over the manner in which Action Services or Mr. Celano went about serving the subpoena duces tecum in this case.  *See id.*, ¶ 34.  As such, no agency relationship existed between Chiari & Ilecki and the process server who delivered the subpoena duces tecum at issue, and, thus, Chiari & Ilecki cannot be held vicariously liable for any mistake that the process server made.  *See Meyer*, 537 U.S. at 285-86; *Bynog*, 1 N.Y.3d at 198, 770 N.Y.S.2d at 694-95.

That, of course, is nothing more than common sense.  When a law firm or debt collector engages a process server to serve legal papers on its behalf, the process server is almost always an independent contractor, rather than an employee or agent of the firm or debt collector.  And for precisely that reason, courts have repeatedly declined to hold a law or collections firm vicariously liable for an alleged FDCPA violation by an independent process server.  *See, e.g., Sanchez v. Abderrahman*, No. 10-cv-3641, 2013 U.S. Dist. LEXIS 186537, at *23-24 (E.D.N.Y. July 24, 2013), *adopted by* 2014 U.S. Dist. LEXIS 41345 (E.D.N.Y. Mar. 25, 2014); *Spartalian v. Citibank, N.A.*, No. 2:12-cv-742, 2013 U.S. Dist. LEXIS 20092, at *11-12 (D. Nev. Feb. 13, 2013); *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011)

The same conclusion holds true here.  Simply put, the plaintiff has not offered any evidence that the process server who delivered the subpoena duces tecum was an agent or employee of Chiari & Ilecki.  For that reason alone, Chiari & Ilecki cannot be held liable for the plaintiff's FDCPA claims premised on service of the subpoena duces tecum.

Moreover, even if the process server at issue could be considered an agent of Chiari & Ilecki, he was not acting within the scope of his authority.  Chiari & Ilecki clearly and unequivocally instructed the process server to accomplish one thing – serve the debtor, William J. Wagner, Jr., *and not any other William J. Wagner residing at 5419 Roberts Road*.  Indeed, in her cover letter, Ms. Overbeck explicitly warned and instructed the process server, in bold-faced

type:  **"Please be sure to serve the correct William J. Wagner.  We believe there is a William J. Wagner, Sr. and William J. Wagner, Jr. living at the same address."**  *See* Overbeck Decl., *Exhibit P* (Letter to Action Services).   In delivering the subpoena to the plaintiff instead, the process server unquestionably was acting outside the scope of his authority, and for that reason as well, Chiari & Ilecki cannot be held liable for any alleged FDCPA violation in connection with the service of the subpoena duces tecum.  *See, e.g., Burgess v. Lee Acceptance Corp.*, No. 08-cv-13713, 2008 U.S. Dist. LEXIS 107440, at *12-13 (E.D. Mich. Dec. 4, 2008); *Johnson v. JP Morgan Chase Bank*, No. F:08-cv-0081, 2008 U.S. Dist. LEXIS 97130, at *15-16 (E.D. Cal. Nov. 26, 2008).

## II.    The Plaintiff Cannot Establish an FDCPA Violation.

The plaintiff claims that Chiari & Ilecki has engaged in harassing, deceptive, and unfair collection practices in violation of §§ 1692d, 1692e, and 1692f, respectively.  The plaintiff's own admissions demonstrate, however, that there was nothing deceptive or unfair about the communications at issue, and, therefore, no violation of §§ 1692e or 1692f occurred.  Rather, the crux of the plaintiff's complaint is that he felt harassed.  But Chiari & Ilecki's actions at issue do not begin to approach the degree of egregious misconduct required to establish a violation of § 1692d.  Therefore, Chiari & Ilecki is entitled to summary judgment on each of the plaintiff's claims.

### A.    The Plaintiff Has Not Identified Any Conduct Approaching the Type of Egregious Behavior Required to Establish a Violation of § 1692d.

Section 1692d prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  *See* 15 U.S.C. § 1692d.  "Notably, § 1692d 'prohibits only oppressive and outrageous conduct.'"  *Christy v. EOS CCA*, 905 F. Supp. 2d 648, 654 (E.D. Pa. 2012) (quoting *Beattie v.*

*D.M. Collections, Inc.*, 754 F. Supp. 383, 394 (D. Del. 1991)).  Enumerated examples of such outrageous conduct include the "use or threat of use of violence," the "use of obscene or profane language," the publication of debtor shame lists, "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously," and placing anonymous telephone calls.  *See* 15 U.S.C. § 1692d; *see also* S. Rep. 95-382, 1977 U.S.C.C.A.N. at 1698.

While these enumerated examples of prohibited conduct are not exhaustive, "courts look to the enumerated conduct to determine what constitutes a violation of the general bar on abusive and harassing conduct."  *Kinkade v. Estate Info. Servs., LLC*, No. 11-cv-4787, 2012 U.S. Dist. LEXIS 144826, at *30-31 (E.D.N.Y. Sept. 28, 2012).  In other words, a court will find a violation of § 1692d's general prohibition against harassing conduct only if the alleged conduct is "similar in seriousness to any of the examples listed in § 1692d."  *See id.*, at *31.  "[C]ourts have not hesitated to grant defendants summary judgment where the evidence demonstrates an intent to contact debtors rather than an intent to annoy, abuse, or harass them."  *Andino v. Mercantile Adjustment Bureau, LLC*, No. 14-cv-59, 2016 U.S. Dist. LEXIS 19758, at *7 (W.D.N.Y. Feb. 18, 2016).

Simply put, "a single letter which contains no abusive language and is not otherwise inherently harassing does not give rise to a § 1692d claim under the FDCPA."  *Kinkade*, 2012 U.S. Dist. LEXIS 144826, at *31-32; *accord Hammett v. Allianceone Receivables Mgmt.*, No. 11-cv-3172, 2011 U.S. Dist. LEXIS 97330, at *19 (E.D. Pa. Aug. 30, 2011).  That principle dooms the plaintiff's § 1692d claim because the only communications that Chiari & Ilecki personally sent to the debtor at 5419 Roberts Road were the February 2015 information subpoena and required CPLR § 5222 notice – both of which were mailed before the plaintiff ever contacted Chiari & Ilecki.  *See* Overbeck Decl., ¶¶ 36-37; *Exhibit K* (Affidavit of Service);

Wagner Aff., ¶ 17.  There is absolutely nothing "inherently harassing" about those communications.  *See* Overbeck Decl., *Exhibit I* (Information Subpoena); *Exhibit J* (CPLR § 5222 Notice).  In fact, even the plaintiff himself admits that he did not begin to feel harassed until after he later called Chiari & Ilecki in March 2015, and the firm invited him to send in verifiable proof of his identity.  *See* Wagner Decl., ¶¶ 22-23.

Moreover, even if Chiari & Ilecki could be held liable for the independent process server's delivery of the subpoena duces tecum – and it cannot – that changes nothing.  The subpoena duces tecum is no more "inherently harassing" than the information subpoena or CPLR § 5222 notice.  *See* Overbeck Decl., *Exhibit O* (Subpoena Duces Tecum).  And the mere fact that a third communication was sent to the debtor at 5419 Roberts Road does not somehow make Chiari & Ilecki's conduct "oppressive" or "outrageous."  To the contrary, in warning the process server that there might be more than one William J. Wagner at 5419 Roberts Road, and in specifically instructing him not to serve anyone but the debtor himself, Chiari & Ilecki took steps to ensure that a non-debtor was *not* harassed.  *See id.*, *Exhibit P* (Letter to Action Services).

Ultimately, the plaintiff's § 1692d claim boils down to his frustration that Chiari & Ilecki identified the wrong address for the debtor.  But while this "conduct may have been annoying to Plaintiff, 'Section 1692d is meant to protect debtors from oppressive and outrageous conduct, but not from every negative consequence of debt collection.'"  *Johnson v. Capital Mgmt. Servs.*, No. 10-cv-467, 2011 U.S. Dist. LEXIS 138023, at *13 (W.D.N.Y. Dec. 1, 2011) (quoting *Monahan v. NRA Group, L.L.C.*, No. 3:10-cv-638, 2011 U.S. Dist. LEXIS 99753, at *6-7 (D. Conn. Sept. 6, 2011).  "Although the [plaintiff] may have experienced irritation at having the same name as the debtor, Defendants do not violate the FDCPA simply by contacting the wrong party."  *See Williams v. Web Equity Holdings, LLC*, No. 2:13-cv-13723, 2014 U.S. Dist. LEXIS 107078, at

*10 (E.D. Mich. Aug. 5, 2014); *see also Christy*, 905 F. Supp. 2d at 654-55; *Beattie*, 754 F.

Supp. at 394.  Accordingly, the plaintiff has failed to establish a violation of § 1692d, and this

Court should grant Chiari & Ilecki summary judgment on that claim.

> ### B.      Chiari & Ilecki's Communications Were Clearly Intended for the Debtor – Not the Plaintiff – and Therefore Do Not Violate § 1692e.

Section 1692e prohibits debt collectors from "us[ing] any false, deceptive, or misleading

representation or means in connection with the collection of any debt."  *See* 15 U.S.C. § 1692e.

The plaintiff argues that a debt collector violates this section when he duns or attempts to collect

a debt from a non-debtor.  But even if that is true, that does not subject Chiari & Ilecki to liability

because Chiari & Ilecki did not dun the plaintiff.  Even the least sophisticated consumer would

have understood that, and, in fact, the plaintiff himself has conceded that he did.

