# EXHIBIT E

Application Fee  $ 25.00 - nonrefundable
Initial Deposit   $100.00 (Units over
$1000 per month –deposit is 1/2
Month rent)
*Deposit not refundable after 72 hours*

**MJ Peterson Real Estate**

501 John James Audubon Parkway, Amherst, NY 14228
Phone (716)689-6006  Fax (716)688-5463

ADDRESS RENTED __882 Englewood #4__  RENT AMOUNT __410 /month__

DESIRED MOVE-IN DATE __3-1-05__  RENTAL AGENT __Bruce Hamilton__

**Personal Information**

*NAME: __William__         __J.__ __Wagner Jr.__
        First              Middle      Last

Social Security # __████████ 9006__  List any other name or alias used by you _____

CO-APPLICANT NAME: _____
                    First           Middle          Last
Social Security # _____ List any other name or alias used by you _____

* NOTE: ADDITIONAL ADULT CO-APPLICANT(S) MUST COMPLETE A SEPARATE APPLICATION FORM

List full names of all other persons who will occupy premises: _____

PETS: How Many __none__  TYPE OF PET(S) _____

In case of emergency notify: __Thomas Chiavetti  1571 Eggert__ __Ahherst__ __7168360223__
                              Name              Address            Phone

_____
Name                         Address             Phone

**Residence and Rental Record**

Present Phone Number (____) _____

Present Address __35C Hatfield Rd__ _____ __Amherst  NY  14226__
                 Street Address    Apt No.    City    State   Zip

Dates of Occupancy  From __1960__ / ___ / ___  to __2005__ / ___ / ___

Landlords Name __Carets_____  Landlord's Phone (____) _____

Previous Address _____
                  Street Address    Apt No.   City   State   Zip

Dates of Occupancy  From ___/___/___  to ___/___/___

Landlords Name _____  Landlord's Phone (____) _____

2nd Previous Address _____
                      Street Address   Apt No.   City   State   Zip

Dates of Occupancy  From ___/___/___  to ___/___/___

Landlords Name _____  Landlord's Phone (____) _____

**Employment Record**

Total household income from all sources  $ __they to be Disabled__
**Applicant's Present Employer _____  Supervisor _____
Address _____  Monthly Income $ _____
How Long _____ Occupation _____  Phone _____

**If this is not a local employer, where do you work locally? _____

Co-Applicant's Employer _____  How Long _____ Monthly Income $ ____
Address _____  Occupation _____  Phone _____

Additional Source of Household Income: _____  Approx. / Month $ _____

**Miscellaneous:**

Total number of cars to be parked at the leased property __none__
Checking Account # _____ Bank _____ Branch _____
Savings Account # _____ Bank _____ Branch _____

Revised 03/2004

CHIARI000052

## IMPORTANT NOTICE REGARDING YOUR LEASE EXPIRATION DATE

Due to the seasonal effect on the local rental market, M. J. Peterson offers a choice of lea expiration dates to coincide with that market. In an effort to encourage a maximum numb of leases to expire during the Spring & early Summer months, the following lease terms a offered.

**Minimum lease term allowed is 9 months (providing as follows)
**Maximum term allowed is 24 months (providing as follows)
NOTE:  Leases <u>will not be allowed to expire</u> on August 31, September 30, October 3 November 30, or December 31, under any circumstances.

PLEASE CHECK ONE:

( ) January 31, 2006
(X) February 28, 2006
( ) March 31, 2006
( ) April 30, 2006
( ) May 31, 2006
( ) June 30, 2006

Or seal your rate with a longer term lease:
( ) January 31, 2007
( ) February 28, 2007
( ) March 31, 2007
( ) April 30, 2007
( ) May 31, 2007

I (WE) DESIRE TO MOVE IN ON  3 / 1 / 05

### Please Read carefully before signing

- In the event this application is not accepted by M.J. Peterson, the deposit will be returned.
- M. J. Peterson does not insure tenants' personal property. All tenants must have Renters Insurance for their own protection.
- I understand that <u>pets are not permitted without prior approval</u> of Landlord. If permission is granted for a pet, I understand a **pet deposit** is charged and a **Lease Addendum Governing Pets** must be attached to the Lease Agreement.
- 
- Each **Co-applicant (except spouse) must provide a separate Rental Application.**

*Applicant acknowledges that this application has personally been filled out by the applicant and the information provided is true and complete. Applicant authorizes verification of any information contained in this application and verification from a consumer credit reporting agency.* **The deposit paid is <u>not refundable after 72 hours</u>** *if this application is approved following verification. Application fee is never refundable. This fee is to be paid by a separate check made payable to* **M.J. Peterson Corp.** *It is mandatory within five days of acceptance that the tenant arrange a mutually acceptable time with the M.J. Peterson Rental Dept. to sign leases and pay remaining security deposit in certified funds. The prorate amount, first month's rent and trash removal fee(if applicable) must be paid in full before keys are issued for occupancy.* **<u>Please Remember</u>: Full Security Deposit Payment in Certified Funds MUST be paid within five (5) days of signing this application. Failure to meet these provisions will result in loss of all deposits and fees paid to** *date.*

_____   _____   2/5/05
Applicant                         Co-Applicant                        Date

Thank you for choosing M. J. Peterson



Real Estate

The Housing Experts Since 1930

Revised 03/2004

CHIARI000053

## APARTMENT LEASE AGREEMENT - 882-04 Englewood Ave

**THIS AGREEMENT**, made Monday, February 28, 2005 between M. J. Peterson Corp. (as agent for and/or the owners of the premises hereinafter described M. J. Peterson, LLC), hereinafter called "Landlord" and <u>William J. Wagner Jr.</u> hereinafter called "Tenant" and no others.

1. **DESCRIPTION** In Consideration of the rent to be paid and the terms of this agreement to be performed by the Tenant, Landlord hereby leases to the Tenant the following described premises situated in the city/town of Buffalo, County of Erie and State of New York 14223, being <u>882-04 Englewood Ave</u>, hereinafter called the "Premises".

2. **TERMS** The term of this lease shall be for a period, commencing on <u>3/1/05</u> and ending at noon on <u>2/28/06</u>. If Tenant elects to vacate the premises at the end of the initial of the then current term, said tenant shall notify the Landlord in writing by certified mail, at least sixty (60) days prior to the end of the initial or current term. In the event Tenant fails to do so, Landlord may, at it's sole option, deem Tenant a month to month tenant.

