# EXHIBIT K

*WILLIAM J. WAGNER vs.*
*CHIARI & ILECKI, LLP.*

---

*KRISTIAN L. BROWN*
*October 5, 2016*

---



METSCHL
AND ASSOCIATES
COURT REPORTERS • LEGAL VIDEO SERVICES
**Buffalo, NY**: 716 856-1906
**Rochester, NY**: 585 697-0969
**Toll Free**: 800 397-1796

*Min-U-Script® with Word Index*

1 | UNITED STATES DISTRICT COURT

2 | WESTERN DISTRICT OF NEW YORK

3 | _____

4 | WILLIAM J. WAGNER,

5 |      Plaintiff,

6 |

     vs         Docket No. 15-CV-633-JTC

7 |

8 | CHIARI & ILECKI, LLP,

9 |      Defendant.

10 | _____

11 | Examination Before Trial of KRISTIAN L. BROWN, held

12 | pursuant to the Federal Rules of Civil Procedure, in

13 | the law offices of CONNORS LLP, 1000 Liberty Building,

14 | 424 Main Street, Buffalo, New York, on Wednesday,

15 | October 5, 2016 at 2:24 p.m. before Molly Fenske,

16 | Notary Public.

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

```
 1    APPEARANCES:

 2
      LAW OFFICES OF KENNETH HILLER, PLLC
 3    BY:   SETH J. ANDREWS, ESQ.
      6000 North Bailey Avenue, Suite 1A
 4    Amherst, New York  14226
      sandrews@kennethhiller.com
 5    Appearing for the Plaintiff.

 6
      CONNORS LLP
 7    BY:   PAUL A. WOODARD, ESQ.
      1000 Liberty Building
 8    424 Main Street
      Buffalo, New York  14202
 9    paw@connorsllp.com
      Appearing for the Defendant.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                      INDEX TO WITNESS

 2

 3   KRISTIAN L. BROWN                              PAGE

 4

 5   Examination by Mr. Andrews....................5

 6

 7

 8

 9                     INDEX TO EXHIBITS

10

11                       None marked.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                 (Whereupon, the following stipulations
2      were entered into by the respective parties:
3                 It is hereby stipulated by and between
4      counsel for the respective parties that the oath of
5      the referee is waived, that filing and certification
6      of the transcript are waived, and all objections,
7      except as to the form of the question, are reserved
8      until the time of trial.)
9                 THE REPORTER:  Mr. Andrews, you'll supply
10     Mr. Woodard?
11                MR. ANDREWS:  Yes.
12                THE REPORTER:  Read and sign in sixty
13     days?
14                MR. WOODARD:  Yep.
15                KRISTIAN L. BROWN, 92 Peter Street,
16     Buffalo, New York 14207, having been duly called and
17     sworn, was examined and testified as follows:
18                MR. ANDREWS:  Hello, my name is Seth
19     Andrews.  I am the attorney for the plaintiff in this
20     matter, William J. Wagner.  He's filed a lawsuit
21     naming Chiari & Ilecki, the defendant, alleging
22     violations of the Fair Debt Collection Practices Act.
23     We're here today to take your deposition as a fact
24     witness as it pertains to some of the circumstances
25     leading up to the complaint.
```

```
 1                  I'm going to ask you some questions.  Do
 2      your best to respond the best you can.  I need you to
 3      give me verbal responses.  You can't do head nods.  I
 4      know it's something that's -- I do it all the time.
 5                  THE WITNESS:  Force of habit, okay.  Yes.
 6                  MR. ANDREWS:  I'll help you.  We do it to
 7      maintain a clear record.
 8                  If you think you know what I'm going to
 9      say, which probably sometimes happens a lot, wait
10      until I'm done so we don't have an overlapping.  She
11      can't take it down if we're both talking over each
12      other.
13                  If for some reason I'm speaking too fast,
14      which also happens a lot, let me know and I'll try to
15      slow down.
16                  If you don't understand a question, let me
17      know.  I'll rephrase it.
18                  If you need to take a break at any time,
19      that's fine too.  We're probably going to be real
20      quick so I don't anticipate it, but if something came
21      up, no problem.  I would just ask that if I asked you
22      a question, you answer the question prior to your
23      break.  That's pretty much it.
24                  THE WITNESS:  Okay.
25      EXAMINATION BY MR. ANDREWS:
```

