UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM J. WAGNER,

         Plaintiff,

                    Case # 15-CV-633-FPG

v.

                    DECISION AND ORDER

CHIARI & ILECKI, LLP,

         Defendant.
_____

## INTRODUCTION

In the first half of 2015, Defendant Chiari & Ilecki, LLP, mistakenly sent a notice to and served a subpoena on Plaintiff William J. Wagner at his home when attempting to collect a debt incurred by William J. Wagner, Jr., (the Debtor). Plaintiff filed a complaint on July 15, 2015 alleging that Defendant's acts violated §§ 1692d, 1692e, 1692(e)(2), 1692(e)(5), 1692(e)(10), 1692(f), and 1692(f)(1) of the Fair Debt Collection Practices Act (FDCPA or the Act). ECF No. 1. Plaintiff has since moved for partial summary judgment on his claims under §§ 1692e, 1692(e)(2), 1692(e)(5), 1692(e)(10), and 1692(f) but not §§ 1692d and 1692(f)(1). ECF No. 25-2 at 1. Defendant moved for summary judgment on all claims. ECF No. 47-3. Plaintiff also moved to submit additional authority, which the Court has considered. ECF No. 54.

For the following reasons, Plaintiff's motion to submit additional authority is GRANTED, his motion for partial summary judgment is DENIED, and Defendant's motion for summary judgment is GRANTED.

# BACKGROUND[1]

## I. Plaintiff and the Debtor

Plaintiff was born in 1950 and has lived at 5419 Roberts Road, Hamburg, New York, since he purchased the property in 1984. The last two digits of his Social Security number (SSN) are 18. Neither Plaintiff nor anyone to whom he is related has ever been known as "William J. Wagner, Jr."

The Debtor, William J. Wagner, Jr., was born in 1958, and the last two digits of his SSN are 06. He incurred the debt in 2006 after he defaulted on a residential lease, and judgment was entered against him in Buffalo City Court in favor of M.J. Peterson LLC. Defendant's predecessor-in-interest represented M.J. Peterson in the action against the Debtor.

Neither Plaintiff nor the Debtor know each other or are related to each other. The Debtor has never lived at Plaintiff's residence. Plaintiff has never conducted business with M.J. Peterson and, consequently, knew he owed no debt to it.

## II. Defendant's Efforts to Locate the Debtor

On February 3, 2009, April 2, 2010, and November 27, 2011, Defendant obtained credit reports for the Debtor. Those reports listed three addresses for him, all of which Defendant discovered were invalid.

On November 26, 2011, Defendant searched the LexisNexis public records database for addresses associated with the Debtor. No addresses were found.

On February 9, 2015, Melissa Overbeck, Esq., an attorney working for Defendant and on the Debtor's case file, searched for his contact information on LexisNexis, in employment records,

---

[1] There is no genuine dispute as to the following facts unless otherwise noted.

and on Real-Info, a real estate information database. The latter turned up an address owned by a "William Wagner": 5419 Roberts Road in Hamburg, New York.

**III.     Defendant's Communication with Plaintiff**

On February 9 and 11, 2015, Defendant mailed a New York Civil Practice Law & Rules § 5222[2] notice and information subpoena to Plaintiff's residence. Plaintiff received and read the notice—not the subpoena—on February 12, 2015, and called Defendant. He spoke with Karen Sandford, a legal assistant working for Defendant, and told her that he was not the Debtor referenced in the notice. He then gave her the last two digits of his SSN. She informed him that she would notify an attorney and ended the call.

On February 15 and March 19, 2015, Plaintiff received notifications from the U.S. Postal Service that it was holding a certified letter sent to his address. The February 15 notification indicated that it was sent from Defendant, while the March 19 notification did not. Unbeknownst to Plaintiff, the USPS was attempting to deliver the information subpoena to his address. Plaintiff refused the letter on both dates and, thus, never received it.

On March 19, Plaintiff again called Defendant and spoke to a different legal assistant: Kristian Brown. Plaintiff again explained that he was not the Debtor, was born in 1950, and was upset that he continued to receive correspondence from Defendant. Brown explained that Plaintiff could send copies of his driver's license and SSN to verify his identity, but Plaintiff declined to send them. After the call, Plaintiff felt harassed by Defendant.

