```
 1                  UNITED STATES DISTRICT COURT

 2                  WESTERN DISTRICT OF NEW YORK

 3

 4

 5   - - - - - - - - - - - - - -X
     WILLIAM J. WAGNER,                    15-CV-633(G)
 6             Plaintiff
     vs.
 7                                         Rochester, New York
     CHIARI & ILECKI, LLP,                 July 2, 2018
 8             Defendant.                  1:58 p.m.
     - - - - - - - - - - - - - -X
 9

10
                      TRANSCRIPT OF PROCEEDINGS
11         BEFORE THE HONORABLE FRANK P. GERACI, JR.
               UNITED STATES DISTRICT CHIEF JUDGE
12

13

14                    LAW OFFICES OF KENNETH HILLER
                      BY: KENNETH R. HILLER, ESQ.
15                    6000 North Bailey Avenue, Suite 1A
                      Amherst, New York 14226
16                    Appearing on behalf of the Plaintiff

17

18                    CONNORS, LLP
                      BY: CAITLIN M. HIGGINS, ESQ.
19                    1000 Liberty Building
                      Buffalo, New York 14202
20                    Appearing on behalf of the Defendant

21

22

23
     COURT REPORTER:    Christi A. Macri, FAPR-CRR
24                      Kenneth B. Keating Federal Building
                        100 State Street, Room 2120
25                      Rochester, New York 14614
```

```
 1                    P R O C E E D I N G S
 2                        *       *       *
 3            THE COURT: Do you want to come up to the podiums?
 4   You can identify yourselves and the parties that you
 5   represent.
 6            MR. HILLER: Kenneth Hiller appearing for the
 7   plaintiff.
 8            MS. HIGGINS:  Caitlin Higgins for the defendant.
 9            THE COURT: Good afternoon, everyone.
10            MS. HIGGINS: Good afternoon, Judge.
11            THE COURT: There are a number of outstanding
12   motions in this case, but before I begin, I want to ask this:
13   What damages is the plaintiff looking for in this case?
14            MR. HILLER: It's primarily emotional distress, you
15   know, having a loss -- law firm trying to collect against him,
16   getting his banking account information, and being concerned
17   that they were going to go after him, and feeling harassed.
18            THE COURT: Okay.  What actual damages are there
19   approximately, do you know?
20            MR. HILLER: Well, there wouldn't be any actual
21   pecuniary loss, there wouldn't be any monetary loss.  It's
22   really all in the nature of emotional distress, which does
23   constitute an actual damage under the FDCPA.
24            THE COURT: And the statutory damages are limited to
25   a thousand dollars; is that right?
```

```
 1                    MR. HILLER: That's right, that's right.
 2                    THE COURT: Okay.  Have you talked about resolving
 3  this at all?
 4                    MR. HILLER: I believe we had a mediation in this
 5  case.
 6                    MS. HIGGINS: Early on.
 7                    MR. HILLER: And didn't resolve it.
 8                    THE COURT: You couldn't resolve it?
 9                    MR. HILLER: No.
10                    THE COURT: Okay.
11                    MS. HIGGINS: The mediation was pretty early on.
12                    MR. HILLER: It was very early in the case, it was
13  very early in the case, yeah.
14                    THE COURT: Seems like a lot of good money being
15  thrown after bad here.
16                    There's a number of outstanding issues here.
17  There's plaintiff's motion in limine, and there's four of
18  those that are unopposed by the defense:  My understanding
19  regarding information related to plaintiff counsel's potential
20  claim for attorney fees; regarding plaintiff counsel's
21  procedures in investigating consumer lawsuits; and requesting
22  information regarding the number of lawsuits filed by
23  plaintiff's counsel; and regarding plaintiff counsel's
24  motivation.
25                    Those are all agreed to; is that right?
```

1          **MS. HIGGINS:** That's correct, Your Honor.

2          **THE COURT:** So those will be precluded.

3          There are a couple other outstanding issues
4 regarding Seth Andrews pre-lawsuit communications,
5 specifically the June 29th, 2015 conversation with Melissa --
6 is it Overbeck?

7          **MS. HIGGINS:** Yes, Your Honor, Overbeck.

8          **THE COURT:** Overbeck.  And I believe your position
9 is that this could be relevant to a bona fide error defense;
10 is that right?

11          **MS. HIGGINS:** That's correct, Your Honor.  And I
12 think it also goes to our position that there was no technical
13 violation of the FDCPA, but yes.

14          **THE COURT:** Okay.  Did you want to be heard on that
15 at all?

16          **MR. HILLER:** Well, yes, Your Honor.  Anything that
17 Mr. Andrews said does not cleanse what happened beforehand.