The plaintiff cites a number of cases standing for the proposition that dunning a non-

debtor violates § 1692e.  *See* Plaintiff's Memorandum of Law at 10-11.  But, importantly, in all

but two of those cases (discussed below), the communications at issue were either intentionally

directed to the plaintiff or specifically addressed to a full or abbreviated version of the plaintiff's

name.  *See Christopher v. RJM Acquisitions, LLC*, No. 13-cv-2274, 2015 WL 437541, at *1 (D.

Ariz. Feb. 3, 2015) (both debtor and plaintiff named Jennifer Christopher); *Covell v. Chiari &*

*Ilecki, LLP*, No. 12-cv-660, 2012 U. S. Dist. LEXIS 186330, at *1-4 (W.D.N.Y. Oct. 16, 2012)

(both debtor and plaintiff named William Covell); *Owens v. Howe*, No. 04-cv-152, 2004 WL

6070565, at *11 (N.D. Ind. Nov. 8, 2004) (letter addressed to "the [w]rong Lamont D. Owens");

*Beattie*, 754 F. Supp. at 387-88 (plaintiff and debtor both named Frank Beattie).

Perhaps in such cases – *i.e.*, where the communications at issue were or appeared to be

addressed to the plaintiff – the least sophisticated consumer might have concluded that the debt

collector was attempting to collect a debt from him.  But even so, those cases are completely

inapposite because there is no dispute that the communications at issue here did *not* appear to be addressed to the plaintiff.  Indeed, each of Chiari & Ilecki's communications was specifically addressed to the debtor – "William J. Wagner Jr."  *See* Overbeck Decl., *Exhibit I* (Information Subpoena); *Exhibit J* (CPLR § 5222 Notice); *Exhibit O* (Subpoena Duces Tecum).  The plaintiff, by contrast, is not a "Jr." and has never been known as a "Jr."  *See* Wagner Aff., ¶ 1; Woodard Decl., *Exhibit G* (Wagner Dep.) at 20:22 – 21:4.

Moreover, each of the communications at issue also specifically referenced a debt owed to M.J. Peterson and a judgment entered in its favor.  *See* Overbeck Decl., *Exhibit I* (Information Subpoena); *Exhibit J* (CPLR § 5222 Notice); *Exhibit O* (Subpoena Duces Tecum).  The plaintiff knew that he had never conducted business with M.J. Peterson.  *See* Wagner Aff., ¶ 3; Woodard Decl., *Exhibit G* (Wagner Dep.) at 21:14 – 21:16.  He knew that he did not owe a debt to M.J. Peterson.  *See* Wagner Aff., ¶ 3; Woodard Decl., *Exhibit G* (Wagner Dep.) at 21:17 – 21:19. And he also knew that he had never been involved in a lawsuit with M.J. Peterson and that a judgment had never been entered against him and in favor of M.J. Peterson.  *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 58:4 – 58:11.

In addition, the plaintiff had been receiving communications intended for the debtor for the past six or seven years.  *See* Sandford Decl., ¶ 5; *Exhibit A* (Events Log).  In fact, multiple other debt collectors had attempted to reach the debtor at the plaintiff's address.  *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 30:9 – 34:13.  Therefore, the plaintiff understood that none of the communications at issue was intended for him.  *See* Wagner Aff., ¶ 16; Woodard Decl., *Exhibit G* (Wagner Dep.) at 23:4 – 23:18, 25:14 – 25:17, 37:12 – 37:19, 38:18 – 38:22, 57:8 – 58:3, 82:23 – 83:12.

Under these circumstances, even the least sophisticated consumer could not have concluded that Chiari & Ilecki was attempting to collect a debt from him.  Indeed, courts have repeatedly held that when a non-debtor receives a communication which is addressed to someone else or contains other indicia that it is intended for someone else, § 1692e has not been violated. *See, e.g., Christy*, 905 F. Supp. 2d at 655-56 (plaintiff should have realized that letter addressed to "Gary Christy" was intended for his son based on the content of the letter and the fact that plaintiff referred to himself as "Gary Christy, Sr."); *McDermott v. Randall S. Miller & Assocs., P.C.*, 835 F. Supp. 2d 362, 366, 371-73 (E.D. Mich. 2011) (plaintiff knew that letters were not intended for him because he did not have an ownership interest in the property at issue and did not have a mortgage secured by the property); *Kane v. Nat'l Action Fin. Servs.*, No. 11-cv-11505, 2011 U.S. Dist. LEXIS 141480, at *9-11 (E.D. Mich. Nov. 7, 2011) (plaintiff knew that he was not the intended recipient of automated messages indicating that they were intended for someone else); *Blauer v. Zucker, Goldberg, & Ackerman, LLC*, No. 09-cv-934, 2011 U.S. Dist. LEXIS 30551, at *7-8 (D. Del. Mar. 24, 2011) (plaintiff should have realized that complaint addressed to "Christy A. Blauer" and "Mr. Blauer, Husband of Christy A. Blauer" was not intended for him where plaintiff was Ms. Blauer's father, not husband, and knew he did not have a mortgage secured by his daughter's property); *Kaniewski v. Nat'l Action Fin. Servs.*, 678 F. Supp. 2d 541, 543, 545-46 (E.D. Mich. 2009) (plaintiff knew that he did not owe the debt at issue and that, thus, automated calls were not intended for him); *Kujawa v. Palisades Collection , L.L.C.*, 814 F. Supp. 2d 788, 791-92 (E.D. Mich. 2008) (plaintiff knew he was not the intended recipient of garnishment release and judgment lien addressed to someone with the same name where the documents listed a different Social Security number and plaintiff did not owe a debt to the collector); *David v. FMS Servs.*, 475 F. Supp. 2d 447, 449 (S.D.N.Y. 2007) (plaintiff knew he

was not the intended recipient of a notice that was addressed to someone with a different first name and referenced an account number that was not the plaintiff's number).

Significantly, none of the cases cited by the plaintiff suggests that Chiari & Ilecki's initial communications sent to the debtor at 5419 Roberts Road – namely, the February 2015 information subpoena and CPLR § 5222 notice – could be construed as an attempt to collect a debt from the plaintiff. Indeed, only two of the cases cited by the plaintiff involve communications which, like the ones here, were not intended for the plaintiff or did not appear to be specifically addressed to the plaintiff's name. *See Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 254-55 (S.D.N.Y. 2011) (letters addressed to Ibraham Bodur, but sent to plaintiff Ibrahim Bodur's address); *Johnson v. Bullhead Investments, LLC*, No. 09-cv-639, 2010 WL 118274, at *1-2 (M.D.N.C. Jan. 11, 2010) (communications addressed to Elaine E. Johnson, but delivered to plaintiff Elaine A. Johnson's address). And in neither of those cases did the court conclude that the debt collector's initial communications – those sent before the plaintiff had notified the debt collector that he or she was not the debtor – could have been construed as attempts to collect from the plaintiff and, thus, in violation of § 1692e.[1] Rather, the courts only found that § 1692e had been violated because the debt collectors continued their efforts after receiving clear proof that the plaintiffs were not the debtors. *See Bodur*, 829 F. Supp. 2d at 256 ("While the least sophisticated consumer might have viewed Pressler's 2008 collection letter as an innocent mistake, Pressler's continued collection effort in 2011—after Pressler had confirmed that Ibrahim Bodur was not the debtor—reasonably would appear to the least sophisticated consumer to be Pressler's concerted effort to collect the debt from Ibrahim Bodur."); *Johnson v.*

---

[1] In fact, in *Bodur*, the Court expressly noted that if the debt collector's initial communications "had been the sum of plaintiff Ibrahim Bodur's interactions with [the debt collector], this Court would not be inclined to find a FDCPA violation." *See* 829 F. Supp. at 254-55.

*Bullhead Investments, LLC*, No. 09-cv-639, 2010 WL 118274, at *5 (M.D.N.C. Jan. 11, 2010) ("a plaintiff who is served with a summons at her residential address directed to a person with almost the same exact name, after the plaintiff has already informed the debt collector that she is not the true debtor, could reasonably assume that the debt collector was still trying to hold her liable for the alleged debt").

That is precisely what the plaintiff claims here.  The plaintiff concedes that he originally did not think that Chiari & Ilecki was attempting to collect a debt from him when he received the CPLR § 5222 notice on February 12, 2015, and notification of the information subpoena shortly thereafter.  *See* Wagner Aff., ¶¶ 16-19.  Rather, the plaintiff suggests that Chiari & Ilecki has violated § 1692e because he was handed a subpoena duces tecum (addressed to the debtor) after the plaintiff had called Chiari & Ilecki, claiming that he was not the debtor.  *See* Plaintiff's Memorandum of Law at 12-13.  But as set forth above, Chiari & Ilecki cannot be held vicariously liable for the process server's delivery of the subpoena to the plaintiff because (1) the process server was not Chiari & Ilecki's agent, and (2) the process server apparently disregarded Chiari & Ilecki's explicit instructions not to deliver the subpoena to anyone but the debtor.

Therefore, the only communications at issue here are the February 2015 information subpoena and CPLR § 5222 notice.  And both the plaintiff and the cases on which he relies recognize that he could not – and, in fact, did not – construe those initial communications – which were sent before the plaintiff first contacted Chiari & Ilecki – as an attempt to collect the debt at issue from him.  Thus, it is undisputed that Chiari & Ilecki has not violated § 1692e, and the analysis ends there.