3. **RENT** Tenant agrees to pay the Landlord as rent for the premises, the sum of <u>$4,920.00</u> (& Prorate if applicable) throughout the term of this lease, payable in equal monthly installments of <u>$410.00</u> each & 1st Month Prorate Rent & Cable (if applicable). **ALL PAYMENTS MUST BE MADE BY CHECK OR MONEY ORDER.** The rent payment for each month must be paid on the first day of that month at the office of the Landlord or at such address as Landlord may from time to time designate by notice to Tenant. Landlord needs not give notice to the Tenant to pay the rent. The rent must be paid in full and no amounts subtracted from it. The landlord shall have the right to increase the rent payable for any extended term by giving written notice to the Tenant, not less than thirty (30) days prior to the commencement of the extended term to which increased rent shall apply.

An additional rental charge in the amount of $20.00 shall be paid by the Tenant for any rent due but not received by Landlord by the 5th day of the month and an additional rental charge in the sum of $20.00 shall be charged to Tenant for any rent due but not received by Landlord on the 10th day of the month. All additional rent charges shall be due and payable on demand.

Repeated late payment of rent, regardless of whether Landlord has received and accepted additional rent charges for such late payment, shall be deemed a material breach of lease for which Landlord may elect to terminate this lease in accordance herewith.

4. **RENT FOR GARAGE (If Applicable)** Tenant agrees to pay the landlord as rent for Garage(s) # N/A, the sum of throughout the term of this lease, payable in equal monthly installments of each, plus applicable sales tax. The use of heating and cooling devices and appliances is strictly prohibited and is not to be connected to any garage or common area outlet.

5. **UTILITIES** As a condition of this lease, and as additional rent, Tenant will pay the following utilities: (check where applicable)
   <u>X</u> Electric
   <u>X</u> Other (specify): **BULK CABLE VALUE SERVICE PROVIDED BY ADELPHIA CABLE COMMUNICATIONS (SEE ADDENDUM)**
In the event Tenant fails to make the above utility payments when due or allows the utility company to discontinue service (exept voluntary cable service disconnect) for any reason, such failure shall be deemed a material breach of this lease and Landlord may elect to terminate this lease in accordance herewith.

6. **SECURITY DEPOSIT** The Tenant will deposit with Landlord, upon the signing of this lease by Tenant, the sum of **$820.00 (incl Pet Deposit - only where applicable)**. The security deposit has been deposited in **M&T Bank**. The Address of the bank is Lease Security Operations, P.O. Box 4821, Buffalo, NY 14240-4821. The Tenant acknowledges notice of the deposit in the said bank. If a bank is not named, the Landlord will notify the Tenant of the bank's name and address in which the security is deposited. The security deposit, referred to in this paragraph is deemed additional rent.

The security deposit is security for the performance by the Tenant of all terms and conditions of this lease, as well as security for the return by the Tenant to the Landlord of the apartment and the personal property therein. Also, in respect to said security deposit, both the Landlord and the Tenant hereby agree to the following: (a) the security deposit shall not be considered applied, or used as rental payment for the final month of the term of this lease by the Tenant; (b) the Landlord shall return the Tenant's security deposit after the Tenant has vacated the premises, provided that the Tenant surrendered the apartment in good order and condition, ordinary wear accepted, and provided the Tenant has fully and faithfully carried out all terms, conditions and covenants of this lease; (c) If the Tenant shall default or fail to perform any term of this lease, the security deposit will be immediately forfeited to the Landlord, as liquidated damages. It is the intent of this security deposit to secure the Tenant's performance of the Tenant's promise under this lease. However, under no circumstances shall the Landlord be deprived of any other remedy as the law may furnish or is agreed upon in this lease, regardless of retention by the Landlord of the said security deposit.

After the termination of this lease, and the Tenant vacates the apartment, the Tenant shall be entitled to a refund of the said security deposit from the Landlord, less any deductions permitted herein. Security deposit will not be returned until all utility charges have been finalized and paid in full.

If the rent for any extended term hereof shall be increased, the Landlord shall have the right to require the Tenant to deposit additional sums with the Landlord to be held by the Landlord pursuant to the terms of this paragraph, which sums shall be deposited by Tenant with Landlord on demand and considered additional rent.

7. **USE AND OCCUPANCY** The Premises must be used only as a private dwelling to live in and for no other reason. Only a Tenant signing this lease and any children of that Tenant may use the unit (or such persons as permitted by law).

The Tenant agrees to occupy the Premises in a safe, careful, and proper manner without waste of water, gas or electricity. The Premises shall not be used or permitted to be used for any unlawful purpose nor shall the premises, or any part thereof, be used for any purpose that the Landlord may judge will injure the reputation if the Premises or building, or disturb or annoy any other tenants of the building or neighboring premises.

The Tenant will not keep or have any type of pets in the premises except upon written consent of the Landlord. No additional locks or fastening shall be placed upon any door by the Tenant without prior written consent of the Landlord.

The Tenant will not permit or allow any persons any persons occupying the Premises or guests of the Tenant to cause any noise, loud music, disorderly conduct, or any other conduct which is annoying or disturbing to Landlord or other neighboring tenants or occupants of nearby residences.

8. **CARE OF PREMISES** The Tenant, at Tenant's cost, shall keep the Premises in a clean and healthy condition, and take care of all equipment and fixtures in it. Tenant will surrender possession of the Premises and all appliances and equipment furnished by Landlord in the same condition of cleanliness, repair and sightliness as at the time of Tenant's entry. If this is not done, the Landlord may enter the Premises during the term hereof, repair or restore the Premises, appliances, or equipment to the same condition as at the time of the entry upon the Premises by the Tenant, and the Tenant agrees to pay the Landlord, upon demand, as additional rent, costs to the Landlord of repairing or restoring the Premises.

9. **FAILURE TO GIVE POSSESSION** Landlord shall not be liable for failure to give possession of the Premises on the beginning of the date of this lease. The Tenant will pay rent at the beginning of the term of this lease, unless the Landlord is unable to get possession. Rent shall then be payable as of the date possession is available. Landlord shall not be liable for any damages suffered by Tenant if the Premises is not available on the date of this lease, nor shall Tenant have the right to terminate this lease.