1      Q.   Before I get into the some of the questions
2   though, I just want to make sure, there's no reason
3   that you can think of today that you would be unable
4   to provide accurate and truthful testimony?
5      A.   No, no reason.
6      Q.   Not on any kind of medication that would
7   prohibit accurate recall or, you know, allow you to
8   provide accurate testimony?
9      A.   No.
10      Q.   What's your date of birth?
11      A.   ████/86.
12      Q.   Where were you born?
13      A.   Buffalo, New York.
14      Q.   What's the highest level of education you've
15   obtained?
16      A.   High school.
17      Q.   Where did you go to high school?
18      A.   Hutchinson Technical.  Hutch-Tech, sorry, it's
19   a long time ago.
20      Q.   In preparation for your deposition today, did
21   you discuss the case with anyone other than your
22   attorney?
23      A.   Office workers, co-workers.
24      Q.   What co-workers did you discuss it with?  And
25   again, I want -- I'm not talking about anything that

1   Paul or another attorney was present for, just

2   conversations you had outside of your counsel.

3       A.  Oh, then no.

4       Q.  Do you remember if you reviewed any documents

5   in preparing for your deposition testimony today?

6       A.  Other than with Mr. Woodard?

7       Q.  Yeah.

8       A.  No.

9       Q.  Have you ever been arrested before?

10      A.  No.

11      Q.  Ever been convicted of any crimes?

12      A.  No.

13      Q.  Ever sued anyone before?

14      A.  No.

15      Q.  Ever been sued before?

16      A.  No.

17      Q.  Ever testified in court as a party?

18      A.  I'm sorry?

19      Q.  Ever testified in court as a party?

20      A.  No.

21      Q.  Ever testified in court as a witness?

22      A.  No.

23      Q.  Have you ever provided deposition testimony

24   prior to today?

25      A.  No.

 1      Q.   How long have you worked for Chiari & Ilecki?

 2      A.   Since April of 2008, so three-and-a-half years

 3   (sic).

 4      Q.   And what's your position?

 5      A.   Legal secretary, legal assistant.

 6      Q.   Is that what you were when you first started?

 7      A.   Yes.

 8      Q.   And just briefly, what's that entail?  What are

 9   your general responsibilities or duties?

10      A.   Handling incoming phone calls, paperwork that

11   comes back and forth from the courts, judges,

12   paralegal work, any type of work that the attorneys

13   actually assign to us as well, processing mail.

14      Q.   Do you aid attorneys in drafting any

15   correspondence?

16      A.   Not necessarily.  Usually everything is

17   reviewed by the attorneys, and if there are forms that

18   we do assist with, they're already prepared by the

19   attorneys and they're reviewed before they go out.

20      Q.   Do you know if you assisted in any preparation

21   of any documents on the William J. Wagner, Junior

22   file?

23      A.   The only thing that I did in that particular

24   file was just one phone call.

25      Q.   When you started with Chiari & Ilecki, do you

1    recall if you were trained in fair debt collection or

2    practices compliance?

3       A.  We were trained -- actually, yeah, I was

4    trained by Antoinette and she is -- she was FDCPA

5    certified.  She is the one that trained me on

6    telephone calls and also all of the other work that I

7    did as well.

8       Q.  Who is Antoinette?

9       A.  Antoinette is the office paralegal.  She's

10   actually Bill's paralegal, and then any other training

11   came directly from Mr. Ilecki himself.

12      Q.  Did you take any exams?

13      A.  Yes, we did become FDCPA certified.

14      Q.  When you say FDCPA certified, was that from a

15   third-party or was that internal, meaning did Chiari &

16   Ilecki give you an exam or did a third-party?

17      A.  It was a third-party.

18      Q.  Do you remember when that was when you took

19   your exam?

20      A.  I believe it was -- I would have to confirm the

21   exact date, but I believe it was around August.  It

22   was either July or August of last year.

23      Q.  So when you first started, you don't think you

24   took the exam?

25      A.  When I first started --

```
 1              MR. WOODARD:  Form.
 2   BY MR. ANDREWS:
 3      Q.  You can answer.  When you first started at
 4   Chiari & Ilecki?
 5      A.  I did not take it right away, no.
 6      Q.  To the best of your recollection, it was July
 7   or August of 2015?
 8      A.  Correct.
 9      Q.  Did you pass?
10      A.  Yes.
11      Q.  I figured as much, you're sitting here.
12      A.  I believe I got a 96.5.
13      Q.  Probably better than I would do.
14      A.  We're trained very, very well, very, very
15   thoroughly, especially as far as phone calls go, very,
16   very thoroughly.
17      Q.  Are you aware of any written material that the
18   firm provides to you with respect to FDCPA compliance?
19      A.  We did get -- we did actually get stuff from
20   the third-party that you were able to print out if you
21   did have any further questions, and if we did ever
22   have questions as far as if there was a possibility of
23   something like that, we would always ask.  We would
24   either be asking a paralegal or going directly to the
25   attorney and say, you know, I have a question.
```

1    Q.   As far as you know, there's no training manual

2  or some kind of compliance manual that you're given by

3  Chiari & Ilecki?

4    A.   There is, I believe it was actually handed out

5  with the office handbook.  It was what -- I don't know

6  if you would say -- if I would call it compliance, but

7  it was definitely rules of the office and how to

8  handle it.  I would have to look at it again.