On June 5, 2015, Overbeck performed another LexisNexis search for the Debtor. She noted in an events log that it appeared the Debtor lived at 5419 Roberts Road with a "William J. Wagner,

---

[2] Under § 5222, a judgment creditor may serve a restraining notice on a debtor, which prohibits him from selling, assigning, or transferring any property in which he has an interest, subject to certain limitations.

- 3 -

Sr." and that she informed the process server to serve the Debtor, not the "William J. Wagner, Sr.," with a subpoena duces tecum[3] (SDT).

On June 17, 2015, a process server served the SDT intended for the Debtor on Plaintiff.

The same day, after the SDT was served on him, Plaintiff called Defendant a third time and spoke with Sanford again. He explained that he was served papers intended for the Debtor, the Debtor did not live there, no junior lived there, and there had never been a family member with that suffix.

Because of these interactions, Plaintiff felt that Defendant was trying to collect the debt from him. This lawsuit followed.

## LEGAL STANDARD

A summary judgment motion should be granted where the moving party shows that "there is no genuine dispute as to any material fact" and that the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when there can be but one reasonable conclusion as to the verdict, *i.e.*, it is quite clear what the truth is, and no rational factfinder could find in favor of the nonmovant." *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)) (quotation marks and citations omitted). On the other hand, "[s]ummary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party." *Id.* (citing *Liberty Lobby*, 477 U.S. at 248); *see also Liberty Lobby*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

---

[3] An SDT requires a debtor to testify at a debtor's examination and produce documents relative to his financial status.

**DISCUSSION**

Congress passed the FDCPA to simultaneously eradicate abusive debt collection practices and incentivize debt collectors to use non-abusive collection practices. *See* 15 U.S.C. § 1692(e). The FDCPA contemplates and targets specific practices of which Congress was aware when it passed the Act. Among them was "the recurring problem of debt collectors dunning the wrong person." *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 251 (S.D.N.Y. 2011) (quoting S. Rep. No. 95–382, at 4 (1977)). Indeed, the Act was intended to protect people "who do not owe money at all," people targeted "either because of mistaken identity or mistaken facts," and people who have "a common name and [are] being hounded by a debt collector because of the debts of another person." S. Rep. No. 95–382, at 4 (1977). Congress also intended courts to construe the Act's provisions liberally to effectuate its purposes. *See Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 437 (2d Cir. 2018).

The Court uses an objective standard to analyze an alleged violation of the FDCPA: whether the least sophisticated consumer would be deceived by the debt collection practice. *Bodur*, 829 F. Supp. 2d at 252 (quoting *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998)). While the least sophisticated consumer is not "irrational nor a dolt," he does not have the sophistication and knowledge of even the average, common consumer. *Id.* (quoting *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 134 (2d Cir. 2010), *cert. denied*, 560 U.S. 926 (2010)). Finally, the FDCPA is a strict liability statute, so a debt collector's intent in violating the statute is irrelevant. *Vangorden*, 897 F.3d at 438.

**I.     Plaintiff Has Standing to Sue Under the FDCPA.**

The Court turns first to Defendant's standing arguments, as it must. *Cohen v. Rosicki, Rosicki, & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) (addressing defendant's standing

arguments first since standing is a "threshold matter").  To establish standing under Article III of the constitution, Plaintiff must demonstrate (1) an injury in fact, (2) a causal connection between the injury and Defendant's alleged conduct, and (3) a likelihood that a decision favorable to Plaintiff will redress the injury alleged.  *Cohen*, 897 F.3d at 80.  Defendant argues that Plaintiff has failed to establish the first requirement of standing: injury in fact.  Relying on the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Defendant contends that Plaintiff failed to allege both a violation of the FDCPA and an injury because of that violation as required.

The law does not support Defendant's argument.  Courts within the Second Circuit have consistently held that a plaintiff has standing to sue under the FDCPA when he alleges a violation of it but no additional injury.  *E.g.*, *Grosz v. LSF9 Master Participation Tr.*, 16-CV-4035(SJF)(AKT), 2017 WL 6383912, at *9 (E.D.N.Y. Aug. 7, 2017) ("Since . . . *Spokeo*, district courts in [the Second] Circuit have consistently held that allegations that a communication sent to [plaintiffs] by a debt collector violated Sections 1692e, 1692f and/or 1692g of the FDCPA satisfies the concrete injury requirement for Article III standing."); *Balke v. All. One Receivables Mgmt., Inc.*, 16-cv-5624(ADS)(AKT), 2017 WL 2634653, at *3 (E.D.N.Y. June 19, 2017) ("[T]he Court finds that the Plaintiff's alleged failure to plead facts showing an injury beyond the statutory violations themselves does not divest her of Constitutional standing to maintain this action.").