18          And the complaint alleges violations of the FDCPA,
19 you know, that they served the wrong person with proceedings
20 and continued to collect even after being told that they had
21 the wrong party.

22          And what Mr. Andrews may have said over the
23 telephone after the -- well, just prior to the lawsuit doesn't
24 really establish whether they had a bona fide error to do
25 things before that.

 1    It's just they were trying to discuss what to do
 2 about the pending deposition that was going to be scheduled,
 3 but it doesn't relate -- it doesn't explain why they served
 4 the wrong person and kept on proceeding.
 5    I really think --
 6    **THE COURT:** Well, weren't they just asking for some
 7 basic information regarding driver's license, Social Security
 8 card, something to show that -- that he was not the person in
 9 question?
10    **MR. HILLER:** They asked that of Mr. Andrews
11 after-the-fact.  That is one of the problems.  They never
12 really asked the plaintiff until he got an attorney, you know,
13 before he had an attorney he told them -- he gave them the
14 last two numbers of his Social Security number and they said
15 e-mail the attorney, which reasonably I think led him to
16 believe it's all taken care of.
17    And then he gets served with an information
18 subpoena, calls him again, gives him the date of birth,
19 they -- the words that they used were you could send your
20 Social Security number and driver's license if you would like.
21    They never said we really need this or we're gonna
22 go forward.  It was sort of like an optional thing they sent
23 it to him.  And then they served and he called them again and
24 they continued to go ahead with it.
25    And a part of this is like who has the burden here?

1 Does our client have to provide his Social Security number to
2 a law firm that's purporting to collect against him?  His
3 Social Security number, his driver's license in this day of
4 identity theft, this age of identity theft?
02:33:26PM 5          And the FDCPA is a strict liability statute.  It's
6 up to the debt collector to make sure they're complying with
7 the loss, not up to the consumer.  And that is in many ways
8 the case in a nutshell.
9          **THE COURT:** But in this case it's a little
02:33:44PM 10 aggravating circumstance in that Mr. Wagner had a son with the
11 same name, different middle initial; is that right?  Who lived
12 in the same house?
13          **MR. HILLER:** No.
14          **THE COURT:** There's William J. Wagner?
02:34:00PM 15          **MS. HIGGINS:** William G. Wagner, Your Honor.
16          **MR. HILLER:** William G. Wagner, right.  There is no
17 junior living in the house.
18          **THE COURT:** No junior, but he had a son with the
19 same name; is that right?
02:34:09PM 20          **MR. HILLER:** I don't remember that.
21          **MS. HIGGINS:** That is in evidence, it was William G.
22 Wagner --
23          **THE COURT:** It was William G. Wagner who was the son
24 who lived at the same residence ?
02:34:20PM 25          **MR. HILLER:** For a number of years he did, and then

1 he moved out, if I recall.

2 **THE COURT:** Okay. And then there's some pre-lawsuit 3 conduct after the June 29th, 2015 phone calls that you're 4 indicating should be used as part of the narrative?

02:34:46PM 5 **MS. HIGGINS:** That's correct, Your Honor. And I 6 think, respectfully, Mr. Hiller misconstrues bona fida error 7 defense, and part of that defense -- and the case law is clear 8 on this -- that my client was taking reasonable measures to 9 verify the identity of the debtor, which is why back with the 02:35:03PM 10 first phone call they requested the date of birth and Social 11 Security number.

12 And I recently found a case actually from June 7th, 13 2018, and I can pass it up to Your Honor if you'd like. And I 14 have a copy for you, Mr. Hiller.

02:35:16PM 15 **MR. HILLER:** Sure.

16 **MS. HIGGINS:** That discusses -- would Your Honor 17 like this?

18 **THE COURT:** Sure.

19 **MS. HIGGINS:** It's the *McGrail* case.

02:35:23PM 20 **THE COURT:** Thank you.

21 **MS. HIGGINS:** And it basically in a nutshell says 22 when you're invited to provide this information to verify your 23 identity, then the onus is on the person who is complaining 24 that they're not the debtor to provide that information.

02:35:37PM 25 Even if he didn't want to provide the full Social

Security card, he only provided two digits of his Social Security number. He provided his date of birth, but, unfortunately, in this day and age we can't take everyone at their word for what it is.

And, therefore, my client was under no obligation to stop collection activity. They had no affirmative proof that what Mr. Wagner was saying was true, and the case law is clear on that.

**THE COURT:** Okay. Is the last two digits of his Social Security number not sufficient?

**MS. HIGGINS:** According to the case law, most of the cases say four digits and I think that's pretty common practice when you're asked to verify your identity whether it's to a bank or to any other entity, but that's why they asked either for a redacted copy of his Social Security number which redacts the first part and leaves the four digits. But the case law seems to indicate that it would be the four digits.