But even if Chiari & Ilecki could be held vicariously liable for the process server's subsequent delivery of the subpoena duces tecum, the result is unchanged.  Several key facts

distinguish this case from *Bodur* and *Johnson*. First, in both of those cases, the plaintiff apparently provided a complete Social Security number to the defendant debt collector, and in *Bodur*, the plaintiff also provided his date of birth. *See Bodur*, 829 F. Supp. 2d at 248; *Johnson*, 2010 WL 118274, at *1. In each case, the debt collector responded by telling the plaintiff that it would remove the plaintiff's information from its file. *See Bodur*, 829 F. Supp. 2d at 248; *Johnson*, 2010 WL 118274, at *1. Then, the collection efforts in each case unexpectedly resumed, and, as a result, the plaintiffs actually became worried that they would be held liable for the debts at issue and therefore retained legal counsel to protect their assets. *See Bodur*, 829 F. Supp. 2d at 248-49; *Johnson*, 2010 WL 118274, at *2.

In contrast, here, the plaintiff did *not* provide Chiari & Ilecki a complete copy of his Social Security number or date of birth; he provided only the last two digits of his Social Security number and the month and year of his birth. *See* Overbeck Decl., *Exhibit A* (Events Log) at CHIARI000165. Based on that information alone, Chiari & Ilecki had not ruled out the possibility that the debtor was living at 5419 Roberts Road, and, thus, Chiari & Ilecki did *not* tell the plaintiff that the firm would remove the Roberts Road address from its file. To the contrary, in the second and last telephone call that the plaintiff had with Chiari & Ilecki before the subpoena duces tecum was delivered, Chiari & Ilecki was still inviting the plaintiff to send in verifiable proof of his identity. *See id.* Therefore, unlike in *Bodur* and *Johnson*, when the plaintiff received the subpoena duces tecum (addressed to the debtor), he knew that Chiari & Ilecki was still looking for the debtor, rather than the plaintiff himself.[2] *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 82:23 – 83:12. And for that reason, unlike the plaintiffs in *Bodur*

---

[2] Although the plaintiff testified that after the March 19, 2015 telephone call with Chiari & Ilecki, he "started feeling harassed, and [he] believed they were trying to collect from [him]," *see* Woodard Decl., *Exhibit G* (Wagner Dep.) at 50:19-23, he later confirmed that he "knew [he was] not the person they were looking for," *see id.* at 82:10 – 82:12.

and *Johnson*, the plaintiff here has never suggested that he was actually concerned that he could be held liable for the debt at issue.  To the contrary, his chief grievance always has been that he felt harassed – not that he felt misled or deceived.  *See, e.g.,* Overbeck Decl., *Exhibit A* (Events Log) at CHIARI000166; Woodard Decl., *Exhibit A* (Complaint), ¶ 21; *Exhibit C* (Plaintiff's Initial Disclosures), ¶ 3; *Exhibit G* (Wagner Dep.) at 53:4 – 53:22, 55:2 – 55:9, 65:2 – 65:13.

Indeed, under the circumstances, even the least sophisticated consumer could not have reasonably concluded that the subpoena duces tecum was an attempt to collect the debt from the plaintiff.  Like Chiari & Ilecki's initial communications, the subpoena duces tecum was specifically addressed to the debtor – "William J. Wagner Jr." – and the plaintiff is not, and has never been, known as a "Jr."  *See* Overbeck Decl., *Exhibit O* (Subpoena Duces Tecum); Wagner Aff., ¶ 1; Woodard Decl., *Exhibit G* (Wagner Dep.) at 20:22 – 21:4.  The subpoena also specifically referenced a debt owed to M.J. Peterson and a judgment entered in its favor, and, again, the plaintiff was well aware that he had never conducted business with M.J. Peterson, had never owed the company any debt, and had never been involved in a lawsuit with the company.  *See* Overbeck Decl., *Exhibit O* (Subpoena Duces Tecum); Wagner Aff., ¶ 3; Woodard Decl., *Exhibit G* (Wagner Dep.) at 21:14 – 21:19, 58:4 – 58:11.  And the plaintiff also was aware that multiple other debt collectors had been attempting to reach the debtor at his address for six or seven years.  *See* Sandford Decl., ¶ 5; *Exhibit A* (Events Log); Woodard Decl., *Exhibit G* (Wagner Dep.) at 30:9 – 34:13.  Thus, the plaintiff understood that Chiari & Ilecki was still looking for the debtor, not the plaintiff himself.  *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 82:23 – 83:12.

Under these circumstances, the only logical conclusion that even the least sophisticated consumer could make is that the subpoena duces tecum was not a collection effort directed at the

plaintiff.  *See, e.g., Christy*, 905 F. Supp. 2d at 655-56; *McDermott*, 835 F. Supp. 2d at 371-73; *Kane*, 2011 U.S. Dist. LEXIS 141480, at *9-11 *Blauer*, 2011 U.S. Dist. LEXIS 30551, at *7-8; *Kaniewski*, 678 F. Supp. 2d 541 at 545-46;  *Hill*, 574 F. Supp. 2d at 825-26; *Kujawa*, 814 F. Supp. 2d at 791-92; *David*, 475 F. Supp. 2d at 449.  For that reason as well, Chiari & Ilecki is entitled to summary judgment on the plaintiff's § 1692e claim.

### C.    The Plaintiff's § 1692f Claim Falls with His § 1692e Claim.

Section 1692f prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt."  *See* 15 U.S.C. § 1692f.  The plaintiff asserts a claim under § 1692f "as an alternative claim to his claim that Defendant's conduct was deceptive."  *See* Plaintiff's Memorandum of Law at 14.  But this claim fails for two alternative reasons.

First, "§ 1692f is considered to be a catch-all provision" and, thus, "cannot be the basis of a separate claim for complained of conduct that is already explicitly addressed by other sections of the FDCPA."  *Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 432 (D.N.J. Oct. 17, 2013).  "Courts have therefore routinely dismissed § 1692f claims when a plaintiff 'does not identify any misconduct beyond that which [he] assert[s] violate[s] other provisions of the FDCPA."  *Corson v. Accounts Receivable Mgmt.*, No. 13-cv-1903, 2013 U.S. Dist. LEXIS 112282, at *21 (D.N.J. Aug. 9, 2013) (alterations in original) (quoting *Christy*, 905 F. Supp. 2d at 656).

Here, every single one of the plaintiff's claims is premised on the same alleged conduct – namely, "sending letters addressed to the Plaintiff in an attempt to collect a debt that Plaintiff does not owe and . . . serving Plaintiff with a subpoena for a debtor exam when Plaintiff is not the judgment debtor."  *See* Woodard Decl., *Exhibit D* (Plaintiff's Interrogatory Responses) at 7-8 (Responses to Interrogatory Nos. 12-13).  Indeed, the plaintiff openly admits that his § 1692f claim is pled "as an alternative" to his § 1692e claim.  *See* Plaintiff's Memorandum of Law at 14.

Therefore, because there is no independent factual basis for the plaintiff's § 1692f claim, Chiari & Ilecki is entitled to summary judgment on that claim as well.

Furthermore, the plaintiff's § 1692f claim also fails for the very same reason as his § 1692e claim:  Chiari & Ilecki did not dun the plaintiff, and even the least sophisticated consumer standing in the plaintiff's position would have realized that.  *See, e.g., McDermott*, 835 F. Supp. 2d at 371-73; *Kane*, 2011 U.S. Dist. LEXIS 141480, at *9-11; *Blauer*, 2011 U.S. Dist. LEXIS 30551, at *7-8; *Kaniewski*, 678 F. Supp. 2d at 545-46; *Hill*, 574 F. Supp. 2d at 825-26. And for that reason as well, Chiari & Ilecki is entitled to summary judgment on the plaintiff's claims under § 1692f.

## III.    The Plaintiff Lacks Standing.

Even if Chiari & Ilecki violated the FDCPA – and it did not – this action is still subject to dismissal because the plaintiff lacks standing for three alternative reasons.  First, the plaintiff cannot establish an "injury in fact" so as to satisfy Article III standing.  Second, the plaintiff is not a consumer and cannot show injurious exposure, and, thus, he does not have a cause of action under the FDCPA.  Third, the plaintiff's § 1692e and § 1692f claims fail the "zone of interest" test.  For any and all these reasons, this Court should grant judgment in Chiari & Ilecki's favor.

### A.    The Plaintiff Cannot Establish an Injury in Fact so as to Satisfy Article III Standing.

Article III of the Constitution strictly limits federal-court jurisdiction to actual cases or controversies.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  To establish standing under Article III, a plaintiff must demonstrate, *inter alia*, that he or she has suffered an "injury in fact." *Id.*  In other words, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural

or hypothetical.'"  *See id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Here, the only injury that the plaintiff has ever claimed to have suffered is emotional distress.  *See, e.g.,* Woodard Decl., *Exhibit A* (Complaint), ¶ 21; *Exhibit C* (Plaintiff's Initial Disclosures), ¶ 3; *Exhibit D* (Plaintiff's Interrogatory Responses) at 4 (Responses to Interrogatory No. 3-4); *Exhibit G* (Wagner Dep.) at 70:10 – 71:22.  The plaintiff generally complains of "a little sleeplessness, nervousness, upset stomach," and hypertension.  *See id.*, *Exhibit G* (Wagner Dep.) at 70:18 – 71:2.  But he has never described those supposed injuries in anything other than vague and generalized terms.  And, significantly, he has never sought medical care for these conditions or any other emotional injuries that he claims to have suffered as a result of the communications at issue.[3]  *See id.* at 74:22 – 75:15, 77:16 – 77:21.