10. **DAMAGE BY FIRE OR OTHER CASUALTY** The Tenant must give Landlord prompt notice of fire, accident, damage or dangerous or defective conditions. If the fire or other casualty is caused by act of neglect of the Tenant, or guest of Tenant, all repairs will be made at Tenant's expense and Tenant must pay the full rent with no adjustment. The cost of the repairs will be additional rent.

If the Premises shall be damaged or destroyed by fire or by any other cause or casualty, not due to the fault or neglect of the Tenant, and the said damages can be reasonably repaired within sixty(60) days from the time of the happening, the Tenant shall not be entitled to surrender possession of the Premises, nor shall the Tenant's obligation to pay rent under this lease terminate. Landlord shall cause the same to be repaired with reasonable speed and shall complete the same within sixty(60) days from the happening of such damage, provided that such repairs are not delayed by reason of strikes, labor difficulties, or disputes, shortages of material, settlement of insurance proceeds or any cause beyond the reasonable control of the Landlord, the time for completion of such repairs shall not be extended for a period equal to the duration of such delays. If tenant shall be deprived of the occupancy of all or any portion of the Premises by reason of such damage, or to make such repairs, Tenant shall not be entitled to an abatement of rent.

In the event that such damage cannot be reasonably repaired by the Landlord within the sixty(60) day period, then and in such event, the Landlord and Tenant shall have the right to terminate this lease effective as to the date of such damage by giving written notice to the other party by certified mail within thirty(30) days after the occurrence of said damage.

If the building in which the Premises is situated shall be damaged by fire or by any other cause or casualty and such damage cannot be reasonably repaired within ninety(90) days from the happening of the said event, the Landlord shall have the right to terminate this lease effective as of the date of the event of such damage, by giving written notice, by certified mail, to the Tenant, within sixty(60) days after the occurrence of said damage.

CHIARI000054

11. **AUTOMOBILES** Tenant shall cause all automobiles owned or operated by Tenant or Tenant's guests, to be parked only in accordance with such rules as may from time to time be established by the Landlord, and only in such spaces as Landlord may from time to time designate. No such automobiles shall at any time be parked at entrances, service entrances, or crosswalks for the building in which the Premises is situated. Landlord shall have the right to remove any automobile owned or operated by Tenant or any occupant of the Premises, or the guest of Tenant, which is abandoned, unsightly, inoperable, or which does not have displayed thereon license plates which are then valid. The word automobile in the paragraph relates to any type of motor vehicle or motorcycle. The parking of any commercial or recreational vehicle shall be at the discretion of the Landlord. Tenant may not park on lawns. Any violation by Tenant or Tenant's guest after one prior notification shall be deemed a material breach of this lease and the Landlord may elect to terminate this lease in accordance herewith.

12. **USE OF PUBLIC HALLS AND ELEVATORS (If Applicable)** The Tenant, and guests of the Tenant, or any occupants of the Premises shall not obstruct the entrances, passages, halls, corridors, stairways, elevators, exits, and fire escapes, nor use them for any purpose other than for ingress or egress to or from the building it is situated in. Nor shall the Tenant cause any furniture or bulky articles to be moved in the hallways, stairways, or elevators of said building, except under such regulations and in such manner prescribed by the Landlord. Tenant shall not erect an antenna or any other such structures outside of the Premises or building or use the roof for any purpose, without obtaining the written consent of the Landlord.

13. **LIABILITY** Landlord is not liable for loss, expense or damages to any person or property unless due to Landlord's gross negligence. Landlord is not liable to Tenant for permitting or refusing entry of anyone into the Premises.
Tenant must pay for damages suffered and money spent by the Landlord relating to any claim arising from any act of neglect of Tenant. If action is brought against Landlord arising from Tenant's act or neglect, Tenant shall defend Landlord at Tenant's expense with an attorney of Landlord's choice.
Tenant is responsible for all acts of Tenant's family, employees, or guests or invitees.

14. **ENTRY BY LANDLORD** Landlord may enter the Premises at reasonable hours to repair, inspect, exterminate, or perform other work Landlord decides is necessary. At reasonable hours, the Landlord may show the Premises to possible new tenants during the last three months of the term.
If Landlord enters the Premises, Landlord will try not to disturb Tenant. Landlord may keep all equipment necessary to make repairs or alterations to the Premises or building in the Premises of Tenant. Landlord's use of the Premises does not give Tenant a claim of eviction. Landlord may enter the Premises to get to any part of the building.
Tenant's refusal to permit Landlord's reasonable entry upon the Premises shall be deemed a material breach of this lease for which Landlord may elect to terminate this lease in accordance herewith.
In the event Landlord elects not to terminate this lease for Tenant's wrongful refusal to allow entry to Landlord, Landlord may seek an order from a court directing it's entry to the Premises be permitted. In such event, Tenant shall pay all Landlord's costs associated with obtaining such order including, but not limited to it's attorney fees as additional rent.

15. **ALTERATIONS** Tenant must obtain prior written consent of the Landlord to install any paneling, flooring, built-in decorations, partitions, railings, or make any alterations or to paint or wallpaper the Premises. Then, the alterations shall be made by Tenant to the Premises and same shall become part of Premises and become property of the Landlord upon ending of this lease. If the Landlord should desire, the Landlord may require the Tenant to remove the alterations, and upon demand, the tenant shall restore the Premises to the condition prior to the making of such alterations, which shall be done at the cost and expense of the Tenant.

16. **TEMPORARY SERVICE INTERRUPTION** Any temporary interruption of, or default on the part of the Landlord in providing any utilities required to be provided by the Landlord or any other services required to be provided by the Landlord, caused by repairs, renewals, improvements, alterations, strikes, labor difficulties, or disputes, accidents, the inability of Landlord to procure such services or to obtain sufficient quantities of fuel or supplies or other causes beyond the control of the Landlord, shall never be deemed an eviction or disturbance of the Tenant's use or possession of the Premises or any part thereof, nor shall be deemed a breach of Landlord's covenant of quiet possession. Any such temporary interruption shall not entitle Tenant to claim any damage or rebate, reduction, or abatement of rent on account of such temporary interruption or default, but Landlord shall use reasonable efforts to attempt to remove the cause of such interruption.