9    Q.   That was your recollection, that you received

10  this?

11    A.   Correct.

12    Q.   Do you know if that manual is updated ever or

13  we'll call it, you know, the correspondence?

14    A.   Almost like an office handbook.

15    Q.   Yeah.

16    A.   I do believe it is updated and I believe

17  Antoinette is the one that actually -- she updates it.

18    Q.   I'm going to have you look at -- you've already

19  got it in front of you, perfect.  So the document that

20  was magically placed in front of you, I think it was

21  left from the last witness, it's Plaintiff's Exhibit

22  A, and have you seen that document prior to today?

23    A.   Yes.

24    Q.   If we look at 165, Chiari 165, and if we look

25  at 3/19/25 (sic) and the third column for the dates,

1   are you following me?

2       A.   I'm sorry, I was like where are you talking

3   about?  Oh, it actually is that one.  164, 166, 165,

4   there we go.  Okay, sorry.

5       Q.   So it's the third column from the right.  It's

6   got dates 3/19/2005 (sic).  The next one says

7   telephone call, and if we look all the way to the left

8   it's got your name, okay?  So I'm just going to read

9   that comment section, which is the column to the far

10  right.  William Wagner CO, I assume that means called

11  in?

12      A.   Called office.

13      Q.   Called off, O for off makes sense (sic).  Dash,

14  says he is not DBTR.  Says his DOB is in ███ 1950.

15  Dash, very upset he keeps getting LTRS from our

16  office.  Dash, ADV and can send a copy of DL and SS,

17  pound, if he'd like.  Dash, he says for us to just let

18  WI know that he is not DBTR.  Dash, ADV we did E-mail

19  ATNY.  Was that accurate?

20      A.   Correct.

21      Q.   Did you ever notify any attorney of that

22  conversation?

23      A.   I did not because the attorney had already been

24  notified that he had contacted.

25               MR. WOODARD:  Form.

1    BY MR. ANDREWS:

2        Q.   So when you say advise we did e-mail attorney,

3    meaning I'm not -- I'm not going to e-mail attorney,

4    you're telling Mr. Wagner we already e-mailed an

5    attorney about your dispute?

6        A.   Correct, we had already notified an attorney

7    that he had called.

8        Q.   Do you know, is there an office procedure or

9    protocol in place for legal assistants to follow when

10   a person who you think is the debtor or is identified

11   as the debtor is disputing that they are in fact the

12   debtor?

13       A.   If a person calls our office and they claim to

14   not be the debtor or the person that we're trying to

15   get in contact with --

16       Q.   The debt from?

17       A.   Correct.  We ask them to provide some type of

18   proof if they can, whether it be a copy of a driver's

19   license that will have their date of birth, and if

20   they're willing to provide something with, you know,

21   even the last four of their social, and then we can

22   confirm, you know, that it is not the file that we

23   have in our office.  We usually say if it's okay, you

24   know, if they feel comfortable doing that, but other

25   than that -- and then if they're not willing to do

1    that, we always notify the attorney.  We always note

2    the file of what they've said.  We always note the

3    file of who's called, and we also notify them that

4    we're going to notify the attorney.

5        Q.  That policy you just testified to that's in

6    place, do you know if that's in writing anywhere?

7        A.  I would have to check, but that is the office

8    policy.  That's always what has been enforced.  If

9    it's, you know, if that is the situation, it is always

10   up to the attorney to handle.

11       Q.  Assuming it's not in writing, how did you come

12   to learn of that policy?

13       A.  We were trained that way.  If that was the case

14   when I was trained on phone calls, if there was a

15   situation that happened like that, we were to note the

16   file, notify the attorney if necessary, and it would

17   be up to the attorney to review the file and go

18   forward and as they see fit.

19       Q.  Were you to notify attorney in every instance

20   of a dispute?

21            MR. WOODARD:  Form.

22            THE WITNESS:  If -- in particular, if they

23   hadn't been notified already, then we could.  If they

24   absolutely insisted, like, we have a lot of times

25   people will call with the same question.  If they

1   absolutely insist we can send multiple messages, but

2   if the attorney has already been notified, we can tell

3   them that the attorney has already been notified.