The Second Circuit recently analyzed this very issue in *Cohen*.  In that case, the Second Circuit found that Congress had enacted §§ 1692e and 1692g to "protect consumers' concrete interests."  *Cohen*, 897 F.3d at 81.  The Court then concluded that the complained-of conduct— incorrectly identifying the creditor—alleged a violation of the FDCPA, establishing standing.  *Id.* at 81-82.

The same holds true here. Plaintiff's claims all stem from the same factual basis: the § 5222 notice and SDT sent by Defendant made him feel harassed and as if Defendant was trying to collect the debt from him and not the Debtor. Those allegations alone—that he received a communication from a debt collector in violation of the FDCPA—grant him standing[4] under §§ 1692d, 1692e[5], and 1692f.

Defendant also claims that Plaintiff lacks standing because he is not a "consumer" as that term is defined under the FDCPA and that he was not subject to "injurious exposure" from the communications. ECF No. 47-3 at 22-29. But courts have consistently entertained suits under the FDCPA from individuals who did not owe the subject debt but had names similar to the actual debtor and were mistakenly targeted with debt collection efforts. *See, e.g.*, *Bodur*, 829 F. Supp. 2d at 250-58. Moreover, a stated purpose of the FDCPA is providing relief to those very individuals. S. Rep. No. 95–382, at 4 (1977). The Court therefore finds that Plaintiff is a consumer, was subject to injurious exposure, and therefore is entitled to protection under the FDCPA.

## II. Plaintiff Is Not Seeking to Hold Defendant Vicariously Liable for the Process Server's Delivery of the SDT.

Defendant's first substantive argument is that it should not be held liable for service of the SDT upon Plaintiff since the server is not an agent of Defendant. ECF No. 47-3 at 13-17. Numerous courts have concluded that a debt collector-principal may be liable for its agents' FDCPA violations. *Suquilanda v. Cohen & Slamowitz, LLP*, No. 10 Civ. 5868(PKC), 2011 WL

---

[4] Defendant argues that, since Plaintiff knew he was not the Debtor and that he did not owe the subject debt, he cannot have standing under the FDCPA. ECF No. 47-3 at 22-28. That argument addresses the merits of Plaintiff's claims under §§ 1692d, 1692e, and 1692f, which the Court cannot consider while analyzing standing. *Cohen*, 897 F.3d at 82 n. 6.

[5] Consequently, Defendant's argument that Plaintiff has not alleged deception and unfair practices to invoke the protections of §§ 1692e and 1692f also fails.

4344044, at *4 (S.D.N.Y. Sept. 8, 2011); *see also LaCourte v. J.P. Morgan Chase & Co.*, No. 12 Civ. 9453(JSR), 2013 WL 4830935, at *5 (S.D.N.Y. Sept. 4, 2013).

But Plaintiff is not alleging that the *process server* violated the FDCPA and Defendant is vicariously liable for that conduct; he is alleging that *Defendant* violated the FDCPA. Defendant cannot escape liability by imputing its conduct onto a third party. *See Bodur*, 829 F. Supp. 2d at 254-58 (finding the debt collector, not the mail carrier, violated the FDCPA when it sent collection letters to plaintiff who was not the debtor).