But the other problem is even if he said here are my two digits and here's my date of birth, he refused to provide the license which would verify his date of birth. So now we're lacking even more information and one step further which may have made two digits okay. We didn't have either.

**THE COURT:** Was there a reason why he didn't provide a copy of the driver's license?

1  **MR. HILLER:** I think he did not want to give his
2  personal identifying information to this collection law firm.
3  I mean, I think he was worried about what they might do with
4  that information.
5  **MS. HIGGINS:** And, Your Honor, if I may, *McGrail*
6  actually addresses that point. When you're invited to provide
7  that information and you don't, then unfortunately it's -- you
8  face the repercussions of doing that. The driver's license
9  would have been sufficient.
10  **MR. HILLER:** I don't think that's true at all, Your
11  Honor. I don't think a person has an obligation to supply
12  that. This is a strict liability statute, and I submitted
13  cases, the *Bynog* case and the *Johnson vs. Bullhead* case
14  where -- exact same situation. The collector was dunning the
15  wrong person, the person called, gave I believe the last four
16  numbers of his Social Security number, no documentation, did
17  not give a copy of the card, did not give a driver's license,
18  and then the debt collector continued forward and the Court
19  found the debt collector liable.
20  And I keep coming back to it's a strict liability
21  statute. Congress could have said -- they could have put in
22  there if a debt collector is not sure, then the debtor has to
23  provide their Social Security number, could have put all these
24  defenses in like that, but they didn't.
25  Because the FDCPA was enacted -- and I'm quoting

1 this -- to eliminate the recurring problem of debtors dunning
2 the wrong person, and that's exactly what happened here.  This
3 is the primary purpose of the statute.
4     **THE COURT:** In any event, I believe that the
02:38:27PM 5 activity of Mr. Andrews on June 29th and subsequent could be
6 relevant to the bona fide error defense and, therefore, the
7 motion *in limine* regarding those two matters is denied.
8     The next issue is a motion for protective order,
9 and this relates to the request for deposition of Mr. Andrews;
02:38:50PM 10 is that right?
11     **MR. HILLER:** Right.
12     **THE COURT:** Do you want to explain that?
13     **MR. HILLER:** Well, there's no limit on the topic
14 about what might be discussed.  In other words, they could ask
02:39:02PM 15 him what was your investigation prior to the lawsuit?  What is
16 your policy filing lawsuits?  How many cases do you file?  All
17 sorts of information about our law firm's practices, which is
18 not relevant to Mr. Wagner's case.
19     And it seems like that's what they're getting at
02:39:24PM 20 because the request for admissions asks us, you know, to admit
21 that -- rather than trying to work this out, we filed a
22 lawsuit, you know, they're trying to impune us and that's not
23 relevant to this lawsuit.
24     **THE COURT:** I understand there's a back and forth
02:39:40PM 25 regarding this deposition.  He was never -- Mr. Andrews was

```
 1  never subpoenaed; is that right?
 2              MS. HIGGINS: I believe so.  I took this case over
 3  from an associate who left our firm who handled that part of
 4  it, but I don't believe he was ever subpoenaed.
 5              MR. HILLER: He was never served with a subpoena.
 6              THE COURT: My understanding is there was a
 7  stipulation by the parties to extend the discovery in this
 8  case.
 9              MS. HIGGINS: Correct.
10              THE COURT: But neither party made an application to
11  the Court.
12              MS. HIGGINS: Right.  And instead the first motion
13  for summary judgment was filed by plaintiff.  So we had to
14  cross-move.
15              THE COURT: So how do you get around Rule 29(b)?
16              MS. HIGGINS: I think this is part of -- it was an
17  unsettled issue prior to the motion for summary judgment being
18  extended.
19              THE COURT: So it's really moot at this point?
20              MS. HIGGINS: Well, we feel that a deposition is
21  appropriate and, again, the part --
22              THE COURT: The only way that can happen is for a
23  motion to reopen discovery, which I don't have before me at
24  this point.
25              MS. HIGGINS: Correct, Your Honor.
```

1          **THE COURT:** So that motion is moot at this point.
2          And next is a motion to disqualify the defendant
3 Connors based upon the fact that Mr. Hiller was represented by
4 the Connors law firm; is that right?
02:40:52PM 5          **MS. HIGGINS:** Years ago, yes, Your Honor.
6          **MR. HILLER:** Yes.
7          **THE COURT:** Go ahead, it's your motion.
8          **MR. HILLER:** And they, you know, the notice to admit
9 from my perspective, and I hope the Court's, it's clearly --
02:41:06PM 10 they're clearly getting at our law firm here.  They're really
11 wanting to say that we did something wrong by filing this
12 lawsuit; that we should have contacted -- that we should have
13 tried to work it out in their words.
14          And they refused to limit the scope of the
02:41:22PM 15 deposition like we want to limit it, okay?  Well, we'll just
16 talk about the telephone call that occurred, you know, on
17 June 29th or whenever it was, and they wouldn't do that.
18          So it seems to me that they're trying to bring our
19 firm into it, and Terry Connors represented me in a case
02:41:42PM 20 where a different lawyer was doing that, a different lawyer
21 was trying to say we were doing, you know, wrong things --
22 and two cases as a matter of fact.
23          And that is -- it's a conflict.  I mean, I feel
24 like I gave confidential information to that law firm.  I can
02:42:03PM 25 tell you that there's -- I didn't give anything damaging, but