The plaintiff also claims that he "suffered humiliation and embarrassment regarding what his neighbors possibly heard when the process server served him with the subpoena."  *See* Woodard Decl., *Exhibit D* (Plaintiff's Interrogatory Responses) at 4 (Response to Interrogatory No. 4).  But the plaintiff has conceded that he neither saw nor heard anyone else nearby, and he has not offered anything more than conjecture regarding whether anyone might actually have witnessed the event.  *See id.*, *Exhibit G* (Wagner Dep.) at 59:12 – 60:14.

---

[3]  Indeed, the only specific incident that the plaintiff could identify was experiencing hypertension immediately after he was handed the subpoena duces tecum (for which, as discussed above, Chiari & Ilecki is not even vicariously liable).  *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 73:9 – 73:19.  But the plaintiff has destroyed the documentary evidence of that incident.  Specifically, because of his chronic hypertension, the plaintiff regularly measures his blood pressure and maintains a log of his readings.  *See id.* at 74:11 – 74:20.  But the plaintiff supposedly "discarded" any notes he made regarding his elevated blood pressure after being handed the subpoena duces tecum.  *See* Woodard Decl., *Exhibit M* (Andrews Email).  Significantly, the plaintiff already had decided to retain counsel on that very same day.  *See* Wagner Aff., ¶ 25.  In other words, the plaintiff destroyed the only objective evidence of his claimed injury after he already was contemplating litigation.

In sum, the plaintiff has offered no proof whatsoever of these claimed emotional injuries aside from his own vague and speculative, self-serving statements.  That, quite simply, is insufficient.  Indeed, "general emotional 'harm,' no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes." *Humane Soc. of U.S. v. Babbitt*, 46 F.3d 93, 98 (D.C. Cir. 1995); *accord Woodson v. City of Richmond*, No. 3:13-cv-34, 2015 U.S. Dist. LEXIS 62825, at *11 (E.D. Va. May 13, 2015); *Crisafulli v. Ameritas Life Ins. Co.*, No. 13-cv-5937, 2015 U.S. Dist. LEXIS 56499, at *10-12 (D.N.J. Apr. 30, 2015); *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 25 (D.D.C. 2010).

Nor can the plaintiff establish that he suffered an intangible harm simply by virtue of the alleged deprivation of his rights under the FDCPA.  While "Congress may 'elavat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law," *id.* at 1549 (alteration in original) (quoting *Lujan*, 504 U.S. at 578), "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," *id.*  In other words, "Article III standing requires a concrete injury even in the context of a statutory violation."  *Id.*  Therefore, a plaintiff is required to "show that the deprivation of a right created by statute is accompanied by 'some concrete interest that is affected by the deprivation.'"  *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 582 (6th Cir. 2016) (quoting *Spokeo*, 136 S. Ct. at 1549).  A "'concrete' intangible injury based on a statutory violation must constitute a 'risk of real harm' to the plaintiff."  *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549).

For that reason, a "violation of the FDCPA alone . . . does not automatically amount to an injury in fact."[4] *Jackson v. Abendroth & Russell, P.C.*, No. 4:16-cv-113, 2016 U.S. Dist. LEXIS 125986, at *16 (S.D. Iowa Sept. 12, 2016).  Indeed, as the Supreme Court observed in *Spokeo*, "not all inaccuracies cause harm or present any material risk of harm"  136 S. Ct. at 1550; *accord Jackson*, 2016 U.S. Dist. LEXIS 125986, at *16-17.

Here, even if the plaintiff was somehow deprived of his rights under §§ 1692d, 1692e, or 1692f – and he was not – the plaintiff has suffered neither actual harm nor any "material risk of harm," and, therefore, the plaintiff cannot satisfy Article III standing.  *See Spokeo*, 136 S. Ct. at 1549; *Soehnlen*, 844 F.3d at 582.  As the plaintiff has conceded, he fully understood that each of the communications was intended not for him, but rather for the debtor – William J. Wagner, Jr.  *See* Wagner Aff., ¶ 16; Woodard Decl., *Exhibit G* (Wagner Dep.) at 23:4 – 23:18, 25:14 – 25:17, 37:12 – 37:19, 38:18 – 38:22, 57:8 – 58:3, 82:23 – 83:12.  Indeed, anyone in the plaintiff's position would have reached the same conclusion because each of the communications at issue was clearly addressed to "William J. Wagner Jr." – a name that the plaintiff never has used – and identified a debt owed to M.J. Peterson – a company with which the plaintiff has never conducted business.  *See* Overbeck Decl., *Exhibit I* (Information Subpoena); *Exhibit J* (CPLR § 5222 Notice); *Exhibit O* (Subpoena Duces Tecum); Wagner Aff., ¶ 1; Woodard Decl., *Exhibit G* (Wagner Dep.) at 20:22 – 21:19.  And that is particularly true given that the plaintiff was well aware that other debt collectors had been trying to reach the debtor at the plaintiff's residence for the last six or seven years.  *See* Sandford Decl., ¶ 5; *Exhibit A* (Events Log); Woodard Decl.,

---

[4] The Second Circuit has previously held, without elaboration, that "actual damages are not required for standing under the FDCPA."  *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003).  In reaching that conclusion, it appears that the Second Circuit was not addressing the issue of Article III standing, but rather the issue of whether the plaintiff's claim fell within the scope of the FDCPA.  If not, *Miller* is no longer good law after *Spokeo*.

*Exhibit G* (Wagner Dep.) at 30:9 – 34:13.  Therefore, any alleged deprivation of the plaintiff's rights under the FDCPA was not accompanied by any harm or material risk of harm so as to satisfy the injury in fact requirement of Article III.  *See, e.g., Benali v. AFNI, Inc.*, No. 15-cv-3605, 2017 U.S. Dist. LEXIS 783, at *14-17 (D.N.J. Jan. 4, 2017); *Johnston v. Midland Credit Mgmt.*, No. 16-cv-437, 2017 U.S. Dist. LEXIS 10610, at *8-13 (W.D. Mich. Jan. 26, 2017).

      For these reasons, the plaintiff has failed to establish that he has standing under Article III, and his claims should be dismissed.

      **B.    The Plaintiff Is Not a Consumer and Cannot Show Injurious Exposure.**

      The plaintiff's claims also must be dismissed because the plaintiff does not have a right of action under the FDCPA.

      The FDCPA provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person."  *See* 15 U.S.C. § 1692k(a).  "[F]or the offending communication to be 'with respect to' a person other than the debt consumer or someone standing the consumer's shoes, that person would have to plead some injurious exposure to the communication to have standing to sue."  *See Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, 155 F. App'x 10, 11-12 (2d Cir. 2005).  And, here, the plaintiff does not fall within any of those categories.

      The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt."  *See* 15 U.S.C. § 1692a(3).  Here, neither the plaintiff nor Chiari & Ilecki has ever alleged that the plaintiff was obligated the pay the debt at issue.  Each of the firm's communications was specifically addressed to "William J. Wagner Jr." – the debtor – rather than the plaintiff, who has never been known as a "Jr."  *See* Overbeck Decl., *Exhibit I* (Information Subpoena); *Exhibit J* (CPLR § 5222 Notice); *Exhibit O* (Subpoena Duces Tecum); Wagner Aff.,

¶ 1.  Indeed, the plaintiff fully understood that each of the communications was addressed to and intended for someone else.  *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 23:4 – 23:18, 25:14 – 25:17, 37:12 – 37:19, 38:18 – 38:22, 57:8 – 58:3, 82:23 – 83:12.  Therefore, the plaintiff is not a "consumer" under the FDCPA.  *See, e.g., Conboy v. AT&T Corp.*, 241 F.3d 242, 257 (2d Cir. 2001); *Condon v. Global Credit & Collection Corp.*, No. 8:10-cv-1526, 2010 U.S. Dist. LEXIS 129343, at *13 (M.D. Fla. Dec. 6, 2010); *Kaniewski v. Nat'l Action Fin. Servs.*, 678 F. Supp. 2d 541, 545 (E.D. Mich. 2009).

Nor is the plaintiff standing in the shoes of a consumer.  Indeed, according to the plaintiff, he is unrelated to the debtor and, in fact, has never met him.  *See* Wagner Aff., ¶ 3.