17. **SUBORDINATION** This lease and tenant's rights are subordinate to all present and future (a) leases for the building or the land on which it stands; (b) Mortgage, mortgages, on the leases or the buildings or land; (c) agreements securing money paid or to be paid by a lender, and deemed terms, conditions, renewals, changes of any kind in extensions of the mortgages, lease, or lender's agreements. Tenant must promptly execute any certificate or certificates that Landlord requests to show this lease is so subject and subordinate. Tenant authorizes Landlord to sign the certificate or certificates for Tenant. Landlord may request an agreement for changes in this lease. Tenant must sign this agreement if it does not change the rent, the terms, or alter the Premises.

18. **CERTIFICATE OF TENANT** Upon request by the Landlord, Tenant shall sign a certificate stating the following: (a) This lease is in full force and unchanged or if it is changed, how it is changed; (b) Landlord has fully performed all the terms of this lease and Tenant has no claim against Landlord; and (c) Tenant is fully performing all the terms of the lease and will continue to do so; and (d) Rent and added rent have been paid to date. This certificate will be addressed to the party Landlord chooses.

19. **RENTAL APPLICATION** Prior to signing of this lease, Tenant submitted to Landlord a rental application containing certain information and statements requested by Landlord, which information and statements made by Tenant are hereby incorporated by reference as though fully written herein. Tenant represents and warrants that the information and statements made and furnished by Tenant in said rental application are true and complete and Tenant acknowledges that Landlord has relied thereon in entering into this lease. If Landlord shall at any time discover that any information or statement made by Tenant in said application is determined to be false, Landlord shall have the right to terminate this lease by giving less than three (3) days prior written notice thereof to Tenant.

20. **MATERIAL BREACH OF LEASE - TENANT'S DEFAULT**
   A. The following are considered material breaches of the lease by the Tenant:
      (1) A failure to pay rent and added rent on time.
      (2) Failure to move into the Premises within fifteen(15) days after the beginning of the term.
      (3) Issuance of a court order under which the Premises may be taken by another party.
      (4) Improper conduct by Tenant, annoying other Tenants.
      (5) Tenant's annoyance, harassment or abuse to Landlord's employees and/or agents.
      (6) Failure to comply with any of the terms or rules in this lease or, if applicable, Association/Condominium Rules & Regulations. The tenant shall be responsible for any fines imposed by an Association or Condominium Board for failure to comply with set rules and regulations.
      (7) Any illegal activity conducted on or about the demised premises by Tenant or any person that is Tenant's guest or invitee, whether or not Tenant has knowledge of or has consented to the illegal act.
      (8) Any illegal act or violation of a government code by Tenant.
   If Tenant materially breaches the said lease, Landlord may cancel this lease by giving Tenant a cancellation notice and a termination date. Said termination date will be three (3) days after the notice is served pursuant to the terms of this lease. The cancellation and termination notice will advise Tenant to vacate the subject premises on the termination date. Tenant must leave the premises and give the Landlord the keys on the said termination date. However, if Tenant continues to reside in the Premises, Tenant will be considered a hold-over tenant. As to failure to pay rent or added rent on time, a three(3) day notice will be given pursuant to Section 711(2) of the Real Property Actions and Proceedings Law of the State of New York.
   B. If the lease is canceled, or rent or added rent is not paid on time; or Tenant vacates the Premises, Landlord may, in addition to other remedies, take the following steps:
      (a) Enter the premises and remove Tenant and any personal property, and
      (b) Use eviction or other lawsuit methods to take back the Premises.
   C. If this lease is canceled, or a warrant of eviction is issued, the following take place:
      (1) Rent and added rent for the unexpired term become due and payable. The Tenant understands that this means the total amount of rent due for the remainder of the term of this lease shall immediately become due at this time.
      (2) Landlord may re-rent the Premises and anything in it. The re-renting may be for any term. Landlord may charge any rent or no rent and give an allowance to the new Tenant. Landlord may, at Tenant's expense, do any work Landlord feels needed to put Premises in good repair and prepared for renting. Tenant stays liable and is not released in any manner.
      (3) Any rent received by Landlord for the re-renting shall be used first to pay Landlord's expenses, second to pay any amounts Tenant owes under this lease. Landlord's expenses include the cost of getting possession and re-renting the Premises, including but not only, reasonable legal fees, broker's fees, or cleaning and repairing costs, and decorating and advertising costs.
      (4) From time to time the Landlord may bring actions for damages. The delay or failure to bring an action shall not be a waiver of Landlord's rights.
      (5) If Landlord takes possession of the Premises by court order, or under the lease, the Tenant has no right to

CHIARI000055

return to the Premises.

(5) Landlord shall be under no obligation to re-rent the Premises.

21. **ATTORNEY'S FEES AND COLLECTION AGENCY FEES OF LANDLORD** The Tenant agrees to pay any and all reasonable legal fees incurred by the Landlord due to any breach or default of the terms of this lease. Tenant also agrees to pay for any costs and disbursements concerning any legal action, lawsuit or collection agency fees. These legal fees, collection agency fees, and/or attorney fees, costs and disbursements are deemed additional rent and due on demand.

22. **BANKRUPTCY OR INSOLVENCY** If Tenant assigns for the benefit of creditors, or if Tenant files a voluntary petition or an involuntary petition is filed against Tenant under the bankruptcy or insolvency law, or if a trustee or receiver of the Tenant or Tenant's property is appointed, Landlord may at the option of the Landlord give Tenant thirty(30) days notice of cancellation of the term of this lease. If any of the above is not fully dismissed, within thirty(30) days, the term shall end as of the date stated in the notice. Tenant must continue to pay rent, damages, losses, and expenses without offset.

23. **WAIVER OF RIGHT TO JURY TRIAL AND TO INTERPOSE COUNTERCLAIM** Landlord and Tenant agree not to use their right to trial by jury in any action or proceeding brought by either against the other, for any matter concerning this lease or the Premises. Thus, in a court proceeding to get possession of the Premises, the Tenant shall not have the right to make a counterclaim or Set-Off.

24. **NO WAIVER BY LANDLORD** Landlord's failure to enforce, or insist that Tenant comply with the terms of this lease is not a waiver of the Landlord's rights. Acceptance of rent by Landlord is not a waiver of Landlord's rights. The rights and remedies of Landlord are separate in addition to each other. Choice of one does not prevent Landlord from using another.

25. **ILLEGALITY** If a term in this lease is illegal, the term will no longer apply. The rest of the lease remains in force.