4   BY MR. ANDREWS:

5     Q.  Not looking at the notes, would you remember

6   the 3/19/2015 telephone conversation with Mr. Wagner?

7     A.  Not necessarily.

8     Q.  As you sit here today, would you remember it?

9     A.  Would I remember it word for word exactly?

10     Q.  Can you remember the conversation?  Do you

11   remember parts of it?

12     A.  I remember vaguely.

13     Q.  Do you remember his -- it's okay if you don't,

14   I don't want you to guess -- his tone or his demeanor?

15   I mean, was he calm?  Was he irate?  Was he screaming?

16   Was he yelling?  I mean, was there anything that stood

17   out?

18     A.  I don't remember him being that way, but that's

19   why we note the file when we take the phone call.

20   Because if there was an instance say where you were to

21   ask me today, you know, do you remember who you talked

22   to two weeks ago, we wouldn't necessarily remember it

23   unless it was yesterday, but that's why we note the

24   file when it happens, so that way going back we can

25   see what exactly happened that day and the time that

1   we took the phone call.

2       Q.   Is there anything -- you said you vaguely

3   remember I believe.   Is there anything that sticks out

4   in your mind?

5       A.   He might have been frustrated.

6       Q.   Anything else?

7       A.   Not really, no.

8       Q.   Do you remember if you stated to him that he

9   would no longer be contacted by your office?

10      A.   I would never have said that because that's not

11  up to -- it wouldn't have been up to me to decide to

12  stop contacting him.

13      Q.   Do you remember if you told him you would send

14  an E-mail to the attorney?

15      A.   No.   If I had seen in there that it was already

16  sent to the attorney, I wouldn't send another one.   I

17  would note the file so that way when the attorney did

18  review the file they would see okay, he's called.

19  He's called again, you know, and that is also why we

20  note the file too.   So that way when the attorney

21  reviews the file they say okay, you know, he talked to

22  this person and then he called again and talked to

23  this person after that.

24      Q.   In your capacity as legal assistant, do you --

25  do you assist in any way any of the preparation of the

1   documents on this matter?

2       A.   Not on that particular file, no.

3               MR. ANDREWS:  Last one, you're all done.

4               MR. WOODARD:  No questions.

5               ***2:39 p.m.***

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                        ERRATA SHEET

2

3     PAGE LINE
       8    2
4     change:  2008 should read 2013
         reason:  Start date was in April 2013
5      12   6
      change:  3/19/2005 should read 2015
6        reason:  incorrect year
       12   13
7     change:  off should read office
         reason:_____
8     ____ ____
      change:_____
9        reason:_____
10    ____ ____
      change:_____
11       reason:_____
12    ____ ____
      change:_____
13       reason:_____
14    ____ ____
      change:_____
15       reason:_____
16    ____ ____
      change:_____
17       reason:_____

18
      I    Kristian Brown                hereby certify
19    that I did review and if necessary correct this
      deposition and that the foregoing pages  1   through
20     18  are a true and accurate recording of said
      proceedings.
21        Kristian Brown
22    Subscribed and sworn to before me this
      6  day of  December           , 20 16 .
23    Victoria E. Hamilton
24       Notary Public          VICTORIA E HAMILTON
                                 NOTARY PUBLIC, STATE OF NEW YORK
                                 LICENSED IN NIAGARA COUNTY
25                               NO. 01HA6349307
                                 MY COMM. EXP. 10/7/2020
```

METSCHL & ASSOCIATES
Buffalo: 716-856-1906   Rochester: 585-697-0969

```
1    STATE OF NEW YORK
     COUNTY OF ERIE
2
          I, Molly Fenske, a Notary Public in and for the
3    State of New York, do hereby certify:

4         That the witness whose testimony appears herein
     before was, before the commencement of his deposition,
5    duly sworn to testify to the truth, the whole truth
     and nothing but the truth; that such testimony was
6    taken pursuant to notice at the time and place herein
     set forth; that said testimony was taken down in
7    shorthand by me and thereafter under my supervision
     transcribed into the English language, and I hereby
8    certify the foregoing testimony is a full, true and
     correct transcription of the shorthand notes so taken.
9
          I further certify that I am neither counsel for
10   nor related to any parties to said action, nor in
     anywise interested in the outcome thereof.
11
          IN WITNESS WHEREOF, I have hereunto subscribed my
12   name this 11th day of November, 2016.

13

14

15

16                        Molly K. Fenske

17
                          Notary Public
18
                          State of New York
19

20

21

22

23

24

25
```