### III. Plaintiff Abandoned His § 1692d Claim.

Defendant next argues that it is entitled to summary judgment on Plaintiff's § 1692d claim because its acts do not constitute the type of behavior proscribed by § 1692d. ECF No. 47-3 at 17-20. Plaintiff makes no argument supporting his § 1692d claim. *See* ECF No. 51 at 16-20. The Court is left to conclude that Plaintiff has abandoned the claim and, accordingly, Defendant's motion for summary judgment is GRANTED as to it. *See Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

### IV. Defendant Is Entitled to Summary Judgment on Plaintiff's § 1692e(5) Claim.

Generally, § 1692e proscribes using "false, deceptive, or misleading" representations or means to collect a debt. Section 1692e(5) prohibits debt collectors from pursuing debts they are not legally authorized to collect. *See, e.g.*, *Pape v. Law Offices of Frank N. Peluso, P.C.*, No. 3:13 CV 63 (JGM), 2016 WL 53821, at *9 (D. Conn. Jan. 5, 2016) (finding that defendant violated § 1692e(5) when it threatened to report the cancellation of plaintiff's debt to the IRS but had no legal authority to do so); *Berger v. Suburban Credit Corp.*, No. 04 CV 4006 CLP, 2006 WL 2570915,

at *5 (E.D.N.Y. Sept. 5, 2006) (concluding defendant violated § 1692e(5) when it threatened to collect a debt via means it did not intend to use and without legal authorization). Here, there is no dispute that Defendant was legally authorized to collect the debt and intended to collect the debt. Instead, Plaintiff alleges that it was attempting to collect the debt from the wrong person. Consequently, Defendant is entitled to summary judgment on Plaintiff's claim under § 1692e(5), its motion is GRANTED as to that subsection, and Plaintiff's motion is DENIED.

V. **Defendant Is Entitled to Summary Judgment on Plaintiff's Claims Under §§ 1692e, 1692e(2)(A), and 1692e(10).**

Numerous district courts have concluded that a debt collector makes a false representation and violates §§ 1692e, 1692e(2)(A) and 1692e(10) when it attempts to collect a debt from a non-debtor. *Bodur*, 829 F. Supp. 2d at 254 (collecting cases).

In *Bodur*, the defendant sent a debt collection letter to a plaintiff who had a name similar to the debtor's name. 829 F. Supp. 2d at 247-48. The plaintiff contacted the debt collector and provided his date of birth and SSN to the representative. *Id.* The representative confirmed that the plaintiff was not the debtor. *Id.* Just over three years later, the debt collector sent another collection letter to the plaintiff. *Id.*

The plaintiff then sued, alleging a violation of §1692e(2)(A). *Id.* at 254. Defendants argued that "they did not violate the FDCPA because plaintiff . . . knew he was not the debtor and could not have reasonably believed that [the defendant debt collector] was attempting to collect the debt from him." *Bodur*, 829 F. Supp. 2d at 255. The court disagreed. It found that the least sophisticated consumer may have viewed the initial collection letter as a mistake, but not the continued effort years later. *Id.* at 256 ("Defendant's continued collection effort . . . reasonably would appear to the least sophisticated consumer to be [it]s concerted effort to collect the debt

from [plaintiff]."). Moreover, finding for defendants would have neutralized one of the stated purposes of the FDCPA—preventing debtors from dunning the wrong person. *Id.* at 255.

Relying on *Bodur* in part, Plaintiff argues that Defendant violated §§ 1692e, 1692e(2)(A), and 1692e(10). ECF No. 25-2 at 10-13. Defendant counters with a variety of arguments which the Court will address in turn.

First, Defendant argues that no violation occurred because Plaintiff understood that the communications were not intended for him: he knew he was not the Debtor, had no past dealings with the creditor, did not owe the debt to the creditor, and had previously received communications intended for the Debtor. ECF No. 47-3 at 21. The applicable standard, however, is whether the collection effort would have deceived the least sophisticated consumer, not what Plaintiff's actual knowledge was when he received the communications. *See Bodur*, 829 F. Supp. 2d at 252 (quoting *Maguire*, 147 F.3d at 236).

Recognizing this shortcoming, Defendant next contends that, in those circumstances, the least sophisticated consumer would not have considered the communications to be an attempted debt collection effort. ECF No. 47-2 at 21-22. "Indeed," Defendant goes on, "courts have repeatedly held that when a non-debtor receives a communication which is addressed to someone else or contains other indicia that it is intended for someone else, § 1692e has not been violated." *Id.* at 22.

The Court is not persuaded. First, four of the seven cases Defendant cites reflect the law in the Sixth Circuit or, more specifically, the Eastern District of Michigan. Courts in that district have repeatedly held that a defendant does not violate § 1692e when it attempts to collect from a non-debtor who knew he did not owe the debt. *E.g., McDermott v. Randall S. Miller & Assocs.,*

*P.C.*, 835 F. Supp. 2d 362, 366 (E.D. Mich. 2011). No courts outside of the Eastern District of Michigan have so held, and this Court will not be the first.