1  nonetheless, I feel uncomfortable with the fact they're gonna
2  be deposing us about the practices of our law firm and they
3  represented me in a case where the practices of our law firm
4  were at issue.
5       **THE COURT:** Is that the issue here?
6       **MS. HIGGINS:** Well, so first I would say that this
7  is probably moot given your ruling just a second ago about the
8  deposition.
9       But, second, we've made representations repeatedly
10 that this is, quite frankly, not about their law firm.  This
11 is about William Wagner and my client.  And I think Mr. Hiller
12 misconstrues the professional rules about conflicts.
13      Mr. Hiller and his law firm are not a party to this
14 case, Your Honor.  William Wagner and Chiari & Ilecki are.
15 Connors LLP is not a party to the case.  We are an attorney
16 representing a client here.
17      And like I said, we have no intention of bringing
18 in Mr. Hiller's firm as part of any deposition that may go
19 on -- may or may not proceed given the Court's ruling.
20      **THE COURT:** Well, based upon the Court's previous
21 ruling regarding the deposition, and also the fact that I
22 don't see that it's a conflict here, the motion to disqualify
23 the Connors law firm is denied.
24      There's a plaintiff's motion for partial summary
25 judgment, but also a cross-motion by the defendant for summary

1   judgment.  The problem here is that the defense filed a 45
2   page brief, well in access of the 30 page limit under our
3   rules, with no application to file within the rule.
4           Do you want to be heard on that?
02:43:44PM 5           **MS. HIGGINS:** Again, Your Honor, I hate to --
6           **THE COURT:** This wasn't yours?
7           **MS. HIGGINS:** -- it wasn't mine.  I wish I would
8   have made an application, but it wasn't mine.  I know that
9   there was another application on the docket, but it could have
02:43:56PM 10  been for another motion.
11          **THE COURT:** Based upon that I'm going to require the
12  defendant to file within the limits of our local rules, 30
13  pages, to refile their motion.  And based upon that, the
14  summary judgment -- partial summary judgment I don't believe
02:44:12PM 15  can be heard at this time as well.
16          **MR. HILLER:** Okay.
17          **THE COURT:** And then there's -- both I think made
18  motions for additional authority, but with the refiling of the
19  cross-motion by the defense, I think those are both moot at
02:44:30PM 20  this point as well.
21          **MS. HIGGINS:** Okay.
22          **MR. HILLER:** So you'd like us to proceed to argument
23  on the dueling summary judgment motions at this point?
24          **THE COURT:** No.
02:44:38PM 25          **MR. HILLER:** Oh, no?

1          **THE COURT:**  Because they're going to have to
2  refile, and then you can respond and you'll be able to include
3  your authorities in that.
4          **MS. HIGGINS:**  So we should incorporate the
02:44:47PM 5  supplemental authorities in them?
6          **THE COURT:** That's right.  Anything further?
7          **MR. HILLER:** I don't think so.  I think --
8          **THE COURT:** Anything?
9          **MS. HIGGINS:** Nothing.
02:44:54PM 10          **THE COURT:** Would it be helpful to talk about this
11  matter at all to try to resolve it?  I hate to see you spend
12  more money on this.
13          **MR. HILLER:** Yeah, I don't know.
14          **THE COURT:** Why don't you talk about it?  And if you
02:45:04PM 15  feel that the Court can be helpful at all in trying to resolve
16  it, I'll be happy to help you do that, okay?
17          All right. Thank you.
18          **MS. HIGGINS:** Thank you.
19          **MR. HILLER:** Thank you.
02:45:13PM 20          (**WHEREUPON**, proceedings adjourned at 2:45 p.m.)
21                    *   *   *
22
23
24
25

1    **CERTIFICATE OF REPORTER**

2

3         In accordance with 28, U.S.C., 753(b), I certify that

4    these original notes are a true and correct record of

5    proceedings in the United States District Court for the

6    Western District of New York before the Honorable Frank P.

7    Geraci, Jr. on July 2nd, 2018.

8

9    S/ Christi A. Macri

10   Christi A. Macri, FAPR-CRR
     Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25