Therefore, to have a cause of action under the FDCPA, the plaintiff must be able to establish "some injurious exposure to the communication[s]" at issue.  *See Sibersky*, 155 F. App'x at 11-12.  But the mere fact that the plaintiff ultimately received and read two of the three communications at issue and now generally claims that he has suffered emotional distress is simply not enough to amount to "injurious exposure."  Indeed, district courts within the Second Circuit have repeatedly held that where, as here, a communication is not directed to the plaintiff, he cannot establish "injurious exposure" – even if the plaintiff is exposed to the communication and vaguely alleges emotional distress as a result.  *See, e.g., Douge v. Nationstar Mortgage LLC*, No. 14-cv-6139, 2016 U.S. Dist. LEXIS 39824, at *17-18 (E.D.N.Y. Mar. 27, 2016); *Andino v. Mercantile Adjustment Bureau, LLC*, No. 14-cv-59, 2016 U.S. Dist. LEXIS 19758, at *18-20 (W.D.N.Y. Feb. 18, 2016); *Valle v. Bendett & McHugh, P.C.*, No. 3:14-cv-1796, 2015 U.S. Dist. LEXIS 133111, at *16-17 (D. Conn. Sept. 30, 2015); *Schwartz v. Resurgent Capital Servs., LP*, No. 08-cv-2533, 2009 U.S. Dist. LEXIS 103903, at *11-14 (E.D.N.Y. Nov. 9, 2009); *Barasch v. Estate Info. Servs., LLC*, No. 07-cv-1693, 2009 U.S. Dist. LEXIS 79338, at *11-12 (E.D.N.Y.

Sept. 2, 2009); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002); *Datiz v. Int'l Recovery Assocs.*, No. 15-cv-3549, 2016 U.S. Dist. LEXIS 102695, at *20 (E.D.N.Y. Aug. 4, 2016).

Therefore, the plaintiff does not have a cause of action under the FDCPA, and his claims must be dismissed.

**C.    The Plaintiff's § 1692e and § 1692f Claims Do Not Fall Within the Zone of Interests of Those Sections.**

Finally, the plaintiff's claims under §§ 1692e and 1692f must be dismissed because they fail the "zone of interests" test.

Generally, a "statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). And, importantly, "'[w]hether a plaintiff's interest is 'arguably . . . protected . . . by the statute' within the meaning of the zone-of-interests test is to be determined not by reference to the overall purpose of the Act in question . . . , but by reference to the particular provision of law upon which the plaintiff relies." *Bennett v. Spear*, 520 U.S. 154, 175-76 (1997) (first two omissions in original) (quoting *Ass'n of Data Processing Serv. Organizations, Inc. v. Camp*, 397 U.S. 150, 153 (1970)). Therefore, "each provision of the FDCPA must be analyzed individually to determine who falls within the scope of its protection." *Todd v. Collecto, Inc.*, 731 F.3d 734, 738 (7th Cir. 2013); *see also Johnson v. Ocwen Loan Servicing*, 374 F. App'x 868, 874 (11th Cir. 2010) (considering the "specific provisions of the FDCPA that [the plaintiff] cites" in applying the "zone of interests" test).

Here, the crux of the plaintiff's claims is that the events at issue caused him to feel "harassed" and suffer "emotional distress." *See, e.g.,* Woodard Decl., *Exhibit A* (Complaint),

¶ 21; *Exhibit C* (Plaintiff's Initial Disclosures), ¶ 3; *Exhibit G* (Wagner Dep.) at 53:4 – 53:22, 55:2 – 55:9, 65:2 – 65:13.   There is no dispute that the FDCPA was passed, in part, to protect consumers against harassing debt collection practices.  *See* S. Rep. 95-382, 1977 U.S.C.C.A.N. 1695, 1696 (1977).   But, importantly, that is *not* the purpose of §§ 1692e or 1692f.   Rather, the prevention of harassing collection practices is the purpose of § 1692d.   *See* 15 U.S.C. § 1692d; *see also* S. Rep. 95-382, 1977 U.S.C.C.A.N. at 1702.

In contrast, the purpose of § 1692e is to prevent the use of "false, deceptive, or misleading" collection practices, and the purpose of § 1692f is to prevent the use "unfair or unconscionable" collection practices.  *See* 15 U.S.C. §§ 1692e, 1692f; *see also* S. Rep. 95-382, 1977 U.S.C.C.A.N. at 1702.   But, here, the plaintiff never has claimed that he was deceived or subjected to unconscionable collection practices.   Rather, he understood that each of the communications at issue was addressed to the debtor – William J. Wagner, Jr. – rather than the plaintiff himself.  *See* Wagner Aff., ¶ 16; Woodard Decl., *Exhibit G* (Wagner Dep.) at 23:4 – 23:18, 25:14 – 25:17, 37:12 – 37:19, 38:18 – 38:22, 57:8 – 58:3.   Indeed, even after being handed the subpoena duces tecum – the final communication at issue – the plaintiff still knew that he was not the person for whom Chiari & Ilecki was looking.  *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 82:23 – 83:12.

Therefore, the plaintiff's claims do not fall within the zone of interests of §§ 1692e and 1692f.   For that reason as well, the plaintiff's claims under those sections must be dismissed.

## IV.   The Bona Fide Error Defense Shields Chiari & Ilecki From Liability as a Matter of Law.

Finally, even if the plaintiff has established that he has a cognizable cause of action under the FDCPA, the bona fide error defense nevertheless immunizes Chiari & Ilecki from liability as a matter of law.

Under 15 U.S.C. § 1692k(c), a "debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *See* 15 U.S.C. § 1692k(c).  Here, if this Court concludes that Chiari & Ilecki dunned or harassed the plaintiff, there can be no question that it was unintentional.  Throughout the events at issue, Chiari & Ilecki acted in good faith, followed its own procedures, and exercised the utmost care in attempting to locate and collect from the debtor and only the debtor.  Therefore, even if Chiari & Ilecki has violated the FDCPA, Chiari & Ilecki is still entitled to summary judgment on its bona fide error defense.

### A.      Any FDCPA Violation Was Unintentional.

"The first prong of the bona fide error defense is that [the defendant] must show that its violation of the act 'was not intentional.'"  *Arnold v. Bayview Loan Servicing, LLC*, 659 F. App'x 568, 570 (11th Cir. 2016) (quoting *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1353 (11th Cir. 2009)).  And, here, Chiari & Ilecki's actions throughout the underlying collection process leave no doubt that the firm did not intend to harass anyone or collect the debt at issue from anyone but the debtor.

Before undertaking any collection efforts, Ms. Overbeck performed file review and skip tracing using multiple programs to attempt to locate the right address for the debtor.  *See* Overbeck Decl., ¶¶ 9-10.  When the plaintiff later called Chiari & Ilecki claiming that he had received the CPLR § 5222 notice but was not the debtor, the firm repeatedly attempted to confirm the plaintiff's identity.  *See* Sandford Decl., ¶ 6; Brown Decl., ¶¶ 4-6; *Exhibit A* (Events Log).  Because the plaintiff refused to provide verifiable, documentary proof of his identity, Ms. Overbeck once again researched the debtor's address and concluded that he lived at 5419

Roberts Road – the plaintiff's self-reported address.  *See* Overbeck Decl., ¶¶ 54-55.  Therefore, while Ms. Overbeck prepared to have a subpoena delivered to the debtor at 5419 Roberts Road, she also took special care to ensure that the plaintiff was not served by accident:  Ms. Overbeck specifically warned the process server that there could be more than one William Wagner living at the Roberts Road address, and she unequivocally instructed him to ensure that he served only the debtor.  *See id.*, *Exhibit P* (Letter to Process Server).

When the plaintiff later called Chiari & Ilecki claiming that the subpoena had been delivered to him, the firm yet again attempted to verify his identity.  *See* Sandford Decl., ¶¶ 10-13; *Exhibit A* (Events Log).  And when plaintiff's counsel later contacted Chiari & Ilecki about the identity dispute, Ms. Overbeck explained that her office could not simply accept the plaintiff's unsubstantiated claim of mistaken identity, and she reiterated the request for verifiable, documentary evidence.  *See* Overbeck Decl., ¶¶ 69-70; *Exhibit A* (Events Log).  As a show of good faith, Ms. Overbeck agreed to a general adjournment of the subpoena duces tecum until the identity dispute could be resolved.  *See id.*, ¶ 73; *Exhibit R* (Facsimile to Andrews).

The only logical conclusion that can be drawn from these facts is that Chiari & Ilecki did not intend to dun or harass the plaintiff.  In fact, the plaintiff does not suggest otherwise.  Rather, he argues that Chiari & Ilecki cannot establish that any FDCPA violation was unintentional because (1) under the Supreme Court's decision in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 599 U.S. 573 (2010), a defendant "must establish its *conduct* was unintentional, not merely that [it] did not intend to violate the FDCPA," and (2) here, Chiari & Ilecki intentionally had its communications at issue delivered to 5419 Roberts Road – the plaintiff's address.  *See* Plaintiff's Memorandum of Law at 16 (emphasis in original).  But this argument fails for two separate reasons.