26. **CONDEMNATION** If all the Premises or building is taken, or condemned by legal authority, the term and Tenant's rights shall end as of the date authority takes title to the premises or building. If any part of the premises or building is taken, Landlord may cancel this lease on notice to Tenant. The notice shall set a cancellation date not less than thirty(30) days from the date of notice. If the lease is canceled, the Tenant must deliver the premises to Landlord on cancellation date together with all rent due to that date. The entire award for any taking belongs to the Landlord. Tenant gives Landlord any interest Tenant may have to any part of award. Tenant shall make no claim for the value of the remaining part of the term of this lease.

27. **TENANT'S DUTY TO OBEY LAWS AND REGULATIONS** Tenant must, at Tenant's expense, promptly comply with all laws, orders, rules, requests, directions, of all government authorities, Landlord's insurers, Board of Fire Underwriters, or similar groups. Notice received by Tenant from any authority or group must be promptly delivered to Landlord. Tenant may not do anything which may increase Landlord's insurance premiums. If Tenant does, Tenant must pay the increase in premium as added rent.

28. **SUB-LEASE AND ASSIGNMENT** Tenant will not assign this lease or sublet all or part of the premises or permit any other person to use the premises. If Tenant does, Landlord has the right to cancel the lease as stated in the default section. Tenant must get Landlord's written permission if Tenant wants to assign or sublet this lease. Tenant remains bound to the terms of this lease after a permitted assignment or sublet even if Landlord accepts rent from the assignee or subtenant. Tenant is responsible for any acts for any assignee or subtenant.

29. **TENANT GIVE LIEN TO LANDLORD** The Tenant hereby grants a lien on all personal property of the Tenant in or upon the premises to the Landlord, to secure payment of rent and performance of the covenants and conditions of this lease. The Landlord shall have the right, upon default in payment of rent or failure of the Tenant to comply with any terms of this lease, as agent of the Tenant, to take possession of any furniture, fixtures, or other personal property of the Tenant found and deemed abandoned in or about the premises, and sell the same at public or private sale and apply the proceeds thereof to the payment of any rent or additional rent of money becoming due under this lease. The Tenant hereby waives benefit of all laws exempting property from execution, levy, and sale on this stress or judgment.

30. **END OF TERM AND HOLDING OVER** Upon the ending of the term of this lease, Tenant shall immediately deliver possession of the premises to the Landlord. In the event that the Tenant shall continue possession, Tenant shall at the option of the Landlord become a month to month tenant. The rent for month to month tenancy shall be equal to double the regular monthly rent. The monthly installments of rent to be paid as aforesaid, commencing with the first day after the end of the term of this lease. The Tenant shall be subject to all conditions and terms of the said lease except as to the rental amount as though the same had originally been a monthly tenancy.

31. **MODIFICATION** Any modification, addition or other alteration of this lease must be in writing signed by the Landlord and Tenant.

32. **BILLS AND NOTICES** Except as otherwise stated in this lease, a bill, statement, note or communication which the Landlord may desire or be required to give the Tenant, including a notice of expiration or default shall be deemed sufficiently given or rendered if it is writing, delivered to the Tenant personally, sent by certified mail addressed to the Tenant at the building at which the premises is a part, left at said premises addressed to Tenant, or by regular mail addressed to the Tenant at the building at which the premises is a part. At the time of the sending of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same was delivered to the Tenant, mailed or left at the premises as herein provided. Any notice by the Tenant to the Landlord must be served by certified mail, addressed to the Landlord, at the address where the last previous rental was paid.

33. **QUIET ENJOYMENT AND HABITABILITY** Subject to the terms of this lease, as long as Tenant is not in default, Tenant may peacefully and quietly have, hold, and enjoy the premises for said term. Landlord states that the premises and building are fit for human living.

34. **LEASE BINDING ON** This lease is binding on Landlord and Tenant and their heirs, distributees, executors, administrators, or successors, and lawful assigns.

35. **PARAGRAPH HEADINGS** The paragraph headings are for convenience only.

36. **ABANDONED PROPERTY OF TENANT** If at the end of the term of this lease, or if Tenant no longer resides at the premises before the end of the term of this lease, any abandoned property of the Tenant, the Landlord at his option, may dispose of that abandoned property that the Landlord deems to be valueless, or store abandoned property for a reasonable period and then dispose of said property at the option of the Landlord. Tenant will reimburse Landlord for any expenses incurred in the storage of said abandoned property, included but not limited to storage space, advertising or other expense. The reasonable period of storage shall be solely within the discretion of the Landlord.

37. **CLAIM FOR DAMAGES** All personal property belonging to the Tenant or to any other person and located in the premises or about the building in which the premises are situated shall be at the sole risk of the Tenant or such other person neither Landlord nor Landlord's agents or employees shall be liable for the theft or misappropriation thereof, nor for any damage or injury to Tenant or to any other persons or property caused by, but not limited to water, snow, frost, steam, heat or cold, dampness, falling plaster, sewers or sewage, gas odors, noise, the bursting or leaking of pipes, plumbing, electrical wiring and equipment and fixtures of all kinds or any act, neglect or omission of other tenants or occupants of the building in which the premises are situated or of any other person or caused in any other manner whatsoever. Tenant shall indemnify and save Landlord and the premises free and harmless from any and all liens, judgments, fines, penalties, costs, expenses, damage or liability occasioned by any act or neglect of Tenant, or any other occupant of the premises, their agents, employees, subtenants or assignees or by reason of the failure on the part of any such person to perform any act or thing which should have been done or performed or arising out of any act causing injury or death to any person whatsoever or damage to property whatsoever and due directly or indirectly to the use of the premises by Tenant, and other occupant of the premises, their agents, employees, subtenants or assignees or any other person or persons claiming under the Tenant. Notwithstanding anything to the contrary in the foregoing provisions of this paragraph, nothing herein contained shall be deemed an exculpation or limitation of any liability of the Landlord imposed by law in respect of the premises or an indemnity against any such liability or its related costs.

38. **NOTICE TO VACATE** If Tenant intends to vacate the premises at the expiration of the lease term, Tenant must provide Landlord with at least sixty(60) days written notice of such intention prior to the expiration of the lease term. Upon failure of Tenant to provide notice in accordance hereto, Landlord, at its option, may deem Tenant a month to month tenant from the date such notice is due, subject to all terms and conditions of this lease except as to the duration thereof, and shall pay monthly rent in advance in such amount as shall be determined by the Landlord, and shall continue on a month to month basis until the expiration of thirty (30) days from such notice of intent.