Second, the one case Defendant cites from this Circuit does not support its argument. In *David v. FMS Servs.*, 475 F. Supp. 2d 447 (S.D.N.Y. 2007), the plaintiff received one collection notice from defendant addressed to a person with a similar name. 475 F. Supp. 2d at 448. They had no further communication. *Id.*

The court ultimately concluded that defendant was not attempting to collect a debt from plaintiff based on the single communication. *Id.* at 449 ("While no actual injury is necessarily required to state a claim under the FDCPA . . . there must still be an attempt to collect a debt from the plaintiff. This essential element is missing from [plaintiff's] claim."); *see also id.* ("[Defendant] incorrectly sent a debt collection notice directed at another individual to [plaintiff's] address, nothing more.").

In *Bodur*, defendant did more: it sent a subsequent communication years later, which the court found sufficient to not only constitute a debt collection attempt, but to make the least sophisticated consumer feel defendant was trying to collect the debt from him even though he was not the debtor. *Bodur*, 829 F. Supp. 2d at 255-56. Read together, *David* and *Bodur* hold that a debt collector does not violate § 1692e when it attempts to collect a debt from a non-debtor once, but it does violate § 1692e with any subsequent collection attempt. Indeed, Defendant confirms this principle in its brief: "[T]he [*Bodur* court] found that § 1692e had been violated because the debt collector[] continued [its] efforts after receiving clear proof that the plaintiff[ was] not the debtor[]." ECF No. 47-3 at 23.

The Court finds that the least sophisticated consumer would be deceived by Defendant's debt collection efforts. The undisputed facts here mirror those in *Bodur*: Plaintiff received a

collection attempt from Defendant, contacted Defendant to explain that he was not the debtor, and Defendant attempted to collect the debt again. The Court therefore finds that no reasonable jury could find in Defendant's favor and that Defendant violated §§ 1692e, 1692e(2)(A) and 1692e(10).

### A. The Bona Fide Error Defense

Because the Court finds that Defendant violated §§ 1692e, 1692e(2)(A) and 1692e(10) and Defendant raised the affirmative defense in its answer, the Court must next consider the bona fide error defense (BFED). The BFED allows debt collectors to avoid liability for an FDCPA violation "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Courts have read § 1692k(c) to contain three prongs: (1) an unintentional violation (2) resulting from a bona fide error (3) despite maintaining procedures reasonably adapted to avoid the error. *Lee v. Kucker & Bruh, LLP*, 958 F. Supp. 2d 524, 528 (S.D.N.Y. 2013) (quoting *Cerrato v. Solomon & Solomon*, 909 F. Supp. 2d 139, 147 (D. Conn. 2012)). Whether a defendant establishes each prong is a question of fact. *Puglisi v. Debt Recovery Sols., LLC*, 822 F. Supp. 2d 218, 226 (E.D.N.Y. 2011).

#### 1. Defendant's Violation Was Not Intentional and Resulted from a Bona Fide Error.

A circuit split exists as to what standard the Court should apply under the first prong. The Eleventh Circuit recently concluded that a defendant must show that the FDCPA violation was unintentional, not that the underlying conduct was unintentional. *Arnold v. Bayview Loan Servicing, LLC*, 659 F. App'x 568, 570 (11th Cir. 2016). The Seventh and Ninth Circuits disagree; citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010), they held a defendant must show that both the FDCPA violation and the underlying conduct was unintentional. *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 899 (7th Cir. 2015) ("[Defendant's]

employee swears that she sent the letter intentionally but that she did not intend to violate the FDCPA. At this stage, that entitles Nationwide to the conclusion that its violation was not willful—but liability is not confined to willful violations."); *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030-31 (9th Cir. 2012) ("The record is clear that [defendant] intentionally sent letters to the workplaces of putative class members . . . . Thus, [defendant] cannot avail himself of this affirmative defense.").

The Second Circuit has not declared its view. Regardless, this Court need not choose a side; based on the undisputed facts, no reasonable jury could conclude that Defendant's conduct was unintentional, which satisfies either standard outlined above.