-31-

As an initial matter, in *Jerman*, the Supreme Court did *not* hold that a defendant must establish that the conduct underlying an alleged FDCPA violation was unintentional – at least not in the sense that the plaintiff implies.  Indeed, if a defendant were required to show that each of its underlying actions – as opposed to the resulting FDCPA violation itself – was unintentional, it would effectively prevent a defendant from ever establishing the bona fide error defense based upon a mistake of fact.  But the Supreme Court made it clear that this was not the effect of its decision.  As the Court repeatedly acknowledged, "factual mistakes might, in some circumstances, constitute bona fide errors and give rise to violations that are 'not intentional' within the meaning of § 1692k(c)."  *See Jerman*, 559 U.S. at 591 n.12; *see also id.* at 596 ("Lawyers can, of course, invoke § 1692k(c) for violations resulting from qualifying factual errors."); *id.* at 599 ("lawyers may invoke the bona fide error defense, for instance, where a violation results from a qualifying factual error").  Thus, even in the wake of *Jerman*, courts have continued to confirm that a defendant need only show "that the violation was unintentional, not that the underlying act was unintentional."  *Arnold*, 659 F. App'x at 570 (quoting *Johnson v. Riddle*, 443 F.3d 723, 728 (10th Cir. 2006)); *accord Motes v. Midland Funding, LLC*, No. 6:15-cv-961, 2017 WL 192766, at *4 (N.D. Ala. Jan. 18, 2017); *Reynolds v. Collectioncenter, Inc.*, No. 15-cv-1060, 2016 WL 759215, at *4 (D. Col. Feb. 26, 2016); *White v. Sherman Fin. Group, LLC*, 984 F. Supp. 2d 841, 855 (E.D. Tenn. 2013); *Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 427 n.14 (D.N.J. 2013); *Crafton v. Law Firm of Levine*, 957 F. Supp. 2d 992, 999 (E.D. Wis. 2013); *Cole v. Procollect, Inc.*, No. H-09-cv-3240, 2010 U.S. Dist. LEXIS 142667, at *23-24 (S.D. Tex. Dec. 23, 2010).

Regardless, if, as the plaintiff suggests, Chiari & Ilecki has violated the FDCPA, its underlying conduct clearly was not intentional.  When asked to "identify each and every act or

omission which plaintiff claims was in violation of" the FDCPA, the plaintiff responded that

Chiari & Ilecki violated the FDCPA "by sending letters addressed to the Plaintiff in an attempt to

collect a debt that Plaintiff does not owe and by serving Plaintiff with a subpoena for a debtor

exam when Plaintiff is not the judgment debtor."  *See* Woodard Decl., *Exhibit D* (Plaintiff's

Interrogatory Responses) at 7-8 (Interrogatory No. 13 and Response).  Thus, in the plaintiff's

own words, the actions underlying the alleged FDCPA violation are "sending letters addressed to

the Plaintiff" and "serving Plaintiff with a subpoena."  *See id.*  But as set forth above, it is

undisputed that Chiari & Ilecki did not intend to do either.  Rather, the firm has only attempted to

recover from the debtor himself.  Therefore, the evidence conclusively shows that any alleged

violation was absolutely unintentional within the meaning of the bona fide error defense.

### B.      Any FDCPA Violation Was the Result of a Bona Fide Error.

"The second prong of the bona fide error defense is that [the defendant] must show that

its violation of the act 'was a bona fide error.'"  *Arnold*, 659 F. App'x at 571 (quoting *Edwards*,

584 F.3d at 1353).  In other words, the defendant must show that "the error resulting in a

violation was made in good faith" and "objectively reasonable."  *Id.* (quoting *Edwards*, 584 F.3d

at 1353).  And, here, the evidence conclusively shows that the error – concluding that the debtor

lived at 5419 Roberts Road – was made in good faith and entirely reasonable.

Before Chiari & Ilecki undertook any collections efforts, Ms. Overbeck reviewed her

office's file on the debtor and performed skip tracing.  *See* Overbeck Decl., ¶ 9.  In that regard,

she used multiple programs to run searches for the debtor, including on the LexisNexis public

records database and the Real Info real estate information database.  *See id.*, ¶ 10.  Chiari &

Ilecki uses sources like Lexis because over the course of his nearly thirty years as an attorney

practicing in collections, Mr. Ilecki has found them to be particularly reliable.  *See* Ilecki Decl.,

¶¶ 59-61.  And, in fact, other debt collectors have similarly concluded that Lexis is a reliable tool

for locating debtors.  *See, e.g., Wetzel v. Afni, Inc.*, No. 11-cv-6159, 2011 U.S. Dist. LEXIS

142756, at *12-13 (D. Or. Oct. 20, 2011), *adopted by*  2011 U.S. Dist. LEXIS 141905.

Using Lexis, Ms. Overbeck obtained a report for the debtor based on his full name –

"William J. Wagner, Jr." – and Social Security number.  *See* Overbeck Decl., ¶ 12.  But she did

not simply rely on that report alone; rather, she compared the Lexis search results to the

information contained in her firm's file and available on Real Info.  *See id.*, ¶ 10.  She observed

that (1) the Lexis report for the debtor's full name and Social Security number listed 5419

Roberts Road as one of the top addresses for the debtor, William J. Wagner, Jr.; (2) the Lexis

report indicated that the debtor, William J. Wagner, Jr., was related to a Julia or Julie Wagner,

who also lived at 5419 Roberts Road; (3) the Real Info report confirmed that 5419 Roberts Road

was owned by a William Wagner and Julie Wagner; and (4) Chiari & Ilecki already had ruled

out the other top possible addresses listed for the debtor on the Lexis report or older credit

reports.  *See id.*, ¶¶ 12-15, 25-30.  Therefore, Ms. Overbeck reasonably concluded that the debtor

lived at 5419 Roberts Road.  *See id.*, ¶¶ 16, 31.

Significantly, Ms. Overbeck is far from the only person to reach that conclusion.  To the

contrary, the plaintiff acknowledged that he had been receiving communications intended for the

debtor for six or seven years before the events at issue.  *See* Sandford Decl., ¶ 5; *Exhibit A*

(Events Log).  In fact, multiple other debt collectors had attempted to reach the debtor at the

plaintiff's address.  *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 30:9 – 34:13.  Thus, the

inescapable conclusion is that it was reasonable for Chiari & Ilecki to conclude that the debtor

lived at 5419 Roberts Road.

In seeking summary judgment on this second prong of the bona fide error defense, the

plaintiff does little to attack Ms. Overbeck's analysis; instead, he concocts an argument that she

committed spoliation by not printing out and preserving a copy of the Lexis and Real Info search results, and that this Court should therefore disregard her testimony.  But that argument fails for several reasons.

First, "[t]o determine whether this Court should exercise its inherent authority to impose sanctions for spoliation of evidence, 'a threshold question is whether a party had any obligation to preserve the evidence." *Henkel Corp. v. Polyglass U.S.*, 194 F.R.D. 454, 456 (E.D.N.Y. 2000).  The "preservation requirement arises when a party 'reasonably anticipates litigation.'" *In re Pfizer Inc.*, 288 F.R.D. 297, 313 (S.D.N.Y. 2013) (quoting *Orbit One Commc'ns., Inc. v. Numeriex Corp.*, 271 F.R.D. 429, 436 (S.D.N.Y. 2010)).

The plaintiff suggests that when Ms. Overbeck searched for the debtor on Lexis and Real Info – before Chiari & Ilecki even sent the communications at issue – she should have preserved the search results simply because Chiari & Ilecki has been sued before.[5]  *See* Plaintiff's Memorandum of Law at 22.  According to the plaintiff's logic, Chiari & Ilecki should preserve the results for every single search that it runs for every single one of its collection cases.  But that is neither practical nor required.

"The undeniable reality is that litigation 'is an ever-present possibility' in our society." *Cache La Poudre Feeds, LLC v. Land O'Lakes Farmland Feed, LLC*, 244 F.R.D. 614, 621 (D. Col. 2007) (quoting *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992)).  Therefore, "[w]hile a party should not be permitted to destroy potential evidence after receiving unequivocal notice of impending litigation, the duty to preserve relevant documents should require more than a mere possibility of litigation." *Id.*  In other words, the

---

[5] Despite the high volume of collection matters that Chiari & Ilecki handles, it only has been sued under the FDCPA three times.  *See* Ilecki Decl., ¶ 109.  In every single one of those cases, Chiari & Ilecki has prevailed without any settlement funds being paid.  *See id.*, ¶¶ 110-13.

"mere existence of a dispute does not necessarily mean that parties should reasonably anticipate litigation or that the duty to preserve arises." *Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494, 510 (D. Md. 2009); *accord Treppel v. Biovail Corp.*, 233 F.R.D. 363, 371 (S.D.N.Y. 2006).

Here, Ms. Overbeck ran the first set of Lexis and Real Info searches at issue on February 9, 2015, before there had been any contact between Chiari & Ilecki and the plaintiff – much less any dispute.  *See* Overbeck Decl., ¶ 10.  And even though Ms. Overbeck ran a second set of searches on June 5, 2015 – after the plaintiff had called Chiari & Ilecki claiming that he was not the debtor – Chiari & Ilecki still had not received any "unequivocal notice of impending litigation." *See id.*, ¶ 54.  Indeed, the plaintiff did not even mention *contacting* an attorney until after the subpoena duces tecum was delivered two weeks later on June 17, 2015.  *See id.*, *Exhibit A* (Event Log) at CHIARI000166.  Thus, at the time that Ms. Overbeck ran the searches at issue, there certainly was nothing more than a "mere possibility of litigation" – if even that. Accordingly, Ms. Overbeck had no obligation to preserve her search results, and the spoliation analysis ends there.

Moreover, even if Chiari & Ilecki should have preserved the search results, no sanction is warranted.  "If a party did have an obligation to preserve evidence, the degree of that party's culpability and the amount of prejudice caused by its action will determine the severity of the sanctions to be imposed." *Henkel Corp.*, 194 F.R.D. at 456.  Here, the plaintiff cannot show either that Chiari & Ilecki acted in bad faith or that the plaintiff has been prejudiced at all.