39. **RULES AND REGULATIONS**
The following rules and regulations shall be applicable to and binding upon all Tenants of the premises or of the building in which the premises described in this lease is situated. The guests, employees, and agents of the Tenant and all other occupants of said premises and each of their guests, employees, and agents, are bound by these rules and regulations.

CHIARI000056

| | |
|---|---|
| NAME PLATES | 1. No signs or name plates of any nature whatsoever may be placed in any entry, passageway, vestibule, hall or stairway of said building except with prior consent of Landlord. |
| CLEANING, RUBBISH | 2. No rugs shall be beaten on the porches, nor dust or litter swept from the premises or any room thereof into any of the halls or entryways of said building, nor shall any such dust, rubbish or litter or anything else be thrown or emptied from any of the windows or balconies of said building. |
| OBSTRUCTING HALLS AND PASSAGEWAYS | 3. The sidewalks, entries, passages, vestibules, halls and stairways of said building shall not be obstructed or used for any purpose other than for ingress and egress to and from the suites or the premises. |
| LAVATORIES | 4. The water closets and other apparatus in the building shall not be used for any purpose other than that for which they were constructed, no sweepings, rubbish, rags, paper, ashes, or other substances shall be thrown therein and any expense incurred by Landlord to repair any damage resulting from the misuse thereof shall be paid by the Tenant causing such damage. |
| PERSONAL PROPERTY | 5. No Bicycles, baby carriages or other personal property shall be kept in any entry, passageway, vestibule, hall or stairway of the building or the balconies or left outside the premises. |
| GROCERIES, FURNITURE AND OTHER BULKY MATERIALS | 6. All groceries, milk, ice, furniture, baby carriages, large boxes, and any other bulky materials shall be taken into and removed from the premises only through the main entrance of the building and in the event any damages shall occur to the building as a result of the moving or carrying of such articles therein, the cost to repair the same shall be paid by the Tenant to or from whose suite said articles were moved or under whose control or direction said articles were moved. |
| THROWING OR HANGING ARTICLES | 7. No Tenant or other occupant of the building or their guests, employees, or agents shall throw anything out out of windows or doors or down the passageways, vestibules, hallways, or stairways or from the balconies of the building, nor hang anything from the outside of the windows or balconies or place anything on the outside window sills or balconies. |
| DRAPERIES AND OTHER WINDOW COVERINGS | 8. All draperies must hang from drapery or curtain rods. No drapery or curtain may be installed in any suite which is visible from the exterior of the building unless it is a color or design which in the Landlord's opinion is in harmony with the general appearance of the exterior of the building. All window treatments must be white lined or have a white backing. |
| COOKING AND BAKING | 9. No cooking or baking shall be done except in the kitchen and in appropriate appliances therefor or in such areas as may be designated by Landlord. |
| OBSTRUCTION OF SINKS AND TOILETS | 10. Tenant shall not pour or dispose of grease or other like substances into the sink or toilets in the premises. |
| TAMPERING WITH APPARATUS | 11. No Tenant shall in any manner tamper with or interfere with any portion of heating, lighting, or plumbing apparatus in the premises or in or about the building. |
| NOISE, MUSIC, LAUNDRY | 12. No noise, music or disorderly conduct, or conduct annoying or disturbing to the occupants of the building, shall be permitted in any part thereof. |
| | 13. Laundry shall be done only in those rooms provided by Landlord for such purpose in the building. Washing machines or dryers are prohibited in the suites. Washers and dryers shall be permitted in the basements of single family, duplex, townhouse, and selected condominium units equipped with washer/dryer connections. |
| MOVING EQUIPMENT | 14. No appliances or equipment shall be moved from any part of the building. All appliances and equipment must remain in their original location unless done with the written consent of Landlord. |
| ANIMALS | 15. Dogs, cats, parrots or other birds, reptiles or animals are not permitted in any suite or in or about the building or premises without written consent of Landlord. |
| LOITERING AND PLAYING IN HALLS | 16. No loitering or playing on the stairways, balconies or in the halls, lobby, vestibule or front court or driveway shall be permitted. |
| AWNINGS, SIGNS ADVERTISEMENTS | 17. No awning or projection, and no sign, advertisement, notice or devise of any kind shall be placed or permitted to remain upon any part of the building, outside or inside, nor shall any article be suspended outside the building, or placed in the window sills thereof. |
| BALCONIES | 18. The balconies for the suites shall not be used for storage and no stove, charcoal grill or other cooking devises shall be used thereon. |
| OBSTRUCTION OF WINDOWS, ETC. | 19. Doors, skylights, or windows reflecting or admitting light into passageways, or elsewhere in t shall not be covered or obstructed by the Tenant. |
| PRIVATE WORK OF EMPLOYEES | 20. Tenant shall not request employees of the Landlord to do work of a private nature during the working hours of said employees. |
| DEFECTS IN PIPES, WIRES, ETC. | 21. If Tenant shall discover any defects in gas, water or steam pipes, electric wires, or any other defects or hazardous conditions in or about the building, Tenant shall immediately notify Landlord thereof. |
| AUTOMOBILES | 22. Washing or repairing of autos shall not be done in the building, garages, or in any parking areas or driveways of the building. |
| WATERBEDS | 23. Waterbeds shall not be installed or used in any suite without proof of adequate insurance coverage. |
| WALLCOVERINGS AND PAINTING | 24. Wallpaper, contact paper or other adhesive wall coverings shall not be installed on the walls, ceiling, or or woodwork in any suite in the building, nor shall any walls, ceiling or woodwork be painted, without Landlord's prior written consent. |
| PARKING | 25. Any vehicle parked in violation of paragraph 11 of this lease shall be removed from the property at owner's expense. |
| STORAGE AREAS | 26. Tenant shall indemnify and save Landlord, Landlord's agents and premises free and harmless for any and all personal property removed, damaged, or misappropriated from their locker(s) or any storage area about the building or premises. |
| LESSOR'S RIGHT TO MAKE FURTHER RULES | 27. The Landlord reserves the right to amend and modify these Rules and Regulations and to make such other and further rules and regulations as in Landlord's judgment may from time to time be necessary or appropriate for the safety, care and cleanliness of the premises, and for the preservation of good order herein. |
| TRASH RECYCLING | 28. The Tenant has been advised that mandatory recycling laws are in effect, and that the Landlord will comply with any and all applicable Federal, State or Local laws. The Landlord will use all due diligence to comply with this law and any other applicable recycling laws and establish guidelines and procedures for the Tenant to also comply with the said recycling law. The Tenant acknowledges that it will be a material breach of the said lease if the Tenant fails to comply with the said recycling laws and the procedures and guidelines set by the Landlord to fully comply with the said laws. Tenant acknowledges that upon the execution of this lease, the Landlord has provided the Tenant with the said procedures and guidelines to fully comply with the law. |
| VIOLATION OF RULES | 29. The Tenant agrees that any violation of any said Rules and Regulations by the Tenant, a member of the Tenant's family or visitors or guests, shall be deemed a substantial violation by the Tenant of this lease. If the said violation occurs, the Landlord may, if it so elects, give the Tenant three(3) days notice of termination of this lease, subject to the provisions of paragraph 20 of this lease, being Tenant's default. |
| SIGNATURES AND EFFECTIVE DATE | 30. Landlord and Tenant have signed this lease as of the above date. This lease is effective when Landlord delivers to Tenant a copy signed by both Landlord and Tenant. |
| DEATH CLAUSE | 31. In the event of the death of Tenant, the heirs, executors, administrators, and assigns, shall have the option to terminate this lease upon giving at least ninety(90) days calendar notice in writing to the Landlord of the intention to do so. All rents must be brought current in order to activate this clause. No executor, heir, administrator or assigns shall be permitted entry to the premises without first obtaining lawful authority. |
| LOCK CHANGES | 32. Tenant shall not add any additional locks to doors and shall not change existing locks. Tenant is responsible for any and all damages due to forced entry by Landlord or it's agents caused by Tenant's unauthorized change of existing locks. These damages are deemed additional rent. |
| EXTERMINATING | 33. It is the policy of Landlord, as part of its preventative maintenance program, to have each building and each premises exterminated (sprayed to prevent bug infestation) as needed and at the Landlord's discretion. Landlord will provide sufficient notice of at least seventy-two (72) hours of the date the extermination will take place. Tenant shall, upon such notice and prior to the date of extermination, remove all items from kitchen cupboards and bathroom vanities, including food items, dishes, pots and pans, utensils and any and all items stored in such places. Should Lessee fail to remove such items, Landlord shall enter and remove such items and place them on tables and other such places and will proceed with the extermination. |