Two acts constitute Defendant's violation: sending the § 5222 notice on February 9, 2015 and serving the SDT on Plaintiff on June 17, 2015. As discussed above, both are required to constitute an FDCPA violation, but it is the subsequent act—service of the SDT—that is dispositive.

The Court finds that no reasonable jury could conclude that Defendant intentionally served the SDT on Plaintiff. The undisputed facts are clear: Overbeck specifically instructed the process server to serve the Debtor even though someone with a nearly-identical name, possibly the Debtor's father, could be at the residence. ECF No. 47-21 (letter instructing the process server to "[p]lease be sure to serve the correct William J. Wagner. We believe there is a William J. Wagner, Sr. and William J. Wagner, Jr. living at the same residence"). That instruction followed Overbeck's search on LexisNexis to verify that the Debtor resided at Plaintiff's address. These acts demonstrate a debt collector attempting to locate the Debtor in good faith and mistakenly serving Plaintiff, not a debt collector locating Plaintiff and intentionally serving him with the SDT.

Defendant's error was bona fide for the same reasons. To meet its burden under the second prong, a defendant must show that the violation was a "bona fide" error, *i.e.*, that it was a good faith, genuine error and not a "contrived mistake." *Arnold*, 659 F. App'x at 571 (citing *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1353 (11th Cir. 2009)). Defendant's efforts to confirm the Debtor's address and ensure that the Debtor was served were objectively reasonable and demonstrate that the error was genuine. *See id.* ("To be considered a bona fide error, the debt collector's mistake must be objectively reasonable." (quoting *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 538 (7th Cir. 2005)). Plaintiff argues that Defendant reviewed multiple credit reports that did not associate Plaintiff's address with the Debtor, that Defendant did not retain copies of the Real-Info and LexisNexis reports in bad faith, and that Defendant should have investigated further after receiving Plaintiff's calls[6] and receiving indicia that the Debtor did not own or reside in Plaintiff's home. ECF No. 25-2 at 18-23. Those arguments, however, contend only that Defendant could have done more to avoid the error; they do not show that Defendant's error was contrived. *See id.* Consequently, the Court finds that no reasonable jury could conclude that Defendant's violation was intentional and not bona fide.

### 2. Defendant Maintained Procedures Reasonably Adapted to Avoid the Type of Error that Occurred Here.

For the third and final prong, Defendant must show that it maintained procedures "reasonably designed to avoid the type of error that occurred in this case." *Kucker & Bruh,* 958 F. Supp. 2d at 529, 532; 15 U.S.C. § 1692k(c). "The procedures need not be 'fool proof,' but must constitute a 'reasonable precaution' to avoid the error at issue." *Id.* at 529 (quoting *Cerrato*, 909 F. Supp. 2d at 148).

---

[6] This argument goes to Defendant's procedures to prevent this type of error, which the Court addresses next.

In *Jerman*, the Supreme Court specifically explained the "procedures" referenced in § 1692k(c):

> [T]he statutory phrase is more naturally read to apply to processes that have mechanical or other such "regular orderly" steps to avoid mistakes—for instance, the kind of internal controls a debt collector might adopt to ensure its employees do not communicate with consumers at the wrong time of day, § 1692c(a)(1), or make false representations as to the amount of a debt, § 1692e(2).

559 U.S. at 587. Therefore, Defendant can avoid liability if it shows by a preponderance of the evidence that it had a process with mechanical steps to avoid dunning people who have a name similar to a debtor.

No reasonable jury could conclude that Defendant has not met its burden. While the procedure is not in writing, it was explained by Defendant's principal, William Ilecki, as follows. An employee runs searches on various internet databases to locate contact information for a debtor. *See* ECF No. 47-4 ¶ 5. If an individual contacts Defendant and claims that it is attempting to collect the debt from the wrong person, a legal assistant takes the call and is instructed to ask the caller to provide verifiable proof of the caller's identity—an SSN, date of birth, or driver's license. The legal assistant then summarizes the call in the events log. *Id.* ¶¶ 74-77.

An attorney reviews the information in the events log and any information provided by the caller. *See id.* ¶¶ 78-79. If the attorney concludes that the caller is not the debtor, all collection efforts cease. *Id.* ¶ 79. If no verifiable proof exists, the attorney again searches internet databases to confirm the debtor's contact information. *Id.* ¶¶ 81-82.