To be perfectly clear, Chiari & Ilecki did not affirmatively discard or destroy the Lexis and Real Info reports at issue.  *See* Overbeck Decl., ¶ 20.  Rather, Ms. Overbeck ran the searches on the internet – that is, on the Lexis and Real Info online databases.  *See id.*, ¶ 19.  She did not print out the search results simply because it is her firm's policy typically not to do so.  *See id.*,

¶¶ 20-21.  Given the high volume of searches that Chiari & Ilecki runs, it would be entirely impractical to print out and store every single set of search results – especially because Lexis' terms of use require Chiari & Ilecki to certify that it maintains any printed reports in a lockable file cabinet or other restricted, secured area.  *See* Ilecki Decl., ¶ 106.  Nor is there any need to print out Lexis or Real Info search results.  If Chiari & Ilecki's attorneys want to review a report again, all that they need to do is to log back in to their online Lexis or Real Info account and run the search again.  *See* Overbeck Decl., ¶ 21.  Thus, Ms. Overbeck's decision not to print out the search results at issue is neither irregular nor indicative of any bad faith.

Furthermore, the plaintiff has not suffered any prejudice.  After the plaintiff filed this lawsuit, Chiari & Ilecki ran the Lexis and Real Info searches again and printed out the reports for use in this litigation.  Not surprisingly, they are consistent with Ms. Overbeck's recollection and the notes in her firm's events log.[6]  *See id.*, ¶ 22; *Exhibit A* (Events Log); *Exhibit B* (Lexis Report); *Exhibit C* (Real Info Report).  As the plaintiff acknowledges, those reports were produced during discovery, and, thus, he has suffered no prejudice at all.  For that reason as well, sanctions are unwarranted.[7]

---

[6] The information in such Lexis reports is not lost over time; rather, the reports are merely updated and supplemented.  *See* Ilecki Decl., ¶ 102.

[7] A comparison to the plaintiff's own conduct is helpful.  Despite the plaintiff's claims that he has suffered emotional injuries as a result of the events at issue, the only specific instance he could identify was experiencing hypertension after being handed the subpoena duces tecum.  *See* Woodard Decl., *Exhibit G* (Wagner Dep.) at 73:9 – 73:19.  Because he suffers from chronic high blood pressure, he maintains a log of his blood pressure.  *See id.* at 74:11 – 74:20.  But the plaintiff supposedly "discarded" any notes he made regarding his elevated blood pressure after being delivered the subpoena duces tecum, *see* Woodard Decl., *Exhibit M* (Andrews Email) – even though the plaintiff already had decided to seek legal advice on that very day, *see* Wagner Aff., ¶ 25.  In other words, (1) the plaintiff affirmatively destroyed evidence (2) after he already was specifically contemplating litigation, and (3) as a result, Chiari & Ilecki's defense has been prejudiced because the destroyed records are the only objective evidence that corroborates the

Aside from arguing that this Court should disregard Ms. Overbeck's testimony, the plaintiff does little to criticize her analysis of the February 2015 Lexis and Real Info reports. The plaintiff suggests that Ms. Overbeck should have noted that it was "extremely unusual" for the Lexis report to indicate that the debtor had owned the Roberts Road property since 1985 when the debtor had leased another property from M.J. Peterson in 2005. *See* Plaintiff's Memorandum of Law at 20. But there is nothing strange about that. There are many reasons why an individual might lease a second property. He might be going through a divorce or separation. He might be renting the property for another family member. The existence of a second leased property simply would not be a red flag given the other clear indications that the debtor resided at 5419 Roberts Road.

The plaintiff also suggests that Ms. Overbeck should have found it "extremely unusual" that the credit reports that Chiari & Ilecki had obtained as early as 2009 did not list the debtor as owing a mortgage for the 5419 Roberts Road property. *See id.* at 21. But, again, that is nothing remotely out of the ordinary. The debtor might not have obtained a mortgage. Or he might have obtained a private mortgage, which would not be listed on a credit report. Thus, the plaintiff's criticisms fail to suggest that Ms. Overbeck's conclusion that the debtor resided at 5419 Roberts Road was anything but objectively reasonable and made in good faith.

That conclusion also remained reasonable even after the plaintiff called Chiari & Ilecki in February and March 2015, claiming not to be the debtor. After running additional searches and determining that her initial conclusion was correct, Ms. Overbeck had every reason to be suspicious of the plaintiff's claim of mistaken identity given that he refused to provide Chiari & Ilecki a copy of his driver's license, Social Security card, or any other documentary proof of his

---

plaintiff's self-serving testimony regarding his claimed injuries. In contrast, the plaintiff's spoliation claim against Chiari & Ilecki presents none of those considerations.

identity.  And the plaintiff does not suggest otherwise.  To the contrary, when plaintiff's counsel

called Ms. Overbeck to discuss the identity dispute, Ms. Overbeck explained that her office

could not simply accept the plaintiff's unsubstantiated claim, and plaintiff's counsel responded

that he understood and appreciated that position.  *See* Overbeck Decl., ¶ 69.  And the greatest

proof that the request for a copy of the plaintiff's driver's license and Social Security card was

reasonable is the fact that the plaintiff decided it was necessary to submit those documents to this

Court to establish that he is, in fact, not the debtor.  *See* Wagner Aff., ¶ 5; Affirmation of

Kenneth R. Hiller, Esq., dated January 17, 2017, *Exhibit A* (Social Security Card); *Exhibit B*

(Driver's License).

Moreover, by warning the process server that there might be more than one William

Wagner at the Roberts Road address and instructing him to serve only the debtor, Ms. Overbeck

took appropriate steps to ensure that the plaintiff was not accidentally served.  *See id.*, *Exhibit P*

(Letter to Process Server).  Accordingly, the undisputed facts show that any violation of the

FDCPA was the result of a bona fide error.

> ### C.      Chiari & Ilecki Maintained Procedures Reasonably Adapted to Avoid Such Errors.

"The third prong of the bona fide error defense is that [the defendant] must show that its

violation of the act 'occurred despite the maintenance of procedures reasonably adapted to avoid

such error.'"  *Arnold*, 659 F. App'x at 571 (quoting *Edwards*, 584 F.3d at 1353)).  And, once

again, uncontroverted evidence demonstrates that Chiari & Ilecki maintains reasonable

procedures to avoid identifying the wrong address for a debtor.

Chiari & Ilecki's relevant procedures are twofold:  First, Chiari & Ilecki trains all of its

attorneys and staff in FDCPA compliance generally.  *See* Ilecki Decl., ¶ 54.  Mr. Ilecki – who

has been handling collections cases for nearly thirty years – conducts much of the training

personally.  *See id.*, ¶¶ 44, 54.  In addition to attending CLE courses to keep up with developments in collections law, Mr. Ilecki reviews every newly published decision regarding the FDCPA – from federal courts all across the country – on a weekly basis.  *See id.*, ¶¶ 46, 48.  Mr. Ilecki then updates his firm's other attorneys and staff members regarding any pertinent developments in the case law – also usually on a weekly basis.  *See id.*, ¶ 47.  And Mr. Ilecki has extensively trained Ms. Overbeck, in particular, in skip training so that she can assist in overseeing the firm's efforts to locate debtors.  *See id.*, ¶¶ 68-73.

Second, Chiari & Ilecki has developed and maintains specific procedures to ensure that the firm identifies the correct address for a debtor and directs collection efforts at only the debtor.  Before Chiari & Ilecki undertakes collection efforts in any case, an attorney or paralegal trained in skip tracing always reviews the file and runs reports on the debtor using reliable sources, such as Lexis and Real Info.  *See id.*, ¶¶ 57-64.  When more than one potential address for the debtor is identified, the attorney or paralegal compares reports and the information in the firm's file and utilizes experience, common sense, and reasoned judgment to attempt to determine which address is most likely the correct one.  *See id.*, ¶ 67.  If a paralegal or junior attorney performs initial skip tracing, either Ms. Overbeck or Mr. Ilecki double-checks the paralegal's or attorney's research and analysis by separately conducting the same searches.  *See id.*, ¶ 68.  Chiari & Ilecki does not begin collection efforts until Ms. Overbeck and Mr. Ilecki feel confident that they have the right address.  *See id.*, ¶ 73.

In the event that an individual calls Chiari & Ilecki claiming that (1) the firm has directed collection efforts towards his residence, (2) he has a name similar to that of the debtor, and (3) the debtor does not reside with him, one of Chiari & Ilecki's FDCPA-trained legal assistants or other employees takes the call.  *See id.*, ¶ 74.  The legal assistant who takes the call requests

that the alleged non-debtor provide verifiable proof of his identity (*e.g.,* date of birth or Social Security number) and may request the individual's driver's license and Social Security card in order to confirm that he is not the debtor. *See id.*, ¶ 75. The legal assistant also immediately inputs a summary of the conversation into the events log that Chiari & Ilecki maintains for the debtor's file, and if the attorney assigned to the file has not previously been made aware of the situation, the legal assistant is required to alert Ms. Overbeck or Mr. Ilecki regarding the caller's complaint. *See id.*, ¶¶ 76-77. In addition, the attorney checks the events log for developments in the case before undertaking any additional collection efforts. *See id.*, ¶ 78.