CHIARI000057

Landlord shall not be responsible for returning such items to the cupboards and vanities but it shall be the responsibility of the Tenant to do so. Tenant shall pay the sum of $75.00 to the Landlord for Tenant's failure to comply with said notice; the sum is deemed additional rent.

**RETURN CHECK** — 34. A charge of $25.00 shall be incurred by lessee should a check be returned for any and all reasons. Said returned check charge is deemed additional rent. In the event Tenant tenders Landlord a check which is returned, Landlord shall have the option to require Tenant's rent payments be paid by money order or certified check.

**DRUG-RELATED CRIMINAL ACTIVITY** — 35. Tenant shall not, in the Premises, hallways, elevators, parking garages, parking lots, maintenance areas, laundry rooms, lobbies, and all other common and/or public areas of the building (the foregoing are collectively referred to herein as the Premises), engage in or permit any drug-related criminal activity, or engage in or permit any activity that endangers the health or safety of other residents in Landlord's sole discretion, or engage in or permit any activity that is, in Landlord's sole discretion, otherwise injurious to the community or its reputation.

Instances of such conduct shall include, but not be limited to, Tenant's permitting an co-resident, occupant, member of Tenant's household or family, guest, invitee, or other persons Tenant permits to occupy or use the Premises to use, manufacture, purchase, sell or otherwise distribute illegal drugs or illegal drug-related paraphernalia in or about the Premises.

The restrictions contained hereunder are material obligations under the Lease. For purposes of this section, Landlord's receipt of complaints from other residents or building employees shall be evidence that Tenant has violated the foregoing restrictions.

**SMOKE DETECTORS** — 36. Under no circumstances shall the Tenants remove batteries from the smoke detector units within the premises.

**LIQUID PROPANE** — 37. Under no circumstances will Tenant bring liquid propane to the interior of any of the buildings.

**SMOKING** — 38. Smoking is prohibited in all common areas, hallways, stairways, basements and laundry rooms.

**SHOW PREMISES PRIOR TO EXPIRATION** — 39. It is mutually agreed and understood that the Landlord has the right to show for sale or rent, sixty (60) days prior to lease expiration.

**UTILITIES** — 40. Tenant specifically acknowledges and understands that all utilities for which Tenant is responsible under this lease will be terminated by the Landlord on the date of move-in and Tenant will contact each utility company to arrange for service in Tenant's name.

**MOVE-IN INSPECTION** — 41. As soon as possible after Tenant has moved into leased premises, Tenant shall return the inspection sheet. Failure to return this inspection sheet within ten(10) days after move-in, all items in the lease premises will be deemed to be in good condition.

**RENTERS INSURANCE** — 42. Tenant acknowledges and agrees that it is the responsibility of the Tenant to obtain a renter's insurance policy to insure all personal belongings located at the rented premises and adjacent areas and that the Landlord is in no way responsible for Tenant's personal affects or those of Tenant's guest, on any portion of the property.

**MOVE-OUT POLICY** — 43. As soon as Tenant knows a definite move-out date, Tenant must contact the Landlord to arrange an appointment for a move-out inspection. This inspection must be conducted when the premises is vacant. If, at the time of the scheduled appointment, Landlord finds the unit not completely vacant, a charge of $35.00 will be assessed to cover time and expense.

**SATTELLITE DISHES** — 44. Satellite dishes are not allowed.

2/28/05
Date

*[signature]* William J. Wagner Jr.

3/3/05
Date

M. J. Peterson Corp. as Agent for M. J. Peterson, LLC
*[signature]*
Nina Rosato RAM, AHM
Corporate Property Manager

CHIARI000058

## LEASE ADDENDUM
### Agreement to Purchase Cable Value from Adelphia Cable Communications at Bulk Service Rate

**OPTION 1:** Execution of this Option hereby modifies your Lease Agreement dated Monday, February 28, 2005, between you as "tenant" and M. J. Peterson, LLC as "landlord". More particularly, this addendum is intended to modify paragraph five (5) of your Lease Agreement entitled "UTILITIES" and any other part thereof, which refers to Cable service. This Addendum is hereby made a part of said Lease agreement and shall supersede any contrary provisions thereof.