If the attorney believes the contact information is correct, collection efforts continue, but the attorney warns staff, process servers, and other third parties to direct the efforts only at the debtor and not anyone else at the provided address. *Id.* ¶¶ 84-85.

The procedure is not foolproof, but it is reasonable and tailored to prevent dunning individuals with names similar to a debtor, which is all that is required. While Plaintiff makes other arguments, he presents no evidence challenging Ilecki's recitation of Defendant's procedure. *See Puglisi*, 822 F. Supp. 2d at 228-29 (finding defendant established the third prong of the BFED where "plaintiff . . . failed to adduce any evidence rebutting the declaration of defendant's president, which demonstrates that defendant maintains extensive training, mentoring and oversight"). Consequently, Defendant's motion for summary judgment is GRANTED as to Plaintiff's claims under §§ 1692e, 1692e(2)(A) and 1692e(10) and Plaintiff's motion is DENIED.

## VI. Defendant Is Entitled to Summary Judgment on Plaintiff's §§ 1692f and 1692f(1) Claims.

Under § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Defendant argues that the Court should dismiss Plaintiff's § 1692f claims because they rest on the same facts as his § 1692e claims and its actions did not violate §§ 1692f or 1692f(1). ECF No. 47-3 at 27-28. Plaintiff responds in kind: citing the Second Circuit's recent decision in *Arias v. Guntz, Mintz, Baker & Sonnenfeldt LLP*, he contends that claims under §§ 1692e and 1692f may rest on the same factual basis and that Defendant's actions violated §§ 1692f or 1692f(1). ECF No. 51 at 19-21.

Defendant's first argument fails. *Arias* holds that claims under §§ 1692e and 1692f can rely on the same facts. 875 F.3d 128, 135-36 (2d Cir. 2017) ("A debt collector who communicates with a debtor by postcard containing a representation that is 'false, deceptive, or misleading' to the least sophisticated consumer can violate both section 1692f(7) and section 1692e.").

Defendant's conduct, however, did not violate §§ 1692f or 1692f(1). A § 1692f(1) claim cannot survive where a debt collector attempts to collect the precise amount owed to the creditor from the wrong person. *Barrios v. Enhanced Recovery Co.*, No. 15-CV-5291, 2018 WL 5928105,

at *4 (E.D.N.Y. Nov. 13, 2018) ("The weight of authority holds that, where a collector does not attempt to collect more than what the creditor is owed under the contract, they may not be held liable under subsection [§] 1692f(1) merely because they sought to collect from the wrong person.") (collecting cases). There is no allegation that Defendant was attempting to collect an amount greater than that owed to the creditor; it is only alleged that Defendant was trying to collect the debt from the wrong person. Defendant's motion for summary judgment is therefore GRANTED as to Plaintiff's § 1692f(1) claim.

Plaintiff's § 1692f claim also fails. Plaintiff argues in his reply that "Defendant refused to withdraw the [SDT] and continued to maintain that Plaintiff was required to attend the debtor's examination," which violates § 1692f according to *Arias*. ECF No. 51 at 20-21.

In *Arias*, the defendant forced the plaintiff to attend a hearing to prove that funds in one of his accounts were exempt from garnishment. 875 F.3d at 133-34. The court found "that a debt collector engages in unfair or unconscionable litigation conduct in violation of section [§] 1692f when, as alleged here, it in bad faith unduly prolongs legal proceedings or requires a consumer to appear at an unnecessary hearing." *Id.* at 138.

Here, there is no dispute that Plaintiff did not attend the debtor's examination and that Defendant adjourned the debtor's examination at the request of Plaintiff's counsel. *See* ECF No. 47-5, ¶¶ 73-74. *Arias* is thus inapplicable, and Defendant's motion for summary judgment is GRANTED as to Plaintiff's § 1692f claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to submit additional authority, ECF No. 54, is GRANTED and the Court has considered the additional authority he submitted, his motion for partial summary judgment, ECF No. 25, is DENIED, and Defendant's motion for summary judgment, ECF No. 47, is GRANTED. The Clerk of Court is directed to enter judgment in Defendant's favor on all claims and close this case.

IT IS SO ORDERED.

Dated: March 7, 2019
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court