If the attorney concludes that the caller has provided verifiable proof that he is not the debtor and that the debtor does not reside at his address, Chiari & Ilecki immediately stops collection efforts directed to the debtor at that address. *See id.*, ¶ 79. But not surprisingly, there are many instances where a debtor misrepresents his identity or address in communications with Chiari & Ilecki. *See id.*, ¶ 80. Therefore, if a caller refuses to provide verifiable proof of his identity, the attorney performs additional skip tracing, including carefully reviewing the information contained in the firm's file and also running additional searches (such as on Lexis or Westlaw) to confirm the debtor's address. *See id.*, ¶ 81. Once again, Mr. Ilecki or Ms. Overbeck always reviews the file before any additional collection efforts are undertaken. *See id.*, ¶ 82. If they conclude that the debtor likely does not reside at the address in question, Chiari & Ilecki immediately stops collection efforts directed to the debtor at that address. *See id.*, ¶ 83. If, however, Mr. Ilecki or Ms. Overbeck still believes that the debtor resides at the address, the firm may continue to undertake collection efforts against the debtor at that address. *See id.*, ¶ 84. In that case, Chiari & Ilecki takes steps to ensure that communications are directed at only the

debtor and no one else at that address. The attorney warns staff, process servers, or other third

parties engaged to assist in collection efforts. *See id.*, ¶ 85.

The plaintiff suggests that Chiari & Ilecki's procedures are not sufficiently elaborate. *See*

Plaintiff's Memorandum of Law at 24-25. But that is of no moment because "the error to be

avoided in this case—sending a collection letter to the wrong person, was not complex." *See*

*Wetzel*, 2011 U.S. Dist. LEXIS 142756, at *13.

The plaintiff also makes various suggestions for how Chiari & Ilecki could have

improved its procedures. *See* Plaintiff's Memorandum of Law at 25-26. But that misconstrues

the defendant's burden of proof. "The FDCPA 'does not require debt collectors to take every

conceivable precaution to avoid errors; rather, it only requires reasonable precaution.'"

*Charbonneau v. Mary Jane Elliott, P.C.*, 611 F. Supp. 2d 736, 743 (E.D. Mich. 2009) (quoting

*Kort v. Diversified Collection Servs.*, 394 F.3d 531, 539 (7th Cir. 2005)); *accord Delmoral v.*

*Credit Prot. Ass'n, LP*, No. 13-cv-242, 2015 U.S. Dist. LEXIS 133760, at *28 (E.D.N.Y. Sept.

30, 2015); *Puglisi v. Debt Recovery Solutions, LLC*, 822 F. Supp. 2d 218, 226-27 (E.D.N.Y.

Sept. 30, 2011). Therefore, "the existence of . . . an alternative does not challenge the substantial

evidence put forward by [Chiari & Ilecki] that it maintains procedures reasonably adapted to

avoid error." *See Arnold*, 659 F. App'x at 572.

Indeed, Chiari & Ilecki's procedures are at least as comprehensive as other debt

collectors' procedures that have been determined to be sufficient as a matter of law. In *Wetzel*,

for instance, the defendant sent a collection letter to the wrong address but still established the

bona fide error defense simply by maintaining a procedure of running Lexis searches – based on

the debtor's name and social security number – to determine the address.  *See* 2011 U.S. Dist.

LEXIS 142756, at *11-13.  Chiari & Ilecki does that and more.[8]

In other cases, even less involved procedures have been determined to be reasonable.  For

instance, in *Hyman v. Tate*, No. 02-cv-242, 2003 WL 1565863  (N.D. Ill. Mar. 24, 2003), *aff'd*,

362 F.3d 965 (7th Cir. 2004), the debt collector defendant allegedly sent a collection letter in

violation of the FDCPA.  The plaintiff argued that "there were several things [the defendant]

could have done to check the status of [the plaintiff's] account *before* sending the initial dunning

letter.  It could have, for example, searched the bankruptcy court records; *it could have pulled*

*her credit report . . .*"  *See id.*, at *6 (emphasis added).  But the court found that procedures even

less formal than ordering credit reports – including, *inter alia*, an "informal understanding with

---

[8] In addition, in *Hedayati v. Perry Law Firm,* 2017 WL 4864491 (C.D. Cal. Oct. 27, 2017), the court held that where a defendant "diligently attempted to identify the correct individual by conducting public records searches and following training protocols," the bona fide error defense applied.  *See* 2017 WL 4864491, at *8 (C.D. Cal. 2017).  Indeed, the *Hedayati* case is on all fours with respect to the instant matter.  In *Hedayati*, the defendant law firm attempted to collect a debt from a man named Mohammad Hedayati.  After diligent efforts, however, the firm mistakenly believed the plaintiff, Mohammad Ali Hedyatti, to be the debtor.  2017 WL 4864491.  Similar to the case at bar, the law firm conducted various and vigilant diligence to confirm the identity of the debtor.  For example, the law firm ran LexisNexis reports, which resulted in a report listing thirteen name variations, including "Mohammad Ali Hedayati."  The court held that "[g]iven all the information contained in the LexisNexis report, Defendant's inference that 'Mohammad Ali Hedayati' and 'Mohammad Hedayati' might both be aliases of the debtor was reasonable."  *Id.* at *2.  Indeed, "[a]ll of the documents Plaintiff received from Defendant or a process server listed 'Mohammad Hedayati,' not 'Mohammad Ali Hedayati,' as the debtor."  *Id.* at *4.  That is to say, "a[s] soon as Plaintiff learned the address that the debt concerned, he knew it was not his debt, but rather his brother's debt; he thus knew that Defendant was actually seeking to collect the debt from his brother."  *Id.* at *3.  Accordingly, the court held that "despite relying on public records and cross-referencing with other public records, defendant unintentionally sent debt-collection documents to someone who was no the actual debtor, namely, to the plaintiff in this case — the debtor's brother."  *Id.* at *3.  Therefore, the Court held that even if the defendant's action constituted violations of the FDCPA, the bona fide error defense applied for three reasons: (1) the error defendant made by targeting the wrong brother with its debt collection efforts was unintentional; (2) the error was bona fide — the evidence in the record revealed that defendant acted in good faith and without fraud to collect the debt; and (3) the defendant maintained procedures that were reasonably adapted to avoid attempting service on the wrong party.  *See id.* at *8.  *McGrail v. Law Offices of Michael R. Stillman*, 2018 WL 2740234 (E.D. Mi. 2018) is similarly on point.  There, the Court held that where defendant mistakenly served plaintiff with a writ of garnishment, defendant did not violate the FDCPA because plaintiff failed to provide evidence of her identity.  Accordingly, the court held that defendant had no duty to withdraw the writ.

its clients that they would not refer accounts on debts that were the subject of a bankruptcy petition" – could meet the requirements of the bona fide error defense. *See id.* at *8. And those procedures would still be "reasonably adapted" even if they sometimes resulted "in a tiny percentage of cases" where letters were sent that "technically violated the FDCPA." *See id.; see also Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp. 2d 635, 647 (D. Md. 2010) (law firm entitled to the bona fide error defense as a matter of law when it relied on information verified in an affidavit from its client). Here, by contrast, Chiari & Ilecki does far more and always obtains multiple reports regarding a debtor before undertaking any collection efforts.

The plaintiff also argues that Chiari & Ilecki does not "maintain" – *i.e.*, ensure compliance with – its own procedures. *See* Plaintiff's Memorandum of Law at 28-29. But this too is incorrect. Mr. Ilecki routinely meets with the firm's attorneys and staff to address any concerns that arise and keep them apprised of developments in the law. *See* Ilecki Decl., ¶ 47. Moreover, either Mr. Ilecki or Ms. Overbeck personally reviews every file before collection efforts begin. *See id.*, ¶ 68. And Mr. Ilecki also continues to work closely with Ms. Overbeck and periodically monitors her work to ensure that she is following the firm's procedures, including those regarding locating debtors. *See id.*, ¶ 72. Nothing more is required to prove that Chiari & Ilecki ensures compliance with its procedures. *See, e.g., Webster v. ACB Receivables Mgmt.*, 15 F. Supp. 3d 619, 629 (D. Md. 2014).

Simply put, the efficacy of the firm's procedures speaks for itself: Chiari & Ilecki has never been found to have violated the FDCPA. *See* Ilecki Decl., ¶¶ 109-13. Chiari & Ilecki has never settled an FDCPA lawsuit. *See id.* And Chiari & Ilecki has never been sued before for identifying the wrong address for a debtor. *See id.*, ¶ 109.

In sum, there can be no question that Chiari & Ilecki maintains procedures reasonably adapted to ensuring that the firm locates the correct address for a debtor and directs collection efforts at only the debtor.  Therefore, even if Chiari & Ilecki violated the FDCPA, the firm is entitled to summary judgment on the bona fide error defense.

## CONCLUSION

For the foregoing reasons, this Court should deny the plaintiff's motion for summary judgment and grant Chiari & Ilecki summary judgment dismissing this action in its entirety.

Dated:      Buffalo, New York
            August 10, 2018

                                            s/Terrence M. Connors
                                            Terrence M. Connors, Esq.
                                            Caitlin M. Higgins, Esq.
                                            **CONNORS LLP**
                                            Attorneys for Defendant
                                            1000 Liberty Building
                                            Buffalo, New York 14202
                                            (716) 852-5533
                                            tmc@connorsllp.com
                                            cmh@connorsllp.com