Tenant(s) jointly and severally agree(s) to pay landlord M. J. Peterson, LLC the sum of per month throughout the entire term of the Lease Agreement as reimbursement for bulk Cable Value service at the demised premises known as 882 #4 Englewood Ave. Tenant may not cancel this service and shall be obligated hereunder for the entire lease term.

Landlord shall have the right, upon 30 days written notice to Tenant, to increase the monthly subscription rate by a sum not to exceed five percent (5%) of the existing rate in any single rate increase. Nothing contained herein shall anyway limit Landlord in the number of rate increases it may elect to impose in any given lease term.

Payment of the above service must be made on or before the **first day of each month** at the office of the Landlord. This service charge must be paid in full in conjunction with your regular monthly rent and shall be deemed additional rent under your lease.

Failure to make payment of the total amount due within ten (10) days of the due date will result in the disconnecting of service by Adelphia Cable Communications. Should cable service be disconnected due to failure to pay as agreed, service may be reinstalled at Tenant's request for an additional fee of $35.00 provided, however, that all outstanding payments due the landlord have been paid in full. Reinstallation will occur during normal business hours and within a schedule as shall be determined by Adelphia Cable Communications.

Repeated late payments or nonpayment of the foregoing charges will be cause for termination of the Lease Agreement.
Tenant acknowledges the understanding that Adelphia Cable Communications will charge Tenant a separate and additional amount for any premium stations or special service for which Tenant has chosen to subscribe.

_____William J. Wagner Jr._____     _____Landlord_____

_____Date_____

**OPTION 2:** By signing below, Tenant acknowledges and confirms that the Tenant prefers not to participate in the bulk Cable Value agreement with free installation at this time. Tenant acknowledges that should Tenant later elect to subscribe to the bulk Cable Value service, there will be an initial one-time installation fee of $35.00 along with the monthly service charge.

_[signature: Judith Williams]_     2/28/05
Landlord
_[signature: William J. Wagner Jr.]_    2/28/05
                                         Date

CHIARI000059

## M.J. PETERSON CORP.
## RESIDENT POLICIES AND ADDENDUMS

### PERMISSION TO ENTER

It is not company policy to enter an apartment to conduct maintenance and repairs without the permission of the lease holder. Please check below whichever is applicable and sign where indicated.

**PLEASE CHECK ONE**

__X__ I give permission for maintenance to enter my apartment in my absence.

__X__ I give permission for entry with prior notice. My phone number is __7/6 5630223__. I understand that this option may delay the processing of my service request.

_____ I do not give permission for entry. I understand that this option may delay the processing of my service request.

### PURCHASE CLAUSE

In the event subject Tenant, during the term of his lease, purchase a new or existing home through M.J. Peterson Real Estate Inc., this lease will be considered terminated upon sixty (60) days written notice to the Landlord, effective from the first day of the next rental period, except during the months of October, November and December.

### UTILITY CONTROL

Name: William J. Wagner Jr.
Address: 882-04 Englewood Ave
Move-in-date: 3/1/05

**PLEASE NOTE:** The electric service must be transferred to Tenant name at Lease Start Date.

#### Move-in-Inspection

1. As soon as possible after you have moved into your unit complete and return your move-in inspection sheet. Please give this your immediate attention as it affects your security deposit.

2. If you fail to return this inspection within ten (10) days after move-in, the management will consider all items in the unit to be in good condition.

#### Renters Insurance

The undersigned acknowledge and agree that it is the responsibility of the resident(s) to obtain a renter's insurance policy to insure all personal belongings located at the rented premises and adjacent areas.

I, We,, as residents fully understand that the owner is in no way responsible for my/our personal affects or those of my/our guests, on any portion of the property.

#### Move-Out Policy

When planning to vacate your unit, please be aware of the following requirements:

1. Written notice must be submitted to the management office at least sixty(60) days prior to move-out regardless if it is the end of the lease term or not.

2. In the case of a BROKEN LEASE, the tenant is responsible to pay the rent on the unit until it is rerented, or until lease expiration. The tenant is also responsible to pay turn-over costs.

3. As soon as you know your definite move-out date, contact the management office to arrange an appointment for your move-out inspection. This inspection must be conducted when the unit is vacant. If, at the time of the scheduled appointment, your inspector finds the unit not completely vacant, a charge of $35.00 will be assessed to cover his time and travel expense.

4. Please note that your security deposit is **not** to be used as your last month's rent.

This is to acknowledge that I have read and fully understand the above policies.

Signed: _William J. Wagner Jr._
William J. Wagner Jr.

Dated: _9/28/05_

CHIARI000060

**DISCLOSURE OF INFORMATION ON LEAD BASED PAINT AND LEAD BASED PAINT HAZARDS FOR RENTALS & LEASES**

PROPERTY: 882-04 Englewood Ave     UNIT #:

Lessor represents that the property [X] was or [ ] was not built prior to 1978.
Lessor owns five (5) or more rental units? [X] Yes [ ] No

**Lead Warning Statement**
*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, landlords must disclose the present of known lead-based paint and lead-based paint hazards in the dwelling. Tenants must also receive a Federally approved pamphlet on lead poisoning prevention.*

**Lessor's Disclosure** (initial)
_____ (a) Presence of lead-based paint or lead-based paint hazards (check one below):
   [ ] Known lead-based paint or lead-based paint hazards are present in the housing (explain).

   [X] **Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.**

_____ (b) Records and reports available to the lessor (check one below):
   [ ] Lessor has provided the lessee with all available records and reports pertaining to lead based paint and/or lead-based paint hazards in the housing (list documents below).

   [X] Lessor has no reports or records pertaining to lead-based and/or lead-based paint hazards in the housing.

**Lessee's (Tenant) Acknowledgment (initial):**
_____ (c) Lessee has received copies of all information listed above.
[X] *WW* (d) Lessee has received the pamphlet "*Protect Your Family from Lead in Your Home.*"
Tenant Initial Above

**Agent's Acknowledgment (initial):**
_____ (e) Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852
   (d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

Lessor: _____   Date: 2/28/05

Lessee: *Wally J. Wagner J.* _____   Date: _____
(Tenant Sign Here)

Lessee: _____   Date: _____
(2nd Tenant Sign Here)
                                        (Wagner)

Agent: *Judith A. Williams*   Date: 2/28/05

CHIARI000061